## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I)(A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND (D) SCHEDULING A FINAL HEARING AND (II) GRANTING RELATED RELIEF

True Value Company, L.L.C. and certain of its affiliates (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company") in the above-captioned cases (the "Chapter 11 Cases") hereby move (this "Motion") this Court for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively), granting the relief described below. In support of the Motion, the Debtors rely upon and incorporate by reference the contemporaneously filed (i) *Declaration of Kunal S. Kamlani in Support of Chapter 11 Petitions and First-Day Papers* (the "First Day Declaration")[2]; (ii) *Declaration of Megan Menzer in Support of Motion of Debtors for Entry of Interim and Final Orders (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; (C) Modifying the Automatic Stay; and*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco, L.L.C. (1833); TV Holdco I, L.L.C. (2219); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); Distributors Hardware, L.L.C. (8106); and True Value Specialty Company, LLC (5611). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

*(D) Scheduling a Final Hearing and (II) Granting Related Relief* (the "Menzer Declaration"); and

(iii) *Declaration of Kunal S. Kamlani in Support of Motion of Debtors for Entry of Interim and Final Orders (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; (C) Modifying the Automatic Stay; and (D) Scheduling a Final Hearing and (II) Granting Related Relief* (the "Kamlani Declaration" and, together with the First Day Declaration and the Menzer Declaration, the "Cash Collateral Declarations") and further represent as follows:

## PRELIMINARY STATEMENT

1.     As described more fully in the Cash Collateral Declarations, the Debtors commenced these Chapter 11 Cases to complete a value-maximizing sale (or sales) of all or substantially all of their assets that will close following a Court-approved and monitored accelerated bidding process (the "Sale Process").   The Debtors' proposed Sale Process is backstopped by a stalking horse offer from competitor Do it Best Corp. (the "Stalking Horse Bidder," and such bid, the "Stalking Horse Bid").   The alternative to the value-maximizing Stalking Horse Bid (or a higher or otherwise better bid submitted as part of the Sale Process) is a costly, value-destructive liquidation.

2.     In July 2024, the Debtors were placed in "cash dominion," whereby any amounts received from operations are swept into an account under lender control.[3]   The effect of this dominion has been devastating to the Debtors' liquidity and working capital.   The Prepetition Secured Parties limited draws on the Credit Facility (as defined below), thereby reducing cash available to pay vendors and employees in the ordinary course, restraining the Debtors' access to

---

[3]    The Debtors disputed the Prepetition Secured Parties' right to implement cash dominion at the time of its implementation.

make most payments late or not at all, and severely compromising the Debtors' ability to operate their businesses in the ordinary course.

3.        Lately, the Prepetition Secured Parties have relied on a "desk-top" liquidation analysis—not an offer of any kind—prepared by Hilco Consumer-Retail ("Hilco") that shows an enhanced recovery for Prepetition Secured Parties in a "high case" Chapter 11 court-supervised liquidation (the "High Case").  Hilco's High Case analysis is fundamentally flawed, unrealistic, and should not be relied upon by any party.  Hilco's low case scenario (the "Low Case"), which, while likely still too high and bearing execution risk, is more realistic based on the evidence set forth in the Cash Collateral Declarations, projects a recovery to the Prepetition Secured Parties materially lower than they would receive upon consummation of a sale based on the Stalking Horse Bid, and only by late February 2026, not early December 2024.  Specifically, the Debtors' forecasts project that the Stalking Horse Bid would result in a paydown such that the ending balance of the secured debt is approximately $103 million; whereas, the ending balance of the secured debt under each of Hilco's Low Case, "Mid Case" and High Case scenarios would be approximately $171 million, $128 million and $84 million, respectively.  *See* Kamlani Declaration ¶ 18.  Moreover, the Stalking Horse Bid will assume at least $45 million of prepetition and post-petition vendor-related claims (including direct assumption of Section 503(b)(9) claims), plus an undetermined amount of employee-related claims, and/or additional vendor claims through the cure process.  In other words, the recovery to the Prepetition Secured Parties in connection with the sale pursuant to the Stalking Horse Bid is materially higher than both the Hilco Low Case and Mid Case, and overall value generated by the Stalking Horse Bid is the highest of all three of Hilco's hypothetical scenarios.

4.      The Debtors' choice is clear: maximize value for all stakeholders, including the Prepetition Secured Parties, through a sale to the winning bidder following the Sale Process.  To bridge to that value-maximizing sale, the Debtors will need to use cash on hand and cash from operations to pay suppliers, fund payroll obligations, and satisfy other critical obligations.  Without access to this Cash Collateral (as defined below), the Debtors would be forced into a value-destructive liquidation, eliminating nearly 2,000 jobs and hemorrhaging the value inherent to the Company as a going concern.  The Debtors continue to negotiate with the Prepetition Secured Parties regarding the consensual use of Cash Collateral, but absent their agreement, the Court should approve its non-consensual use to avert a value-destructive outcome to the Chapter 11 Cases.

## RELIEF REQUESTED

5.      The Debtors respectfully request entry of an Interim Order and Final Order (i)(a) authorizing the Debtors to use the "cash collateral" (the "Cash Collateral"), as that term is defined in section 363(a) of the Bankruptcy Code (as defined below), of the Prepetition Secured Parties; (b) granting Adequate Protection (as defined below), solely to the extent provided in the provided in the Interim Order, to the Prepetition Secured Parties; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Interim Order and Final Order; and (d) scheduling a final hearing (the "Final Hearing") to consider approval of the Motion on a final basis, and (ii) granting related relief.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C.

§ 157(b).  Venue of the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

7.    The legal predicates for the relief requested herein are sections 105(a), 361, 362, 363, 503, 507, and 552 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedures (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 4001-2, 9006-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>").

8.    Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors confirm their consent to the entry of a final judgment or order by the Court in connection with the Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**I.    The Chapter 11 Cases**

9.    On the date hereof (the "<u>Petition Date</u>"), each Debtor commenced a case by filing a petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). The Debtors have requested that the Chapter 11 Cases be jointly administered.

10.    The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.    To date, the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") has not appointed a creditors' committee in the Chapter 11 Cases, nor has any trustee or examiner been appointed therein.

12.    The Company is one of the world's leading hardware wholesalers, serving more than 5,000 stores worldwide.  A globally recognized retail brand, the Company provides customers

in over 60 countries an expansive product set across key categories such as Hardware Lumber &

Building, Outdoor Living & Tools, and Plumbing & Heating.  The Company's business operations,

corporate and capital structure, and restructuring efforts are described in greater detail in the First

Day Declaration.

## II.    Prepetition Capital Structure

13.    As of the Petition Date, the Debtors' funded debt obligations totaled approximately

$238.2 million, comprised of the following:

| Debt Type | Maturity Date | Outstanding Principal Amount (in USD$ millions) |
|---|---|---|
| Revolver | September 2026 | $219.46 |
| Term Loan | September 2026 | $18.75 |
| **Total** | | $238.21 |

14.    On April 20, 2018, Debtor True Value Company, L.L.C. ("TVC") entered into that

certain Credit Agreement (as amended by Amendment No. 1 to Credit Agreement, dated as of

September 16, 2021, as further amended by Amendment No. 2 to Credit Agreement, dated as of

November 2, 2022, as further amended by Amendment No. 3 to Credit Agreement, dated as of

January 24, 2023, as further amended by Amendment No. 4 (as defined below), dated as of August

26, 2024, and as further amended by Amendment No. 5 (as defined below), dated as of September

9, 2024, the "Prepetition Credit Agreement") and, collectively with any other agreements and

documents executed or delivered in connection therewith, each as it may be amended, restated,

amended and restated, supplemented, waived, and/or otherwise modified from time to time, the

"Prepetition Loan Documents") by and among TVC, as a borrower, and each of Distributors

Hardware, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company,

L.L.C., TV TSLC, L.L.C., and True Value Virginia L.L.C., as additional borrowers (together with

TVC, the "Borrowers"), TV Holdco II L.L.C., as guarantor (the "Guarantor" and, together with

the Borrowers, the "Prepetition Loan Parties"), PNC Bank, National Association, as administrative

agent (in such capacity, the "Prepetition Administrative Agent"), and the lenders and issuing banks party thereto (the "Prepetition Lenders" and, together with the Administrative Agent, the "Prepetition Secured Parties"), pursuant to which the Prepetition Lenders provided term loans, revolving loan commitments, and other financial accommodations to the Loan Parties (the "Credit Facility").

15.     The Credit Facility consists of (i) a term loan with approximately $19 million outstanding after amortization as of the Petition Date and (ii) an up to $300 million asset-based revolving credit facility, subject to a borrowing base, and is secured by a first-priority security interest in and lien on substantially all of the Loan Parties' assets, subject to certain exclusions (the "Prepetition Collateral"). The Prepetition Collateral includes, among other things, inventory, accounts receivable, certain fee-owned real property and subsidiary equity interests.   The borrowing base submitted on October 10, 2024 was $261 million.  The Prepetition Secured Parties are undersecured.

16.     The Credit Facility matures on September 16, 2026, and bears interest at a rate per annum equal to the Alternate Base Rate (as defined in the Credit Agreement), *plus* an applicable margin of 3.50%. Interest on the Credit Facility is payable on the first calendar date of each calendar quarter.  Amortization payments in the amount of $1,250,000 are payable on the first day of each calendar quarter.  The Borrowers pay an unused line fee of 0.25% per annum based on the outstanding unused commitment during the most recently completed calendar quarter.  Additionally, the Borrowers pay a fee of 0.10% per annum based on the amount by which the Borrowers elect to reduce the commitments by up to $50,000,000 during the period from November 1 of any year to January 31 of the following year.  The Credit Agreement grants the

Administrative Agent certain discretion to reduce the availability of funds that can be borrowed under the Credit Facility by increasing the Borrowers' required reserves.

17.      On August 26, 2024, the Loan Parties entered into a Temporary Waiver and Amendment No. 4 to the Credit Agreement ("Amendment No. 4" or the "First Waiver") which, among other things, temporarily waived certain Events of Default, reduced the aggregate revolving credit commitments to $350,000,000 from $450,000,000, and pursuant to which the Loan Parties agreed that on and after August 27, 2024, all obligations under the Credit Agreement have, or shall be deemed to have, borne, and shall continue to bear, interest at a rate per annum equal to the Alternate Base Rate plus 3.50% (the "Amended Applicable Rate"), irrespective of whether the rate of such interest on or after such date was previously calculated using a rate other than the Amended Applicable Rate.

18.      On September 9, 2024, the Loan Parties entered into the Second Temporary Waiver and Amendment No. 5 to the Credit Agreement ("Amendment No. 5" or the "Second Waiver") which, among other things, temporarily waived certain Events of Default and further reduced the aggregate revolving credit commitments to $300,000,000 from $350,000,000.

19.      From the end of July 2024 through the Petition Date, the Prepetition Lenders have recovered approximately $105.1 million from the Debtors, reducing the outstanding balance under the Credit Facility to approximately $238.2 million.

## III.      Required Lender Consent and Adequate Protection for All Prepetition Secured Parties

20.      The Debtors, with the assistance of their advisors, have developed an eight-week cash flow forecast and budget, annexed to the Interim Order as **Exhibit 1** (the "Interim Budget") for the use of Cash Collateral during the interim period of the eight weeks following the Petition Date (the "Interim Period").  The Interim Budget establishes that the Debtors will have adequate

liquidity to pay all administrative expenses due or arising during the Interim Period as required by Local Rule 4001-2(a)(iii). The Interim Period Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Interim Period Budget is prepared. The Debtors believe that the Interim Period Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their businesses for the Interim Period.

21.     The Debtors propose to provide the Prepetition Secured Parties with several forms of adequate protection (collectively, the "Adequate Protection") to the extent of any diminution in value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral (including Cash Collateral) resulting from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition Collateral during the Cases, and/or for any other reason for which adequate protection may be granted under the Bankruptcy Code (the "Diminution in Value"). The Adequate Protection includes Adequate Protection Superpriority Claims and Adequate Protection Liens (each as defined below), subject in each case to a carve-out of certain statutory fees and allowed professional fees of the Debtors and any statutory committee appointed in these Chapter 11 Cases, as further detailed in the Interim Order (the "Carve-Out"). Moreover, entry of the Interim Order will provide Adequate Protection to the Prepetition Secured Parties by allowing the Company to close a value maximizing sale that will generate tens of millions of dollars in greater recovery to the Prepetition Secured Parties than in a liquidation.

22.     **Adequate Protection Superpriority Claims**.   Solely to the extent of any Diminution in Value, the Debtors will grant the Prepetition Secured Parties allowed superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code, which superpriority

claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, subject only to the Carve-Out.

23.     **Adequate Protection Liens**.   The Debtors will provide replacement adequate protection liens to the Prepetition Secured Parties, solely to the extent of any Diminution in Value of their interests in the Prepetition Collateral, including Cash Collateral, from and after the Petition Date, subject to the Carve-Out.

24.     **Other Adequate Protection**.   The Debtors will provide additional adequate protection to the Prepetition Secured Parties in the form of (a) payment of the Prepetition Secured Parties' reasonable and documented fees and expenses; (b) the provision of certain financial and other reporting; and (c) compliance with certain milestones applicable to the Debtors' chapter 11 cases (unless extended or waived by the Prepetition Lenders), all as set forth in the Interim Order.

## IV.     Concise Statement of Material Terms of Interim Order

25.     The terms of the Debtors' access to Cash Collateral are reasonable under the circumstances of these cases.  Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the below chart contains a summary of the material terms of the proposed use of Cash Collateral.[4]

| Summary of Material Terms | | Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral** <br> Bankruptcy Rule 4001(b)(1)(B)(i) | The Prepetition Secured Parties. | Interim Order ¶ G |
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii); Local Rule 4001-2(a)(i)(A) | To avoid immediate and irreparable harm to the Debtors and their estates, the Debtors shall be authorized to use all Cash Collateral, in accordance with the Interim Order and the Interim Budget, to fund the postpetition operation of their businesses in the ordinary course, and to pay the administrative costs of the Chapter 11 Cases. | Interim Order ¶¶ 2, 3 |

---

[4]     The summaries contained in this Motion are qualified in their entirety by the provision of the Interim Order.  To the extent anything in this Motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.  Capitalized terms used but not defined in this chart shall have the meanings ascribed to them in the Interim Order.

| Summary of Material Terms | Location |
|---|---|
| **Adequate Protection and Professional Fees and Expenses**<br>Local Rules 4001-2(a)(i)(B); 4001(b)(1)(B)(iv); 4001-2(a)(i)(G), (K) | As adequate protection of the respective interests of the Prepetition Secured Parties in any Cash Collateral solely for and equal in amount to any aggregate postpetition diminution in value of their respective interests in the Cash Collateral resulting from the Debtors' use of the Cash Collateral and the imposition of the automatic stay (any "<u>Diminution in Value</u>"), each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is granted the following:<br><br>• *Adequate Protection Liens*.  Solely for and equal in amount to any Diminution in Value of their respective interests in the Cash Collateral, each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is granted replacement security interests in and liens on (all such liens and security interests, the "<u>Adequate Protection Liens</u>") the Prepetition Collateral and all post-petition accounts receivable of the Debtors and other estate property (subject to certain exclusions pursuant to the Prepetition Loan Documents) of the Debtors to the extent that Cash Collateral is used by the Debtors; *excluding*, *however*, any liens on avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof, including the Debtors' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "<u>Avoidance Actions</u>," which, for the avoidance of doubt, excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing) (collectively, the "<u>Collateral</u>"), which Adequate Protection Liens granted to the Prepetition Secured Parties shall be subject and subordinate to any existing third party liens or security interests in the Collateral, in each case, solely to the extent any such liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and, in the case of any Prepetition Collateral, were senior in priority to the Prepetition Secured Parties' respective Prepetition Liens.<br><br>• *Adequate Protection Superpriority Claims.*  Solely for and equal in amount to any Diminution in Value of the Prepetition Secured Parties' respective interests in the Cash Collateral, superpriority administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code; *excluding*, *however*, claims in respect of the proceeds of any Avoidance Actions (the "<u>Adequate Protection Superpriority Claims</u>"), senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code. | Interim Order ¶ 4 |

| Summary of Material Terms | | Location |
|---|---|---|
| | • **_Reporting Requirements._** As additional adequate protection to the Prepetition Secured Parties, the Debtors shall provide the Prepetition Secured Parties with reasonable and customary weekly variance reporting with respect to the Interim Budget.<br><br>• **_Interest._** From and after entry of the Interim Order, the Prepetition Administrative Agent, on behalf of the Prepetition Secured Parties, shall receive (i) upon the entry of this Interim Order, accrued and unpaid interest due under the Prepetition Loan Documents in respect of unpaid principal outstanding thereunder (whether accrued prior to or after the Petition Date) in respect of the Prepetition Loan Documents, and (ii) thereafter, as and when due under the Prepetition Loan Documents, interest due under the Prepetition Credit Facility, in respect of unpaid principal outstanding thereunder; *provided* that the allocation of any such interest payments shall be on account of the Prepetition Secured Parties' allowed secured claim as provided in section 506 of the Bankruptcy Code. Any interest due to the Prepetition Secured Parties shall be calculated at the non-default rates under the Prepetition Loan Documents and shall be payable in kind on the same dates as currently required by the Prepetition Loan Documents.<br><br>• Notwithstanding anything herein to the contrary, the Adequate Protection Obligations shall be subject to any future order of the Court, entered on notice to the Prepetition Secured Parties and subject to a hearing, that would, after finding the Prepetition Secured Parties' valid, perfected and enforceable interest in the Collateral (including as granted herein) adequately perfected, approve the grant of adequate protection to another person or entity a lien or claim with equal or higher priority. | |
| **Budget**<br>Bankruptcy Rule 4001(b)(1)(B)(ii); Local Rules 4001-2(a)(i)(E) and 4001-2(a)(iii) | The Debtors' use of Cash Collateral will be subject to the Interim Budget attached to the proposed Interim Order as Exhibit 1. | Interim Order ¶ 3 |
| **Carve-Out**<br>Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(F) | The Interim Order provides a "Carve-Out" of certain statutory fees and allowed professional fees of the Debtors and any Committee appointed in these chapter 11 cases pursuant to section 1103 of the Bankruptcy Code and a Post-Carve-Out Trigger Notice Cap, all as detailed in the Interim Order. | Interim Order ¶ 5 |
| **Termination Date/ Termination Events**<br>Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rules 4001-2(a)(i) and 4001-2(a)(i)(M), (S) | The Debtors' right to use Cash Collateral pursuant to the Interim Order shall terminate on the *earlier* of (a) 11:59 p.m., prevailing Eastern Time, on the date of the Final Hearing, unless the Final Order is entered extending the Debtors' right to use Cash Collateral, and (b) the date upon which the Prepetition Administrative Agent obtains an order of the Court providing for the termination of the further use of Cash Collateral due to the failure by the Debtors to comply with the material terms and conditions of this Interim Order, to operate the Debtors' businesses in the ordinary course, and pay certain costs, fees and expenses related to the Chapter 11 Cases, in | Interim Order ¶ 2 |

| Summary of Material Terms | | Location |
|---|---|---|
| | accordance with the Interim Budget, and as approved by any order of the Court. | |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(S) | The Interim Order provides for the modification of the automatic stay to permit the parties to accomplish the transactions contemplated by the Interim Order, and authorizes and directs the Debtors to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of the Interim Order and the transactions contemplated thereby. | Interim Order ¶ 6 |

## BASIS FOR RELIEF REQUESTED AND APPLICABLE AUTHORITY

I.  **The Debtors' Request to Use Cash Collateral is Warranted and Should Be Approved.**

26.     Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.[5]  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).  As noted above, the Debtors have not yet obtained the Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral. While the Debtors are hopeful to obtain, prior to the hearing on this motion, such consent in exchange for the proposed customary, reasonable, and fair adequate protection package set forth in the Interim Order, the Debtors believe the use of Cash Collateral is warranted, appropriate, and in compliance with the applicable provisions of the Bankruptcy Code even absent such consent.

---

[5]     Section 363(a) of the Bankruptcy Code defines "cash collateral" as "Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title."  11 U.S.C. § 363(a).

**II.     The Debtors' Proposed Adequate Protection is Appropriate and Should Be Approved.**

27.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).   While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 COLLIER ON BANKRUPTCY ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

28.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use.  *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

29.     Here, the Debtors' access to cash collateral is absolutely critical to avoid diminution and to preserve the value to the Prepetition Secured Parties through the Stalking Horse Bid and the possibility of an even higher and better bid.  *See In re Tusa-Expo Hldgs., Inc.*, 811 F.3d 786, 792–94, 798-99 (5th Cir. 2016)*.

30.     There are two options open for the Debtors and the Prepetition Secured Parties: a value-maximizing sale and a value-destroying liquidation.  In the sale scenario, the Prepetition Secured Parties enjoy a higher probability of a higher, near-term recovery; in the liquidation scenario, the Prepetition Secured Parties have a higher probability of a lower, long-term recovery.  The Stalking Horse Bid, which includes a $15.3 million good faith deposit and a buyer eager to close, provides additional confidence that the Sale Process will maximize value for the Prepetition Secured Parties; there is no corresponding liquidation bid for the liquidation scenario.  In the exercise of the Debtors' sound business judgment, and in consultation with their advisors, the Debtors determined that the Adequate Protection is appropriate and reasonable under these circumstances.  The Debtors require immediate access to liquidity to ensure that they can continue operating during these Chapter 11 Cases and pursue the value-maximizing Sale Process, preserving the value of their estates for the benefit of all stakeholders and avoiding an almost certain relative Diminution in Value.  Without prompt access to Cash Collateral, the Debtors would be unable to, among other things, satisfy payroll, pay vendor expenses incurred in the ordinary course of business, including certain payments that are essential for the ongoing operations of the Debtors' business, and fund the administration of these Chapter 11 Cases, all of which are required by the interim operating covenants of the Stalking Horse Bid.  The Debtors would be forced into a near-term value-destructive liquidation and winddown of their businesses, which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders, including

the Prepetition Secured Parties, who, as described in greater detail above, have liens on substantially all of the Debtors' assets.

31.    For the foregoing reasons, the Adequate Protection is (a) fair and reasonable, (b) necessary to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, (c) sufficient to protect against any Diminution in Value, and (d) in the best interests of the Debtors and their estates.  Accordingly, the Adequate Protection Obligations should be approved.

### III.    The Significant Provisions Are Appropriate and Justified Under the Circumstances of the Chapter 11 Cases.

32.    Local Rule 4001-2(a)(i) requires that the Debtors explain the reason for including certain significant provisions described in Local Rules 4001-2(a)(i)(N)–(X) (collectively, the "Significant Provisions").[6]  The Debtors believe that each of the Significant Provisions, as well as the Carve-Out, is justified and necessary in the context and circumstances of the Chapter 11 Cases.

### A.    The Scope of the Carve-Out is Appropriate (Local Rule 4001-2(a)(i)(F)).

33.    The proposed Adequate Protection is subject to the Carve-Out.  Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these Chapter 11 Cases would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in

---

[6]    Local Rules 4001-2(a)(i)(N), (O), and (R) are not applicable to the Interim Order.  In addition, as further explained above, Local Rule 4001-2(a)(i)(P) does not apply and Local Rules 4001-2(a)(i)(U)-(X) are only applicable upon entry of the Final Order.

interest of possible rights and powers. Additionally, the Carve-Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for any payment owing to the Clerk of the Court, payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and professional fees of the Debtors and any statutory committee.

34.     Courts in this district and others have approved carve-out provisions agreed to by debtors on a standalone basis and in connection with debtor-in-possession financing in numerous recent chapter 11 cases. *See, e.g.*, *In re Yellow Corp.*, No. 23-11069 (CTG) (Bankr. D. Del. Sept. 15, 2023) [D.I. 571]; *In re Lannett Co., Inc.*, No. 23-10559 (JKS) (Bankr. D. Del. June 7, 2023) [D.I. 230]; *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sep. 27, 2022) [D.I. 179]; *In re OSG Grp. Holdings, Inc.*, No. 22-10718 (JTD) (Bankr. D. Del. Aug. 9, 2022) [D.I. 75]; *In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. Jun. 7, 2022) [D.I. 311]; *In re MD Helicopters, Inc.*, No. 22-10263 (KBO) (Bankr. D. Del. Apr. 26, 2022) [D.I. 205]; *In re BHCosmetics Holdings, LLC*, No. 22-10050 (CSS) (Bankr. D. Del. Mar. 9, 2022) [D.I. 217]; *In re Alto Maipo Del. LLC*, No. 21-11507 (KBO) (Bankr. D. Del. Dec. 17, 2021) [D.I. 166]; *In re PWM Prop. Mgmt. LLC*, No. 21-11445 (MFW) (Bankr. D. Del. Dec. 13, 2021) [D.I. 241].

## IV.     Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

35.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on the motion and authorize the Debtors' proposed use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2); Local Rule 4001-2(b). Section 363(c)(3) of the Bankruptcy

Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]."  11 U.S.C. § 363(c)(3).

36.   The Debtors have an immediate postpetition need to use Cash Collateral.  As further described above and in the Kamlani Declaration, without immediate access to Cash Collateral, the Debtors would be unable to pay vendors critical to the Debtors' operations and make payroll, let alone pay administrative expenses.  They would be forced into a near-term, value-destructive liquidation to the detriment of all stakeholders, from the Prepetition Secured Parties to the Debtors' vendors, employees, and customers.  *See* Kamlani Declaration ¶ 14.

37.   The Debtors therefore seek immediate authority to use the Cash Collateral as set forth in the Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b)(ii).  Accordingly, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

**V.   The Automatic Stay Should Be Modified on a Limited Basis.**

38.   The relief requested herein contemplates modification of the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and Final Order, and specifically permit the Administrative Agent, in its sole discretion, to file such financing statements, mortgages, security agreements, notices of liens, or other similar documents as necessary.  The Interim Order and Final Order further provide that, upon the expiration of the remedies notice period, the automatic stay will be automatically modified to permit the Prepetition Secured Parties to immediately retain and apply payments and otherwise enforce their respective

rights and remedies under and in accordance with the Interim Order, Final Order, and the Credit Agreement, subject and subordinate to the Carve-Out.

## RESERVATION OF RIGHTS

39.     Notwithstanding anything to the contrary herein, nothing contained in the Motion or any actions taken pursuant to any order granting the relief requested by the Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors'

rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

## NOTICE

40.     Notice of the Motion will be given to: (a) the U.S. Trustee, (b) counsel to the Prepetition Lenders, (c) the parties included on the Debtors' consolidated list of their 30 largest unsecured creditors, (d) the Internal Revenue Service, (e) the Office of the United States Attorney for the District of Delaware, (f) any party that has requested notice pursuant to Bankruptcy Rule 2002, and (g) all parties entitled to notice pursuant to Local Bankruptcy Rules 2002-1(b) and 9013-1(m).  The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

41.     No previous request for the relief sought herein has been made to this Court or any other court.

### *[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

## CONCLUSION

The Debtors respectfully request that this Court enter the Interim Order and the Final Order, each substantially in the forms annexed hereto, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 15, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Edmon K. Morton*
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: emorton@ycst.com
       kenos@ysct.com
       kmcelroy@ycst.com
       tpowell@ycst.com

- and -

**GLENN AGRE BERGMAN & FUENTES LLP**
Andrew K. Glenn (*pro hac vice* admission pending)
Trevor J. Welch (*pro hac vice* admission pending)
Malak S. Doss (*pro hac vice* admission pending)
Michelle C. Perez (*pro hac vice* admission pending)
Esther Hong (*pro hac vice* admission pending)
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email: aglenn@glennagre.com
       twelch@glennagre.com
       mdoss@glennagre.com
       mperez@glennagre.com
       ehong@glennagre.com

*Proposed Efficiency Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

### INTERIM ORDER (I)(A) AUTHORIZING DEBTORS TO
### USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO
### PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND
### (D) SCHEDULING A FINAL HEARING AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for an interim order (this "Interim Order")

and a Final Order under sections 105(a), 361, 362, 363, 503, 507 and 552 of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1, 4001-2, 9006-1 and

9013-1 (i)(a) authorizing the Debtors to use Cash Collateral; (b) granting Adequate Protection,

solely to the extent provided in this Interim Order, to the Prepetition Secured Parties; (c) modifying

the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to

implement and effectuate the terms of this Interim Order and the Final Order; and (d) scheduling

the Final Hearing to consider approval of the Motion on a final basis, and (ii) granting related

relief; and upon consideration of the interim relief requested in the Motion, the Cash Collateral

Declarations and the evidence submitted and arguments made at the interim hearing held on

October [●], 2024 (the "Interim Hearing"); and notice of the Interim Hearing having been given

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco, L.L.C. (1833); TV Holdco I, L.L.C. (2219); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); Distributors Hardware, L.L.C. (8106); and True Value Specialty Company, LLC (5611).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable local rules; and it appearing that no other or further notice is necessary; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled on the merits by this Court; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.     *Petition Date.* On October 13, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court, commencing these chapter 11 cases (the "Chapter 11 Cases").

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**    ***Debtors in Possession.***    The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

**C.**    ***Jurisdiction and Venue.***    This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.**    ***Committee Formation.***    As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

**E.**    ***Notice.***    Notice of the Motion and the Interim Hearing constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

**F.**    ***Cash Collateral.***    The Prepetition Secured Parties assert an interest in cash, cash equivalents, negotiable instruments, investment property, and securities, including cash and other amounts on deposit or maintained in any account or accounts of the Prepetition Secured Parties, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, existing as of the Petition Date, and the proceeds

of any of the foregoing, wherever located, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Secured Debt Documents (to the extent such interest is valid, perfected and enforceable, the "<u>Cash Collateral</u>").

> **G.**    ***Existing Debt Facilities and Their Terms.***
>
> > **i.**    *Prepetition Credit Facility*
> >
> > > (a)    <u>Prepetition Credit Agreement</u>.    Pursuant to that certain Credit

Agreement, dated as of April 20, 2018 (as amended by Amendment No. 1 to Credit Agreement, dated as of September 16, 2021, as further amended by Amendment No. 2 to Credit Agreement, dated as of November 2, 2022, as further amended by Amendment No. 3 to Credit Agreement, dated as of January 24, 2023, as further amended by Amendment No. 4 ("Amendment No. 4" as defined in the Motion), dated as of August 26, 2024, and as further amended by Amendment No. 5 ("Amendment No. 5" as defined in the Motion), dated as of September 9, 2024, the "<u>Prepetition Credit Agreement</u>" and, collectively with any other agreements and documents executed or delivered in connection therewith, each as it may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "<u>Prepetition Loan Documents</u>") by and among Debtor True Value Company, L.L.C. ("<u>TVC</u>"), as a borrower, and each of Distributors Hardware, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., TV TSLC, L.L.C., and True Value Virginia L.L.C., as additional borrowers (together with TVC, the "<u>Borrowers</u>"), TV Holdco II L.L.C., as guarantor (the "<u>Guarantor</u>" and, together with the Borrowers, the "<u>Prepetition Loan Parties</u>"), PNC Bank, National Association, as administrative agent ("<u>PNC</u>" and, in such capacity, the "<u>Prepetition Administrative Agent</u>"), and the lenders and issuing banks party thereto (the "<u>Prepetition Lenders</u>"

and, together with the Prepetition Administrative Agent, the "Prepetition Secured Parties"), the Prepetition Lenders provided term loans, revolving loan commitments, and other financial accommodations to the Prepetition Loan Parties (the "Prepetition Credit Facility").

(b)    Prepetition Secured Debt.  As of the Petition Date, the Debtors had outstanding obligations to the Prepetition Loan Parties in the aggregate principal amount of not less than $238,200,000, consisting of approximately $219,456,000 in revolving loan borrowings and approximately $18,750,000 in outstanding term loans, in each case pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest, fees, expenses, disbursements (including attorneys' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, chargeable, or reimbursable under the Prepetition Loan Documents incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Secured Debt"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Loan Parties.

(c)    Prepetition Liens.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Prepetition Loan Parties each granted to the Prepetition Secured Parties a first-priority security interest in, and continuing lien (the "Prepetition Liens") on certain collateral (as set forth and pursuant to the Prepetition Loan Documents) (including Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, subject to certain exclusions (the "Prepetition Collateral").

ii.    *Prepetition LC Facility*

(a)    To satisfy their requirements to secure their obligations under certain Insurance Policies (as defined in the First Day Declaration), historical insurance policies and the Customs Bond (as defined in the First Day Declaration), the Debtors have obtained a letter of credit facility (the "Prepetition LC Facility") pursuant to that certain Amended and Restated Substitute Insurance Collateral Facility Agreement (the "Prepetition LC Facility Agreement"), dated as of September 25, 2024, by and between 1970 Group, Inc. ("1970 Group") and TVC, which provides for the issuance and renewal of six letters of credit (the "Prepetition Letters of Credit") for the benefit of the Debtors' insurers and the Customs Bond issuer.  As of the Petition Date, the total amount outstanding on the Prepetition Letters of Credit is approximately $11.31 million.

iii.    *Cash Collateral*

(a)    The Prepetition Secured Parties assert an interest in all of the Prepetition Loan Parties' cash, cash equivalents, negotiable instruments, investment property, and securities, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, wherever located, is the cash collateral within the meaning of section 363(a) of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Loan Documents.  The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from Cash Collateral, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral subject to the applicable Prepetition Liens.  All Cash Collateral and all proceeds of the Prepetition Collateral, including proceeds realized from a sale or disposition

thereof, or from payment thereon, shall be used or applied in accordance with the terms and conditions of this Interim Order and the applicable Prepetition Loan Documents, and for no other purpose.

(b)     The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory, and other personal property, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral under the Prepetition Loan Documents (as applicable) that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

(c)     The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds, and profits in their business operations that constitute Cash Collateral of certain of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in certain of the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

*H.     Necessity of Relief Requested.*  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to use cash on hand and cash flow from their operations, including Cash Collateral, to fund the orderly continuation of their business and their working capital needs, maintain the confidence of their vendors, customers, suppliers and contractors, pay operating expenses, and preserve value as a going-concern for the benefit of their estates and their creditors and stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with certain of the Prepetition Secured Parties or other parties regarding debtor-

in-possession financing to provide longer term liquidity, as well as the use of Cash Collateral on consensual terms, in connection with a proposed restructuring transaction.  In the absence of access to and the ability to use Cash Collateral during such time, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors, their estates, and their creditors would occur.

I.      *Terms of Cash Collateral Use.*  The terms for the Debtors' use of Cash Collateral and the adequate protection arrangements provided pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are essential for the preservation of the Debtors' assets and properties.  The use of Cash Collateral in accordance with this Interim Order is in the best interests of the Debtors and their estates, their creditors, and other parties in interest, and will, among other things, allow for the continued operation of the Debtors' existing businesses and allow the Debtors to preserve value for all stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with the Prepetition Secured Parties to obtain debtor-in-possession financing and consensual use of Cash Collateral on mutually agreeable terms.

J.      *Need for Immediate Entry of this Interim Order.*  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based on the foregoing findings and conclusions, the Motion, the Cash Collateral Declarations and the record before this Court, and after due consideration, and good and sufficient cause appearing therefor,

      **IT IS HEREBY ORDERED THAT:**

      1.     *Motion Approved.*  The use of Cash Collateral is hereby authorized and approved in accordance with and subject to the terms and conditions of this Interim Order.  Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled.

      2.     *Authorization to Use Cash Collateral.*  The Debtors are authorized to use Cash Collateral during the period (the "Interim Period") from the Petition Date through and including the *earlier* of (a) 11:59 p.m., prevailing Eastern Time, on the date of the Final Hearing, unless the Final Order is entered extending the Debtors' right to use Cash Collateral, and (b) the date upon which the Prepetition Administrative Agent obtains an order of this Court providing for the termination of the further use of Cash Collateral due to the failure by the Debtors to comply with the material terms and conditions of this Interim Order, to operate the Debtors' businesses in the ordinary course, and pay certain costs, fees and expenses related to the Chapter 11 Cases, in accordance with the Interim Budget as provided herein, and as approved by any order of this Court.

      3.     *Interim Budget.*  The Debtors are authorized to use Cash Collateral during the Interim Period solely in accordance with the budget attached as **Exhibit 1** (as such budget may be amended, modified, or supplemented in accordance with this Interim Order, the "Interim Budget") in an amount that would not cause the Debtors to use Cash Collateral with respect to any of the first three (3) weeks in the Interim Budget in an amount in excess of 120% of the aggregate amount

of budgeted disbursements for that week.  Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week and any unused amounts may be utilized for any other line item within the week or subsequent week or weeks. The Debtors shall be permitted to file a revised Interim Budget (a "Revised Budget") on the Court's docket subject to a three-day objection period (a "Budget Objection Period").  If no objections are filed on the Court's docket prior to the end of such the Budget Objection Period, such Revised Budget shall become the Interim Budget effective upon the expiration of such period.  Any objection shall be resolved by the Debtors and the objecting party in good faith or by order of the Court.

4.    ***Adequate Protection for the Prepetition Senior Secured Parties.***  As adequate protection of the respective interests of the Prepetition Secured Parties in any Cash Collateral solely for and equal in amount to any aggregate postpetition diminution in value of their respective interests in the Cash Collateral resulting from the Debtors' use of the Cash Collateral and the imposition of the automatic stay (any "Diminution in Value"), each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (collectively, the "Adequate Protection Obligations"):

(a)    ***Adequate Protection Liens.***  Solely for and equal in amount to any Diminution in Value of their respective interests in the Cash Collateral, each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted replacement security interests in and liens on (all such liens and security interests, the "Adequate Protection Liens") the Prepetition Collateral and all post-petition accounts receivable of the Debtors and other estate property (subject to certain exclusions pursuant to the Prepetition Loan Documents) of the Debtors to the extent that Cash Collateral is used by the Debtors; *excluding*,

*however*, any liens on avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof, including the Debtors' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "<u>Avoidance Actions</u>," which, for the avoidance of doubt, excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing) (collectively, the "<u>Collateral</u>"), which Adequate Protection Liens granted to the Prepetition Secured Parties shall be subject and subordinate to any existing third party liens or security interests in the Collateral, in each case, solely to the extent any such liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and, in the case of any Prepetition Collateral, were senior in priority to the Prepetition Secured Parties' respective Prepetition Liens.

(b)     ***Adequate Protection Superpriority Claims.***   Solely for and equal in amount to any Diminution in Value of the Prepetition Secured Parties' respective interests in the Cash Collateral, superpriority administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code; *excluding*, *however*, claims in respect of the proceeds of any Avoidance Actions (the "<u>Adequate Protection Superpriority Claims</u>"), senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code.

(c)    ***Reporting Requirements.***   As additional adequate protection to the Prepetition Secured Parties, the Debtors shall provide the Prepetition Secured Parties with reasonable and customary weekly variance reporting with respect to the Interim Budget.

(d)    ***Interest.***   From and after entry of this Interim Order, the Prepetition Administrative Agent, on behalf of the Prepetition Secured Parties, shall receive (i) upon the entry of this Interim Order, accrued and unpaid interest due under the Prepetition Loan Documents in respect of unpaid principal outstanding thereunder (whether accrued prior to or after the Petition Date) in respect of the Prepetition Loan Documents, and (ii) thereafter, as and when due under the Prepetition Loan Documents, interest due under the Prepetition Credit Facility, in respect of unpaid principal outstanding thereunder; *provided* that the allocation of any such interest payments shall be on account of the Prepetition Secured Parties' allowed secured claim as provided in section 506 of the Bankruptcy Code.  Any interest due hereunder to the Prepetition Secured Parties shall be calculated at the non-default rates under the Prepetition Loan Documents and shall be payable in kind upon the same dates as currently required by the Prepetition Loan Documents.

(e)    Notwithstanding anything herein to the contrary, the Adequate Protection Obligations shall be subject to any future order of this Court, entered on notice to the Prepetition Secured Parties and subject to a hearing, that would, after finding the Prepetition Secured Parties' valid, perfected and enforceable interest in the Collateral (including as granted herein) adequately perfected, approve the grant of adequate protection to another person or entity a lien or claim with equal or higher priority.

5.    ***Carve-Out.***   As used in this Interim Order, the "<u>Carve-Out</u>" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set

forth in clause (iii) of this paragraph); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) of this paragraph); (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by a Prepetition Administrative Agent of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the Prepetition Administrative Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").

6. ***Modification of Automatic Stay.*** The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

7. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

8.      ***Binding Effect.***  The terms of this Interim Order shall be valid and binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Interim Order by this Court.

9.      ***Headings.***  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

10.      ***Bankruptcy Rules***.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion, and the relief requested is necessary to avoid immediate and irreparable harm.

11.      ***Necessary Action***.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

12.      ***Retention of Jurisdiction.***  The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

13.      ***Final Hearing***.  The final hearing on the Motion shall be held on _____ ___, 2024 at __:___ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____ ___, 2024, and shall be served on: (a) True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (b) proposed efficiency counsel for the Debtors, Glenn Agre Bergman & Fuentes LLP, 1185

Avenue of the Americas, Floor 22, New York, New York 10036 (Attn: Andrew K. Glenn, Esq. (aglenn@glennagre.com), Trevor J. Welch, Esq. (twelch@glennagre.com) and Malak S. Doss, Esq. (mdoss@glennagre.com)); (c) proposed Delaware efficiency counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Kenneth Enos, Esq. (kenos@ycst.com)); (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov)); (e) counsel to the Prepetition Lenders, Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn: Daniel F. Fiorillo, Esq. (dfiorillo@otterbourg.com)); and (f) counsel to any statutory committee appointed in the Chapter 11 Cases.  If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

14.    ***Notice of Entry of Interim Order.***  The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Committee (if appointed).

15.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

# EXHIBIT 1

**True Value**
**8-Week Cash Collateral Budget**

| ($ in 000s) | Filing Week | | | | | | | Sale Date Close | |
|---|---|---|---|---|---|---|---|---|---|
| **Week #** | **1** | **2** | **3** | **4** | **5** | **6** | **7** | **8** | **Total** |
| **FCST:** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **Forecast** |
| **Week Ending:** | **10/19/2024** | **10/26/2024** | **11/2/2024** | **11/9/2024** | **11/16/2024** | **11/23/2024** | **11/30/2024** | **12/7/2024** | |
| **Cash Operating Receipts** | | | | | | | | | |
| Operating Receipts | $29,477 | $20,403 | $33,090 | $31,270 | $29,759 | $33,244 | $32,195 | $28,237 | $237,673 |
| Other Receipts | – | – | – | – | – | – | – | 198,000 | 198,000 |
| **Total Operating Cash Receipts** | **$29,477** | **$20,403** | **$33,090** | **$31,270** | **$29,759** | **$33,244** | **$32,195** | **$226,237** | **$435,673** |
| **Operating Disbursements** | | | | | | | | | |
| Payroll & Benefits | (986) | (1,551) | (5,169) | (1,495) | (5,163) | (1,550) | (5,103) | (8,210) | (29,229) |
| Rent | – | (3,313) | (1,767) | – | – | – | (2,395) | (277) | (7,753) |
| Other Operating Disbursements | (535) | (16,141) | (16,696) | (15,504) | (13,226) | (13,678) | (13,522) | (54,942) | (144,245) |
| **Total Operating Disbursements** | **($1,522)** | **($21,006)** | **($23,632)** | **($16,999)** | **($18,389)** | **($15,228)** | **($21,021)** | **($63,430)** | **($181,227)** |
| **Operating Cash Flow** | **$27,955** | **($603)** | **$9,458** | **$14,271** | **$11,370** | **$18,016** | **$11,174** | **$162,807** | **$254,447** |
| **Restructuring / Chapter 11 Items** | | | | | | | | | |
| UST Fees | – | – | – | – | – | – | – | – | – |
| Prepetition Taxes | – | (1,639) | (53) | (574) | (574) | (1,174) | (574) | (574) | (5,161) |
| FDM & Restructuring Items | (870) | (6,993) | (7,608) | (7,748) | (4,503) | (2,679) | (2,679) | (29,573) | (62,652) |
| Employee Benefits | – | (1,912) | (956) | (1,780) | (2,780) | (2,780) | (2,780) | (3,472) | (16,462) |
| Other Restructuring Items | – | – | – | – | – | – | – | (3,130) | (3,130) |
| **Total Restructuring / Chapter 11 Items** | **($870)** | **($10,544)** | **($8,617)** | **($10,102)** | **($7,857)** | **($6,633)** | **($6,033)** | **($36,749)** | **($87,405)** |
| **Total Professional Fees**[1] | **($2,740)** | **($3,065)** | **($2,615)** | **($2,600)** | **($2,550)** | **($2,500)** | **($1,920)** | **($4,020)** | **($22,010)** |
| **Cash Flow Before Financing** | **$24,345** | **($14,213)** | **($1,774)** | **$1,569** | **$963** | **$8,883** | **$3,222** | **$122,038** | **$145,032** |
| **Total Financing Obligations** | **($14)** | **($10)** | **($2,920)** | **($306)** | **($14)** | **($10)** | **($2,768)** | **($1,067)** | **($7,107)** |
| **Net Cash Flow** | **$24,331** | **($14,223)** | **($4,694)** | **$1,263** | **$949** | **$8,873** | **$454** | **$120,971** | **$137,925** |
| **Bank Cash** | | | | | | | | | |
| BOP Bank Cash Balance | $2,803 | $27,134 | $12,911 | $8,217 | $9,480 | $10,429 | $19,302 | $19,757 | $2,803 |
| Net Cash Flow | 24,331 | (14,223) | (4,694) | 1,263 | 949 | 8,873 | 454 | 120,971 | 137,925 |
| Revolver Draw / (Paydown) | – | – | – | – | – | – | – | (135,109) | (135,109) |
| **EOP Bank Cash Balance** | **$27,134** | **$12,911** | **$8,217** | **$9,480** | **$10,429** | **$19,302** | **$19,757** | **$5,618** | **$5,618** |

Notes:
(1) Excludes $500K of professional fees related to DIP financing, payable contingent on DIP closing and funding