## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| **In re:** | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C., *et al.*,**[1] | **Case No. 24-12337 (KBO)** |
| **Debtors.** | **(Jointly Administered)** |
|  | **Ref. Docket No. 19** |

### NOTICE OF FILING OF REVISED PROPOSED INTERIM ORDER (I)(A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND (D) SCHEDULING A FINAL HEARING, AND (II) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that, on October 15, 2024, the debtors and debtors in possession (collectively, the "Debtors") in the above captioned cases filed the *Motion of the Debtors for Entry of Interim and Final Orders (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; (C) Modifying the Automatic Stay; and (D) Scheduling a Final Hearing, and (II) Granting Related Relief* [Docket No. 19] (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court"). A proposed form of order approving the motion on an interim basis (the "Proposed Interim Order") was attached to the Motion as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that the Debtors received informal comments to the Proposed Interim Order from the Office of the United States Trustee (the "U.S. Trustee"). Following discussions with the U.S. Trustee, the Debtors have agreed to a revised form of the

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

Proposed Interim Order, attached here to as **Exhibit 1** (the "Revised Proposed Interim Order"). For the convenience of the Court and all interested parties, a blackline comparing the Proposed Interim Order and the Revised Proposed Interim Order is attached hereto as **Exhibit 2**.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Revised Proposed Interim Order in connection with the Motion at the hearing scheduled for October 16, 2024 at 2:30 p.m. (ET) (the "Hearing"). The Debtors reserve all rights to modify the Revised Proposed Interim Order at or prior to the Hearing.

*[Signature page follows]*

Dated: October 16, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Edmon L. Morton*

Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:  emorton@ycst.com
       kenos@ysct.com
       kmcelroy@ycst.com
       tpowell@ycst.com

- and -

**GLENN AGRE BERGMAN & FUENTES LLP**

Andrew K. Glenn (admitted *pro hac vice*)
Trevor J. Welch (admitted *pro hac vice*)
Malak S. Doss (admitted *pro hac vice*)
Michelle C. Perez (admitted *pro hac vice*)
Esther Hong (admitted *pro hac vice*)
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email:  aglenn@glennagre.com
       twelch@glennagre.com
       mdoss@glennagre.com
       mperez@glennagre.com
       ehong@glennagre.com

*Proposed Efficiency Counsel to the Debtors and Debtors in Possession*

## EXHIBIT 1

**Revised Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C. *et al.*,** | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**INTERIM ORDER (I)(A) AUTHORIZING DEBTORS TO
USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO
PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND
(D) SCHEDULING A FINAL HEARING AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for an interim order (this "Interim Order")

and a Final Order under sections 105(a), 361, 362, 363, 503, 507 and 552 of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1, 4001-2, 9006-1 and

9013-1 (i)(a) authorizing the Debtors to use Cash Collateral; (b) granting Adequate Protection,

solely to the extent provided in this Interim Order, to the Prepetition Secured Parties; (c) modifying

the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to

implement and effectuate the terms of this Interim Order and the Final Order; and (d) scheduling

the Final Hearing to consider approval of the Motion on a final basis, and (ii) granting related

relief; and upon consideration of the interim relief requested in the Motion, the Cash Collateral

Declarations and the evidence submitted and arguments made at the interim hearing held on

October 16, 2024 (the "Interim Hearing"); and notice of the Interim Hearing having been given in

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers,
are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV
GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value
Virginia, L.L.C. (9197); Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate
headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable local rules; and it appearing that no other or further notice is necessary; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled on the merits by this Court; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

  *A. Petition Date.*  On October 13, 2024 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court, commencing these chapter 11 cases (the "<u>Chapter 11 Cases</u>").

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.**     ***Debtors in Possession.***   The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

**C.**     ***Jurisdiction and Venue.***   This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.**     ***Committee Formation.***   As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

**E.**     ***Notice.***   Notice of the Motion and the Interim Hearing complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

**F.**     ***Cash Collateral.***   The Prepetition Secured Parties assert an interest in cash, cash equivalents, negotiable instruments, investment property, and securities, including cash and other amounts on deposit or maintained in any account or accounts of the Prepetition Secured Parties, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, existing as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is cash collateral within the meaning of section 363(a)

of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Secured Debt Documents (to the extent such interest is valid, perfected and enforceable, the "Cash Collateral").

### G. Existing Debt Facilities and Their Terms.

#### i. Prepetition Credit Facility

(a) Prepetition Credit Agreement. Pursuant to that certain Credit Agreement, dated as of April 20, 2018 (as amended by Amendment No. 1 to Credit Agreement, dated as of September 16, 2021, as further amended by Amendment No. 2 to Credit Agreement, dated as of November 2, 2022, as further amended by Amendment No. 3 to Credit Agreement, dated as of January 24, 2023, as further amended by Amendment No. 4 ("Amendment No. 4" as defined in the Motion), dated as of August 26, 2024, and as further amended by Amendment No. 5 ("Amendment No. 5" as defined in the Motion), dated as of September 9, 2024, the "Prepetition Credit Agreement" and, collectively with any other agreements and documents executed or delivered in connection therewith, each as it may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Loan Documents") by and among Debtor True Value Company, L.L.C. ("TVC"), as a borrower, and each of Distributors Hardware, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., TV TSLC, L.L.C., and True Value Virginia L.L.C., as additional borrowers (together with TVC, the "Borrowers"), TV Holdco II L.L.C., as guarantor (the "Guarantor" and, together with the Borrowers, the "Prepetition Loan Parties"), PNC Bank, National Association, as administrative agent ("PNC" and, in such capacity, the "Prepetition Administrative Agent"), and the lenders and issuing banks party thereto (the "Prepetition Lenders" and, together with the Prepetition Administrative Agent, the "Prepetition Secured Parties"), the

Prepetition Lenders provided term loans, revolving loan commitments, and other financial accommodations to the Prepetition Loan Parties (the "Prepetition Credit Facility").

      (b)     Prepetition Secured Debt. As of the Petition Date, the Debtors had outstanding obligations to the Prepetition Loan Parties in the aggregate principal amount of not less than $238,200,000, consisting of approximately $219,456,000 in revolving loan borrowings and approximately $18,750,000 in outstanding term loans, in each case pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest, fees, expenses, disbursements (including attorneys' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, chargeable, or reimbursable under the Prepetition Loan Documents incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Secured Debt"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Loan Parties.

      (c)     Prepetition Liens. As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Prepetition Loan Parties each granted to the Prepetition Secured Parties a first-priority security interest in, and continuing lien (the "Prepetition Liens") on certain collateral (as set forth and pursuant to the Prepetition Loan Documents) (including Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, subject to certain exclusions (the "Prepetition Collateral").

ii.     *Prepetition LC Facility*

(a)     To satisfy their requirements to secure their obligations under certain Insurance Policies (as defined in the First Day Declaration), historical insurance policies and the Customs Bond (as defined in the First Day Declaration), the Debtors have obtained a letter of credit facility (the "Prepetition LC Facility") pursuant to that certain Amended and Restated Substitute Insurance Collateral Facility Agreement (the "Prepetition LC Facility Agreement"), dated as of September 25, 2024, by and between 1970 Group, Inc. ("1970 Group") and TVC, which provides for the issuance and renewal of six letters of credit (the "Prepetition Letters of Credit") for the benefit of the Debtors' insurers and the Customs Bond issuer.  As of the Petition Date, the total amount outstanding on the Prepetition Letters of Credit is approximately $11.31 million.

iii.     *Cash Collateral*

(a)     The Prepetition Secured Parties assert an interest in all of the Prepetition Loan Parties' cash, cash equivalents, negotiable instruments, investment property, and securities, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, wherever located, is the cash collateral within the meaning of section 363(a) of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Loan Documents.  The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from Cash Collateral, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral subject to the applicable Prepetition Liens.  All Cash Collateral and all proceeds of the Prepetition Collateral, including proceeds realized from a sale or disposition

thereof, or from payment thereon, shall be used or applied in accordance with the terms and conditions of this Interim Order and the applicable Prepetition Loan Documents, and for no other purpose.

(b)     The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory, and other personal property, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral under the Prepetition Loan Documents (as applicable) that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

(c)     The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds, and profits in their business operations that constitute Cash Collateral of certain of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in certain of the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

*iv.*     The rights of all parties in interest to challenge any of the findings in this Paragraph G are expressly reserved.

**H.     *Necessity of Relief Requested.***  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to use cash on hand and cash flow from their operations, including Cash Collateral, to fund the orderly continuation of their business and their working capital needs, maintain the confidence of their vendors, customers, suppliers and contractors, pay operating expenses, and preserve value as a going-concern for the benefit of their

estates and their creditors and stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with certain of the Prepetition Secured Parties or other parties regarding debtor-in-possession financing to provide longer term liquidity, as well as the use of Cash Collateral on consensual terms, in connection with a proposed restructuring transaction.  In the absence of access to and the ability to use Cash Collateral during such time, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors, their estates, and their creditors would occur.

   *I.*  ***Terms of Cash Collateral Use.***  The terms for the Debtors' use of Cash Collateral and the adequate protection arrangements provided pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are essential for the preservation of the Debtors' assets and properties.  The use of Cash Collateral in accordance with this Interim Order is in the best interests of the Debtors and their estates, their creditors, and other parties in interest, and will, among other things, allow for the continued operation of the Debtors' existing businesses and allow the Debtors to preserve value for all stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with the Prepetition Secured Parties to obtain debtor-in-possession financing and consensual use of Cash Collateral on mutually agreeable terms.

   *J.*  ***Need for Immediate Entry of this Interim Order.***  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based on the foregoing findings and conclusions, the Motion, the Cash Collateral Declarations and the record before this Court, and after due consideration, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. ***Motion Approved.*** The use of Cash Collateral is hereby authorized and approved in accordance with and subject to the terms and conditions of this Interim Order. Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled.

2. ***Authorization to Use Cash Collateral.*** The Debtors are authorized to use Cash Collateral during the period (the "Interim Period") from the Petition Date through and including the *earlier* of (a) 11:59 p.m., prevailing Eastern Time, on the date of the Final Hearing, unless the Final Order is entered extending the Debtors' right to use Cash Collateral, and (b) the date upon which the Prepetition Administrative Agent obtains an order of this Court providing for the termination of the further use of Cash Collateral due to the failure by the Debtors to comply with the material terms and conditions of this Interim Order, to operate the Debtors' businesses in the ordinary course, and pay certain costs, fees and expenses related to the Chapter 11 Cases, in accordance with the Interim Budget as provided herein, and as approved by any order of this Court.

3. ***Interim Budget.*** The Debtors are authorized to use Cash Collateral during the Interim Period solely in accordance with the budget attached as **Exhibit 1** (as such budget may be amended, modified, or supplemented in accordance with this Interim Order, the "Interim Budget") in an amount that would not cause the Debtors to use Cash Collateral with respect to any of the first three (3) weeks in the Interim Budget in an amount in excess of 120% of the aggregate amount

of budgeted disbursements for that week.  Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week and any unused amounts may be utilized for any other line item within the week or subsequent week or weeks. The Debtors shall be permitted to file a revised Interim Budget (a "Revised Budget") on the Court's docket subject to a three-business-day objection period (a "Budget Objection Period").  If no objections are filed on the Court's docket prior to the end of such the Budget Objection Period, such Revised Budget shall become the Interim Budget effective upon the expiration of such period. Any objection shall be resolved by the Debtors and the objecting party in good faith or by order of the Court.

4.     *Adequate Protection for the Prepetition Senior Secured Parties.*  As adequate protection of the respective interests of the Prepetition Secured Parties in any Cash Collateral solely for and equal in amount to any aggregate postpetition diminution in value of their respective interests in the Cash Collateral resulting from the Debtors' use of the Cash Collateral and the imposition of the automatic stay (any "Diminution in Value"), each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (collectively, the "Adequate Protection Obligations"), subject in each case to the Carve-Out and the reservation of rights in Paragraph G(iv) of this Interim Order:

(a)     *Adequate Protection Liens.*  Solely for and equal in amount to any Diminution in Value of their respective interests in the Cash Collateral, each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted replacement security interests in and liens on (all such liens and security interests, the "Adequate Protection Liens") the Prepetition Collateral and all post-petition accounts receivable of the Debtors and other estate property (subject to certain exclusions pursuant to the Prepetition Loan

Documents) of the Debtors to the extent that Cash Collateral is used by the Debtors; *excluding*, *however*, any liens on avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof, including the Debtors' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "Avoidance Actions," which, for the avoidance of doubt, excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing) (collectively, the "Collateral"), which Adequate Protection Liens granted to the Prepetition Secured Parties shall be subject and subordinate to any existing third party liens or security interests in the Collateral, in each case, solely to the extent any such liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and, in the case of any Prepetition Collateral, were senior in priority to the Prepetition Secured Parties' respective Prepetition Liens.

(b)      ***Adequate Protection Superpriority Claims.***  Solely for and equal in amount to any Diminution in Value of the Prepetition Secured Parties' respective interests in the Cash Collateral, superpriority administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code; *excluding*, *however*, claims in respect of the proceeds of any Avoidance Actions (the "Adequate Protection Superpriority Claims"), senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code.

(c)     ***Reporting Requirements.***    As additional adequate protection to the Prepetition Secured Parties, the Debtors shall provide the Prepetition Secured Parties with reasonable and customary weekly variance reporting with respect to the Interim Budget.

(d)     ***Interest.***    From and after entry of this Interim Order, the Prepetition Administrative Agent, on behalf of the Prepetition Secured Parties, shall receive (i) upon the entry of this Interim Order, accrued and unpaid interest due under the Prepetition Loan Documents in respect of unpaid principal outstanding thereunder (whether accrued prior to or after the Petition Date) in respect of the Prepetition Loan Documents, and (ii) thereafter, as and when due under the Prepetition Loan Documents, interest due under the Prepetition Credit Facility, in respect of unpaid principal outstanding thereunder; *provided* that the allocation of any such interest payments shall be on account of the Prepetition Secured Parties' allowed secured claim as provided in section 506 of the Bankruptcy Code.  Any interest due hereunder to the Prepetition Secured Parties shall be calculated at the non-default rates under the Prepetition Loan Documents and shall be payable in kind upon the same dates as currently required by the Prepetition Loan Documents.

(e)     Notwithstanding anything herein to the contrary, the Adequate Protection Obligations shall be subject to any future order of this Court, entered on notice to the Prepetition Secured Parties and subject to a hearing, that would, after finding the Prepetition Secured Parties' valid, perfected and enforceable interest in the Collateral (including as granted herein) adequately perfected, approve the grant of adequate protection to another person or entity a lien or claim with equal or higher priority.

5.     ***Carve-Out.***    As used in this Interim Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set

forth in clause (iii) of this paragraph); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) of this paragraph); (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by a Prepetition Administrative Agent of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the Prepetition Administrative Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").

6.      ***Modification of Automatic Stay.***  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

7.      ***No Third-Party Rights.***  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary; *provided*, *however*, that if the Chapter 11 Cases convert to cases

under chapter 7 of the Bankruptcy Code, the chapter 7 trustee shall be deemed to be a party-in-interest other than the Debtors and shall not be bound by the findings in Paragraph G or any of the Debtors' stipulations contained herein.

8.     ***Binding Effect.***   The terms of this Interim Order shall be valid and binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Interim Order by this Court.

9.     ***Headings.***   The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

10.    ***Bankruptcy Rules.***   The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion, and the relief requested is necessary to avoid immediate and irreparable harm.

11.    ***Necessary Action***.   The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

12.    ***Retention of Jurisdiction.***   The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

13.    ***Final Hearing***.   The final hearing on the Motion shall be held on _____ ___, 2024 at __:___ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on

_____ ___, 2024, and shall be served on: (a) True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (b) proposed efficiency counsel for the Debtors, Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, Floor 22, New York, New York 10036 (Attn: Andrew K. Glenn, Esq. (aglenn@glennagre.com), Trevor J. Welch, Esq. (twelch@glennagre.com) and Malak S. Doss, Esq. (mdoss@glennagre.com)); (c) proposed Delaware efficiency counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Kenneth Enos, Esq. (kenos@ycst.com)); (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov)); (e) counsel to the Prepetition Lenders, Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn: Daniel F. Fiorillo, Esq. (dfiorillo@otterbourg.com)); and (f) counsel to any statutory committee appointed in the Chapter 11 Cases.  If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

14.     ***Notice of Entry of Interim Order.***  The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Committee (if appointed).

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

**EXHIBIT 2**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

### INTERIM ORDER (I)(A) AUTHORIZING DEBTORS TO
### USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO
### PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND (D)
### SCHEDULING A FINAL HEARING AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for an interim order (this "Interim Order") and a Final Order under sections 105(a), 361, 362, 363, 503, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1, 4001-2, 9006-1 and 9013-1 (i)(a) authorizing the Debtors to use Cash Collateral; (b) granting Adequate Protection, solely to the extent provided in this Interim Order, to the Prepetition Secured Parties; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this Interim Order and the Final Order; and (d) scheduling the Final Hearing to consider approval of the Motion on a final basis, and (ii) granting related relief; and upon consideration of the interim relief requested in the Motion, the Cash Collateral Declarations and the evidence submitted and arguments made at the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); ~~TV Holdco, L.L.C. (1833); TV Holdco I, L.L.C. (2219)~~; TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); Distributors Hardware, L.L.C. (8106~~; and True Value Specialty Company, LLC (5611)~~).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

interim hearing held on October [●]16, 2024 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable local rules; and it appearing that no other or further notice is necessary; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled on the merits by this Court; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**A.    Petition Date.**  On October 13, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court, commencing these chapter 11 cases (the "Chapter 11 Cases").

**B.    Debtors in Possession.**  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

**C.    Jurisdiction and Venue.**  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.    Committee Formation.**  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

**E.    Notice.**  Notice of the Motion and the Interim Hearing ~~constitutes due, sufficient and appropriate notice and~~ complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

**F.    Cash Collateral.**  The Prepetition Secured Parties assert an interest in cash, cash equivalents, negotiable instruments, investment property, and securities, including cash and other

3

amounts on deposit or maintained in any account or accounts of the Prepetition Secured Parties, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, existing as of the Petition Date, and the proceeds of any of the foregoing, wherever located, is cash collateral within the meaning of section 363(a) of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Secured Debt Documents (to the extent such interest is valid, perfected and enforceable, the "Cash Collateral").

**G.   *Existing Debt Facilities and Their Terms.***

   i.   *Prepetition Credit Facility*

   (a)   Prepetition Credit Agreement.   Pursuant to that certain Credit Agreement, dated as of April 20, 2018 (as amended by Amendment No. 1 to Credit Agreement, dated as of September 16, 2021, as further amended by Amendment No. 2 to Credit Agreement, dated as of November 2, 2022, as further amended by Amendment No. 3 to Credit Agreement, dated as of January 24, 2023, as further amended by Amendment No. 4 ("Amendment No. 4" as defined in the Motion), dated as of August 26, 2024, and as further amended by Amendment No. 5 ("Amendment No. 5" as defined in the Motion), dated as of September 9, 2024, the "Prepetition Credit Agreement" and, collectively with any other agreements and documents executed or delivered in connection therewith, each as it may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Loan Documents") by and among Debtor True Value Company, L.L.C. ("TVC"), as a borrower, and each of Distributors Hardware, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., TV TSLC, L.L.C., and True Value Virginia L.L.C., as

additional borrowers (together with TVC, the "Borrowers"), TV Holdco II L.L.C., as guarantor (the "Guarantor" and, together with the Borrowers, the "Prepetition Loan Parties"), PNC Bank, National Association, as administrative agent ("PNC" and, in such capacity, the "Prepetition Administrative Agent"), and the lenders and issuing banks party thereto (the "Prepetition Lenders" and, together with the Prepetition Administrative Agent, the "Prepetition Secured Parties"), the Prepetition Lenders provided term loans, revolving loan commitments, and other financial accommodations to the Prepetition Loan Parties (the "Prepetition Credit Facility").

(b) Prepetition Secured Debt. As of the Petition Date, the Debtors had outstanding obligations to the Prepetition Loan Parties in the aggregate principal amount of not less than $238,200,000, consisting of approximately $219,456,000 in revolving loan borrowings and approximately $18,750,000 in outstanding term loans, in each case pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest, fees, expenses, disbursements (including attorneys' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, chargeable, or reimbursable under the Prepetition Loan Documents incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Secured Debt"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Loan Parties.

(c) Prepetition Liens. As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Prepetition Loan Parties each granted to the Prepetition Secured Parties a first-priority security interest in, and continuing lien (the "Prepetition Liens") on certain collateral (as set forth and pursuant to the Prepetition Loan

Documents) (including Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, subject to certain exclusions (the "Prepetition Collateral").

   *ii.*  *Prepetition LC Facility*

   (a)  To satisfy their requirements to secure their obligations under certain Insurance Policies (as defined in the First Day Declaration), historical insurance policies and the Customs Bond (as defined in the First Day Declaration), the Debtors have obtained a letter of credit facility (the "Prepetition LC Facility") pursuant to that certain Amended and Restated Substitute Insurance Collateral Facility Agreement (the "Prepetition LC Facility Agreement"), dated as of September 25, 2024, by and between 1970 Group, Inc. ("1970 Group") and TVC, which provides for the issuance and renewal of six letters of credit (the "Prepetition Letters of Credit") for the benefit of the Debtors' insurers and the Customs Bond issuer. As of the Petition Date, the total amount outstanding on the Prepetition Letters of Credit is approximately $11.31 million.

   *iii.*  *Cash Collateral*

   (a)  The Prepetition Secured Parties assert an interest in all of the Prepetition Loan Parties' cash, cash equivalents, negotiable instruments, investment property, and securities, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, wherever located, is the cash collateral within the meaning of section 363(a) of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Loan Documents. The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from Cash Collateral, all of

which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral subject to the applicable Prepetition Liens.  All Cash Collateral and all proceeds of the Prepetition Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, shall be used or applied in accordance with the terms and conditions of this Interim Order and the applicable Prepetition Loan Documents, and for no other purpose.

(b)      The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory, and other personal property, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral under the Prepetition Loan Documents (as applicable) that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

(c)      The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds, and profits in their business operations that constitute Cash Collateral of certain of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in certain of the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

*iv.*      The rights of all parties in interest to challenge any of the findings in this Paragraph G are expressly reserved.

**H.**      ***Necessity of Relief Requested.***  Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to use cash on hand and cash flow from

7

their operations, including Cash Collateral, to fund the orderly continuation of their business and their working capital needs, maintain the confidence of their vendors, customers, suppliers and contractors, pay operating expenses, and preserve value as a going-concern for the benefit of their estates and their creditors and stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with certain of the Prepetition Secured Parties or other parties regarding debtor-in-possession financing to provide longer term liquidity, as well as the use of Cash Collateral on consensual terms, in connection with a proposed restructuring transaction. In the absence of access to and the ability to use Cash Collateral during such time, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors, their estates, and their creditors would occur.

*I.*     ***Terms of Cash Collateral Use.***  The terms for the Debtors' use of Cash Collateral and the adequate protection arrangements provided pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are essential for the preservation of the Debtors' assets and properties. The use of Cash Collateral in accordance with this Interim Order is in the best interests of the Debtors and their estates, their creditors, and other parties in interest, and will, among other things, allow for the continued operation of the Debtors' existing businesses and allow the Debtors to preserve value for all stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with the Prepetition Secured Parties to obtain debtor-in-possession financing and consensual use of Cash Collateral on mutually agreeable terms.

*J.*     ***Need for Immediate Entry of this Interim Order.***  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission

granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based on the foregoing findings and conclusions, the Motion, the Cash Collateral Declarations and the record before this Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      ***Motion Approved.***  The use of Cash Collateral is hereby authorized and approved in accordance with and subject to the terms and conditions of this Interim Order.  Any objections or other statements with respect to any of the relief set forth in this Interim Order that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled.

2.      ***Authorization to Use Cash Collateral.***  The Debtors are authorized to use Cash Collateral during the period (the "Interim Period") from the Petition Date through and including the *earlier* of (a) 11:59 p.m., prevailing Eastern Time, on the date of the Final Hearing, unless the Final Order is entered extending the Debtors' right to use Cash Collateral, and (b) the date upon which the Prepetition Administrative Agent obtains an order of this Court providing for the termination of the further use of Cash Collateral due to the failure by the Debtors to comply with the material terms and conditions of this Interim Order, to operate the Debtors' businesses in the ordinary course, and pay certain costs, fees and expenses related to the Chapter 11 Cases, in accordance with the Interim Budget as provided herein, and as approved by any order of this Court.

3.      ***Interim Budget.***  The Debtors are authorized to use Cash Collateral during the Interim Period solely in accordance with the budget attached as **Exhibit 1** (as such budget may be amended, modified, or supplemented in accordance with this Interim Order, the "Interim Budget") in an amount that would not cause the Debtors to use Cash Collateral with respect to any of the first three (3) weeks in the Interim Budget in an amount in excess of 120% of the aggregate amount of budgeted disbursements for that week.  Any amounts listed in the Interim Budget that are unused in any week may be carried over and used by the Debtors in any subsequent week and any unused amounts may be utilized for any other line item within the week or subsequent week or weeks.  The Debtors shall be permitted to file a revised Interim Budget (a "Revised Budget") on the Court's docket subject to a three-business-day objection period (a "Budget Objection Period").  If no objections are filed on the Court's docket prior to the end of such the Budget Objection Period, such Revised Budget shall become the Interim Budget effective upon the expiration of such period.  Any objection shall be resolved by the Debtors and the objecting party in good faith or by order of the Court.

4.      ***Adequate Protection for the Prepetition Senior Secured Parties.***  As adequate protection of the respective interests of the Prepetition Secured Parties in any Cash Collateral solely for and equal in amount to any aggregate postpetition diminution in value of their respective interests in the Cash Collateral resulting from the Debtors' use of the Cash Collateral and the imposition of the automatic stay (any "Diminution in Value"), each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (collectively, the "Adequate Protection Obligations"), subject in each case to the Carve-Out and the reservation of rights in Paragraph G(iv) of this Interim Order:

(a)    ***Adequate Protection Liens.***    Solely for and equal in amount to any Diminution in Value of their respective interests in the Cash Collateral, each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted replacement security interests in and liens on (all such liens and security interests, the "Adequate Protection Liens") the Prepetition Collateral and all post-petition accounts receivable of the Debtors and other estate property (subject to certain exclusions pursuant to the Prepetition Loan Documents) of the Debtors to the extent that Cash Collateral is used by the Debtors; *excluding*, *however*, any liens on avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof, including the Debtors' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "Avoidance Actions," which, for the avoidance of doubt, excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing) (collectively, the "Collateral"), which Adequate Protection Liens granted to the Prepetition Secured Parties shall be subject and subordinate to any existing third party liens or security interests in the Collateral, in each case, solely to the extent any such liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and, in the case of any Prepetition Collateral, were senior in priority to the Prepetition Secured Parties' respective Prepetition Liens.

(b)    ***Adequate Protection Superpriority Claims.***    Solely for and equal in amount to any Diminution in Value of the Prepetition Secured Parties' respective interests in the Cash Collateral, superpriority administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code; *excluding*, *however*, claims in respect of the proceeds of any Avoidance Actions (the "Adequate Protection Superpriority Claims"), senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code.

(c)    ***Reporting Requirements.***    As additional adequate protection to the Prepetition Secured Parties, the Debtors shall provide the Prepetition Secured Parties with reasonable and customary weekly variance reporting with respect to the Interim Budget.

(d)    ***Interest.***    From and after entry of this Interim Order, the Prepetition Administrative Agent, on behalf of the Prepetition Secured Parties, shall receive (i) upon the entry of this Interim Order, accrued and unpaid interest due under the Prepetition Loan Documents in respect of unpaid principal outstanding thereunder (whether accrued prior to or after the Petition Date) in respect of the Prepetition Loan Documents, and (ii) thereafter, as and when due under the Prepetition Loan Documents, interest due under the Prepetition Credit Facility, in respect of unpaid principal outstanding thereunder; *provided* that the allocation of any such interest payments shall be on account of the Prepetition Secured Parties' allowed secured claim as provided in section 506 of the Bankruptcy Code.  Any interest due hereunder to the Prepetition Secured Parties shall be calculated at the non-default rates under the Prepetition Loan Documents and shall be payable in kind upon the same dates as currently required by the Prepetition Loan Documents.

(e)     Notwithstanding anything herein to the contrary, the Adequate Protection Obligations shall be subject to any future order of this Court, entered on notice to the Prepetition Secured Parties and subject to a hearing, that would, after finding the Prepetition Secured Parties' valid, perfected and enforceable interest in the Collateral (including as granted herein) adequately perfected, approve the grant of adequate protection to another person or entity a lien or claim with equal or higher priority.

5.     ***Carve-Out.***  As used in this Interim Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) of this paragraph); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) of this paragraph); (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by a Prepetition Administrative Agent of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the Prepetition Administrative Agent of the Carve-Out Trigger Notice, to

the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").

6. ***Modification of Automatic Stay.*** The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

7. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary; *provided, however*, that if the Chapter 11 Cases convert to cases under chapter 7 of the Bankruptcy Code, the chapter 7 trustee shall be deemed to be a party-in-interest other than the Debtors and shall not be bound by the findings in Paragraph G or any of the Debtors' stipulations contained herein.

8. ***Binding Effect.*** The terms of this Interim Order shall be valid and binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Interim Order by this Court.

9. ***Headings.*** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

10.    ***Bankruptcy Rules.***  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion, and the relief requested is necessary to avoid immediate and irreparable harm.

11.    ***Necessary Action.***  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

12.    ***Retention of Jurisdiction.*** The Court retains ~~exclusive~~ jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

13.    ***Final Hearing.***  The final hearing on the Motion shall be held on _____ ___, 2024 at __:___ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____ ___, 2024, and shall be served on: (a) True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (b) proposed efficiency counsel for the Debtors, Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, Floor 22, New York, New York 10036 (Attn: Andrew K. Glenn, Esq. (aglenn@glennagre.com), Trevor J. Welch, Esq. (twelch@glennagre.com) and Malak S. Doss, Esq. (mdoss@glennagre.com)); (c) proposed Delaware efficiency counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Kenneth Enos, Esq. (kenos@ycst.com)); (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov)); (e) counsel to the Prepetition Lenders, Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn: Daniel F.

Fiorillo, Esq. (dfiorillo@otterbourg.com)); and (f) counsel to any statutory committee appointed in the Chapter 11 Cases.  If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

14.     ***Notice of Entry of Interim Order.***  The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Committee (if appointed).

15.     This Court shall retain ~~exclusive~~ jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

16