## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| | **Ref. Docket Nos. 10, 19, 72, & 81** |

**CERTIFICATION OF COUNSEL SUBMITTING (I) *PROPOSED* INTERIM ORDER (IA) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND (D) SCHEDULING A FINAL HEARING AND (II) GRANTING RELATED RELIEF; AND (II) *PROPOSED* INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS AND (B) IMPLEMENT CHANGES TO THEIR CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS; (II) MODIFYING CERTAIN REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE; (III) AUTHORIZING CONTINUANCE OF INTERCOMPANY TRANSACTIONS; (IV) HONORING CERTAIN RELATED PREPETITION OBLIGATIONS; AND (V) GRANTING RELATED RELIEF**

On October 14, 2024, the debtors and debtors in possession (collectively, the "Debtors")

in the above captioned cases filed the *Motion of Debtors for Entry of Interim and Final Orders (I)*

*Authorizing the Debtors to (A) Continue Use of Existing Cash Management System, Bank*

*Accounts, and Business Forms and (B) Implement Changes to Their Cash Management System in*

*the Ordinary Course of Business; (II) Modifying Certain Requirements of Section 345(B) of the*

*Bankruptcy Code; (III) Authorizing Continuance of Intercompany Transactions; (IV) Honoring*

*Certain related Prepetition Obligations; and (V) Granting Related Relief* [Docket No. 10] (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

"Cash Management Motion"). A proposed form of order approving the Cash Management Motion on an interim basis was attached to the Cash Management Motion (the "Proposed Interim Cash Management Order").

On October 15, 2024, the debtors and debtors in possession (collectively, the "Debtors") in the above captioned cases filed the *Motion of Debtors for Entry of Interim and Final Orders (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; (C) Modifying the Automatic Stay; and (D) Scheduling a Final Hearing, and (II) Granting Related Relief* [Docket No. 19] (the "Cash Collateral Motion" and together with the Cash Management Motion, the "Motions"). A proposed form of order approving the Cash Collateral Motion on an interim basis was attached to the Cash Collateral Motion as (the "Proposed Interim Cash Collateral Order").

On October 16, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") held a hearing (the "Hearing") to consider approval of the Motions.

## I.    Proposed Interim Cash Collateral Order

Prior to the Hearing, the Debtors received (i) informal comments to the Proposed Interim Cash Collateral Order from the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and (ii) PNC Bank, National Association ("PNC") filed a formal objection with the Court [Docket No. 68]. Following discussions with the U.S. Trustee, the Debtors filed a revised form of interim order (the "Revised Proposed Interim Cash Collateral Order") [Docket No. 72], resolving the U.S. Trustee's informal comments. At the Hearing, the Court approved the Cash Collateral Motion on an interim basis, in accordance with the Revised Proposed Interim Cash Collateral Order, incorporating revisions from the U.S. Trustee.

Subsequent to the Hearing, PNC informed the Debtors that it would not consent to any form of Carve-Out (as defined in the Motion) during the interim period. While the Debtors submit

that this was directly contrary to the agreement reached prior to the Hearing and announced on the record, the Debtors have consensually removed the Carve-Out from the Revised Proposed Interim Cash Collateral Order in furtherance of reaching a consensual agreement on the Debtors' interim use of Cash Collateral (as defined in the Motion), to facilitate the Debtors' urgent need for cash to protect the business and the value maximizing going concern sale.  Nevertheless, the Debtors will insist on the inclusion of a Carve-Out in any future collateral orders or DIP financing orders in these cases and expressly reserve all rights in that regard.  Attached hereto as **Exhibit A-1** is a proposed form of further revised interim order (the "Proposed Cash Collateral Order"), which resolves the comments from the U.S. Trustee and PNC.  A blackline of the Proposed Cash Collateral Order against the Revised Proposed Interim Cash Collateral Order is attached hereto as **Exhibit A-2**.

II.     **Proposed Interim Cash Management Order**

Prior to the Hearing, the Debtors received informal comments to the Proposed Interim Cash Management Order from the U.S. Trustee.  Following discussions with the U.S. Trustee, the Debtors filed a revised form of interim order (the "Revised Proposed Interim Cash Management Order") [Docket No. 81], resolving the U.S. Trustee's informal comments.  At the Hearing, the Court approved the Cash Management Motion on an interim basis, in accordance with the Revised Proposed Interim Cash Management Order, incorporating revisions from the U.S. Trustee and subject to certain additional comments from PNC.  Attached hereto as **Exhibit B-1** is a proposed form of further revised interim order (the "Proposed Cash Management Order"), which resolves the comments from the U.S. Trustee and PNC.  A blackline of the Proposed Cash Management Order against the Revised Proposed Interim Cash Management Order is attached hereto as **Exhibit B-2**.

WHEREFORE, the Debtors did not receive any objections or responses other than that as described herein and have resolved the comments of the U.S. Trustee and PNC to the Motions. Accordingly, the Debtors respectfully request that the Court enter the Proposed Cash Collateral Order and the Proposed Cash Management Order at its earliest convenience.

[*Signature Page Follows*]

Dated: October 18, 2024
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Edmon L. Morton*
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:  emorton@ycst.com
       kenos@ysct.com
       kmcelroy@ycst.com
       tpowell@ycst.com

- and -

**GLENN AGRE BERGMAN & FUENTES LLP**
Andrew K. Glenn (admitted *pro hac vice*)
Trevor J. Welch (admitted *pro hac vice*)
Malak S. Doss (admitted *pro hac vice*)
Michelle C. Perez (admitted *pro hac vice*)
Esther Hong (admitted *pro hac vice*)
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email:  aglenn@glennagre.com
       twelch@glennagre.com
       mdoss@glennagre.com
       mperez@glennagre.com
       ehong@glennagre.com

*Proposed Efficiency Counsel to the Debtors and Debtors in Possession*

32271048.3

# EXHIBIT A-1

**Proposed Cash Collateral Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C. *et al.*,** | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

### INTERIM ORDER (I)(A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (B) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS; (C) MODIFYING THE AUTOMATIC STAY; AND (D) SCHEDULING A FURTHER INTERIM HEARING AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for an interim order (this "Interim Order") and a Final Order under sections 105(a), 361, 362, 363, 503, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1, 4001-2, 9006-1 and 9013-1 (i)(a) authorizing the Debtors to use Cash Collateral; (b) granting Adequate Protection, solely to the extent provided in this Interim Order, to the Prepetition Secured Parties; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of this Interim Order and the Final Order; and (d) scheduling the Final Hearing to consider approval of the Motion on a final basis, and (ii) granting related relief; and upon consideration of the interim relief requested in the Motion, the Cash Collateral Declarations and the evidence submitted and arguments made at the interim hearing held on October 16, 2024 (the "Interim Hearing"); and notice of the Interim Hearing having been given in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable local rules; and it appearing that no other or further notice is necessary; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, overruled on the merits by this Court or, with respect to the Cash Collateral Objection (as defined below), addressed by this Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Further Interim Hearing (as defined below), and otherwise fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

    *A.*    *Petition Date.*  On October 13, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court, commencing these chapter 11 cases (the "Chapter 11 Cases").

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.** *Debtors in Possession.* The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases.

**C.** *Jurisdiction and Venue.* This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.** *Committee Formation.* As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

**E.** *Notice.* Notice of the Motion and the Interim Hearing complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

**F.** *Cash Collateral.* The Prepetition Secured Parties have an interest in cash, cash equivalents, negotiable instruments, investment property, and securities, including cash and other amounts on deposit or maintained in any account or accounts of the Prepetition Secured Parties, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the Collateral (as defined below) and the proceeds of any of the foregoing

is cash collateral within the meaning of section 363(a) of the Bankruptcy Code (as more fully set forth in, and subject to, the Prepetition Loan Documents, the "Cash Collateral").

### G.    *Existing Debt Facilities and Their Terms.*

#### i.    *Prepetition Credit Facility*

(a)    Prepetition Credit Agreement.    Pursuant to that certain Credit Agreement, dated as of April 20, 2018 (as amended by Amendment No. 1 to Credit Agreement, dated as of September 16, 2021, as further amended by Amendment No. 2 to Credit Agreement, dated as of November 2, 2022, as further amended by Amendment No. 3 to Credit Agreement, dated as of January 24, 2023, as further amended by Amendment No. 4 ("Amendment No. 4" as defined in the Motion), dated as of August 26, 2024, and as further amended by Amendment No. 5 ("Amendment No. 5" as defined in the Motion), dated as of September 9, 2024, the "Prepetition Credit Agreement" and, collectively with any other agreements and documents executed or delivered in connection therewith, each as it may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Loan Documents") by and among Debtor True Value Company, L.L.C. ("TVC"), as a borrower, and each of Distributors Hardware, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., TV TSLC, L.L.C., and True Value Virginia L.L.C., as additional borrowers (together with TVC, the "Borrowers"), TV Holdco II L.L.C., as guarantor (the "Guarantor" and, together with the Borrowers, the "Prepetition Loan Parties"), PNC Bank, National Association, as administrative agent ("PNC" and, in such capacity, the "Prepetition Administrative Agent"), and the lenders and issuing banks party thereto (the "Prepetition Lenders" and, together with the Prepetition Administrative Agent, the "Prepetition Secured Parties"), the

Prepetition Lenders provided term loans, revolving loan commitments, and other financial accommodations to the Prepetition Loan Parties (the "Prepetition Credit Facility").

(b)    Prepetition Secured Debt.  As of the Petition Date, the Debtors had outstanding obligations to the Prepetition Loan Parties in the aggregate principal amount of not less than $238,200,000, consisting of approximately $219,456,000 in revolving loan borrowings and approximately $18,750,000 in outstanding term loans, in each case pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest, fees, expenses, disbursements (including attorneys' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, chargeable, or reimbursable under the Prepetition Loan Documents incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "Prepetition Secured Debt"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Loan Parties.

(c)    Prepetition Liens.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Prepetition Loan Parties each granted to the Prepetition Secured Parties a first-priority security interest in, and continuing lien (the "Prepetition Liens") on substantially all assets and properties of the Debtors (as more fully set forth in, and subject to, the Prepetition Loan Documents), and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, subject to certain exclusions (the "Prepetition Collateral").

ii.   *Cash Collateral*

(a)   The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory, and other personal property, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral under the Prepetition Loan Documents (as applicable) that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

(b)   The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds, and profits in their business operations that constitute Cash Collateral of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in certain of the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

iii.   The rights of all parties in interest to challenge any of the findings in Paragraph F and this Paragraph G are expressly reserved.

**H.**   ***Necessity of Relief Requested.***   Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to use cash on hand and cash flow from their operations, including Cash Collateral, to avoid immediate and irreparable harm to the Debtors, their estates and creditors.  In the absence of access to and the ability to use Cash Collateral during such time, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors, their estates, and their creditors would occur.

**I.**      ***Terms of Cash Collateral Use.***  The terms for the Debtors' use of Cash Collateral and the adequate protection arrangements provided pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are essential for the preservation of the Debtors' assets and properties.  The use of Cash Collateral in accordance with this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors, their estates and creditors.

**J.**      ***Cash Collateral Objection.***  Prepetition Administrative Agent filed its preliminary objection to the Motion [Dkt. No. 68] (the "Cash Collateral Objection").  The Prepetition Administrative Agent and the other Prepetition Secured Parties reserve all rights to challenge all findings in this Interim Order at the Further Interim Hearing or in connection with any other hearing to consider the relief requested in the Motion or otherwise.  The Debtors reserve all rights to object to and contest any and all aspects of the Cash Collateral Objection at the Further Interim Hearing or in connection with any hearing to consider the relief requested in the Motion or otherwise.

**K.**      ***Need for Immediate Entry of this Interim Order.***  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based on the foregoing findings and conclusions, the Motion, the Cash Collateral Declarations and the record before this Court, including the Interim Hearing, and after due consideration, and good and sufficient cause appearing therefor,

32257154.3

**IT IS HEREBY ORDERED THAT:**

1.      ***Motion Approved.***  The Motion is granted as and solely to the extent set forth in this Interim Order.

2.      ***Authorization to Use Cash Collateral.***  The Debtors are authorized to use Cash Collateral on an interim basis as set forth in the budget attached hereto as **Exhibit 1** solely as shown in Week #1 and Week #2 (the "Interim Budget") from and after the Petition Date through and including October 28, 2024 (the "Interim Period").

3.      ***Interim Budget.***  The Debtors are authorized to use Cash Collateral during the Interim Period solely in accordance with the Interim Budget.  Any amounts listed in the Interim Budget in Week #1 that are unused may be carried over and used by the Debtors in Week #2 and any unused amounts within Week #1 or Week #2 may be utilized for any other line item within Week #1 or Week #2, respectively.

4.      ***Adequate Protection for the Prepetition Senior Secured Parties.***  As adequate protection of the respective interests of the Prepetition Secured Parties in any Collateral solely for and equal in amount to any aggregate postpetition diminution in value of their respective interests in the Collateral resulting from the Debtors' use, sale, lease or other disposition of Collateral, including the use of Cash Collateral and the imposition of the automatic stay (any "Diminution in Value"), each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (collectively, the "Adequate Protection Obligations"), subject to the reservation of rights in Paragraph G(iii) of this Interim Order:

(a)      ***Adequate Protection Liens.***  Solely for and equal in amount to any Diminution in Value of their respective interests in the Collateral, each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby

granted replacement security interests in and liens on (all such liens and security interests, the "Adequate Protection Liens") all now owned or hereafter acquired assets, interests, rights, and property of any nature whatsoever in which the Debtors or their estates have an interest, including, without limitation, the Prepetition Collateral, all inventory, accounts receivable, cash, negotiable instruments, documents of title, securities, deposit accounts, cash equivalents of the Debtors and other estate property; *excluding*, *however*, any liens on avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof, including the Debtors' claims and causes of action under sections 502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "Avoidance Actions," which, for the avoidance of doubt, excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing) (collectively, the "Adequate Protection Collateral" and, together with the Prepetition Collateral, collectively, the "Collateral"), which Adequate Protection Liens granted to the Prepetition Secured Parties shall be subject and subordinate to any existing third party liens or security interests in the Collateral, in each case, solely to the extent any such liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and, in the case of any Prepetition Collateral, were senior in priority to the Prepetition Secured Parties' respective Prepetition Liens.

(b)     ***Adequate Protection Superpriority Claims.***  Solely for and equal in amount to any Diminution in Value of the Prepetition Secured Parties' respective interests in the Collateral,

superpriority administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to grant the Prepetition Secured Parties superpriority administrative expense claims in respect of the proceeds of any Avoidance Actions; *provided* that the Prepetition Secured Parties reserve the right to assert such claims; *provided*, *further*, that the Debtors reserve the right to challenge any assertion of such claims.

(c)      ***Reporting Requirements.***   As additional adequate protection to the Prepetition Secured Parties, the Debtors shall provide the Prepetition Secured Parties with reasonable and customary weekly variance reporting with respect to the Interim Budget, including "actual to budget" reporting, collateral reporting and other reporting reasonably requested by the Prepetition Administrative Agent.

(d)      Notwithstanding anything herein to the contrary, the Adequate Protection Obligations shall be subject to any future order of this Court, entered on notice to the Prepetition Secured Parties and subject to a hearing, that would, after finding the Prepetition Secured Parties' valid, perfected and enforceable interest in the Collateral (including as granted herein) adequately perfected, approve the grant of adequate protection to another person or entity a lien or claim with equal or higher priority.

5.      ***Modification of Automatic Stay.***   The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

6.      ***No Third-Party Rights.***  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary; *provided*, *however*, that if the Chapter 11 Cases convert to cases under chapter 7 of the Bankruptcy Code, the chapter 7 trustee shall be deemed to be a party-in-interest other than the Debtors and shall not be bound by the findings in Paragraph G or any of the Debtors' stipulations contained herein.

7.      ***Binding Effect.***  The terms of this Interim Order shall be valid and binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Interim Order by this Court.

8.      ***Headings.***  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

9.      ***Bankruptcy Rules.***  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion, and the relief requested is necessary to avoid immediate and irreparable harm.

10.      ***Necessary Action.***  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

11.      ***Retention of Jurisdiction.***  The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

12.     ***Further Interim Hearing.***    A further interim hearing on the Motion shall commence on October 28, 2024 at 12:30 p.m., prevailing Eastern Time.

13.     ***Notice of Entry of Interim Order.***   The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Committee (if appointed).

14.     Nothing contained herein shall be deemed or implied as a waiver, consent or admission by any of the Prepetition Secured Parties with respect to or in connection with the use of the Cash Collateral in accordance with this Order.

15.     In the event that the Debtors request that this Court shorten notice in connection with a request by the Debtors for relief from this Order based on their reasonable determination that relief from this Order is needed on an emergency basis, then the Prepetition Secured Parties shall not oppose such request for shortened notice.

16.     In the event that any of the Prepetition Secured Parties request that this Court shorten notice in connection with a request by any of the Prepetition Secured Parties for relief from this Order based on their reasonable determination that relief from this Order is needed on an emergency basis, then the Debtors shall not oppose such request for shortened notice.

17.     Any Bankruptcy Rule or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

# EXHIBIT 1

**True Value**
**8-Week Cash Collateral Budget**

| ($ in 000s) | Filing Week | | | | | | Sale Date Close | | |
|---|---|---|---|---|---|---|---|---|---|
| **Week #** | **1** | **2** | **3** | **4** | **5** | **6** | **7** | **8** | |
| **FCST:** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **FCST** | **Total** |
| **Week Ending:** | **10/19/2024** | **10/26/2024** | **11/2/2024** | **11/9/2024** | **11/16/2024** | **11/23/2024** | **11/30/2024** | **12/7/2024** | **Forecast** |
| **Cash Operating Receipts** | | | | | | | | | |
| Operating Receipts | $29,477 | $20,403 | $33,090 | $31,270 | $29,759 | $33,244 | $32,195 | $28,237 | $237,673 |
| Other Receipts | – | – | – | – | – | – | – | 198,000 | 198,000 |
| **Total Operating Cash Receipts** | **$29,477** | **$20,403** | **$33,090** | **$31,270** | **$29,759** | **$33,244** | **$32,195** | **$226,237** | **$435,673** |
| **Operating Disbursements** | | | | | | | | | |
| Payroll & Benefits | (986) | (1,551) | (5,169) | (1,495) | (5,163) | (1,550) | (5,103) | (8,210) | (29,229) |
| Rent | – | (3,313) | (1,767) | – | – | – | (2,395) | (277) | (7,752) |
| Other Operating Disbursements | (346) | (10,141) | (22,885) | (15,504) | (13,226) | (13,678) | (13,522) | (54,942) | (144,245) |
| **Total Operating Disbursements** | **($1,332)** | **($15,005)** | **($29,822)** | **($16,999)** | **($18,389)** | **($15,228)** | **($21,021)** | **($63,430)** | **($181,226)** |
| **Operating Cash Flow** | **$28,144** | **$5,397** | **$3,268** | **$14,271** | **$11,370** | **$18,016** | **$11,174** | **$162,807** | **$254,448** |
| **Restructuring / Chapter 11 Items** | | | | | | | | | |
| UST Fees | – | – | – | – | – | – | – | – | – |
| Prepetition Taxes | – | (1,639) | (53) | (574) | (574) | (1,174) | (574) | (574) | (5,161) |
| FDM & Restructuring Items | (870) | (4,145) | (10,456) | (7,748) | (4,503) | (2,679) | (2,679) | (29,573) | (62,652) |
| Employee Benefits | – | – | (2,868) | (1,780) | (2,780) | (2,780) | (2,780) | (3,472) | (16,462) |
| Other Restructuring Items | – | – | – | – | – | – | – | (3,130) | (3,130) |
| **Total Restructuring / Chapter 11 Items** | **($870)** | **($5,784)** | **($13,377)** | **($10,102)** | **($7,857)** | **($6,633)** | **($6,033)** | **($36,749)** | **($87,404)** |
| **Total Professional Fees[1]** | **–** | **–** | **($8,420)** | **($2,600)** | **($2,550)** | **($2,500)** | **($1,920)** | **($4,020)** | **($22,010)** |
| **Cash Flow Before Financing** | **$27,275** | **($386)** | **($18,529)** | **$1,569** | **$963** | **$8,883** | **$3,222** | **$122,038** | **$145,033** |
| **Total Financing Obligations** | **–** | **–** | **($2,943)** | **($306)** | **($14)** | **($10)** | **($2,768)** | **($1,067)** | **($7,107)** |
| **Net Cash Flow** | **$27,275** | **($386)** | **($21,472)** | **$1,263** | **$949** | **$8,873** | **$454** | **$120,971** | **$137,926** |
| **Bank Cash** | | | | | | | | | |
| BOP Bank Cash Balance | $2,803 | $30,077 | $29,691 | $8,219 | $9,481 | $10,431 | $19,304 | $19,758 | $2,803 |
| Net Cash Flow | 27,275 | (386) | (21,472) | 1,263 | 949 | 8,873 | 454 | 120,971 | 137,926 |
| Revolver Draw / (Paydown) | – | – | – | – | – | – | – | (135,111) | (135,111) |
| **EOP Bank Cash Balance** | **$30,077** | **$29,691** | **$8,219** | **$9,481** | **$10,431** | **$19,304** | **$19,758** | **$5,618** | **$5,618** |

Notes:
(1) Excludes $500K of professional fees related to DIP financing, payable contingent on DIP closing and funding

# EXHIBIT A-2

## Cash Collateral Blackline

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**INTERIM ORDER (I)(A) AUTHORIZING DEBTORS TO USE CASH COLLATERAL;
(B) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS; (C)
MODIFYING THE AUTOMATIC STAY; AND (D) SCHEDULING A ~~FINAL~~FURTHER
INTERIM HEARING AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for an interim order (this "Interim
Order") and a Final Order under sections 105(a), 361, 362, 363, 503, 507 and 552 of the
Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Bankruptcy Rules 2002-1,
4001-2, 9006-1 and 9013-1 (i)(a) authorizing the Debtors to use Cash Collateral; (b) granting
Adequate Protection, solely to the extent provided in this Interim Order, to the Prepetition
Secured Parties; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy
Code to the extent necessary to implement and effectuate the terms of this Interim Order and the
Final Order; and (d) scheduling the Final Hearing to consider approval of the Motion on a final
basis, and (ii) granting related relief; and upon consideration of the interim relief requested in the
Motion, the Cash Collateral Declarations and the evidence submitted and arguments made at the
interim hearing held on October 16, 2024 (the "Interim Hearing"); and notice of the Interim

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification
numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C.
(7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386);
True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors'
corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Hearing having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014 and all applicable local rules; and it appearing that no other or further notice is necessary; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or, overruled on the merits by this Court or, with respect to the Cash Collateral Objection (as defined below), addressed by this Order; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the FinalFurther Interim Hearing (as defined below), and otherwise fair and reasonable and in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; **BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**A.**    ***Petition Date.***  On October 13, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court, commencing these chapter 11 cases (the "Chapter 11 Cases").

**B.**    ***Debtors in Possession.***  The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

**C.**    ***Jurisdiction and Venue.***  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**D.**    ***Committee Formation.***  As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

**E.**    ***Notice.***  Notice of the Motion and the Interim Hearing complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 4001(b) and 9014, and the Local Bankruptcy Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

**F.**    ***Cash Collateral.***  The Prepetition Secured Parties ~~assert~~have an interest in cash, cash equivalents, negotiable instruments, investment property, and securities, including cash and other amounts on deposit or maintained in any account or accounts of the Prepetition Secured

Parties, existing as of the Petition Date, and any amounts generated by the collection of accounts receivable or other disposition of the ~~Prepetition~~ Collateral~~, existing~~ (as ~~of the Petition Date,~~ defined below) and the proceeds of any of the foregoing~~, wherever located,~~ is cash collateral within the meaning of section 363(a) of the Bankruptcy Code ~~of all (or certain of) the Prepetition Secured Parties,~~ (as more fully ~~described~~ set forth in, and subject to ~~any limitations set forth in,~~ the Prepetition ~~Secured Debt~~ Loan Documents ~~(to the extent such interest is valid, perfected and enforceable~~, the "Cash Collateral").

## G. *Existing Debt Facilities and Their Terms.*

### i. *Prepetition Credit Facility*

(a) <u>Prepetition Credit Agreement</u>.  Pursuant to that certain Credit Agreement, dated as of April 20, 2018 (as amended by Amendment No. 1 to Credit Agreement, dated as of September 16, 2021, as further amended by Amendment No. 2 to Credit Agreement, dated as of November 2, 2022, as further amended by Amendment No. 3 to Credit Agreement, dated as of January 24, 2023, as further amended by Amendment No. 4 ("Amendment No. 4" as defined in the Motion), dated as of August 26, 2024, and as further amended by Amendment No. 5 ("Amendment No. 5" as defined in the Motion), dated as of September 9, 2024, the "Prepetition Credit Agreement" and, collectively with any other agreements and documents executed or delivered in connection therewith, each as it may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time, the "Prepetition Loan Documents") by and among Debtor True Value Company, L.L.C. ("TVC"), as a borrower, and each of Distributors Hardware, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., TV TSLC, L.L.C., and True Value Virginia L.L.C., as additional borrowers (together with TVC, the "Borrowers"), TV Holdco II L.L.C., as guarantor

(the "<u>Guarantor</u>" and, together with the Borrowers, the "<u>Prepetition Loan Parties</u>"), PNC Bank, National Association, as administrative agent ("<u>PNC</u>" and, in such capacity, the "<u>Prepetition Administrative Agent</u>"), and the lenders and issuing banks party thereto (the "<u>Prepetition Lenders</u>" and, together with the Prepetition Administrative Agent, the "<u>Prepetition Secured Parties</u>"), the Prepetition Lenders provided term loans, revolving loan commitments, and other financial accommodations to the Prepetition Loan Parties (the "<u>Prepetition Credit Facility</u>").

(b)     <u>Prepetition Secured Debt</u>.  As of the Petition Date, the Debtors had outstanding obligations to the Prepetition Loan Parties in the aggregate principal amount of not less than $238,200,000, consisting of approximately $219,456,000 in revolving loan borrowings and approximately $18,750,000 in outstanding term loans, in each case pursuant to, and in accordance with the terms of, the Prepetition Loan Documents, plus accrued and unpaid interest, fees, expenses, disbursements (including attorneys' fees and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, chargeable, or reimbursable under the Prepetition Loan Documents incurred in connection therewith as provided in the Prepetition Loan Documents (collectively, the "<u>Prepetition Secured Debt</u>"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by each of the Prepetition Loan Parties.

(c)     <u>Prepetition Liens</u>.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date, the Prepetition Loan Parties each granted to the Prepetition Secured Parties a first-priority security interest in, and continuing lien (the "<u>Prepetition Liens</u>") on ~~certain collateral~~<u>substantially all assets and properties of the Debtors</u> (as <u>more fully</u> set forth <u>in,</u> and ~~pursuant~~<u>subject</u> to<u>,</u> the Prepetition Loan Documents) ~~(including Cash~~

~~Collateral)~~, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising, subject to certain exclusions (the "Prepetition Collateral").

<p style="padding-left:2em;">*ii.*    ~~*Prepetition LC Facility*~~</p>

~~(a)    To satisfy their requirements to secure their obligations under certain Insurance Policies (as defined in the First Day Declaration), historical insurance policies and the Customs Bond (as defined in the First Day Declaration), the Debtors have obtained a letter of credit facility (the "Prepetition LC Facility") pursuant to that certain Amended and Restated Substitute Insurance Collateral Facility Agreement (the "Prepetition LC Facility Agreement"), dated as of September 25, 2024, by and between 1970 Group, Inc. ("1970 Group") and TVC, which provides for the issuance and renewal of six letters of credit (the "Prepetition Letters of Credit") for the benefit of the Debtors' insurers and the Customs Bond issuer.  As of the Petition Date, the total amount outstanding on the Prepetition Letters of Credit is approximately $11.31 million.~~

<p style="padding-left:2em;">*ii.*    ~~*iii.*~~ *Cash Collateral*</p>

(a)    The Prepetition Secured Parties assert an interest in all of the Prepetition Loan Parties' cash, cash equivalents, ~~negotiable instruments,~~ investment property, and securities, and any amounts generated by the collection of accounts receivable or other disposition of the Prepetition Collateral, and the proceeds of any of the foregoing, wherever located, is the cash collateral within the meaning of section 363(a) of the Bankruptcy Code of all (or certain of) the Prepetition Secured Parties, as more fully described and subject to any limitations set forth in the Prepetition Loan Documents.  The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from Cash Collateral, all of

<p style="text-align:center;">6</p>

which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral subject to the applicable Prepetition Liens. All Cash Collateral and all proceeds of the Prepetition Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, shall be used or applied in accordance with the terms and conditions of this Interim Order and the applicable Prepetition Loan Documents, and for no other purpose.

(a) (b) The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral and acquire equipment, inventory, and other personal property, all of which (subject to any exceptions, exclusions, or limitations provided for in the applicable Prepetition Loan Documents) constitute Prepetition Collateral under the Prepetition Loan Documents (as applicable) that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

(b) (c) The Debtors desire to use a portion of such cash, rents, income, offspring, products, proceeds, and profits in their business operations that constitute Cash Collateral of certain of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date, including balances of funds in certain of the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral that is subject to the applicable Prepetition Secured Parties' valid and perfected security interests.

*iii.* *iv.* The rights of all parties in interest to challenge any of the findings in Paragraph F and this Paragraph G are expressly reserved.

**H.** ***Necessity of Relief Requested.*** Good cause has been shown for the entry of this Interim Order. The Debtors have an immediate need to use cash on hand and cash flow from

their operations, including Cash Collateral, to ~~fund the orderly continuation of their business and their working capital needs, maintain the confidence of their vendors, customers, suppliers and contractors, pay operating expenses, and preserve value as a going-concern for the benefit of~~avoid immediate and irreparable harm to the Debtors, their estates and ~~their~~ creditors ~~and stakeholders, including the Prepetition Secured Parties, while the Debtors negotiate with certain of the Prepetition Secured Parties or other parties regarding debtor-in-possession financing to provide longer-term liquidity, as well as the use of Cash Collateral on consensual terms, in connection with a proposed restructuring transaction~~.  In the absence of access to and the ability to use Cash Collateral during such time, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors, their estates, and their creditors would occur.

 *I.* ***Terms of Cash Collateral Use.***  The terms for the Debtors' use of Cash Collateral and the adequate protection arrangements provided pursuant to this Interim Order are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, constitute reasonably equivalent value and fair consideration, and are essential for the preservation of the Debtors' assets and properties.  The use of Cash Collateral in accordance with this Interim Order is ~~in the best interests of~~necessary to avoid immediate and irreparable harm to the Debtors ~~and~~, their estates, ~~their~~ and creditors~~, and other parties in interest, and will, among other things, allow for the continued operation of the Debtors' existing businesses~~.

 ***J.*** ***Cash Collateral Objection.*** Prepetition Administrative Agent filed its preliminary objection to the Motion [Dkt. No. 68] (the "Cash Collateral Objection").  The Prepetition Administrative Agent and ~~allow~~ the ~~Debtors to preserve value for all stakeholders,~~

including the~~other Prepetition Secured Parties~~, while the Debtors negotiate with the Prepetition Secured Parties to obtain debtor-in-possession financing and consensual use reserve all rights to challenge all findings in this Interim Order at the Further Interim Hearing or in connection with any other hearing to consider the relief requested in the Motion or otherwise.  The Debtors reserve all rights to object to and contest any and all aspects of the Cash Collateral ~~on mutually agreeable terms~~Objection at the Further Interim Hearing or in connection with any hearing to consider the relief requested in the Motion or otherwise.

**K.** ~~**J.**~~ ***Need for Immediate Entry of this Interim Order***.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The permission granted herein to use Cash Collateral (and provide adequate protection therefor) is necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtors and their estates and creditors.

**NOW THEREFORE**, based on the foregoing findings and conclusions, the Motion, the Cash Collateral Declarations and the record before this Court, including the Interim Hearing, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    ***Motion Approved.***  The ~~use of Cash Collateral is hereby authorized and approved in accordance with and subject to the terms and conditions of this Interim Order.  Any objections or other statements with respect to any of the relief~~Motion is granted as and solely to the extent set forth in this Interim Order ~~that have not been withdrawn, waived, or settled, and all reservation of rights inconsistent with this Interim Order, are hereby denied and overruled~~.

2.    ***Authorization to Use Cash Collateral***.  The Debtors are authorized to use Cash Collateral ~~during the period (the "Interim Period~~on an interim basis as set forth in the budget

9

attached hereto as **Exhibit 1** solely as shown in Week #1 and Week #2 (the "Interim Budget")
from and after the Petition Date through and including ~~the *earlier* of (a) 11:59 p.m., prevailing~~
~~Eastern Time, on the date of the Final Hearing, unless the Final Order is entered extending the~~
~~Debtors' right to use Cash Collateral, and~~October 28, 2024 ~~(b)~~ the ~~date upon which the~~
~~Prepetition Administrative Agent obtains an order of this Court providing for the termination of~~
~~the further use of Cash Collateral due to the failure by the Debtors to comply with the material~~
~~terms and conditions of this Interim Order, to operate the Debtors' businesses in the ordinary~~
~~course, and pay certain costs, fees and expenses related to the Chapter 11 Cases, in accordance~~
~~with the Interim Budget as provided herein, and as approved by any order of this Court~~ "Interim
Period").

3.      ***Interim Budget.***  The Debtors are authorized to use Cash Collateral during the
Interim Period solely in accordance with the ~~budget attached as~~ **Exhibit 1** ~~(as such budget may~~
~~be amended, modified, or supplemented in accordance with this Interim Order, the "Interim~~
~~Budget") in an amount that would not cause the Debtors to use Cash Collateral with respect to~~
~~any of the first three (3) weeks in the Interim Budget in an amount in excess of 120% of the~~
~~aggregate amount of budgeted disbursements for that week~~Interim Budget.  Any amounts listed
in the Interim Budget in Week #1 that are unused ~~in any week~~ may be carried over and used by
the Debtors in ~~any subsequent week~~Week #2 and any unused amounts within Week #1 or Week
#2 may be utilized for any other line item within ~~the week~~Week #1 or ~~subsequent week or~~
~~weeks.  The Debtors shall be permitted to file a revised Interim Budget (a "Revised Budget") on~~
~~the Court's docket subject to a three business day objection period (a "Budget Objection~~
~~Period").  If no objections are filed on the Court's docket prior to the end of such the Budget~~
~~Objection Period, such Revised Budget shall become the Interim Budget effective upon the~~

~~expiration of such period.  Any objection shall be resolved by the Debtors and the objecting party~~ ~~in good faith or by order of the Court.~~Week #2, respectively.

4.      ***Adequate Protection for the Prepetition Senior Secured Parties.***  As adequate protection of the respective interests of the Prepetition Secured Parties in any ~~Cash~~ Collateral solely for and equal in amount to any aggregate postpetition diminution in value of their respective interests in the ~~Cash~~ Collateral resulting from the Debtors' use ~~of~~, sale, lease or other disposition of Collateral, including the use of Cash Collateral and the imposition of the automatic stay (any "<u>Diminution in Value</u>"), each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted the following (collectively, the "<u>Adequate Protection Obligations</u>"), subject ~~in each case to the Carve Out~~ ~~and~~to the reservation of rights in Paragraph G(~~iv~~iii) of this Interim Order:

(a)      ***Adequate Protection Liens.***  Solely for and equal in amount to any Diminution in Value of their respective interests in the ~~Cash~~ Collateral, each of the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Secured Parties, is hereby granted replacement security interests in and liens on (all such liens and security interests, the "<u>Adequate Protection Liens</u>") all now owned or hereafter acquired assets, interests, rights, and property of any nature whatsoever in which the Debtors or their estates have an interest, including, without limitation, the Prepetition Collateral ~~and~~, all ~~post-petition~~inventory, accounts receivable, cash, negotiable instruments, documents of title, securities, deposit accounts, cash equivalents of the Debtors and other estate property ~~(subject to certain exclusions pursuant to the~~ ~~Prepetition Loan Documents) of the Debtors to the extent that Cash Collateral is used by the~~ ~~Debtors~~; *excluding*, *however*, any liens on avoidance actions under Chapter 5 of the Bankruptcy Code and the proceeds thereof, including the Debtors' claims and causes of action under sections

502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and similar statutes or common law, and any commercial tort claims (collectively, the "Avoidance Actions," which, for the avoidance of doubt, excludes the Debtors' claims or causes of action under section 549 of the Bankruptcy Code or similar state or other applicable law and the proceeds of each of the foregoing) (collectively, the "Adequate Protection Collateral" and, together with the Prepetition Collateral, collectively, the "Collateral"), which Adequate Protection Liens granted to the Prepetition Secured Parties shall be subject and subordinate to any existing third party liens or security interests in the Collateral, in each case, solely to the extent any such liens and security interests were valid, non-avoidable, properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) and, in the case of any Prepetition Collateral, were senior in priority to the Prepetition Secured Parties' respective Prepetition Liens.

(b)    ***Adequate Protection Superpriority Claims.***   Solely for and equal in amount to any Diminution in Value of the Prepetition Secured Parties' respective interests in the ~~Cash~~ Collateral, superpriority administrative expense claims, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code~~; *excluding, however*, claims in respect of the proceeds of any Avoidance Actions~~ (the "Adequate Protection Superpriority Claims"), senior to any and all other administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code.  Nothing in this Interim Order shall be deemed to grant the Prepetition Secured Parties superpriority administrative expense claims in respect of the proceeds of any Avoidance Actions; *provided* that the Prepetition Secured Parties reserve the right to assert such

claims; *provided, further*, that the Debtors reserve the right to challenge any assertion of such claims.

(c) ***Reporting Requirements.*** As additional adequate protection to the Prepetition Secured Parties, the Debtors shall provide the Prepetition Secured Parties with reasonable and customary weekly variance reporting with respect to the Interim Budget.

(d) ***Interest.*** From and after entry of this Interim Order,, including "actual to budget" reporting, collateral reporting and other reporting reasonably requested by the Prepetition Administrative Agent, on behalf of the Prepetition Secured Parties, shall receive (i) upon the entry of this Interim Order, accrued and unpaid interest due under the Prepetition Loan Documents in respect of unpaid principal outstanding thereunder (whether accrued prior to or after the Petition Date) in respect of the Prepetition Loan Documents, and (ii) thereafter, as and when due under the Prepetition Loan Documents, interest due under the Prepetition Credit Facility, in respect of unpaid principal outstanding thereunder; *provided* that the allocation of any such interest payments shall be on account of the Prepetition Secured Parties' allowed secured claim as provided in section 506 of the Bankruptcy Code.  Any interest due hereunder to the Prepetition Secured Parties shall be calculated at the non-default rates under the Prepetition Loan Documents and shall be payable in kind upon the same dates as currently required by the Prepetition Loan Documents.

(d) (e) Notwithstanding anything herein to the contrary, the Adequate Protection Obligations shall be subject to any future order of this Court, entered on notice to the Prepetition Secured Parties and subject to a hearing, that would, after finding the Prepetition Secured Parties' valid, perfected and enforceable interest in the Collateral (including as granted

herein) adequately perfected, approve the grant of adequate protection to another person or entity a lien or claim with equal or higher priority.

5.      ~~*Carve-Out.*~~  ~~As used in this Interim Order, the "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in clause (iii) of this paragraph); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in clause (iii) of this paragraph); (iii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (collectively, the "Debtor Professionals") and the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals," and together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by a Prepetition Administrative Agent of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the Prepetition Administrative Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap").~~

5.      ~~6.~~  *Modification of Automatic Stay.*  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions

14

contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

6. ~~7.~~ ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary; *provided*, *however*, that if the Chapter 11 Cases convert to cases under chapter 7 of the Bankruptcy Code, the chapter 7 trustee shall be deemed to be a party-in-interest other than the Debtors and shall not be bound by the findings in Paragraph G or any of the Debtors' stipulations contained herein.

7. ~~8.~~ ***Binding Effect.*** The terms of this Interim Order shall be valid and binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estate of any of the Debtors) from and after the entry of this Interim Order by this Court.

8. ~~9.~~ ***Headings.*** The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

9. ~~10.~~ ***Bankruptcy Rules.*** The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion, and the relief requested is necessary to avoid immediate and irreparable harm.

10. ~~11.~~ ***Necessary Action.*** The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

11.    12. ***Retention of Jurisdiction.***  The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

13.    ***Final Hearing.***  The final hearing on the Motion shall be held on _____ ___, 2024 at __:___ a.m./p.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____ ___, 2024, and shall be served on: (a) True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (b) proposed efficiency counsel for the Debtors, Glenn Agre Bergman & Fuentes LLP, 1185 Avenue of the Americas, Floor 22, New York, New York 10036 (Attn: Andrew K. Glenn, Esq. (aglenn@glennagre.com), Trevor J. Welch, Esq. (twelch@glennagre.com) and Malak S. Doss, Esq. (mdoss@glennagre.com)); (c) proposed Delaware efficiency counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Edmon L. Morton, Esq. (emorton@ycst.com) and Kenneth Enos, Esq. (kenos@ycst.com)); (d) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov)); (e) counsel to the Prepetition Lenders, Otterbourg P.C., 230 Park Avenue, New York, New York 10169 (Attn: Daniel F. Fiorillo, Esq. (dfiorillo@otterbourg.com)); and (f) counsel to any statutory committee appointed in the Chapter 11 Cases.  If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

12.    ***Further Interim Hearing.***  A further interim hearing on the Motion shall commence on October 28, 2024 at 12:30 p.m., prevailing Eastern Time.

13.    ~~14.~~ ***Notice of Entry of Interim Order.***  The Debtors shall promptly serve copies of this Interim Order to the parties that have been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to any Committee (if appointed).

14.    Nothing contained herein shall be deemed or implied as a waiver, consent or admission by any of the Prepetition Secured Parties with respect to or in connection with the use of the Cash Collateral in accordance with this Order.

15.    In the event that the Debtors request that this Court shorten notice in connection with a request by the Debtors for relief from this Order based on their reasonable determination that relief from this Order is needed on an emergency basis, then the Prepetition Secured Parties shall not oppose such request for shortened notice.

16.    In the event that any of the Prepetition Secured Parties request that this Court shorten notice in connection with a request by any of the Prepetition Secured Parties for relief from this Order based on their reasonable determination that relief from this Order is needed on an emergency basis, then the Debtors shall not oppose such request for shortened notice.

17.    Any Bankruptcy Rule or Local Bankruptcy Rule that might otherwise delay the effectiveness of this Order is hereby waived, and the terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

18.    ~~15.~~ This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

**EXHIBIT B-1**

**Proposed Cash Management Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.**, *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
|  | Related Docket No. 10 |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS AND (B) IMPLEMENT CHANGES TO THEIR CASH MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS; (II) MODIFYING CERTAIN REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE; (III) AUTHORIZING CONTINUANCE OF INTERCOMPANY TRANSACTIONS; (IV) HONORING CERTAIN RELATED PREPETITION OBLIGATIONS; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (this "Interim Order") and a Final Order under sections 105(a), 345(b), 363, 503(b), and 507(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (a) authorizing, but not directing, the Debtors (i) to maintain their existing Cash Management System, Bank Accounts, and Business Forms and (ii) implement changes to their Cash Management System in the ordinary course of business; (b) modifying certain deposit requirements under section 345(b) off the Bankruptcy Code and the U.S. Trustee Guidelines; (c) authorizing, but not directing, the continuance of Intercompany Transactions; (d) honoring certain prepetition obligations related to the Cash

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Management System and the accordance of administrative expense priority status to all Intercompany Claims arising postpetition in the ordinary course of business as a result of an Intercompany Transaction; and (e) granting related relief; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Pursuant sections 105(a) and 363 of the Bankruptcy Code, on an interim basis, the Debtors, in their discretion, are authorized, but not directed to, in the ordinary course of business, (a) designate, maintain, and continue to use any and all of their Bank Accounts in the names and with the account numbers, styles and document forms as existing or employed immediately before the Petition Date, including the accounts identified in **Exhibit D** annexed to the Motion; (b) open new bank accounts, which accounts shall be deemed a Bank Account as if it had been identified in **Exhibit D** annexed to the Motion; (c) close existing accounts consistent with the terms of any

prepetition financing agreement and postpetition financing agreement and any orders of this Court relating thereto, and the Bank is authorized to honor the Debtors' requests to close such existing accounts, including without limitation, any inactive accounts; and (d) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; *provided, however,* that the Debtors shall give 15 days' notice to the U.S. Trustee and the Bank prior to closing or opening a Bank Account; *provided further,* that the Debtors are only authorized to open new bank accounts (x) with a bank that (i) is organized under the laws of the United States of America or any state thereof, (ii) is insured by the FDIC or the Federal Savings and Loan Insurance Corporation, (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement pursuant to the U.S. Trustee's Operating Guidelines, and (iv) agrees to be bound by the terms of this Interim Order; and (y) that are designated "<u>Debtor in Possession</u>" accounts by the relevant Bank.

3.     The U.S. Trustee Guidelines are hereby modified such that the Debtors are not required to (a) close all existing Bank Accounts and open new debtor-in-possession accounts or (b) establish specific accounts for tax payments.

4.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account listed on **<u>Exhibit D</u>** to the Motion, and to the Bank at which such account is opened.

5.     In each instance in which the Debtors hold an account at a Bank that is a party to a Uniform Depository Agreement with the U.S. Trustee, as promptly as practicable and in any event no later than two business days after the date of entry of this Interim Order, the Debtors shall (a) contact each such Bank; (b) provide each such Bank with each of the Debtors' employer

identification numbers and bankruptcy case numbers; and (c) identify each of their Bank Accounts

held at the Bank as being held by a debtor in possession in a chapter 11 case.

6.      The Bank Accounts are deemed debtor in possession accounts.  The Debtors are

further authorized, but not directed, to (a) manage their cash pursuant to the Cash Management

System maintained by the Debtors before the Petition Date, including without limitation: (i) to

deposit funds in, and withdraw funds from (to the extent of available funds), the Bank Accounts

by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund

transfers, and other debits or items presented, issued, or drawn on the Bank Accounts, (ii) to pay

postpetition ordinary course bank fees and service fees in connection with the Bank Accounts, and

(iii) to perform their obligations under the documents and agreements governing the Bank

Accounts, including, without limitation, any prepetition cash management agreements or treasury

services agreements; (b) collect, concentrate, and disburse cash in accordance with the Cash

Management System; (c) to use the Cash Management System (comprising the Bank Accounts

listed in **Exhibit D** to the Motion) as the primary accounts in which the Debtors collect and

disburse cash generated by its business, satisfies financial obligations, and centrally controls and

monitors funds and available cash; and (d) make ordinary course changes to its Cash Management

System.  In connection with the ongoing use of their Cash Management System, the Debtors shall

maintain accurate and detailed records of all transfers within the Cash Management System so that

all transfers and transactions, including Intercompany Transactions, shall be adequately and

promptly documented in, and readily ascertainable from, the books and records, and distinguished

between prepetition and postpetition transactions.

7.      For the avoidance of doubt, those certain existing deposit agreements and cash

management agreements between the Debtors and the Banks shall continue to govern the

postpetition cash management relationship between the Debtors and the Banks and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, collateral and offset rights, and remedies afforded under such agreements, shall remain in full force and effect absent further order of the Court or with respect to any such agreement with the Banks (including, for the avoidance of doubt, any rights of the Banks to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or postpetition, to the extent permitted under the applicable agreement), unless the Debtors and the Banks agree otherwise, and any other legal rights and remedies afforded to the Bank under applicable law shall be preserved. The Debtors and the Banks may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business that they deem appropriate in their sole discretion, including, without limitation, closing any of the Bank Accounts or opening new bank accounts as set forth herein.

8.      In accordance with current practice and any applicable agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Bank Accounts any prepetition and postpetition cash management fees and expenses incurred by the Banks resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions, or other electronic transfers of any kind, and the Debtors are authorized, but not directed, to pay, in their sole discretion, the Bank Fees (and the Banks are authorized to debit or charge back the Bank Accounts for any such Bank Fees unless notified by the Debtors that any such Bank Fees are disputed), in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items and without need for further order of the Court.

5

9.      Notwithstanding anything to the contrary herein, this Interim Order and, to the extent entered by the Court, any order (a "Cash Collateral Order") authorizing the Debtors' use of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") shall govern the Debtors' Deposit Accounts.  Unless the Debtors' authorization to use Cash Collateral under a Cash Collateral Order terminates, the Prepetition Secured Parties shall refrain from exercising all prepetition practices and procedures for (a) the payment, collection, sweeping, or turnover of cash located in any of the Debtors' Bank Accounts or (b) the delivery of any property or proceeds of the Prepetition Collateral to the Administrative Agent or the Prepetition Lenders (each as defined in the First Day Declaration).

10.     The Debtors shall stop payment on any checks, drafts, wires, or ACH transfers drawn or issued by the Debtors before, but which did not clear the Bank Accounts prior to, the Petition Date. The Debtors are authorized to reissue such payments on a postpetition basis, subject to the entry of one or more orders(s) of the Court authorizing such payment.

11.     Each Bank is authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that notwithstanding anything herein to the contrary, the Bank is authorized to honor on a postpetition basis any wire, drafts, checks, electronic transfer requests, or other items issued or dated prior to the Petition Date, unless the Bank has received written instructions (including by electronic mail) not to honor or pay any particular prepetition wires, drafts, checks, electronic transfer requests or other items presented for payment against the

Bank Accounts, and solely to the extent that the applicable Bank Accounts contain sufficient funds. The Bank shall have no duty to inquire as to whether such payments are authorized by any order of this Court, and the Bank shall not incur, and the Bank is hereby released from, any liability to the Debtors, their estates, or any other party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for the Bank's inadvertence in honoring any wire, check, drafts, electronic transfer requests, or other item drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring or dishonoring any prepetition wires, checks, drafts, electronic transfer requests, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized the Bank to honor or dishonor such prepetition wire, check, draft, electronic transfer request or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures.

12.     The Debtors are authorized, but not directed, to continue using the Corporate Cards in the ordinary course of business and consistent with prepetition practices, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Interim Order and any other applicable interim and/or final orders of this Court.  Any Bank may rely on the representations of the Debtors with respect to its use of the Corporate Cards and the Corporate Card Program, and such Bank shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.  Any agreements existing between the Debtors and Banks governing any existing Corporate Cards, the Corporate Card Program or any other purchase card arrangements shall continue to govern the postpetition card relationship between the Debtors and the applicable Bank, and all of the provisions of such agreements,

including the termination, fee provisions, rights, benefits, collateral, and offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with such.  Notwithstanding anything to the contrary contained in the Waterfall (as defined in the Credit Agreement (as defined below)) of that certain Credit Agreement, dated as of April 20, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Credit Agreement"), by and among PNC Bank, National Association ("PNC Bank"), in its capacity as administrative agent for itself and the Lenders (in such capacity, "Administrative Agent"), the lenders from time to time party thereto ("Lenders") and the Debtors, all obligations owing to PNC Bank arising from P-Cards (as defined in the Credit Agreement), whether arising before or after the Petition Date,  shall be entitled to immediate and permanent repayment to the same extent as Obligations (as defined in the Credit Agreement) constituting amounts payable to Administrative Agent in its capacity as such in accordance with the Waterfall.

13.    In the course of providing cash management services to the Debtors, each Bank is authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

14.     Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at the Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Debtors' accounts with the Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank as service charges for the maintenance of Cash Management System, and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtors' accounts after the Petition Date, regardless of the reason such item is returned or reversed.

15.     Subject to further order of this Court, no liens on any of the Bank Accounts granted to any creditors shall take priority over the prepetition and postpetition bank fees to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors governing the Bank Accounts.

16.     Subject to the provisions of this Interim Order, the Banks are further authorized to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

17.     To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to this Interim Order.

18.     The Debtors shall serve a copy of this Interim Order on the Banks within five business days of the entry of this Interim Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

19.     To the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 30 days from the date of this Interim Order, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; provided that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from this Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the 30-day period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

20.     The Debtors are authorized to continue engaging in Intercompany Transactions by and among the Debtors and non-Debtor affiliates in the ordinary course of business consistent with the Debtors' prepetition practice, including transferring funds through the Cash Management System; provided that no Intercompany Transaction shall involve transfers from a Debtor to any non-Debtor affiliate in excess of $5,000 in the aggregate during the period between the entry of this Interim Order and entry of the Final Order.  In connection with the Intercompany Transactions, the Debtors shall continue to maintain current, accurate, and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, and accounted for on applicable intercompany accounts.   The Intercompany Claims arising postpetition relating to the Intercompany Transactions shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

21.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees payable under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of who pays the disbursement.

22.     The Debtors are authorized to pay and/or reimburse their Banks and service providers in the ordinary course of business, consistent with historical practices, for any Bank Fees arising prior to or after the Petition Date.  The Bank Fees that arise after the Petition Date shall be granted superpriority status, with priority over any and all administrative expenses of the kind specified in sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code.

23.     The Debtors are authorized, but not directed, to continue using, in the present form (or as subsequently amended in accordance with this Interim Order), the Business Forms, as well as checks and other documents related to the Cash Management System existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession; provided, that once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided further that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items as soon as reasonably practicable after entry of this Order.

24.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement,

11

contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

25. This Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

26. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

27. All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

28. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

29. The final hearing on the Motion shall be held on November 4, 2024 at 10:00 a.m., prevailing Eastern Time. Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on October 28, 2024, and shall be served on: (a) True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (b) proposed counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal St., Chicago, IL 60606 (Attn: Ron Meisler, Esq. (ron.meisler@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), One Manhattan West, 395 9th Ave., New York, NY 10001 (Attn: Evan Hill, Esq. (evan.hill@skadden.com) and Moshe Jacob, Esq. (moshe.jacob@skadden.com)), and 920 North King Street, Wilmington, Delaware 19801 (Attn: Joseph Larkin (joseph.larkin@skadden.com)); (c) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov)); (d) counsel to the Prepetition Lenders (Attn:

Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com)); and (e) counsel to any statutory committee appointed in the Chapter 11 Cases.  If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

30.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

## **EXHIBIT B-2**

## **Cash Management Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.**, *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| | Related Docket No. ——10 |

### INTERIM ORDER (I) AUTHORIZING
### THE DEBTORS TO (A) CONTINUE USE OF EXISTING
### CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND
### BUSINESS FORMS AND (B) IMPLEMENT CHANGES TO THEIR CASH
### MANAGEMENT SYSTEM IN THE ORDINARY COURSE OF BUSINESS;
### (II) MODIFYING CERTAIN REQUIREMENTS OF SECTION 345(B) OF
### THE BANKRUPTCY CODE; (III) AUTHORIZING CONTINUANCE OF
### INTERCOMPANY TRANSACTIONS; (IV) HONORING CERTAIN RELATED
### PREPETITION OBLIGATIONS; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (this "Interim Order") and a Final Order under sections 105(a), 345(b), 363, 503(b), and 507(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (a) authorizing, but not directing, the Debtors (i) to maintain their existing Cash Management System, Bank Accounts, and Business Forms and (ii) implement changes to their Cash Management System in the ordinary course of business; (b) modifying certain deposit requirements under section 345(b) off the Bankruptcy Code and the U.S. Trustee Guidelines; (c) authorizing, but not directing, the continuance of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Redline PALSR01A-#720948-v2C-TV_-_Interim_Cash_Management_Order_  and TV - Cash Management Order(150748570.10)

Intercompany Transactions; (d) honoring certain prepetition obligations related to the Cash Management System and the accordance of administrative expense priority status to all Intercompany Claims arising postpetition in the ordinary course of business as a result of an Intercompany Transaction; and (e) granting related relief; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      Pursuant sections 105(a) and 363 of the Bankruptcy Code, on an interim basis, the Debtors, in their discretion, are authorized, but not directed to, in the ordinary course of business, (a) designate, maintain, and continue to use any and all of their Bank Accounts in existence as ofthe names and with the account numbers, styles and document forms as existing or employed immediately before the Petition Date, with the same account numbers, including the accounts

identified in **Exhibit D** annexed to the Motion; (b) ~~close~~ open new bank accounts, which accounts shall be deemed a Bank Account as if it had been identified in **Exhibit D** annexed to the Motion; (c) close existing accounts consistent with the terms of any prepetition financing agreement and postpetition financing agreement and any orders of this Court relating thereto, and the Bank is authorized to honor the Debtors' requests to close such existing accounts, including~~,~~ without limitation, any inactive accounts; and (~~c~~d) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; *provided, however,* that the Debtors shall give 15 days' notice to the U.S. Trustee and the Bank prior to closing or opening a Bank Account; *provided further,* that the Debtors are only authorized to open new bank accounts (x) with a bank that (i) is organized under the laws of the United States of America or any state thereof, (ii) is insured by the FDIC~~, and~~ or the Federal Savings and Loan Insurance Corporation, (iii) has executed, or is willing to immediately execute, a Uniform Depository Agreement ~~with~~pursuant to the U.S. ~~Trustee~~Trustee's Operating Guidelines, and (iv) agrees to be bound by the terms of this Interim Order; and (y) that are designated "Debtor in Possession" accounts by the relevant ~~bank~~Bank.

3.      The U.S. Trustee Guidelines are hereby modified such that the Debtors are not required to (a) close all existing Bank Accounts and open new debtor-in-possession accounts or (b) establish specific accounts for tax payments.

4.      The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account listed on **Exhibit D** to the Motion, and to the ~~bank~~Bank at which such account is opened.

5.      In each instance in which the Debtors hold an account at a Bank that is a party to a Uniform Depository Agreement with the U.S. Trustee, as promptly as ~~possible~~practicable and in any event no later than two business days after the date of entry of this Interim Order, the Debtors shall (a) contact ~~the~~each such Bank; (b) provide ~~the~~each such Bank with each of the Debtors' employer identification numbers and bankruptcy case numbers; and (c) identify each of their ~~accounts~~Bank Accounts held at the Bank as being held by a debtor in possession in a chapter 11 case.

6.      The Bank Accounts are deemed debtor in possession accounts.  The Debtors are further authorized, but not directed, to ~~continue to use~~(a) manage their ~~existing~~cash pursuant to the Cash Management System ~~and continue to maintain and use~~ the Bank Accounts in ~~the same manner and with the same account numbers, styles, and document forms as those employed prior to~~maintained by the Debtors before the Petition Date, including~~,~~ without limitation: (~~a~~i) to deposit funds in, and withdraw funds from (to the extent of available funds), the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, and other debits or items presented, issued, or drawn on the Bank Accounts, (~~b~~ii) to pay postpetition ordinary course bank fees and service fees in connection with the Bank Accounts, and (~~c~~iii) to perform their obligations under the documents and agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements~~, and (d) to treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession~~; (b) collect, concentrate, and disburse cash in accordance with the Cash Management System; (c) to use the Cash Management System (comprising the Bank Accounts listed in **Exhibit D** to the Motion) as the primary accounts in

which the Debtors collect and disburse cash generated by its business, satisfies financial obligations, and centrally controls and monitors funds and available cash; and (d) make ordinary course changes to its Cash Management System. In connection with the ongoing use of their Cash Management System, the Debtors shall continue to maintain accurate and detailed records with respect to all prepetition and postpetition of all transfers of cashwithin the Cash Management System so that all transfers and transactions, including Intercompany Transactions, so that all transactions may be readily ascertained, traced, and recorded properly.shall be adequately and promptly documented in, and readily ascertainable from, the books and records, and distinguished between prepetition and postpetition transactions.

7.    ThoseFor the avoidance of doubt, those certain existing deposit agreements and cash management agreements ("Cash Management Agreements") between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and subject to applicable bankruptcy and other applicable law to the extent such law does not impermissibly conflict with applicable bankruptcy law, all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, collateral and offset rights, and remedies afforded under such agreements, shall remain in full force and effect absent further order of the Court or with respect to any such agreement with the Banks (including, for the avoidance of doubt, any rights of a Bankthe Banks to use funds from the Bank Accounts to remedy any overdraft of another Bank Account or other cash management obligations, whether prepetition or postpetition, to the extent permitted under the applicable agreement) except as limited by applicable bankruptcy law or as expressly limited by order of the Court.  Any, unless the Debtors and the Banks agree otherwise, and any other

Redline PALSR01A-#720948-v2C-TV_-_Interim_Cash_Management_Order_ and TV - Cash Management Order(150748570.10)

5

legal rights and remedies afforded to the ~~Banks~~Bank under applicable law shall be preserved~~, subject to applicable bankruptcy law~~. The Debtors and the Banks may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business that they deem appropriate in their sole discretion, including, without limitation, closing any of the Bank Accounts or opening new bank accounts as set forth herein.

8.      In accordance with current practice and any applicable agreement governing the Bank Accounts, the Banks are authorized to "charge back" to the Bank Accounts any prepetition and postpetition cash management fees and expenses incurred by the Banks resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, merchant services transactions, or other electronic transfers of any kind, and the Debtors are authorized, but not directed, to pay, in their sole discretion, the Bank Fees (and the Banks are authorized to debit or charge back the Bank Accounts for any such Bank Fees unless notified by the Debtors that any such Bank Fees are disputed), in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items and without need for further order of the Court.

~~8~~9.      Notwithstanding anything to the contrary herein, this Interim Order and, to the extent entered by the Court, any order (a "Cash Collateral Order") authorizing the Debtors' use of "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral") shall govern the Debtors' Deposit Accounts.  Unless the Debtors' authorization to use Cash Collateral under a Cash Collateral Order terminates, the Prepetition Secured Parties shall refrain from exercising all prepetition practices and procedures for (a) the payment,

Redline PALSR01A-#720948-v2C-TV_-_Interim_Cash_Management_Order_ and TV - Cash Management Order(150748570.10)

collection, sweeping, or turnover of cash located in any of the Debtors' Bank Accounts or (b) the delivery of any property or proceeds of the Prepetition Collateral to the Administrative Agent or the Prepetition Lenders (each as defined in the First Day Declaration).

9.     ~~Notwithstanding anything to the contrary~~ herein~~, to the extent of available funds, the Banks shall immediately release and terminate any ACH or other hold currently applicable to any funds in or payable to~~ a Bank Account ~~and remit and allow the Debtors immediate access to any and all~~ such funds. ~~Unless the Debtors' authorization to use Cash Collateral under a Cash Collateral Order terminates, the Banks shall not impose or place any further ACH or other holds on any funds in or payable to a Bank Account. In the event that a customer's receipt fails to clear, the Banks are hereby authorized to deduct the amount of such payment from any cash receipts due or other amounts payable to a Bank Account on the following business day. Notwithstanding the foregoing, the Disbursement Accounts at the BMO Bank N.A. ("BMO") ending in -0535, -3919 and -3952 (the "BMO Bank Accounts") subject to ACH pre-funding shall continue to be pre-funded in accordance with prepetition practice and BMO may implement holds on funds in the BMO Bank Accounts~~ to the extent ~~required by applicable law or Cash Management Agreements between BMO and the Debtors consistent with prepetition practice.~~

10.     The Debtors shall stop payment on any checks, drafts, wires, or ACH transfers drawn or issued by the Debtors before, but which did not clear the Bank Accounts prior to, the Petition Date. The Debtors are authorized to reissue such payments on a postpetition basis, subject to the entry of one or more orders(s) of the Court authorizing such payment.

11.     Each Bank is authorized, but not directed, to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without

interruption and in the ordinary course and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, and other electronic transfers of any kind issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that notwithstanding anything herein to the contrary, the Bank is authorized to honor on a postpetition basis any wire, drafts, checks, electronic transfer requests, or other items issued or dated prior to the Petition Date, unless the Bank has received written instructions (including by electronic mail) not to honor or pay any particular prepetition wires, drafts, checks, electronic transfer requests or other items presented for payment against the Bank Accounts, and solely to the extent that the applicable Bank Accounts contain sufficient funds. The Bank shall have no duty to inquire as to whether such payments are authorized by any order of this Court, and the Bank shall not incur, and the Bank is hereby released from, any liability to the Debtors, their estates, or any other party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for the Bank's inadvertence in honoring any wire, check, drafts, electronic transfer requests, or other item drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring or dishonoring any prepetition wires, checks, drafts, electronic transfer requests, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized the Bank to honor or dishonor such prepetition wire, check, draft, electronic transfer request or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures.

11.    The Banks are authorized without the need for further order of this Court to, in the ordinary course of business, (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a claim; and (c) debit the Bank Accounts for: (i) all undisputed prepetition and postpetition amounts outstanding, if any, owed to any Bank as service charges for the maintenance of the Cash Management System; (ii) all checks drawn on the Debtors' Bank Accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (iii) all checks or other items deposited in one of the Debtors' Bank Accounts with such Bank prior to the Petition Date which have not been dishonored or returned unpaid for any reason including, but not limited to, dishonored checks, wire transfers, drafts, ACH Payments (credits or debits) or other electronic funds transfers or debits and any and all obligations, chargebacks, returns, or liabilities, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date; _provided, however_, that no checks, drafts, wires, or electronic fund transfers (excluding any electronic fund transfers that the Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored, unless (x) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors and (y) supported by sufficient funds in the Bank Account in question.

Redline PALSR01A-#720948-v2C-TV_-_Interim_Cash_Management_Order_ and TV - Cash Management Order(150748570.10)

12.    Any of the Debtors' Banks may rely on the direction and representations of the Debtors with respect to whether any check, item, transfer, or other payment order dated, drawn or issued by the Debtors prior to, on or subsequent to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for herein. The Banks shall not be deemed in violation of this Interim Order and shall have no liability for relying on such direction and representations by the Debtors or honoring any Disbursement that is subject to this Interim Order either (a) at the direction of the Debtors to honor such prepetition Disbursement, (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake. To the extent that the Debtors direct that any Disbursement be dishonored or the Banks inadvertently dishonor any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court. For the avoidance of doubt, no prepetition check, drafts, wires, ACH, electronic fund transfer, payment order, or other items presented, issued, or drawn on the Bank Accounts shall be honored absent order of this Court permitting such prepetition claim to be paid.

13 12.    The Debtors are authorized, but not directed, to continue using the Corporate Cards in the ordinary course of business and consistent with prepetition practices, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Interim Order and any other applicable interim and/or final orders of this Court. Any Bank may rely on the representations of the Debtors with respect to its use of the Corporate Cards and the Corporate Card Program, and such Bank shall not have any liability to any party for relying on such representations by a Debtor as provided for herein. Any

agreements existing between the Debtors and Banks governing any existing Corporate Cards, the Corporate Card Program or any other purchase card arrangements shall continue to govern the postpetition card relationship between the Debtors and the applicable Bank, and all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, collateral, and offset and termination rights, and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with such.  Notwithstanding anything to the contrary contained in the Waterfall (as defined in the Credit Agreement (as defined below)) of that certain Credit Agreement, dated as of April 20, 2018 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Credit Agreement"), by and among PNC Bank, National Association ("PNC Bank"), in its capacity as administrative agent for itself and the Lenders (in such capacity, "Administrative Agent"), the lenders from time to time party thereto ("Lenders") and the Debtors, all obligations owing to PNC Bank arising from P-Cards (as defined in the Credit Agreement), whether arising before or after the Petition Date,  shall be entitled to immediate and permanent repayment to the same extent as Obligations (as defined in the Credit Agreement) constituting amounts payable to Administrative Agent in its capacity as such in accordance with the Waterfall.

13.    In the course of providing cash management services to the Debtors, each Bank is authorized, without further order of the Court, to deduct the applicable fees and expenses associated with the nature of the deposit and cash management services rendered to the Debtors, whether arising prepetition or postpetition, from the appropriate accounts of the Debtors, and further, to charge back to, and take and apply reserves from, the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned

items that result from ACH transactions, wire transfers, merchant services transactions or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers.

14.    Each Bank is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of the Court for: (a) all checks drawn on the Debtors' accounts which are cashed at the Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Debtors' accounts with the Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date, (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Bank as service charges for the maintenance of Cash Management System, and (d) all reversals, returns, refunds, and chargebacks of checks, deposited items, and other debits credited to Debtors' accounts after the Petition Date, regardless of the reason such item is returned or reversed.

15.    Subject to further order of this Court, no liens on any of the Bank Accounts granted to any creditors shall take priority over the prepetition and postpetition bank fees to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors governing the Bank Accounts.

1416.    Subject to the provisions of this Interim Order, the Banks are further authorized to (a) honor the Debtors' directions with respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions,

and the Banks shall have no liability to any party for relying on such representations or instructions.

15~~17~~.    To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to this Interim Order.

16~~18~~.    The Debtors shall serve a copy of this Interim Order on the Banks within five business days of the entry of this Interim Order, and upon any bank at which the Debtors open a new bank account, immediately upon the opening of such new account.

17~~19~~.    To the extent any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 30 days from the date of this Interim Order, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; provided that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from this Court to the extent that an agreement cannot be reached ~~within that time period (or such other period as agreed to by the.~~   The Debtors ~~and~~may obtain a further extension of the 30-day period referenced above by written stipulation with the U.S. Trustee and ~~submitted to this Court under certification of counsel)~~filing such stipulation on the Court's docket without the need for further Court order.

18~~20~~.    The Debtors are authorized to continue engaging in Intercompany Transactions by and among the Debtors and non-Debtor affiliates in the ordinary course of business consistent with the Debtors' prepetition practice, including transferring funds through the Cash

Management System; provided that no Intercompany Transaction shall involve transfers from a Debtor to any non-Debtor affiliate in excess of $5,000 in the aggregate during the period between the entry of this Interim Order and entry of the Final Order.  In connection with the Intercompany Transactions, the Debtors shall continue to maintain current, accurate, and detailed records with respect to all transfers of cash so that all Intercompany Transactions may be readily ascertained, traced, and accounted for on applicable intercompany accounts.  The Intercompany Claims arising postpetition relating to the Intercompany Transactions shall have administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

19<u>21</u>.    Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees payable under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of who pays the disbursement.

20<u>22</u>.    The Debtors are authorized to pay and/or reimburse their Banks and service providers in the ordinary course of business, <u>consistent with historical practices,</u> for any Bank Fees arising prior to or after the Petition Date.  The Bank Fees that arise after the Petition Date shall be granted superpriority status, with priority over any and all administrative expenses of the kind specified in sections 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code.

21<u>23</u>.    The Debtors are authorized, but not directed, to<u>,</u> continue to use their existing Business Forms without alteration or change and without<u>using, in the present form (or as subsequently amended in accordance with this Interim Order), the Business Forms, as well as checks and other documents related to the Cash Management System existing immediately before the Petition Date without reference to the Debtors' status as debtors in possession; provided, that once the Debtors' existing checks have been used, the Debtors shall, when</u>

reordering checks, require the designation "Debtor in Possession" ~~imprinted upon them;~~ ~~*provided, however*, that to the extent reasonably practicable, subsequently printed checks, including those printed electronically as needed, will bear the designation~~and the corresponding bankruptcy case number on all checks; provided further that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession~~.~~" legend and the bankruptcy case number on such items as soon as reasonably practicable after entry of this Order.

22.    ~~Nothing in this Interim Order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under section 365 of the Bankruptcy Code. Except with respect to the Intercompany Transactions, nothing herein nor any actions taken hereunder shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.~~

24.    Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder, or (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code.

~~23~~25.    This Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

2426.  Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

2527.  All time periods set forth in this Interim Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

2628.  The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

2729.  The final hearing on the Motion shall be held on November 4, 2024 at 10:00 a.m., prevailing Eastern Time.  Any objections or responses to the entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on October 28, 2024, and shall be served on: (a) True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (b) proposed counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 S. Canal St., Chicago, IL 60606 (Attn: Ron Meisler, Esq. (ron.meisler@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), One Manhattan West, 395 9th Ave., New York, NY 10001 (Attn: Evan Hill, Esq. (evan.hill@skadden.com) and Moshe Jacob, Esq. (moshe.jacob@skadden.com)), and 920 North King Street, Wilmington, Delaware 19801 (Attn: Joseph Larkin (joseph.larkin@skadden.com)); (c) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Benjamin A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov)); (d) counsel to the prepetitionPrepetition Lenders (Attn: Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com)); and (e) counsel to any statutory committee

appointed in the Chapter 11 Cases.  If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

2830.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.