**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| Debtors.[1] | **(Jointly Administered)** |
|  | Related Docket Nos. 7, 98, 108, 266 |

**CERTIFICATION OF COUNSEL REGARDING MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF (A) CRITICAL VENDORS, (B) FOREIGN VENDORS, AND (C) LIEN CLAIMANTS; AND (II) GRANTING RELATED RELIEF**

The undersigned proposed counsel for True Value Company, L.L.C. and certain of its affiliates (collectively, the "Debtors") hereby certifies as follows:

1.      On October 14, 2024, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, and (C) Lien Claimants; and (II) Granting Related Relief* [Docket No. 7] (the "Motion") with the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      On October 17, the Court entered an order approving the Motion on an interim basis [Docket No. 98] (the "Interim Order").

3.      The notice of the Motion and hearing for the final approval of the Motion [Docket No. 108] established October 28, 2024 at 4:00 p.m. (Prevailing Eastern Time) as the deadline

---

[1]    The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

(the "Objection Deadline") for receipt of objections to the approval of the Motion on a final basis, which Objection Deadline was extended for the Official Committee of Unsecured Creditors until October 30, 2024 at 4:00 p.m. (Prevailing Eastern Time).

4. No answer, objection, or other responsive pleadings to the approval of the Motion has been received as of the date hereof, and the Court's docket has been reviewed and no answer, objection, or other responsive pleading to the approval of the Motion appears thereon.

5. On November 1, the Debtors filed the *Certification of Counsel Regarding Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of (A) Critical Vendors, (B) Foreign Vendors, and (C) Lien Claimants; and (II) Granting Related Relief* [Docket No. 266] (the "November 1 Certification")

6. Counsel to the Committee provided informal comments to the proposed final order that was attached to the Motion as Exhibit B (the "Proposed Final Order"), which were incorporated into the revised proposed Final Order (the "Revised Proposed Final Order") attached to the November 1 Certification as Exhibit A.  Counsel to the Prepetition Lenders subsequently provided additional information comments to the Proposed Final Order, which have been incorporated into the further revised Final Order (the "Further Revised Proposed final Order") attached hereto as **Exhibit A**.

7. For the Court's convenience, a redline showing changes to the Revised Proposed Final Order is attached hereto as **Exhibit B**.  Another additional redline showing cumulative changes to the Proposed Final Order filed with the Motion, which also reflects certain revisions incorporated in the Interim Order and other clarifying changes, is attached hereto as **Exhibit C**.

8. Accordingly, the Debtors respectfully request that the Court enter the Further Revised Proposed Final Order attached hereto as **Exhibit A** at its earliest convenience.

Dated:  November 4, 2024
Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Joseph O. Larkin*
Joseph O. Larkin (I.D. No. 4883)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com
Jason.Liberi@skadden.com

- and –

Ron E. Meisler (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0705
Ron.Meisler@skadden.com
Jennifer.Madden@skadden.com

- and –

Robert D. Drain (admitted *pro hac vice*)
Evan A. Hill (admitted *pro hac vice*)
Moshe S. Jacob (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Robert.Drain@skadden.com
Evan.Hill@skadden.com
Moshe.Jacob@skadden.com

*Proposed Counsel to Debtors and Debtors in Possession*

## EXHIBIT A

**Further Revised Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C., *et al.*,** | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| | Related Docket Nos. 7, 98, 266 |

### FINAL ORDER (I) AUTHORIZING
### THE DEBTORS TO PAY CERTAIN PREPETITION
### CLAIMS OF (A) CRITICAL VENDORS, (B) FOREIGN VENDORS,
### AND (C) LIEN CLAIMANTS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for an Interim Order and a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to pay the fixed, liquidated, and undisputed prepetition claims of Critical Vendors, Foreign Vendors, and Lien Claimants and (ii) granting related relief, all as more fully described in the Motion; and upon consideration of the First Day Declaration and the Interim Order entered on October 17, 2024; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

notice of the Motion having been given under the particular circumstances; and it appearing that

no other or further notice is necessary; and it appearing that the relief requested in the Motion is

in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and

after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not required, to pay, in their sole

discretion, without further order of this Court, the Critical Vendor Claims, the Foreign Vendor

Claims, and the Lien Claims in amounts not to exceed $50.5 million in the aggregate absent

further order of the Court.

3.      The form of Trade Agreement attached as **Exhibit A** to this Final Order is hereby

approved. The Debtors are authorized, but not directed, to enter into Trade Agreements. No

Trade Agreement will (a) effect a novation of any existing agreements between the Critical

Vendor and the Debtors, (b) modify any of the conditions, covenants, representations and

warranties, or other terms of any such existing agreements, other than as agreed between the

Debtors and the Critical Vendor, (c) constitute an assumption or rejection of any executory

contract or prepetition or postpetition agreement, or (d) change the nature or priority of the

underlying Critical Vendor Claims or entitle the Critical Vendor to treatment of its claim as an

Administrative Expense Claim.  With respect to individual Critical Vendor Claims, Foreign

Vendor Claims, and Lien Claims with a face value that exceeds $250,000, the Debtors shall

provide the Official Committee of Unsecured Creditors (the "Committee") with one (1) business

day notice before modifying or amending the form of Trade Agreement with respect to, or

settling for less than the face amount of, such claims. The Debtors shall provide counsel to the

Committee with copies of all executed Trade Agreements on a confidential and professionals' eyes-only basis by the third business day of each week, beginning with the week following entry of this Final Order (or on such other delivery schedule as may mutually be agreed upon).

4.     Any Critical Vendor that accepts payment pursuant to the authority granted in this Final Order agrees to supply goods and/or services to the Debtors postpetition on Customary Trade Terms or on such other trade terms as mutually agreed to by the Debtors and such Critical Vendor; *provided, however*, that the Debtors' inability to agree on Customary Trade Terms shall not preclude them from paying a Critical Vendor Claim if the Debtors determine, in the reasonable exercise of their business judgment, that such payment is necessary to the Debtors' operations.

5.     If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms, or on such other terms as mutually agreed to by the Debtors and such Critical Vendor following receipt of any payment on account of its Critical Vendor Claim, then the Debtors may, in their sole discretion with written notice to the affected Critical Vendor, require the breaching Critical Vendor to repay any amounts paid to it pursuant to this Order or declare any payments made to such Critical Vendor on account of its Critical Vendor Claim to have been on account of any a (i) 503(b)(1) claim, (ii) 503(b)(9) Claim, or (iii) general unsecured prepetition claim, without giving effect to any rights of setoff or reclamation; provided, however, that a Critical Vendor shall have five (5) business days from receipt of the Debtors' written notice to dispute or respond to such notice and reinstate the supply of goods/and or services. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against any breaching Critical Vendor or of a Critical Vendor's rights, claims and defenses with respect thereto.

6.    As a further incentive to inducing Trade Vendors to agree to critical vendor status, the Debtors may, with the consent of the Committee, provide additional consideration to such critical vendor (including through the settlement or waiver of certain claims) without further Order of the Court.

7.    The Debtors shall maintain a matrix/schedule of amounts paid under the terms and conditions of this Final Order (the "Critical Vendor Matrix"), including the following information: (i) the amount of the payment; (ii) the priority/classification of the payment; and (iii) any remaining balance owed and the priority/classification of such balance.  The Debtors shall provide a copy of such Critical Vendor Matrix on a confidential and professionals' eyes-only basis to counsel to the Prepetition Administrative Agent and the Committee every fourteen (14) days following entry of this Final Order (or on such other delivery schedule as may mutually be agreed to by the Prepetition Administrative Agent and the Committee). The Debtors shall also provide a copy of the Critical Vendor Matrix to the United States Trustee upon request.

8.    All Banks are (a) authorized and directed to receive, process, honor and pay any and all prepetition and postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Critical Vendor Claims, whether presented before, on, or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Critical Vendor Claims.  The Banks shall rely on the directions and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Final Order, and no such Bank shall have any liability to any party for relying on such directions and representations by the Debtors as provided for in this Final Order.

9.      To the extent the Debtors have not yet sought to remit payment on account of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims.

10.     Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Final Order.

11.     Nothing in the Motion or this Final Order or the relief granted (including any actions taken or payments made by the Debtors pursuant thereto) shall be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' or any other party in interest's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim or other obligation; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

13.     All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

**Exhibit A**

**Form of Trade Agreement**

_____, 20___

TO:    **[Critical Vendor/Service Provider]**
             **[Name]**
             **[Address]**

Dear Valued Supplier/Service Provider:

As you are aware, True Value Company, L.L.C. and certain of its affiliates (together, the "Debtors") filed voluntary petitions (the "Chapter 11 Cases") for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on [ ], 2024 (the "Petition Date"). On the Petition Date, in recognition of the importance of its relationship with vendors and suppliers and its desire that the Chapter 11 Cases have as little effect on such parties as possible, the Debtors requested the Bankruptcy Court's approval to pay the prepetition claims of certain critical vendors and suppliers. On [_], 2024, the Bankruptcy Court entered an interim order (the "Order") authorizing the Debtors, under certain conditions, to pay the prepetition claims, in accordance with the terms of the Order, of certain trade creditors that agree to the terms set forth below and agree to be bound by the terms of the Order. A copy of the Order is enclosed for your reference. The Debtors have asked the Bankruptcy Court to schedule a final hearing and thereafter grant the relief provided in the Order on a final basis.

Under the Order, in order to receive payment of its prepetition claim, each selected trade creditor must agree to continue to supply goods and/or services to the Debtors based on "Customary Trade Terms." In the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), which were most favorable to the Debtors and in effect between such trade creditor and the Debtors on a historical basis for the period within 180 days of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such trade creditor.

For purposes of administering this trade program, as authorized by the Bankruptcy Court and in accordance with the terms of the Order, the Debtors and **[Name of Trade Vendor]** agree as follows (the "Agreement"):

    (a)    The estimated balance (net of any setoffs, credits or discounts) owed by the Debtors to **[Name of Trade Vendor]** as of the Petition Date is $_____ (the "Trade Claim"). Your Trade Claim does not necessarily constitute a claim allowed by the Bankruptcy Court in the Chapter 11 Cases, and signing this Trade Agreement does not excuse you from any requirement of filing a proof of claim in the Chapter 11 Cases for any unpaid Trade Claim balance.

    (b)    The Debtors shall pay $_____towards the Trade Claim (the "Payment") within 10 days of execution of this agreement by wire transfer at the instructions attached hereto as **Exhibit B**.

    (c)    **[Name of Trade Vendor]** agrees to supply goods/services to the Debtors in accordance with the Customary Trade Terms, and the Debtors agree to pay **[Name of Trade Vendor]** in accordance with such Customary Trade Terms. [For purposes of this Agreement, Customary Trade Terms consist of those terms provided for in the agreement attached hereto as **Exhibit A**.]

    (d)    The open trade balance or credit line, if any, that **[Name of Trade Vendor]** may agree to extend to the Debtors for shipment of postpetition goods/provision of postpetition services is $    .

    (e)    In consideration for the payment in full of the Trade Claim, you agree not to file or otherwise assert against the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien"), claim for reclamation ("Reclamation Claim"), claim under Bankruptcy Code section 503(b)(9) (a "503(b)(9) Claim"), any similar priority claim under the Bankruptcy Code or other statute (a "Priority Claim"), regardless of the statute or other legal authority upon which such Lien, Reclamation Claim, 503(b)(9) Claim, Priority Claim may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date. Upon Payment, to the extent you have already obtained or otherwise asserted such a Lien, Reclamation Claim, 503(b)(9) Claim, Priority Claim, you shall take (at your own expense) whatever actions are necessary to release such Lien or withdraw such Reclamation Claim, 503(b)(9) Claim, or Priority Claim.

       Your execution of this Agreement and return of the same to the Debtors constitutes an agreement by **[Name of Trade Vendor]** and the Debtors:

1.    to be bound by the Customary Trade Terms and, subject to the reservations set forth in the Order, to the amount of the Trade Claim set forth above;

2.    that [**Name of Trade Vendor**] will continue to supply the Debtors with goods and/or services pursuant to the Customary Trade Terms and that the Debtors will pay for such goods and/or services in accordance with the Customary Trade Terms (as modified herein);

3.    that **[Name of Trade Vendor]** has reviewed the terms and provisions of the Order and that it consents to the bound by such terms;

4.    that **[Name of Trade Vendor]** reserves, subject to this Agreement, rights and claims to seek payment for any unpaid Trade Claim balance or any invoice arising after the Petition Date that remains unpaid;

5.    that if [**Name of Trade Vendor**] refuses to supply goods and/or services to the Debtors on Customary Trade Terms, or on such other terms as mutually agreed to by

[**Name of Trade Vendor**] and the Debtors following [**Name of Trade Vendor**]'s receipt of any payment on account of [**Name of Trade Vendor**]'s Trade Claim, then the Debtors may, in their sole discretion with written notice to [**Name of Trade Vendor**], require [**Name of Trade Vendor**] to return any Payments paid to [**Name of Trade Vendor**] pursuant to the Order or declare any Payments made to [**Name of Trade Vendor**] on account of [**Name of Trade Vendor**]'s Trade Claim to have been on account of any a (i) 503(b)(1) claim, (ii) 503(b)(9) Claim, or (iii) general unsecured prepetition claim, without giving effect to any rights of setoff or reclamation; provided however, that [**Name of Trade Vendor**] shall have five (5) business days from receipt of the Debtors' written notice to dispute or respond to such notice and reinstate the supply of goods and/or services. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against [**Name of Trade Vendor**] or [**Name of Trade Vendor**]'s rights, claims and defenses with respect thereto.

6.      that if the Debtors shall be in default under this Agreement, [**Name of Trade Vendor**] shall have no obligation to supply goods and/or services to the Debtors on Customary Trade Terms (as modified herein) until the Debtors cure such default and [**Name of Trade Vendor**] shall have the right to terminate this Agreement upon written notice (notice via email is sufficient) to the Debtors setting forth the Debtors' defaults hereunder (which the Debtors shall have the right to dispute) and the Debtors' failure to cure such default within five (5) business days of such notice, in which event [**Name of Trade Vendor**] is and shall be entitled to retain all sums paid to it hereunder on account of its Trade Claim; and

7.      entry into this Trade Agreement shall not (a) effect a novation of any existing agreements between [**Name of Trade Vendor**] and the Debtors, (b) modify any of the conditions, covenants, representations and warranties, or other terms of any such existing agreements, other than as agreed between the Debtors and [**Name of Trade Vendor**], (c) constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement, or (d) change the nature or priority of [**Name of Trade Vendor**]'s underlying claim(s) or entitle [**Name of Trade Vendor**] to treatment of its claim(s) as an Administrative Expense Claim(s).

The Debtors and [**Name of Trade Vendor**] also hereby agree that any dispute with respect to this Agreement, the Order and/or [**Name of Trade Vendor**]'s participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call [**Contact Person**] at (_) ___-____:

Very truly yours,

True Value Company, L.L.C.


By:_____ Name: [●]
Title: [●]

Agreed and Accepted by:

**[Name of Trade Vendor]**

By:_____
       Name: **[Name]**
       Title: **[Title]**

Dated: _____, 2024

**<u>EXHIBIT B</u>**

**Redline of Further Revised Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| | Related Docket Nos. 7, 98, 266 |

### FINAL ORDER (I) AUTHORIZING
### THE DEBTORS TO PAY CERTAIN PREPETITION
### CLAIMS OF (A) CRITICAL VENDORS, (B) FOREIGN VENDORS,
### AND (C) LIEN CLAIMANTS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for an Interim Order and a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to pay the fixed, liquidated, and undisputed prepetition claims of Critical Vendors, Foreign Vendors, and Lien Claimants and (ii) granting related relief, all as more fully described in the Motion; and upon consideration of the First Day Declaration and the Interim Order entered on October 17, 2024; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

notice of the Motion having been given under the particular circumstances; and it appearing that

no other or further notice is necessary; and it appearing that the relief requested in the Motion is

in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and

after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not required, to pay, in their sole

discretion, without further order of this Court, the Critical Vendor Claims, the Foreign Vendor

Claims, and the Lien Claims in amounts not to exceed $50.5 million in the aggregate absent

further order of the Court.

3.      The form of Trade Agreement attached as **<u>Exhibit A</u>** to this Final Order is hereby

approved. The Debtors are authorized, but not directed, to enter into Trade Agreements. No

Trade Agreement will (a) effect a novation of any existing agreements between the Critical

Vendor and the Debtors, (b) modify any of the conditions, covenants, representations and

warranties, or other terms of any such existing agreements, other than as agreed between the

Debtors and the Critical Vendor, (c) constitute an assumption or rejection of any executory

contract or prepetition or postpetition agreement, or (d) change the nature or priority of the

underlying Critical Vendor Claims or entitle the Critical Vendor to treatment of its claim as an

Administrative Expense Claim.  With respect to individual Critical Vendor Claims, Foreign

Vendor Claims, and Lien Claims with a face value that exceeds $250,000, the Debtors shall

provide the Official Committee of Unsecured Creditors (the "<u>Committee</u>") with one (1) business

day notice before modifying or amending the form of Trade Agreement with respect to, or

Redline TV - Critical Vendors Final Order 2475318v2C and TV - Critical Vendors Final Order
2475318v2D 11/04/2024 2:05:15 AM

2

settling for less than the face amount of, such claims. The Debtors shall provide counsel to the Committee with copies of all executed Trade Agreements on a confidential and professionals' eyes-only basis by the third business day of each week, beginning with the week following entry of this Final Order (or on such other delivery schedule as may mutually be agreed upon).

4.      Any Critical Vendor that accepts payment pursuant to the authority granted in this Final Order agrees to supply goods and/or services to the Debtors postpetition on Customary Trade Terms or on such other trade terms as mutually agreed to by the Debtors and such Critical Vendor; *provided, however*, that the Debtors' inability to agree on Customary Trade Terms shall not preclude them from paying a Critical Vendor Claim if the Debtors determine, in the reasonable exercise of their business judgment, that such payment is necessary to the Debtors' operations.

5.      If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms, or on such other terms as mutually agreed to by the Debtors and such Critical Vendor following receipt of any payment on account of its Critical Vendor Claim, then the Debtors may, in their sole discretion with written notice to the affected Critical Vendor, require the breaching Critical Vendor to repay any amounts paid to it pursuant to this Order or declare any payments made to such Critical Vendor on account of its Critical Vendor Claim to have been on account of any a (i) 503(b)(1) claim, (ii) 503(b)(9) Claim, or (iii) general unsecured prepetition claim, without giving effect to any rights of setoff or reclamation; provided, however, that a Critical Vendor shall have five (5) business days from receipt of the Debtors' written notice to dispute or respond to such notice and reinstate the supply of goods/and or services. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other

Redline TV - Critical Vendors Final Order 2475318v2C and TV - Critical Vendors Final Order 2475318v2D 11/04/2024 2:05:15 AM

3

appropriate remedies against any breaching Critical Vendor or of a Critical Vendor's rights, claims and defenses with respect thereto.

6.     As a further incentive to inducing Trade Vendors to agree to critical vendor status, the Debtors may, with the consent of the Committee, provide additional consideration to such critical vendor (including through the settlement or waiver of certain claims) without further Order of the Court.

67.     The Debtors shall maintain a matrix/schedule of amounts paid under the terms and conditions of this Final Order (the "Critical Vendor Matrix"), including the following information: (i) the amount of the payment; (ii) the priority/classification of the payment; and (iii) any remaining balance owed and the priority/classification of such balance.  The Debtors shall provide a copy of such Critical Vendor Matrix on a confidential and professionals' eyes-only basis to counsel to the Prepetition Administrative Agent and the Committee every fourteen (14) days following entry of this Final Order (or on such other delivery schedule as may mutually be agreed to by the Prepetition Administrative Agent and the Committee). The Debtors shall also provide a copy of the Critical Vendor Matrix to the United States Trustee upon request.

78.     All Banks are (a) authorized and directed to receive, process, honor and pay any and all prepetition and postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Critical Vendor Claims, whether presented before, on, or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Critical Vendor Claims.  The Banks shall rely on the directions and representations of the Debtors as to which checks and fund transfers should be

Redline TV - Critical Vendors Final Order 2475318v2C and TV - Critical Vendors Final Order 2475318v2D 11/04/2024 2:05:15 AM

4

honored and paid pursuant to this Final Order, and no such Bank shall have any liability to any party for relying on such directions and representations by the Debtors as provided for in this Final Order.

89.    To the extent the Debtors have not yet sought to remit payment on account of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims.

910.    Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Final Order.

1011.    Nothing in the Motion or this Final Order or the relief granted (including any actions taken or payments made by the Debtors pursuant thereto) shall be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' or any party in interest's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim or other obligation; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

1112.    Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

1213.    All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

Redline TV - Critical Vendors Final Order 2475318v2C and TV - Critical Vendors Final Order 2475318v2D 11/04/2024 2:05:15 AM

5

1314.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

Redline TV - Critical Vendors Final Order 2475318v2C and TV - Critical Vendors Final Order 2475318v2D 11/04/2024 2:05:15 AM

6

14~~15~~.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Redline TV - Critical Vendors Final Order 2475318v2C and TV - Critical Vendors Final Order 2475318v2D 11/04/2024 2:05:15 AM

7

**Exhibit A**

**Form of Trade Agreement**

| Summary report:<br>Litera Compare for Word 11.7.0.54 Document comparison done on<br>11/4/2024 2:05:15 AM | |
|---|---|
| **Style name:** Option 3b (Opt 3 + No Format) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://NYCSR03A/2475318/2C | |
| **Description:** TV - Critical Vendors Final Order | |
| **Modified DMS:** dm://NYCSR03A/2475318/2D | |
| **Description:** TV - Critical Vendors Final Order | |
| **Changes:** | |
| Add | 11 |
| Delete | 9 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 20 |

## EXHIBIT C

**Cumulative Redline of Further Revised Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.[1]** | **(Jointly Administered)** |
| | Related Docket Nos. 7, 98, 266 |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS OF (A) CRITICAL VENDORS, (B) FOREIGN VENDORS,
AND (C) LIEN CLAIMANTS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for an Interim Order and a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to pay the fixed, liquidated, and undisputed prepetition claims of Critical Vendors, Foreign Vendors, and Lien Claimants and (ii) granting related relief, all as more fully described in the Motion; and upon consideration of the First Day Declaration and the Interim Order entered on October 17, 2024; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

notice of the Motion having been given under the particular circumstances; and it appearing that

no other or further notice is necessary; and it appearing that the relief requested in the Motion is

in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and

after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not required, to pay, in their sole

discretion, without further order of this Court, the Critical Vendor Claims, the Foreign Vendor

Claims, and the Lien Claims in amounts not to exceed $50.5 million in the aggregate absent

further order of the Court.

3.      The form of Trade Agreement attached as **Exhibit** ~~C to the Motion~~**A to this Final

Order** is hereby approved. The Debtors are authorized, but not directed, to enter into Trade

Agreements. No Trade Agreement will (a) effect a novation of any existing agreements between

the Critical Vendor and the Debtors, (b) modify any of the conditions, covenants, representations

and warranties, or other terms of any such existing agreements, other than as agreed between the

Debtors and the Critical Vendor, (c) constitute an assumption or rejection of any executory

contract or prepetition or postpetition agreement, or (d) change the nature or priority of the

underlying Critical Vendor Claims or entitle the Critical Vendor to treatment of its claim as an

Administrative Expense Claim.  With respect to individual Critical Vendor Claims, Foreign

Vendor Claims, and Lien Claims with a face value that exceeds $250,000, the Debtors shall

provide the Official Committee of Unsecured Creditors (the "Committee") with one (1) business

day notice before modifying or amending the form of Trade Agreement with respect to, or

settling for less than the face amount of, such claims. The Debtors shall provide counsel to the Committee with copies of all executed Trade Agreements on a confidential and professionals' eyes-only basis by the third business day of each week, beginning with the week following entry of this Final Order (or on such other delivery schedule as may mutually be agreed upon).

4.      Any Critical Vendor that accepts payment pursuant to the authority granted in this Final Order agrees to supply goods and/or services to the Debtors postpetition on Customary Trade Terms or on such other trade terms as mutually agreed to by the Debtors and such Critical Vendor; *provided, however*, that the Debtors' inability to agree on Customary Trade Terms shall not preclude them from paying a Critical Vendor Claim if the Debtors determine, in the reasonable exercise of their business judgment, that such payment is necessary to the Debtors' operations.

5.      If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms, or on such other terms as mutually agreed to by the Debtors and such Critical Vendor, following receipt of any payment on account of its Critical Vendor Claim, then the Debtors may, in their sole discretion with written notice to the affected Critical Vendor, require the breaching Critical Vendor to repay any amounts paid to it pursuant to this Order or declare any payments made to such Critical Vendor on account of its Critical Vendor Claim to have been on account of any a (i) 503(b)(1) claim, (ii) 503(b)(9) Claim, ~~Priority Claim, or Administrative Expense Claim~~or (iii) general unsecured prepetition claim, without giving effect to any rights of setoff or reclamation; provided, however, that a Critical Vendor shall have five (5) business days from receipt of the Debtors' written notice to dispute or respond to such notice and reinstate the supply of goods/and or services. Nothing herein shall constitute a waiver of the

Debtors' rights to seek damages or other appropriate remedies against any breaching Critical Vendor or of a Critical Vendor's rights, claims and defenses with respect thereto.

6.      As a further incentive to inducing Trade Vendors to agree to critical vendor status, the Debtors may, with the consent of the Committee, provide additional consideration to such critical vendor (including through the settlement or waiver of certain claims) without further Order of the Court.

7.      The Debtors shall maintain a matrix/schedule of amounts paid under the terms and conditions of this Final Order (the "Critical Vendor Matrix"), including the following information: (i) the amount of the payment; (ii) the priority/classification of the payment; and (iii) any remaining balance owed and the priority/classification of such balance.  The Debtors shall provide a copy of such Critical Vendor Matrix on a confidential and professionals' eyes-only basis to counsel to the Prepetition Administrative Agent and the Committee every fourteen (14) days following entry of this Final Order (or on such other delivery schedule as may mutually be agreed to by the Prepetition Administrative Agent and the Committee). The Debtors shall also provide a copy of the Critical Vendor Matrix to the United States Trustee upon request.

68.      All Banks are (a) authorized and directed to receive, process, honor and pay any and all prepetition and postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Critical Vendor Claims, whether presented before, on, or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Critical Vendor Claims.  The Banks shall rely on the directions and representations of the Debtors as to which checks and fund transfers should be

honored and paid pursuant to this Final Order, and no such Bank shall have any liability to any party for relying on such directions and representations by the Debtors as provided for in this Final Order.

79. To the extent the Debtors have not yet sought to remit payment on account of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims.

810. Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Final Order.

911. Nothing in the Motion or this Final Order or the relief granted (including any actions taken or payments made by the Debtors pursuant thereto) shall be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' or any other party in interest's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim or other obligation; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

1012. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

1113. All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

1214.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

*13*15.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

**Exhibit A**

**Form of Trade Agreement**

_____, ~~20~~ 20__

TO:     **[Critical Vendor/Service Provider]**
        **[Name]**
        **[Address]**

Dear Valued Supplier/Service Provider:

  As you are aware, True Value Company, L.L.C. and certain of its affiliates (together, the "Debtors") filed voluntary petitions (the "Chapter 11 Cases") for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") on [_], 2024 (the "Petition Date"). On the Petition Date, in recognition of the importance of its relationship with vendors and suppliers and its desire that the Chapter 11 Cases have as little effect on such parties as possible, the Debtors requested the Bankruptcy Court's approval to pay the prepetition claims of certain critical vendors and suppliers. On [_], 2024, the Bankruptcy Court entered an interim order (the "Order") authorizing the Debtors, under certain conditions, to pay the prepetition claims, in accordance with the terms of the Order, of certain trade creditors that agree to the terms set forth below and agree to be bound by the terms of the Order. A copy of the Order is enclosed for your reference. The Debtors have asked the Bankruptcy Court to schedule a final hearing and thereafter grant the relief provided in the Order on a final basis.

  Under the Order, in order to receive payment of its prepetition claim, each selected trade creditor must agree to continue to supply goods and/or services to the Debtors based on "Customary Trade Terms." In the Order, Customary Trade Terms are defined as the normal and customary trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, normal product mix and availability and other applicable terms and programs), which were most favorable to the Debtors and in effect between such trade creditor and the Debtors on a historical basis for the period within ~~365~~ 180 days of the Petition Date, or such other trade terms as mutually agreed to by the Debtors and such trade creditor.

  For purposes of administering this trade program, as authorized by the Bankruptcy Court and in accordance with the terms of the Order, the Debtors and **[Name of Trade Vendor]** agree as follows (the "Agreement"):

  (a) The estimated balance ~~of the prepetition trade claim~~ (net of any setoffs, credits or discounts) owed by the Debtors to **[Name of Trade Vendor]** as of the Petition Date is $_____ (the "Trade Claim") ~~asserted against the Debtors by **[Name of Trade Vendor]** is $_____~~. Your Trade Claim does not necessarily constitute a claim allowed by the Bankruptcy Court in the Chapter 11 Cases, and signing this Trade Agreement does not excuse you from any requirement of filing a proof of claim in the Chapter 11 Cases for any unpaid Trade Claim balance.

  (b) The Debtors shall pay $_____towards the Trade Claim (the "Payment") within 10 days of execution of this agreement by

wire transfer at the instructions attached hereto as **Exhibit B**.

(c)      **[Name of Trade Vendor]** agrees to supply goods/services to the Debtors in accordance with the Customary Trade Terms, and the Debtors agree to pay **[Name of Trade Vendor]** in accordance with such Customary Trade Terms. [For purposes of this Agreement, Customary Trade Terms consist of those terms provided for in the agreement attached hereto as **Exhibit A** ~~and/or the following terms and conditions~~.]

(d)      The open trade balance or credit line, <u>if any,</u> that **[Name of Trade Vendor]** ~~will~~<u>may agree to</u> extend to the Debtors for shipment of postpetition goods/provision of postpetition services is $_____.

(e)      In consideration for the ~~Payment~~<u>payment in full of the Trade Claim</u>, you agree not to file or otherwise assert against the Debtors, their estates or any other person or entity or any of their respective assets or property (real or personal) any lien (a "<u>Lien</u>"), claim for reclamation ("<u>Reclamation Claim</u>"), claim under Bankruptcy Code section 503(b)(9) (a "<u>503(b)(9) Claim</u>"), any similar priority claim under the Bankruptcy Code or other statute (a "<u>Priority Claim</u>"), ~~or other administrative expense claim under the Bankruptcy Code or other statute (an "Administrative Expense Claim")~~ regardless of the statute or other legal authority upon which such Lien, Reclamation Claim, 503(b)(9) Claim, Priority Claim~~, or Administrative Expense Claim~~ may be asserted, related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date ~~and~~. <u>Upon Payment</u>, to the extent you have already obtained or otherwise asserted such a Lien, Reclamation Claim, 503(b)(9) Claim, Priority Claim, ~~or Administrative Expense Claim,~~ you shall take (at your own expense) whatever actions are necessary to release such Lien or withdraw such Reclamation Claim, 503(b)(9) Claim, <u>or</u> Priority Claim~~, or Administrative Claim unless your participation in the trade payment program authorized by the Order (the "Trade Payment Program") is terminated~~.

Your execution of this Agreement and return of the same to the Debtors constitutes an agreement by **[Name of Trade Vendor]** and the Debtors:

1.      to be bound by the Customary Trade Terms ~~(as modified herein)~~ and, subject to the reservations set forth in the Order, to the amount of the Trade Claim set forth above;

2.      that [**Name of Trade Vendor**] will continue to supply the Debtors with goods and/or services pursuant to the Customary Trade Terms ~~(as modified herein)~~ and that the Debtors

will pay for such goods and/or services in accordance with the Customary Trade Terms (as modified herein);

3. that **[Name of Trade Vendor]** has reviewed the terms and provisions of the Order and that it consents to the bound by such terms;

4. that **[Name of Trade Vendor]** ~~will not separately seek payment for Liens, Reclamation Claims, 503(b)(9) Claims, Priority Claims, Administrative Expense Claims and similar claims outside of the terms of the Order unless its participation in the Trade Payment Program is terminated;~~ reserves, subject to this Agreement, rights and claims to seek payment for any unpaid Trade Claim balance or any invoice arising after the Petition Date that remains unpaid;

5. that if ~~either the Trade Payment Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Trade Claim may be deemed, in the sole discretion of the Debtors, to have been in payment on account of any~~ **[Name of Trade Vendor]** refuses to supply goods and/or services to the Debtors on Customary Trade Terms, or on such other terms as mutually agreed to by **[Name of Trade Vendor]** and the Debtors following **[Name of Trade Vendor]**'s receipt of any payment on account of **[Name of Trade Vendor]**'s Trade Claim, then the Debtors may, in their sole discretion with written notice to **[Name of Trade Vendor]**, require **[Name of Trade Vendor]** to return any Payments paid to **[Name of Trade Vendor]** pursuant to the Order or declare any Payments made to **[Name of Trade Vendor]** on account of **[Name of Trade Vendor]**'s Trade Claim to have been on account of any a (i) 503(b)(1) claim, (ii) 503(b)(9) Claim, ~~Priority Claim, or Administrative Expense Claim, and you will immediately repay to the Debtors any payments made to you to the extent that the aggregate amount of such payments exceeds such obligations, without the right of any setoffs, claims, provision for payment of reclamation or trust fund claims, or other defense;~~ or (iii) general unsecured prepetition claim, without giving effect to any rights of setoff or reclamation; provided however, that **[Name of Trade Vendor]** shall have five (5) business days from receipt of the Debtors' written notice to dispute or respond to such notice and reinstate the supply of goods/and or services. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against **[Name of Trade Vendor]** or **[Name of Trade Vendor]**'s rights, claims and defenses with respect thereto.

6. that if the Debtors shall be in default under this Agreement, **[Name of Trade Vendor]** shall have no obligation to supply goods and/or services to the Debtors on Customary Trade Terms (as modified herein) until the Debtors cure such default and **[Name of Trade Vendor]** shall have the right to terminate this Agreement upon written notice (notice via email is sufficient) to the Debtors ~~detailing~~ setting forth the Debtors' defaults hereunder (which the Debtors shall have the right to dispute) and the Debtors' failure to cure such default within five (5) business days of such notice, in which event **[Name of Trade Vendor]** ~~may~~ is and shall be entitled to retain all sums paid to it hereunder on account of its Trade Claim; and

Redline Critical Vendors Trade Agreement BASE  and TV - Critical Vendor Trade Agreement (Final Order) 2475321v2B 11/01/2024 6:30:53 PM

36

7.      entry into this Trade Agreement shall not (a) effect a novation of any existing agreements between **[Name of Trade Vendor]** and the Debtors, (b) modify any of the conditions, covenants, representations and warranties, or other terms of any such existing agreements, other than as agreed between the Debtors and **[Name of Trade Vendor]**, (c) constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement, or (d) change the nature or priority of **[Name of Trade Vendor]**'s underlying claim(s) or entitle **[Name of Trade Vendor]** to treatment of its claim(s) as an Administrative Expense Claim(s).

The Debtors and **[Name of Trade Vendor]** also hereby agree that any dispute with respect to this Agreement, the Order and/or **[Name of Trade Vendor]**'s participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call **[Contact Person]** at (____) ___-____ ____:

Very truly yours,

True Value Company, L.L.C.

By:_____

By:_____ Name: [•]
Title: [•]

Agreed and Accepted by:

**[Name of Trade Vendor]**

~~By:~~_____    -

By: _____ Name: **[Name]**
        ~~Name: [Name]~~
        Title: **[Title]**

Dated: ~~_____~~, 2024