**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.[1]** | **(Jointly Administered)** |
|  | **Related Docket Nos. 7, 98, 266, 288** |

**FINAL ORDER (I) AUTHORIZING
THE DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS OF (A) CRITICAL VENDORS, (B) FOREIGN VENDORS,
AND (C) LIEN CLAIMANTS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for an Interim Order and a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to pay the fixed, liquidated, and undisputed prepetition claims of Critical Vendors, Foreign Vendors, and Lien Claimants and (ii) granting related relief, all as more fully described in the Motion; and upon consideration of the First Day Declaration and the Interim Order entered on October 17, 2024; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby:

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not required, to pay, in their sole discretion, without further order of this Court, the Critical Vendor Claims, the Foreign Vendor Claims, and the Lien Claims in amounts not to exceed $50.5 million in the aggregate absent further order of the Court.

3.      The form of Trade Agreement attached as **Exhibit A** to this Final Order is hereby approved. The Debtors are authorized, but not directed, to enter into Trade Agreements. No Trade Agreement will (a) effect a novation of any existing agreements between the Critical Vendor and the Debtors, (b) modify any of the conditions, covenants, representations and warranties, or other terms of any such existing agreements, other than as agreed between the Debtors and the Critical Vendor, (c) constitute an assumption or rejection of any executory contract or prepetition or postpetition agreement, or (d) change the nature or priority of the underlying Critical Vendor Claims or entitle the Critical Vendor to treatment of its claim as an Administrative Expense Claim. With respect to individual Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims with a face value that exceeds $250,000, the Debtors shall provide the Official Committee of Unsecured Creditors (the "Committee") with one (1) business day notice before modifying or amending the form of Trade Agreement with respect to, or settling for less than the face amount of, such claims. The Debtors shall provide counsel to the Committee with copies of all executed Trade Agreements

on a confidential and professionals' eyes-only basis by the third business day of each week, beginning with the week following entry of this Final Order (or on such other delivery schedule as may mutually be agreed upon).

4.      Any Critical Vendor that accepts payment pursuant to the authority granted in this Final Order agrees to supply goods and/or services to the Debtors postpetition on Customary Trade Terms or on such other trade terms as mutually agreed to by the Debtors and such Critical Vendor; *provided, however*, that the Debtors' inability to agree on Customary Trade Terms shall not preclude them from paying a Critical Vendor Claim if the Debtors determine, in the reasonable exercise of their business judgment, that such payment is necessary to the Debtors' operations.

5.      If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms, or on such other terms as mutually agreed to by the Debtors and such Critical Vendor following receipt of any payment on account of its Critical Vendor Claim, then the Debtors may, in their sole discretion with written notice to the affected Critical Vendor, require the breaching Critical Vendor to repay any amounts paid to it pursuant to this Order or declare any payments made to such Critical Vendor on account of its Critical Vendor Claim to have been on account of any a (i) 503(b)(1) claim, (ii) 503(b)(9) Claim, or (iii) general unsecured prepetition claim, without giving effect to any rights of setoff or reclamation; provided, however, that a Critical Vendor shall have five (5) business days from receipt of the Debtors' written notice to dispute or respond to such notice and reinstate the supply of goods/and or services. Nothing herein shall constitute a waiver of the Debtors' rights to seek damages or other appropriate remedies against any breaching Critical Vendor or of a Critical Vendor's rights, claims and defenses with respect thereto.

6.      As a further incentive to inducing Trade Vendors to agree to critical vendor status, the Debtors may, with the consent of the Committee and PNC Bank, National Association (in its capacity as Administrative Agent), waive or settle causes of action arising under Chapter 5 of the Bankruptcy Code, without further Order of the Court.

7.      The Debtors shall maintain a matrix/schedule of amounts paid under the terms and conditions of this Final Order (the "Critical Vendor Matrix"), including the following information: (i) the amount of the payment; (ii) the priority/classification of the payment; and (iii) any remaining balance owed and the priority/classification of such balance.  The Debtors shall provide a copy of such Critical Vendor Matrix on a confidential and professionals' eyes-only basis to counsel to the Prepetition Administrative Agent and the Committee every fourteen (14) days following entry of this Final Order (or on such other delivery schedule as may mutually be agreed to by the Prepetition Administrative Agent and the Committee). The Debtors shall also provide a copy of the Critical Vendor Matrix to the United States Trustee upon request.

8.      All Banks are (a) authorized and directed to receive, process, honor and pay any and all prepetition and postpetition checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Critical Vendor Claims, whether presented before, on, or after the Petition Date; *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Critical Vendor Claims.  The Banks shall rely on the directions and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Final Order, and no such Bank shall have any liability to any party for relying on such directions and representations by the Debtors as provided for in this Final Order.

9.     To the extent the Debtors have not yet sought to remit payment on account of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Critical Vendor Claims, Foreign Vendor Claims, and Lien Claims.

10.    Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this Final Order.

11.    Nothing in the Motion or this Final Order or the relief granted (including any actions taken or payments made by the Debtors pursuant thereto) shall be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' or any other party in interest's ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim or other obligation; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

12.    Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

13.    All time periods set forth in this Final Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation, interpretation, or enforcement of this Final Order.

**Dated: November 4th, 2024**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**