## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | Case No. 24-12337 (KBO) |
| **Debtors.**[1] | **(Jointly Administered)** |
| | Related Docket Nos. 12, 100, 268, 273, 287 |

### ORDER (I) APPROVING THE BID PROTECTIONS; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES; (III) AUTHORIZING AND APPROVING THE FORM OF NOTICE OF THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS; (IV) AUTHORIZING AND SCHEDULING THE SALE HEARING AND SETTING OTHER RELATED DATES AND DEADLINES; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Debtors for, among other forms of relief sought in connection with the Bidding Procedures, approval of which is no longer being sought, entry of an order (this "Order") (i) approving the Bid Protections; (ii) approving the Assumption and Assignment Procedures; (iii) authorizing and approving the form of notice of the sale (the "Sale") of all or substantially all of the assets of the Debtors (the "Assets"), the auction, if any, for the sale of the Assets (the "Auction"), and the hearing to consider the Sale (the "Sale Hearing"), substantially in the form attached to this Order as **Exhibit 1** (the "Sale Notice"); (iv) authorizing and scheduling the Sale Hearing and setting other related dates and deadlines; and (v) granting

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the Stalking Horse Agreement, as amended and attached as **Exhibit C** to the *Notice of Revised Proposed Order (I) Approving the Bid Protections; (II) Approving the Assumption and Assignment Procedures; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV) Authorizing and Scheduling the Sale Hearing and Setting Other Related Dates and Deadlines; and (V) Granting Related Relief.*

related relief; all as more fully set forth in the Motion and on the record at the October 31, 2024 and November 4, 2024 hearings; and upon consideration of the Houlihan Declaration and the First-Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and this Court having held a hearing to consider the relief requested in the Motion; and upon the record of the hearing; and it appearing that the relief requested in the Motion (as modified by this Order) is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

## FOUND, CONCLUDED, AND DETERMINED THAT:

A.     *Jurisdiction; Venue*. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought by the Motion are Bankruptcy Code Sections 105, 363, and 365 and Bankruptcy Rules 2002, 6004, and 6006.  Venue for these cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. *Notice*.  The Debtors' notice of the Motion, the proposed entry of this Order, the Assumption and Assignment Procedures, the Auction, the Sale, and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice under Bankruptcy Rules 2002, 4001, 6004, and 6006, and no other or further notice of, or hearing on, the Motion or this Order is required.

C. *Stalking Horse Bid Protections*.  The Debtors have demonstrated compelling and sound business justifications for authorizing the payment of the break-up fee equal to $4,590,000 (the "Break-Up Fee") and the expense reimbursement of up to $1,530,000 (the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections") to the Stalking Horse Bidder on the terms set forth in the Stalking Horse Agreement, including:

(i) the Bid Protections are the product of negotiations between the Debtors and the Stalking Horse Bidder conducted in good faith and at arm's length, and the Stalking Horse Agreement (including the Bid Protections) is the culmination of a process undertaken by the Debtors and their professionals to negotiate a transaction with a bidder who made the highest or otherwise best offer to date for the assets that are identified in the Stalking Horse Agreement to maximize the value of the Debtors' estates;

(ii) the Bid Protections are an actual and necessary cost and expense of preserving the value of the respective Debtors' estates;

(iii) the Bid Protections are fair, reasonable, and appropriate in light of, among other things, the size and nature of the proposed Sale under the Stalking Horse Agreement, the substantial efforts that have been and will be expended by the Stalking Horse Bidder, and, notwithstanding that the proposed Sale is subject to higher or better offers, the substantial benefits the Stalking Horse Bidder has provided to the Debtors, their estates, their creditors, and all parties-in-interest herein, including, among other things, by increasing the likelihood that the best possible price for the Assets will be received; and

(iv) the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse Agreement, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding, and the Stalking Horse Bidder is unwilling to commit to purchase the Assets under the terms of the Stalking Horse

Agreement unless the Stalking Horse Bidder is assured the Bid Protections if the Stalking Horse Bidder is not the purchaser of the Assets pursuant to the Stalking Horse Agreement.

D.    *Sale Notice*.    The Sale Notice, substantially in the form attached hereto as **Exhibit 1**, provided by the Debtors regarding the Sale of the Assets by Auction and Sale Hearing (the "Sale Notice") is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (i) the date, time, and place of the Auction (if one is held); (ii) the Bid Deadline; (iii) the Sale Objection Deadline and the date, time, and place of the Sale Hearing; (iv) reasonably specific identification of the assets for sale; (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement; (vi) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities disclosed in the Stalking Horse Agreement (collectively, the "Assumed Liabilities"); and (viii) notice of the proposed assumption and assignment of the Assigned Contracts and the right, procedures, and deadlines for objecting thereto, and no other or further notice of the Sale shall be required.

E.    *Assumption and Assignment Procedures*.    The Motion and the Cure Notice (as defined herein) are reasonably calculated to provide counterparties to the Assigned Contracts with proper notice of the intended assumption and assignment of their Executory Contracts and Unexpired Leases, any Cure Amounts (as defined herein), and the Assumption and Assignment Procedures (as defined herein), and are appropriate.

F.      *Stalking Horse Bidder.* The Stalking Horse Bid as reflected in the Stalking Horse Agreement represents the highest and best offer the Debtors have received to date. The Stalking Horse Agreement provides the Debtors with the opportunity to sell the Assets in order to preserve and realize their going concern value and provide a floor for other parties to submit bids for the Assets. The Stalking Horse Bid will enable the Debtors to continue their operations, preserve jobs, minimize disruption to the Debtors' business, and secure a fair and adequate baseline price for the Assets and, accordingly, will provide a clear benefit to the Debtors' estates, their creditors, and all other parties in interest. The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stakeholders exists between the Stalking Horse Bidder and the Debtors.

G.      *Other Findings*.  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the preceding findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

**I.      Key Dates and Deadlines**

2.      **Sale Hearing**.  The hearing to be conducted by this Court to consider approval of the Sale will commence on **November 12, 2024 at 10:00 a.m., prevailing Eastern Time,** before the Honorable Karen B. Owens of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Wilmington, Delaware 19801. The Debtors may adjourn the Sale Hearing in

open Court or on the Court's calendar without further notice.  Upon entry of this Order, the Debtors are authorized to perform any obligations set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the order approving the Sale (the "Sale Order").

3.      **Sale Objection Deadline**.  Objections, if any, to the Sale of the Assets ("Sale Objections"), except objections subject to paragraph 19(b) solely related to the proposed assumption and assignment of a contract (including the adequate assurance of future payment) or the Cure Amount proposed with respect thereto, must be made by **November 8, 2024 at 4:00 p.m., prevailing Eastern Time** (the "Sale Objection Deadline").  All Sale Objections must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court no later than the Sale Objection Deadline and served on (i) the Debtors, (ii) proposed counsel to the Debtors, (iii) counsel to the Stalking Horse Bidder, (iv) counsel to PNC Bank, National Association, and (v) counsel to any statutory committee appointed in the Chapter 11 Cases, including but not limited to the Committee.

4.      **Limited Objection Deadline**. If the Debtors hold an Auction and if a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, as soon as reasonably practicable after selecting such Successful Bidder(s), the Debtors will file (but not serve) and cause to be published on the case website a notice of results of the Auction (the "Notice of Successful Bidder"); provided, however, the Debtors will serve the Notice of Successful Bidder upon any party for whom the Debtors' Claims Agent has an email address on file or who requests such service by emailing the Debtors' Claims Agent at TrueValue@OmniAgnt.com with their contact information. Upon the filing of any Notice of Successful Bidder(s), objections solely to the identity

of such bidder and/or changes to the Stalking Horse Agreement ("Limited Objections") may be made on the record at the Sale Hearing (the "Limited Objection Deadline").

5.     **Response Deadline**.  Responses or replies, if any, to Sale Objections must be filed by **November 11, 2024 at  4:00 p.m.**, **prevailing Eastern Time** (or may be presented at the Sale Hearing); *provided* that such deadlines may be extended by agreement of the Debtors and the affected objecting party. Responses or replies to Limited Objections may be made on the record at the Sale Hearing.

6.     **Competitive Bidding.** The following dates and deadlines regarding competitive bidding are hereby established:

(a)     **Bid Deadline**: **November 8, 2024 at 4:00 p.m., prevailing Eastern Time**, the deadline by which all Qualified Bids[3] must be actually received in writing in electronic format (the "Bid Deadline"); and

(b)     **Auction**: **November 11, 2024 at 10:00 a.m., prevailing Eastern Time**, is the date and time the Auction if one is needed, will be held at the offices of proposed counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, or such other place (which in the Debtors' discretion may be virtual) and time as the Debtors shall notify Qualified Bidders that have submitted Qualified Bids (including the Stalking Horse Bidder) and the Consultation Parties.[4]

## II.     Bid Protections and Related Relief

7.     **Bid Protections.**  The Bid Protections described in the Motion and set forth in the Stalking Horse Agreement are hereby approved as set forth in the Stalking Horse Agreement.

---

[3]     Attached hereto as **Schedule 1** is a list of requirements for a bid received from a potential bidder to constitute a "Qualified Bid" (and such potential bidder that submits a Qualified Bid, a "Qualified Bidder").

[4]     "Consultation Parties" means any statutory committee appointed in the Chapter 11 Cases, including but not limited to the Official Committee of Unsecured Creditors (the "Committee") and PNC Bank, National Association, and each of their respective advisors (the "Consultation Parties" and each, a "Consultation Party"); provided that any party that submits a credit bid, upon submission of any such credit bid, shall cease to be a Consultation Party.

8.      If the Stalking Horse Bidder becomes entitled to receive the Bid Protections in accordance with the terms of the Stalking Horse Agreement: (a) the Debtors are authorized, and directed, to pay the Break-Up Fee and Expense Reimbursement, without further action or order by the Court, in accordance with the terms and conditions of the Stalking Horse Agreement, and (b) the Stalking Horse Bidder shall be and it is hereby granted an administrative expense claim against the Debtors under sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code in an amount equal to the Break-Up Fee and Expense Reimbursement.

9.      No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," or other similar fee or payment.

10.      **Good Faith Deposits.**  The Debtors may open one or more escrow accounts to hold the Good Faith Deposits of all Qualified Bidders. The Debtors shall hold and return the Good Faith Deposits of Qualified Bidders in accordance with the Stalking Horse Agreement (or Alternative APA, if applicable). If a Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. Any such forfeited Good Faith Deposit shall become property of the Debtors' estates; provided, however, that except as otherwise provided in the Stalking Horse Agreement, the Debtors' retainment of the Good Faith Deposit shall be without prejudice to any other remedies at law or at equity that the Debtors may have against such bidder.

11.      The deposit provided by the Stalking Horse Bidder and all other Qualified Bidders shall be held in escrow by the Debtors or their agent, and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of

the applicable escrow agreement or order of this Court (including the preceding paragraph). Subject to the terms of the Stalking Horse Agreement (or the applicable Alternative APA), the Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than three (3) business days after completion of the Sale Hearing. Subject to the terms of the Stalking Horse Agreement (or the applicable Alternative APA), if the Successful Bidder is not the Stalking Horse Bidder, the Good Faith Deposit of the Successful Bidder shall be held until the closing of the sale and applied in accordance with the Successful Bid.

12.    If the Stalking Horse Agreement is validly terminated under circumstances where the return of any deposit to the Stalking Horse Bidder is applicable and the Bid Protections are payable, the sole remedy of the Stalking Horse Bidder against the Debtors shall be the return of the applicable deposit and the Bid Protections.

### III.    Auction

13.    The Debtors are authorized, subject to the terms of this Order, to take actions reasonably necessary, in the discretion of the Debtors, to conduct and implement the Auction.

14.    The Debtors, in consultation with the Consultation Parties, and after consideration of all pertinent factors, may (a) select, in their business judgment, the overall highest or otherwise best Qualified Bid (such bid, the "<u>Successful Bid</u>" and such bidder, the "<u>Successful Bidder</u>") and the Successful Bidder or Successful Bidders with respect to any Sale, and (b) reject any bid that, in the Debtors' business judgment, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, or (iii) contrary to the best interests of the Debtors and their estates, creditors, interest holders or parties-in-interest.

15.    A bona fide creditor who provides at least three business days' advance notice to the Debtors of its desire to attend the Auction may virtually attend, but not otherwise participate

in, such Auction. Such creditor must email such notice along with their contact information to the Debtors and their counsel. The Debtors will provide the details regarding virtual Auction attendance to such creditors following timely receipt of such advance notice, subject to the Debtors' confirmation (in its reasonable discretion) that such party is a creditor.

16.     PNC Bank, National Association, in its capacity as administrative agent for the Prepetition Secured Lenders ("PNC"), and its successors and assigns, preserves its right to make a credit bid (a "Credit Bid") in accordance with section 363(k) of the Bankruptcy Code, at any Auction for assets comprising such Prepetition Secured Lenders' collateral. In the event of any such Auction, PNC is a Qualified Bidder and any Credit Bid it submits at such Auction in compliance with the Bidding Procedures is a Qualified Bid, so long as any PNC Bid is accompanied by a Good Faith Deposit equal to ten percent (10%) solely with respect to any cash consideration component of the Purchase Price.

## IV.     Sale Hearing Notice and Related Relief

17.     The Sale Notice is hereby approved.  Within two business days following the entry of this Order or as soon as reasonably practicable thereafter (the "Mailing Date"), the Debtors will cause the Sale Notice to be served on: (a) all entities reasonably known by the Debtors to have expressed a bona fide interest in acquiring the Assets during the year preceding the date hereof; (b) all entities known to have asserted any claim, liens, interests, or encumbrances in or upon any of the Assets; (c) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (d) the U.S. Trustee; (e) counsel to the Stalking Horse Bidder; (f) counsel to PNC Bank, National Association; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) counsel to any statutory committee appointed in the Chapter 11 Cases, including but not limited to the Committee; (j) the United States Attorney for the District of Delaware; (k) the Federal Trade Commission;

(l) the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice; (m) all parties to Executory Contracts to be assumed and assigned, or rejected as part of the Sale; (n) each governmental agency that has a reasonably known interest with respect to the Sale and transactions proposed thereunder; and (o) all parties entitled to notice pursuant to Local Rule 2002-1(b).

18.     Additionally, on the Mailing Date or as soon as reasonably practicable thereafter, the Debtors shall publish a notice, substantially in the form of the Sale Notice (or a simplified version of the Sale Notice), on one occasion, in the national edition of *The New York Times*.  Such publication notice shall be deemed sufficient and proper notice of the Sale to any interested parties whose identities or addresses are unknown to the Debtors.

19.     Except as expressly set forth in paragraph 19(b) with respect to objections solely related to the proposed assumption and assignment of a contract (including the adequate assurance of future payment) or the Cure Amount proposed with respect thereto, failure to file and/or make a Sale Objection or Limited Objection on or before the Sale Objection Deadline or the Limited Objection Deadline, as applicable, shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and to the consummation and performance of the Sale contemplated by the Stalking Horse Agreement or any alternative asset purchase agreement (an "Alternative APA") with a Successful Bidder other than the Stalking Horse Bidder, and for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

## V.    Assumption and Assignment Procedures and Related Relief

20.    The following Assumption and Assignment Procedures are hereby approved and shall apply with respect to the Sale and assumption and assignment of Executory Contracts and Unexpired Leases.

(a)    **Cure Notice.**  No later than  **November 6, 2024 at 4:00 p.m.**, **prevailing Eastern Time** (the "Assumption and Assignment Service Deadline"), the Debtors shall serve a Cure Notice, substantially in the form attached hereto as **Exhibit 2**, via first-class mail on all counterparties to all Assigned Contracts and provide a copy of the same to the Stalking Horse Bidder and the Consultation Parties.  The Cure Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent available, (i) the title or description of the Executory Contract or Unexpired Lease, as applicable, (ii) the name of the counterparty to the Executory Contract or Unexpired Lease, as applicable, (iii) Debtors' good faith estimates of the Cure Amounts (if any) required in connection with the Executory Contract or Unexpired Lease, as applicable, and (iv) the Cure Objection Deadline and Supplemental Cure Objection Deadline; and Limited Objection Deadline; *provided*, *however*, that service of a Cure Notice does not constitute an admission that any contract is an Executory Contract or that the stated Cure Amount related to any Executory Contract or Unexpired Lease constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (all rights with respect thereto being expressly reserved).  Further, the inclusion of an Executory contract or Unexpired Lease, as applicable, on the Cure Notice is not a guarantee that such Executory contract or Unexpired Lease, as applicable, will ultimately be assumed and assigned. Any party desiring to receive a Cure Notice or Supplemental Cure Notice (as defined below) via email may email Omni Agent Solutions, the Debtors' Claims Agent, at TrueValue@OmniAgnt.com with their contact information, including any additional addresses where paper and electronic notices should also be sent.

(b)    **Cure Amounts and Adequate Assurance of Future Performance.**  The payment of the applicable Cure Amounts shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(c)    **Supplemental Cure Notice.**  Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain Executory Contracts inadvertently omitted from the Assigned Contracts list or the Stalking Horse Bidder or the Successful Bidders may identify other Executory Contracts that they desire to assume and assign in connection with a Sale.  Accordingly, the Debtors reserve the right, at any time after the Assumption and Assignment Service Deadline and at least two days before the closing of a Sale, to (i) supplement the list of Assigned

Contracts with previously omitted Executory Contracts (the "<u>Additional Assigned Contracts</u>"), (ii) remove Assigned Contracts from the list of Executory Contracts ultimately selected as Assigned Contracts that Successful Bidder proposes be assumed and assigned to it in connection with a Sale (the "<u>Eliminated Agreements</u>"), and/or (iii) modify the previously stated Cure Amount associated with any Assigned Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "<u>Supplemental Cure Notice</u>") on each of the counterparties to such Additional Assigned Contracts or Eliminated Agreements, as applicable, and their counsel of record, if any, and the Consultation Parties; *provided*, *however*, the Debtors may not add an Executory Contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice. If the Successful Bidder is not the Stalking Horse Bidder, the Debtors will file (but not serve) and cause to be published on the case website a notice of results of the Auction (the "<u>Notice of Successful Bidder</u>"); provided, however, the Debtors will serve the Notice of Successful Bidder upon any party for whom the Debtors' Claims Agent has an email address on file or who requests such service by emailing the Debtors' Claims Agent at <u>TrueValue@OmniAgnt.com</u> with their contact information.

(d)    **Objections.** Objections, if any, to the proposed assumption and assignment or the Cure Amount proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by, the Cure Objection Recipients (as defined below) by the applicable deadlines below.

(1)    *Cure Objection Deadline*. Any objection to the Cure Amount, to assumption and assignment of an Assigned Contract, or to lack of adequate assurance of the performance of the Stalking Horse Bidder or other Successful Bidder must be filed with the Bankruptcy Court on or before **November 18, 2024 at  4:00 p.m., prevailing Eastern Time** (the "<u>Cure Objection Deadline</u>") or such later date identified in the Supplemental Cure Notice in accordance with 18(d)(2) herein, and served on: (a) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 South Canal St., Chicago, IL 60606 (Attn: Ron Meisler, Esq. (ron.meisler@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), One Manhattan West, 395 9th Ave., New York, NY 10001 (Attn: Evan Hill, Esq. (evan.hill@skadden.com) and Moshe Jacob, Esq. (moshe.jacob@skadden.com)), and 920 North King Street, Wilmington, Delaware 19801 (Attn: Joseph Larkin (joseph.larkin@skadden.com)); and (b) counsel to the Stalking

Horse Bidder, Taft Stettinius & Hollister LLP, One Indiana Square, Suite 3500, Indianapolis, IN 46204 (Attn: Zachary E. Klutz (zklutz@taftlaw.com) and W. Timothy Miller (miller@taftlaw.com)) (collectively, the "Cure Objection Recipients").

(2)     *Supplemental Cure Objection Deadline*.  Any objection to the assumption and assignment of an Additional Assigned Contract and the corresponding Cure Amount, the removal of an Eliminated Agreement, or the modification of a Cure Amount in the Supplemental Cure Notice (a "Supplemental Cure Objection") must be filed with the Bankruptcy Court **within seven days of receipt of the Supplemental Cure Notice** (the "Supplemental Cure Objection Deadline"), and served on the Cure Objection Recipients.

(e)     **Assumption/Assignment/Cure Hearing**. The hearing to be conducted by this Court to consider objections, if any, to a proposed assumption and assignment, or the Cure Amount proposed with respect thereto, will commence (subject to Court availability) on **December 4, 2024 at 9:30 a.m., prevailing Eastern Time** (the "Assumption/Assignment/Cure Hearing")**,** before the Honorable Karen B. Owens of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Wilmington, Delaware 19801.

21.     Any party that fails to timely file an objection to the proposed Cure Amount, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Cure Notice or the Supplemental Cure Notice, or the Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract(s) (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale.  Such party shall be forever barred and estopped from objecting to (i) the Cure Amounts, (ii) the assumption and assignment of the Assigned Contract or Additional Assigned Contract(s), (iii) adequate assurance of future performance, or (iv) any of the relief requested in the Motion (whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or a Successful Bidder for purposes of Bankruptcy Code section 365(c)(1)).  Such party shall also be forever barred and estopped from asserting any additional cure or other pre-closing

amounts against the Debtors and the Stalking Horse Bidder or a Successful Bidder, with respect to such party's Assigned Contract or Additional Assigned Contract.

22.     If a Cure Objection or Supplemental Cure Objection, as applicable, filed by the Cure Objection Deadline or Supplemental Cure Objection Deadline, as applicable, cannot otherwise be resolved by the parties prior to the Assumption/Assignment/Cure Hearing, such objections and all issues regarding the Cure Amount to be paid, the assignability, or the adequate assurance of future performance, as applicable, will be determined by the Court at the Assumption/Assignment/Cure Hearing, or at a later hearing on a date to be scheduled by the Debtors in their discretion, and in consultation with the Successful Bidder(s).

23.     The Debtors are authorized to take any and all actions necessary or appropriate to implement the Assumption and Assignment Procedures.

**VI.     Other Relief**

24.     Any objections to the entry of this Order and the relief granted herein that have not been withdrawn, waived, resolved, or settled, and all reservations of rights included therein, are hereby overruled on the merits.

25.     Nothing in this Order shall be determinative as to the allocation of value of the Assets and all parties' rights with respect thereto are expressly reserved.

26.     The Debtors, after consultation with the Consultation Parties, are authorized to make non-substantive changes to the Assumption and Assignment Procedures and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

27.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

28.     To the extent the provisions of this Order are inconsistent with the provisions of any exhibits referenced herein or with the Motion, the provisions of this Order shall control.

29.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Dated: November 4th, 2024**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**