# SCHEDULE 1

**Qualified Bid Requirements**

**Determination of Qualified Bid Status**

To be eligible for consideration as a Qualified Bid and to participate in the Auction, each Potential Bidder (other than the Stalking Horse Bidder, which shall be deemed a Qualified Bidder) must deliver to the Debtors and their advisors a written, irrevocable offer (each, a "Bid") prior to the Bid Deadline that must be determined by the Debtors, in their business judgment and in consultation with the Consultation Parties, to satisfy each of the following conditions:

(a) Good Faith Offer; Partial Bids: Each Bid must constitute a good faith, bona fide offer to purchase all or a portion of the Assets (it being understood that partial bids may be permitted only if the combined consideration thereof satisfies the requirements of a Minimum Bid, as defined below).

(b) Good Faith Deposit: Each Bid must be accompanied by a deposit in the amount of ten percent (10%) of the cash consideration of the Purchase Price, before any reductions for assumed liabilities (the "Good Faith Deposit"). The Good Faith Deposit shall come in the form of a wire transfer, certified check or other form acceptable to the Debtors after consultation with the Consultation Parties. Each Good Faith Deposit will be deposited and held in one or more escrow accounts by the Debtors and shall not become property of the Debtors' estates absent further order of the Bankruptcy Court. Requests for wire instructions should be directed to William Hardie (WHardie@HL.com), Jay Weinberger (JWeinberger@HL.com), John Hartigan (JHartigan@HL.com), and Christina Walters (Christina.Walters@HL.com)

(c) Same or Better Terms: Each Bid must be on terms that in their totality (or in totality with other partial bids) are determined by the Debtors, in consultation with the Consultation Parties, in their business judgment, to be the same or better than the terms of the Stalking Horse Agreement in their totality.

(d) Executed Agreement: Each Bid must include executed transaction documents, signed by an authorized representative of such Potential Bidder, pursuant to which the Potential Bidder proposes to effectuate a Sale or other transaction (an "Alternative APA"). Each Bid must also include a copy of the Alternative APA marked against the Stalking Horse Agreement to show all changes requested by the Potential Bidder (including those related to the assumption and assignment of contracts and licenses, and other material terms such that the Debtors may determine how such Bid compares to the terms of the Stalking Horse Agreement and competing Bids). Each Alternative APA must (i) specify the cash component of the Purchase Price in U.S. dollars; (ii) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that by their nature must be prepared by the Debtors); (iii) identify the proposed Assets to be included, including any proposed assumed contracts; (iv) provide a commitment to close within two (2) business days after all closing conditions are met and (v) include a representation that the Potential Bidder will make and submit all necessary filings under the Hart Scott Rodino Antitrust Improvements Act of 1976, as amended (the "HSR Act"), within five (5) calendar days following entry of the Sale Order.

(e) Minimum Bid: A Bid must propose a minimum purchase price, including any assumption of liabilities, that in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, has a value greater than the sum of (i) the Cash Consideration (as defined

in the Stalking Horse Agreement), (ii) the Break-Up Fee, (iii) the Expense Reimbursement, (iv) the Assumed Liabilities (as defined in the Stalking Horse Agreement), and (v) a minimum Bid increment of $1,000,000 (the "Overbid Amount") (the sum of which shall be the "Minimum Bid Amount").  If the Potential Bidder believes that the Bid value relative to the Stalking Horse Bid should include additional non-cash components (such as fewer contingencies than are in the Stalking Horse Agreement), the Bid must include a detailed analysis of the value of any such additional non-cash components and any back-up documentation to support such value.  The Debtors may consider any partial bids and determine, after consultation with the Consultation Parties, that such bid is a Qualified Bid.

(f)     Employee and Labor Terms.  Each Bid must include a statement of proposed terms for employees, including whether the Potential Bidder intends to hire all employees who are primarily employed in connection with the Assets included in such Bid or any other employees, the terms and conditions of such employment offers, and whether the Potential Bidder intends to assume any collective bargaining agreements or employee related contracts, programs, or other employment-related liabilities or obligations (e.g., paid time off).  Each Bid must also include a statement as to whether any employees who will not be offered employment by the Potential Bidder are needed to provide transitionary services.

(g)     Transaction Structure. Each Bid must clearly indicate whether it is structured as a going concern sale under section 363 of the Bankruptcy Code, a sponsorship of a plan of reorganization, or equity bids for a liquidation of the Debtors' assets.

(h)     Pension Plan.  Each Bid must state whether or not the Potential Bidder intends to assume (i) sponsorship of all or any part of or (ii) any of the potential liabilities associated with the Debtors' pension plan.

(i)     Other Post-Employment Benefits.  Each bid must state whether or not the Potential Bidder intends to assume the Debtors' obligations to provide other post-employment benefits, including (i) medical, dental, and vision coverage and out-of-pocket reimbursement of expenses available to certain former employees of certain Debtors, or such employees' beneficiaries; (ii) death benefits available to certain former employees of certain Debtors; and (iii) life insurance available to certain former employees of certain Debtors.

(j)     Designation of Assigned Contracts and Leases: A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Potential Bidder wishes to be assumed pursuant to a Sale.  A Bid must specify whether the Debtors or the Potential Bidder will be responsible for any cure costs associated with such assumption, and include a good faith estimate of such cure costs (which estimate shall be provided by the Debtors).

(k)     Designation of Assumed Liabilities: A Bid must identify all liabilities which the Potential Bidder proposes to assume.

(l)     Corporate Authority: A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Sale; provided that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale, the Potential Bidder must furnish written evidence reasonably acceptable to

the Debtors, after consultation with the Consultation Parties, of the approval of the Sale by the equity holder(s) of such Potential Bidder.

(m) <u>Disclosure of Identity of Potential Bidder</u>: A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such Bid (including the identity of any parent companies of such entity), and the complete terms of any such participation, including any connections, agreements, arrangements or understandings with the Debtors, the Stalking Horse Bidder, or any other known, potential, prospective bidder, or Potential Bidder, or any officer, director, or equity holder of the Debtors; <u>provided</u> that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the Sale, then the Potential Bidder must fully disclose the identity of each direct and indirect equity holder of such Potential Bidder.

(n) <u>Proof of Financial Ability to Perform</u>: A Bid must include written evidence that the Debtors may reasonably conclude, in consultation with their advisors and the Consultation Parties, demonstrates that the Potential Bidder has the necessary financial ability to timely consummate a Sale and must further contain information that can be publicly filed and/or disseminated providing adequate assurance of future performance of all contracts and leases to be assumed and assigned in such Sale. Such information must include, *inter alia*, the following:

  (i) a statement that the Potential Bidder is financially capable of consummating the transaction contemplated by the Alternative APA;

  (ii) contact names and numbers for verification of financing sources;

  (iii) written evidence of the Potential Bidder's internal resources and proof of any debt funding commitments from a recognized banking institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Sale;

  (iv) the Potential Bidder's most current audited (if any) and latest unaudited financial statements or, if the bidder is an entity formed for the purpose of making a bid, the current audited (if any) and latest unaudited financial statements of the equity holder(s) of the bidder or such other form of financial disclosure, and a guaranty from such equity holder(s);

  (v) a description of the Potential Bidder's pro forma capital structure; and

  (vi) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, after consultation with the Consultation Parties, demonstrating that such Potential Bidder has the ability to promptly close the Sale.

(o) <u>Regulatory and Third-Party Approvals</u>: A Bid must set forth each regulatory and third-party approval required for the Potential Bidder to consummate the Sale, and the time within which the Potential Bidder expects to receive such regulatory and third-party approvals, and the

Debtors, in consultation with the Consultation Parties, may consider the timing of such approvals, and any actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible, when considering the other Bid Assessment Criteria (as defined below). Each Potential Bidder must further agree that its legal counsel will coordinate in good faith with the Debtors' legal counsel to provide pertinent information regarding the Potential Bidder's operations reasonably required to analyze issues arising with respect to any applicable regulatory requirements and to discuss and explain the Potential Bidder's regulatory analysis, strategy, and timeline for securing all applicable approvals as soon as reasonably practicable.

(p)     Conditions/Contingencies: A Bid must not be subject, in the exercise of the Debtors' reasonable business judgment, in consultation with the Consultation Parties, to material conditions or contingencies to closing, including without limitation governmental approval, obtaining financing, internal approvals or further due diligence.

(q)     Bid Irrevocable: A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Potential Bidder further agrees that its Bid, if not chosen as the Successful Bidder, shall serve, without modification, as a Backup Bidder (as defined below) as may be designated by the Debtors at the hearing to approve the Sale, in the event the Successful Bidder fails to close as provided in the applicable agreement, as modified, if at all, and the order approving the Sale.

(r)     As-Is, Where-Is: A Bid must include the following disclaimer: Buyer acknowledges that, should the Closing occur, Buyer shall acquire the Business and the Transferred Assets without any surviving representations or warranties, on an "as is" and "where is" basis.

(s)     Time Frame for Closing. A Bid by a Potential Bidder must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, in consultation with the Consultation Parties.

(t)     Consent to Jurisdiction. Each Potential Bidder must (i) submit to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, the Auction, any Alternative APA, or the construction and enforcement of documents relating to any Sale, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, the Auction, any Alternative APA, or the construction and enforcement of documents relating to any Sale, and (iii) agree to the entry of a final order or judgment in any way related to the Debtors, the Auction, any Alternative APA, or the construction and enforcement of documents relating to any Sale if it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection with the foregoing consistent with Article III of the United States Constitution.

(u)     No Bid Protections. A Bid must not entitle the Potential Bidder to any break-up fee, termination fee, transaction fee, expense reimbursement, or any similar type of payment or reimbursement and, by submitting a Bid, the Potential Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction. Each Potential Bidder presenting a Bid will bear its own costs and expenses (including legal fees) in connection with any proposed Sale. For the avoidance of

doubt, the Stalking Horse Bidder shall not be considered a Potential Bidder for purposes of this paragraph.

(v) <u>Compliance with Bankruptcy Code and Non-Bankruptcy Law</u>. By submitting a Bid, a Potential Bidder is agreeing to: (i) comply in all respects with the Bankruptcy Code and any applicable nonbankruptcy law; and (ii) abide by and honor the terms of this Order.

(w) <u>PNC Bank, National Association</u>. PNC, and its successors and assigns, shall be deemed a Qualified Bidder for all purposes so long as any PNC Bid is accompanied by a Good Faith Deposit equal to ten percent (10%) solely with respect to any cash consideration component of the Purchase Price.

## **EXHIBIT 1**

**Sale Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | Case No. 24-12337 (KBO) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF SALE, BID DEADLINE, AUCTION AND SALE HEARING

On October 13, 2024, the Debtors entered into a stalking horse asset purchase agreement (the "Stalking Horse Agreement") with Do It Best Corp. ("Do it Best" or the "Stalking Horse Bidder"). Pursuant to the Stalking Horse Agreement, and subject to the terms and conditions thereof, Do it Best has agreed to acquire substantially all of the Debtors' assets (the "Assets") and assume certain of the Debtors' liabilities (the "Assumed Liabilities").

On October 14, 2024, True Value Company, L.L.C. and certain of its affiliates, as debtors and debtors in possession in the above-captioned Chapter 11 Cases (collectively, the "Debtors") filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a motion [Docket No. 12] (the "Motion")[2] for the entry of an order (i) approving the Bid Protections; (ii) approving the Assumption and Assignment Procedures; (iii) authorizing and approving the form of notice of the Sale of Assets, the Auction, and the Sale Hearing; (iv) authorizing and scheduling the Sale Hearing and setting other related dates and deadlines; and (v) granting related relief

On [_], 2024, the Bankruptcy Court entered an order approving, among other things, the Assumption and Assignment Procedures and Bid Protections for Do it Best [Docket No. [_]] (the "Assumption and Assignment Procedures and Bid Protections Order").

## IMPORTANT DATES AND DEADLINES

- **Bid Deadline**. Any person or entity interested in submitting a Bid for the Debtors' Assets must do so on or before **November 8, 2024 at 4:00 p.m.**, **prevailing Eastern Time** (the "Bid Deadline").

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

- **Auction**. If the Debtors receive a higher or otherwise better Qualified Bid by the Bid Deadline, the Debtors will conduct the Auction, which has been scheduled for **November 11, 2024 at 11:00 a.m., prevailing Eastern Time** either (i) at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 320 South Canal Street, Chicago, Illinois 60606-5707 or (ii) or such other place (which may be via video conference) and time as the Debtors, in consultation with the Consultation Parties, determine.

- **Sale Objection Deadline**. Objections to the sale (a "Sale Objection"), including any objection to the Assumed Liabilities and the sale of the Debtors' assets free and clear of all claims and interests pursuant to section 363(f) of the Bankruptcy Code, must be (i) filed with the Bankruptcy Court and (ii) served on the Objection Notice Parties (as defined herein) on or before **November 8, 2024 at 4:00 p.m.**, **prevailing Eastern Time. (prevailing Eastern Time)** (the "Sale Objection Deadline").

- **Limited Objection Deadline**. If a Successful Bidder that is not the Stalking Horse Bidder prevails at the Auction, , as soon as reasonably practicable after selecting such Successful Bidder(s), the Debtors will file (but not serve) and cause to be published on the case website a notice of results of the Auction (the "Notice of Successful Bidder"); provided, however, the Debtors will serve the Notice of Successful Bidder upon any party for whom the Debtors' Claims Agent has an email address on file or who requests such service by emailing the Debtors' Claims Agent at TrueValue@OmniAgnt.com with their contact information. Upon the filing of any Notice of Successful Bidder(s), objections solely to the identity of such Successful Bidder and/or changes to the Stalking Horse Agreement ("Limited Objections") may be made on the record at the Sale Hearing (the "Limited Objection Deadline").

- **Sale Hearing**. A hearing to approve and authorize the Sale to the Successful Bidder will be held before the Court on **November 12, 2024 at 10:00 a.m.**, **prevailing Eastern Time** or such other date as determined by the Court.

- **Cure Objection Deadline**. Any objection to the Cure Amount, to assumption and assignment of an Assigned Contract, or to lack of adequate assurance of the performance of the Stalking Horse Bidder must be filed with the Bankruptcy Court on or before **November 18, 2024 at 4:00 p.m.**, **prevailing Eastern Time** (the "Cure Objection Deadline") or such later date identified in the Supplemental Cure Notice.

- **Supplemental Cure Objection Deadline**. Any objection to the assumption and assignment of an Additional Assigned Contract and the corresponding Cure Amount, the removal of an Eliminated Agreement, or the modification of a Cure Amount in the Supplemental Cure Notice (a "Supplemental Cure Objection") must be filed with the Bankruptcy Court **within seven days of receipt of the Supplemental Cure Notice** (the "Supplemental Cure Objection Deadline").

- **Assumption/Assignment/Cure Hearing**. The hearing to be conducted by this Court to consider objections, if any, to a proposed assumption and assignment or the Cure Amount with respect thereto will commence on **December 4, 2024 at 9:30 a.m., prevailing Eastern Time (subject to Court availability)**,

## FILING OBJECTIONS

Sale Objections, if any, must (i) be in writing, (ii) state, with specificity, the legal and factual bases thereof, (iii) comply with the Bankruptcy Code, Bankruptcy Rules, and Local Rules, (iv) be filed with the Court by no later than the Sale Objection Deadline, and (v) be served on (i) the Debtors, True Value Company, L.L.C., 8600 West Bryn Mawr Ave., Chicago, IL, 60631 (Attn: Susan Radde, Esq. (susan.radde@truevalue.com)); (ii) Skadden, Arps, Slate, Meagher & Flom LLP, 320 South Canal St., Chicago, IL 60606 (Attn: Ron Meisler, Esq. (ron.meisler@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), One Manhattan West, 395 9th Ave., New York, NY 10001 (Attn: Evan Hill, Esq. (evan.hill@skadden.com) and Moshe Jacob, Esq. (moshe.jacob@skadden.com)), and 920 North King Street, Wilmington, Delaware 19801 (Attn: Joseph Larkin (joseph.larkin@skadden.com)); (iii) counsel to the Stalking Horse Bidder (Attn: Zachary E. Klutz, Esq. (zklutz@taftlaw.com), W. Timothy Miller, Esq. (miller@taftlaw.com)); (iv) counsel to PNC Bank, National Association (Attn: Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com) and Regina Stango Kelbon, Esq. (regina.kelbon@blankrome.com)); and (v) proposed counsel to the Official Committee of Unsecured Creditors, Pachulski Stang Ziehl & Jones, LLP, 780 3rd Avenue, New York, NY 10017 (Attn: Bradford J. Sandler (bsandler@pszjlaw.com), Robert J. Feinstein (rfeinstein@pszjlaw.com), and Paul J. Labov (plabov@pszjlaw.com)) (collectively, the "Objection Notice Parties").

## ADDITIONAL INFORMATION

Schedule 1 to the Assumption and Assignment Procedures and Bid Protections Order sets forth the requirements for becoming a Qualified Bidder and submitting a Qualified Bid, and any party interested in making an offer to purchase the Assets must comply therewith. Only Qualified Bids will be considered by the Debtors in consultation with the Consultation Parties.

Any party interested in submitting a bid should contact the Debtors' investment banker, Houlihan Lokey, Inc., 245 Park Ave, 20th Floor, New York, NY 10167, William Hardie (WHardie@HL.com), Jay Weinberger (JWeinberger@HL.com), John Hartigan (JHartigan@HL.com), and Christina Walters (Christina.Walters@HL.com) as soon as possible.

Copies of the Motion, the Stalking Horse Agreement, and the Assumption and Assignment Procedures as well as all related exhibits and all other agreements filed with the Court, may be obtained free of charge at the website dedicated to the Debtors' Chapter 11 Cases maintained by their claims and noticing agent, Omni Agent Solutions, at https://omniagentsolutions.com/TrueValue.

## RESERVATION OF RIGHTS

Except as otherwise provided in the Stalking Horse Agreement or the Assumption and Assignment Procedures and Bid Protections Order, the Debtors, in consultation with the Consultation Parties, further reserve the right as they may reasonably determine to be in the best interest of their estates and in the exercise of their fiduciary duties to (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified

Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtors and their estates; (e) impose additional terms and conditions with respect to all potential bidders; (f) extend the deadlines set forth herein; (g) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (h) implement additional rules that the Debtors determine, in their business judgment, will discharge the Debtors' fiduciary duties. Nothing herein shall obligate the Debtors to consummate or pursue any transaction with a Qualified Bidder, other than the Stalking Horse Bidder subject to, and in accordance with the terms of, the Stalking Horse Agreement.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH HEREIN BY THE SALE OBJECTION DEADLINE WILL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING ANY OBJECTION TO THE MOTION, THE SALE ORDER, AND THE PROPOSED SALE.**

Dated:  [●] [●], 2024
       Wilmington, Delaware

                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ DRAFT*
Joseph O. Larkin
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

Ron E. Meisler (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0705
Ron.Meisler@skadden.com
Jennifer.Madden@skadden.com

- and –

Robert D. Drain (admitted *pro hac vice*)
Evan A. Hill (admitted *pro hac vice*)
Moshe S. Jacob (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Robert.Drain@skadden.com
Evan.Hill@skadden.com
Moshe.Jacob@skadden.com

**EXHIBIT 2**

**Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re* | Chapter 11 |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | Case No. 24-12337 (KBO) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF PROPOSED ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

**PLEASE TAKE NOTE OF THE FOLLOWING DEADLINES:**

**Cure Objection Deadline:** On or before **November 18, 2024 at 4:00 p.m.**, **prevailing Eastern Time**, **or such deadline set forth in the applicable Supplemental Cure Notice**.
Sale Hearing: November 12, 2024 at 10:00 a.m. (prevailing Eastern Time)

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1. On October 14, 2024, True Value Company, L.L.C. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed with the United States Bankruptcy Court for the District of Delaware (the "Court") the *Motion of Debtors for Entry of An Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving the Sale of Substantially All of the Debtors' Assets, and (III) Granting Related Relief* [Docket No. 12] (the "Bidding Procedures Motion"),[2] seeking an order, among other things, authorizing procedures (such procedures, the "Assumption and Assignment Procedures") to facilitate the fair and orderly assumption, assumption and assignment, and rejection of certain executory contracts (the "Executory Contracts") or unexpired leases (the "Unexpired Leases") of the Debtors.

2. On October [31], 2024, the Debtors filed the proposed *Order (I) Approving the Bid Protections; (II) Approving the Assumption and Assignment Procedures; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV)*

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bidding Procedures Motion.

*Authorizing and Scheduling the Sale Hearing and Setting Other Related Dates and Deadlines; and (V) Granting Related Relief* [Docket No. [ ]].

3. On [_], 2024, the Court, entered an order approving, among other things, the Assumption and Assignment Procedures [Docket No. [_]] (the "Assumption and Assignment Procedures and Bid Protections Order"). Pursuant to the Assumption and Assignment Procedures and Bid Protections Order, the Debtors hereby provide notice (this "Cure Notice") that they are seeking to assume and assign to Do It Best Corp. ("Do it Best" or the "Stalking Horse Bidder"),[3] or, if the Stalking Horse Bidder is not the Successful Bidder at the Auction (if any), any other Successful Bidder(s), the Contracts or Leases listed on **Exhibit A** attached hereto (each, an "Assigned Contract"). **You are receiving this Cure Notice because you may be a counterparty to a Contract or Lease (a "Counterparty") that is proposed to be assumed and assigned to the Successful Bidder in connection with the Sale.**

4. If the Debtors assume and assign to the Successful Bidder(s) an Assigned Contract to which you are a party, on the closing date of the Sale, or as soon thereafter as practicable, such Successful Bidder(s) will pay you the amount the Debtors' records reflect is owing for **pre-chapter 11 filing arrearages, if any,** as set forth on **Exhibit A** (the "Cure Amount").

5. The Debtors' inclusion of a Contract or Lease as an Assigned Contract on **Exhibit A** is not a guarantee that such Contract or Lease will ultimately be assumed and assigned to any Successful Bidder. Should it be determined that an Assigned Contract will not be assumed and assigned, the Debtors will notify such party to the Assigned Contract in writing of such decision.

6. Notwithstanding anything to the contrary herein, the proposed assumption and assignment of each of the Assigned Contracts listed on **Exhibit A** hereto (a) will not be an admission as to whether any such Assigned Contract was executory or unexpired as of the Petition Date or remains executory or unexpired postpetition within the meaning of Bankruptcy Code section 365; and (b) will be subject to the Debtors', the Stalking Horse Bidder's, or any Successful Bidder(s) right to conduct further confirmatory diligence with respect to the Cure Amount of each Assigned Contract and to modify such Cure Amount accordingly. In the event that the Debtors or the Successful Bidder determine that your Cure Amount should be modified, you will receive a notice pursuant to the Assumption and Assignment Procedures below, which will provide for additional time for you to object to such modification.

**VII.   Assumption and Assignment Procedures**

7. The Assumption and Assignment Procedures set forth below regarding the assumption and assignment of the Assigned Contracts proposed to be assumed by the Debtors and assigned to the Successful Bidder(s) in connection with the Sale will govern the assumption and assignment of all of the Assigned Contracts, subject to the payment of any Cure Amounts:

---

[3]   [A copy of the purchase agreement between the Debtors and the Stalking Horse Bidder (the "Stalking Horse Agreement" or the "APA", and such bid memorialized therein, the "Stalking Horse Bid") is attached as Exhibit A-2 to the Bidding Procedures Motion [Docket No. 12].

2

(a) **Cure Amounts and Adequate Assurance of Future Performance.** The payment of the applicable Cure Amounts shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

(b) **Supplemental Cure Notice**. Although the Debtors intend to make a good faith effort to identify all Assigned Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain Executory Contracts inadvertently omitted from the Assigned Contracts list or the Stalking Horse Bidder or Successful Bidders may identify other Executory Contracts that they desire to assume and assign in connection with a Sale. Accordingly, the Debtors reserve the right, at any time after the Assumption and Assignment Service Deadline and at least two days before the closing of a Sale, to (i) supplement the list of Assigned Contracts with previously omitted Executory Contracts (the "Additional Assigned Contracts"), (ii) remove Assigned Contracts from the list of Executory Contracts ultimately selected as Assigned Contracts that a Successful Bidder proposes be assumed and assigned to it in connection with a Sale (the "Eliminated Agreements"), and/or (iii) modify the previously stated Cure Amount associated with any Assigned Contracts. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "Supplemental Cure Notice") on each of the counterparties to such Additional Assigned Contracts or Eliminated Agreements, as applicable, and their counsel of record, if any, and the Consultation Parties; *provided*, *however*, the Debtors may not add an Executory Contract to the list of Assigned Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental Cure Notice will include the same information with respect to listed Assigned Contracts as was included in the Cure Notice. If the Successful Bidder is not the Stalking Horse Bidder, the Debtors will file the Notice of Successful Bidder.

(c) **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Amount proposed with respect thereto, *must* (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed amount of the Cure Amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon, so as to be actually received by, the Cure Objection Recipients (as defined below) by the applicable deadlines below.

  (1) *Cure Objection Deadline*. Any objection to the Cure Amount, to assumption and assignment of an Assigned Contract, or to lack of adequate assurance of the performance of the Stalking Horse Bidder must be filed with the Bankruptcy Court on or before **November 18, 2024 at 4:00 p.m.**, **prevailing Eastern Time** (the "Cure Objection Deadline") or such later date identified in the Supplemental Cure Notice, and served on: (a) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 320 South Canal St., Chicago, IL

3

60606 (Attn: Ron Meisler, Esq. (ron.meisler@skadden.com) and Jennifer Madden, Esq. (jennifer.madden@skadden.com)), One Manhattan West, 395 9th Ave., New York, NY 10001 (Attn: Evan Hill, Esq. (evan.hill@skadden.com) and Moshe Jacob, Esq. (moshe.jacob@skadden.com)), and 920 North King Street, Wilmington, Delaware 19801 (Attn: Joseph Larkin (joseph.larkin@skadden.com)); and (b) counsel to the Stalking Horse Bidder, Taft Stettinius & Hollister LLP, One Indiana Square, Suite 3500, Indianapolis, IN 46204 (Attn: Zachary E. Klutz (zklutz@taftlaw.com) and W. Timothy Miller (miller@taftlaw.com)) (collectively, the "Cure Objection Recipients").

(2) *Supplemental Cure Objection Deadline*. Any objection to the assumption and assignment of an Additional Assigned Contract and the corresponding Cure Amount, the removal of an Eliminated Agreement, or the modification of a Cure Amount in the Supplemental Cure Notice (a "Supplemental Cure Objection") must be filed with the Bankruptcy Court **within seven days of receipt of the Supplemental Cure Notice** (the "Supplemental Cure Objection Deadline"), and served on the Cure Objection Recipients.

(d) **Assumption/Assignment/Cure Hearing**. The hearing to be conducted by this Court to consider objections, if any, to a proposed assumption and assignment or the Cure Amount with respect thereto will commence on **December 4, 2024 at 9:30 a.m., prevailing Eastern Time (subject to Court availability)**, before the Honorable Karen B. Owens of the United States Bankruptcy Court for the District of Delaware, 824 Market St. N., Wilmington, Delaware 19801.

8. Any party that fails to timely file an objection to the proposed Cure Amount, the proposed assumption and assignment of an Assigned Contract or Additional Assigned Contract listed on a Cure Notice or the Supplemental Cure Notice, or the Sale is deemed to have consented to (a) such Cure Amount, (b) the assumption and assignment of such Assigned Contract or Additional Assigned Contract(s) (including the adequate assurance of future payment), (c) the related relief requested in the Motion, and (d) the Sale. Such party shall be forever barred and estopped from objecting to (i) the Cure Amounts, (ii) the assumption and assignment of the Assigned Contract or Additional Assigned Contract(s), (iii) adequate assurance of future performance, or (iv) any of the relief requested in the Motion (whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Stalking Horse Bidder or a Successful Bidder for purposes of Bankruptcy Code section 365(c)(1)). Such party shall also be forever barred and estopped from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or a Successful Bidder, with respect to such party's Assigned Contract or Additional Assigned Contract.

9. If a Cure Objection or Supplemental Cure Objection as applicable, filed by the Cure Objection Deadline or Supplemental Cure Objection Deadline, as applicable, cannot otherwise be resolved by the parties prior to the Assumption/Assignment/Cure Hearing, such objections and all

issues regarding the Cure Amount to be paid, the assignability, or the adequate assurance of future performance, as applicable, will be determined by the Court at the Assumption/Assignment/Cure Hearing, or at a later hearing on a date to be scheduled by the Debtors in their discretion, and in consultation with the Successful Bidder.

**VIII.    Additional Information**

10.    Service of a Cure Notice or a Supplemental Cure Notice does not constitute an admission that any contract is an Executory Contract or that the stated Cure Amount related to any contract or Unexpired Lease constitutes a claim against the Debtors or a right against the Stalking Horse Bidder (all rights with respect thereto being expressly reserved).  Further, the inclusion of a contract or Unexpired Lease, as applicable, on the Cure Notice is not a guarantee that such contract or Unexpired Lease, as applicable, will ultimately be assumed and assigned.

11.    Unless otherwise provided in the Sale Order, the Debtors will have no liability or obligation with respect to defaults relating to the Assigned Contracts arising, accruing, or relating to a period on or after the effective date of assignment.

12.    Copies of the Bidding Procedures Motion, the Assumption and Assignment and Bid Protections Order, and the Sale Notice may be obtained free of charge at the website dedicated to the Debtors' Chapter 11 Cases maintained by their claims and noticing agent and administrative advisor, Omni Agent Solutions, at https://omniagentsolutions.com/TrueValue.

*[Remainder of Page Intentionally Left Blank]*

Dated: [●] [●], 2024
      Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ DRAFT*
Joseph O. Larkin
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

Ron E. Meisler (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0705
Ron.Meisler@skadden.com
Jennifer.Madden@skadden.com

- and –

Robert D. Drain (admitted *pro hac vice*)
Evan A. Hill (admitted *pro hac vice*)
Moshe S. Jacob (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Robert.Drain@skadden.com
Evan.Hill@skadden.com
Moshe.Jacob@skadden.com