## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C., *et al.*,** | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| | Related Docket Nos. 12, 297, 362, 363 |

### NOTICE OF REVISED PROPOSED SALE ORDER

**PLEASE TAKE NOTICE** that on October 14, 2024 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the U.S. Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on the Petition Date, the Debtors filed the *Motion of Debtors for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving the Sale of Substantially All of the Debtors' Assets, and (III) Granting Related Relief* [Docket No. 12] (the "Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that on November 4, 2024, the Court entered the *Order (I) Approving the Bid Protections; (II) Approving the Assumption and Assignment Procedures; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV) Authorizing and Scheduling the Sale Hearing*

---

[1]  The Debtors in these chapter 11 cases, along with the last four (4) digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*and Setting Other Related Dates and Deadlines; and (V) Granting Related Relief* [Docket No. 297] (the "Bid Protections Order"), by which the Court approved procedures setting forth the process by which the Debtors are authorized to conduct a marketing and auction process for the sale (the "Sale") of substantially all of the Debtors' assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Protections Order, on November 9, 2024, having received no Qualified Bids other than the Stalking Horse Bid by the Bid Deadline, the Debtors designated Do it Best Corp. ("Do it Best") as the Successful Bidder and filed the *Notice of Cancellation of Auction and Designation of the Stalking Horse Bidder as the Successful Bidder* [Docket No. 362].

**PLEASE TAKE FURTHER NOTICE** that on November 10, 2024, the Debtors filed the *Notice of Amended and Restated Asset Purchase Agreement* [Docket No. 363] (the "APA Notice"), which included as Exhibit A that certain amended and restated asset purchase agreement (the "Amended and Restated APA"), dated as of November 10, 2024, among the Debtors and Do it Best.

**PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file a proposed Sale Order (the "Proposed Sale Order"), a copy of which is attached hereto as **Exhibit A**.  A redline reflecting changes to the proposed Sale Order that was attached to the Motion as Exhibit B is filed hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that a hearing for approval of the Proposed Sale Order (the "Sale Hearing") will be held on **November 12, 2024 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable Karen B. Owens, United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801.

**THE ATTACHED FORM OF SALE ORDER AND RELATED REDLINE ARE BEING FILED IN THE INTEREST OF TIME AND REMAIN SUBJECT TO CONTINUING NEGOTIATIONS WITH DO IT BEST, THE PREPETITION SECURED PARTIES, THE WPC LANDLORDS, AND THE DEBTORS. THE FINAL VERSION IS EXPECTED TO CONTAIN CERTAIN LIMITED DIFFERENCES. FOR THE AVOIDANCE OF DOUBT, THE PARTIES THAT ARE CONTINUING TO NEGOTIATE HAVE NOT YET  CONSENTED TO THE ATTACHED FORM AS THE FINAL FORM OF SALE ORDER, AND EACH SUCH PARTY RESERVES THEIR RESPECTIVE RIGHTS. THE DEBTORS SHALL FILE A REDLINE VERSION WITH THE BANKRUPTCY COURT CONCURRENTLY WITH THE FILING OF ANY AMENDED OR MODIFIED VERSIONS OF THE ATTACHED FORM OF SALE ORDER.**

*[Remainder of page intentionally left blank]*

Dated:  November 12, 2024
        Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Joseph O. Larkin*
Joseph O. Larkin
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

Ron E. Meisler (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0705
Ron.Meisler@skadden.com
Jennifer.Madden@skadden.com

- and –

Robert D. Drain (admitted *pro hac vice*)
Evan A. Hill (admitted *pro hac vice*)
Moshe S. Jacob (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Robert.Drain@skadden.com
Evan.Hill@skadden.com
Moshe.Jacob@skadden.com

*Proposed Counsel to Debtors and Debtors-in-Possession*

## **EXHIBIT A**

Proposed Sale Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
| | **Related Docket Nos. 12, 297** |

### ORDER (A) APPROVING
### SALE OF SUBSTANTIALLY ALL
### OF DEBTORS' ASSETS FREE AND CLEAR
### OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS,
### AND ENCUMBRANCES, (B) AUTHORIZING DEBTORS
### TO ENTER INTO AND PERFORM UNDER ASSET PURCHASE
### AGREEMENT, (C) APPROVING ASSUMPTION AND ASSIGNMENT OF
### CERTAIN EXECUTORY CONTRACTS, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), for entry of an order (this "Sale Order" or "Order"): (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Amended and Restated Asset Purchase Agreement, substantially in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion, the Bid Protections Order, or the Asset Purchase Agreement (each as defined herein), as applicable.

form attached hereto as **Exhibit 1** (together with all schedules, exhibits, and ancillary documents related thereto, and as may be amended, supplemented, restated, or otherwise modified, the "Asset Purchase Agreement"), by and among the Debtors and Do it Best Corp., an Indiana corporation (the "Buyer"), (b) authorizing and approving the sale (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Asset Purchase Agreement, the "Sale") of those assets set forth in Section 2.1 of the Asset Purchase Agreement (the "Transferred Assets") free and clear of all liens, claims, encumbrances, and other interests, except to the extent set forth in the Asset Purchase Agreement or this Order, and the assumption of certain assumed liabilities set forth in Section 2.3 of the Asset Purchase Agreement (the "Assumed Liabilities") pursuant to the Asset Purchase Agreement upon the closing of the Sale (the "Closing"), (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "Assigned Contract," and, collectively, the "Assigned Contracts") upon the Closing, subject to (i) the occurrence of the objection deadline set forth in the Cure Notice filed at Docket No. 339 (the "Cure Objection Deadline") or any supplemental cure objection deadline set forth in a Supplemental Cure Notice (as defined in the Bid Protections Order) (each, a "Supplemental Cure Objection Deadline"), as applicable, without any objection being filed with respect to such Assigned Contract, (ii) an order of this Court authorizing the assumption and assignment of the Assigned Contracts, and (iii) the payment by the Buyer of any payments to cure any defaults arising under any such Assigned Contract (the "Cure Amounts"), and (d) granting related relief, all as more fully set forth in the Motion; and this Court having entered the *Order (I) Approving the Bid Protections; (II) Approving the Assumption and Assignment Procedures; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV) Authorizing and Scheduling the Sale Hearing and Setting Other Related Dates and*

2

*Deadlines; and (V) Granting Related Relief* [Docket No. 297 (the "<u>Bid Protections Order</u>")); and

the Debtors having determined that the Buyer has submitted the highest or otherwise best bid for

the Debtors' assets and determined that the Buyer is the Successful Bidder (as defined in the Bid

Protections Order), each in accordance with the Bid Protections Order; and the Court having

conducted a hearing on the Motion (the "<u>Sale Hearing</u>"), at which time all interested parties were

offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and

considered the Motion, the Asset Purchase Agreement, the Amended and Restated Transition

Services Agreement Term Sheet attached as <u>Exhibit H</u> to the Asset Purchase Agreement filed at

Docket No. 363 (as may be amended, supplemented, restated, or otherwise modified, the "<u>TSA</u>

<u>Term Sheet</u>"), and any and all objections to the Sale, the Asset Purchase Agreement, and any other

documents filed in accordance with the Bid Protections Order; and the Court having heard

statements of counsel and the evidence presented in support of the relief requested in the Motion

at the Sale Hearing and in the declarations of John Hartigan, Nick Weber, and Harvey Tepner

(collectively, the "<u>Sale Declarations</u>"); and it appearing that due notice of the Motion, the Sale

Hearing, the Asset Purchase Agreement, and the Sale has been provided; and it appearing that the

relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders,

and all other parties in interest; and it appearing that the Court has jurisdiction over this matter;

and it appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing

establish just cause for the relief granted herein; and after due deliberation, it is hereby:

**FOUND, CONCLUDED, AND DETERMINED THAT:**

<u>**Jurisdiction, Venue, and Final Order**</u>

A.    This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(a)–

(b)(1) and 1334(b) and the *Amended Standing Order of Reference* from the United States District

Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28

3

U.S.C. § 157(b)(2)(A).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact set forth herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law set forth herein constitute findings of fact, they are adopted as such.

**Property of the Estate**

D.      The Debtors are the sole and lawful owner of, and have clear and marketable title to, the Transferred Assets to be sold pursuant to the Asset Purchase Agreement. The Debtors' right, title and interest in and to the Transferred Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

**Notice of the Motion, Auction, Sale Hearing,
Asset Purchase Agreement and Sale and the Cure Amounts**

E.      As evidenced by the affidavits of service and publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Asset Purchase Agreement, and the Sale has been provided to each party entitled to such notice in

4

accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and Local Bankruptcy Rule 2002-1(b), and in compliance with the Bid Protections Order. No other or further notice of the foregoing is required. With respect to parties whose identities or addresses are not reasonably ascertained by the Debtors, publication of the Sale Notice (as defined in the Motion) in the *New York Times* on November 7, 2024, and the posting of the Sale Notice on the website of the Debtors' claims and noticing agent, Omni Agent Solutions, at https://omniagentsolutions.com/TrueValue on November 4, 2024, was, and is deemed, sufficient and reasonably calculated under the circumstances to reach such parties.

F.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

G.      In accordance with the Bid Protections Order, the Debtors have served a notice of their intent to assume and assign certain Assigned Contracts and of the Cure Amounts upon each counterparty to such Assigned Contract at Docket No. 339 (such notice or any Supplemental Cure Notice (as defined in the Bid Protections Order), the "Cure Notices"). All objections, responses, or requests for adequate assurance and with respect to Cure Amounts related to Assigned Contracts set forth on the Cure Notices, if any, will be resolved at or prior to, or adjudicated at, the hearing scheduled for December 4, 2024 at 10:00 a.m. Eastern Time, or at such later hearing as the Debtors and the counterparties may agree (each, an "Assumption/Assignment/Cure Hearing") and all rights of counterparties who filed objections to such Cure Notices are reserved until the parties have negotiated a consensual resolution or such objections are otherwise determined at the Assumption/Assignment/Cure Hearing or by further order of this Court.  Additional Cure Notices may be served in accordance with the Bid Protections Order prior to the Assumption/Assignment/Cure Hearing, and if the objection deadline set forth therein precedes the

Assumption/Assignment/Cure Hearing, any objections, responses or requests for adequate assurance related to the Assigned Contracts set forth on such Supplemental Cure Notices will be scheduled for the Assumption/Assignment/Cure Hearing to the extent not resolved prior thereto.

## **Business Judgment**

H.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and authorization to close, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Asset Purchase Agreement and the TSA Term Sheet, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk of depreciation of the value of the Debtors' assets if the Sale is not consummated reasonably promptly and on a timeline consistent with the Cash Collateral Order (as defined herein)  and the settlement term sheet annexed as Exhibit 1 thereto (the "Cash Collateral Term Sheet"); (ii) the Sale of the Transferred Assets and the assignment and assumption of the Assumed Liabilities pursuant to the Asset Purchase Agreement at the Closing present the best opportunity and represent the best method to maximize the value of the Debtors' estates for the benefit of the Debtors, their estates, their creditors, and other parties in interest; (iii) the purchase price and other terms set forth in the Asset Purchase Agreement constitute the highest or otherwise best offer received for the Debtors' assets; and (iv) unless the Sale is concluded as provided for in this Sale Order, the Cash Collateral Order and the Cash Collateral Term Sheet , and pursuant to the Asset Purchase Agreement, including on the expedited timeline, the Debtors and their estates may receive significantly less value for all stakeholders.

## Marketing Process and Highest or Otherwise Best Offer

I.        As demonstrated by the Sale Declarations, the evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the Debtors, consistent with their fiduciary duties, conducted a robust and extensive marketing process in accordance with, and have, along with the Buyer, complied in all respects with, the Bid Protections Order and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Debtors' assets and assume the Debtors' liabilities.

J.        (i) The sale process was non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any person or entity to make an offer to purchase the Debtors' assets, including, without limitation the Transferred Assets; (ii) the Debtors and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good-faith manner; and (iii) the sale process conducted by the Debtors both prior to the commencement of the Chapter 11 Cases and post-petition pursuant to the Bid Protections Order resulted in the highest or otherwise best value for the Debtors' assets, was in the best interest of the Debtors, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result.

K.        Approval of the Motion and the Asset Purchase Agreement, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest.

## Single, Integrated Transaction

L.        Entry of this Order approving the Sale Order, the Asset Purchase Agreement, and all provisions thereof are a necessary condition precedent to the Buyer consummating the Sale. The provisions of this Order and the Asset Purchase Agreement and the transactions contemplated

by this Order and the Asset Purchase Agreement and Sale to the Buyer are inextricably linked and technically and collectively constitute a single, integrated transaction.

## No *Sub Rosa* Plan

M.      The consummation of the Sale outside a plan of reorganization pursuant to the Asset Purchase Agreement and the transactions contemplated thereby, including the assumption and assignment of the Assigned Contracts, neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

## Good Faith of Buyer

N.      The consideration to be paid by the Buyer under the Asset Purchase Agreement was negotiated at arm's length, in good faith and without collusion pursuant to section 363(m) of the Bankruptcy Code and is fair and reasonable under the circumstances. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) the Buyer complied with the provisions in the Bid Protections Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bid Protections Order; (iv) all payments made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement was at arm's length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; and (vii) the Buyer has not acted in a collusive manner with any person.

O.      The Debtors, the Buyer, their affiliates, and each of their respective management, boards of directors, officers, directors, members, partners, principals, shareholders (or equivalent),

employees, agents, and representatives, have acted in good faith. Neither the Buyer nor any of its affiliates, officers, directors, members, partners, principals, shareholders (or equivalent), or any of their respective representatives, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor. The Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

### No Fraudulent Transfer

P.      The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement are consummating the Sale with any fraudulent or otherwise improper purpose. The consideration provided by the Buyer pursuant to the Asset Purchase Agreement for its purchase of the Transferred Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia. None of the Debtors, the Buyer, nor any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, attorneys, successors, or assigns have engaged in any conduct that would cause or permit the consummation of the Sale or the other transactions contemplated by the Asset Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

### Buyer Not Successor

Q.      Neither the Buyer nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor

their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (collectively, the "Buyer Parties") is a continuation of the Debtors or their respective estates and no Buyer Party is holding itself out to the public as a continuation of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer (or any other Buyer Party) and the Debtors.

R.      Except as expressly provided in the Asset Purchase Agreement, the TSA Term Sheet or as otherwise set forth herein or further order of this Court, the (i) transfer of the Transferred Assets to the Buyer and (ii) assignment to the Buyer of the Assigned Contracts (which shall be subject to further order of this Court except as set forth herein), will not subject the Buyer or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order, any Contract or Lease that is not a Closing Date Assigned Contract (as defined herein) shall not be an Assigned Contract or part of the Transferred Assets under this Sale Order or the Asset Purchase Agreement until further order of this Court.

**Validity of Transfer**

S.      Each Debtor's board of directors has authorized the execution and delivery of the Asset Purchase Agreement and the Sale of the Transferred Assets to the Buyer (or its designee). The Debtors and their affiliates (i) have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, as applicable, (ii)

have all of the power and authority necessary to consummate the Sale, and (iii) have taken all action necessary to authorize and approve the Asset Purchase Agreement and to consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset Purchase Agreement or this Sale Order, are required for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement or this Sale Order. The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

## Section 363(f) Is Satisfied

T.      In accordance with *Final Order (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; and (C) Modifying the Automatic Stay; and (II) Granting Related Relief* [Dkt. No. 296] (the "Cash Collateral Order") and the Cash Collateral Term Sheet, the Prepetition Secured Parties (as defined in the Cash Collateral Order) and the Debtors reached an agreement setting forth, among other things, the terms and conditions on which the Prepetition Secured Parties would consent to the Sale of the Transferred Assets to the Buyer.  The terms and conditions of the Cash Collateral Order, including, without limitation, the Cash Collateral Term Sheet are hereby fully incorporated into this Sale Order.

U.      The Sale of the Transferred Assets to the Buyer (or its designee) and the assumption and assignment to the Buyer (or its designee) of the Assigned Contracts under the terms of the Asset Purchase Agreement meet the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Transferred Assets will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial rights, title, and interests in the Transferred Assets free and clear of any and all liens, claims, interests, and encumbrances, and will not subject any Buyer Party to any liability for any liens, claims, interests, and encumbrances whatsoever (including, without

11

limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities (as defined in the Asset Purchase Agreement) and this Sale Order. All holders of liens, claims, interests, and encumbrances who did not object, or withdrew their objections, to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, interests, and encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their liens, claims, interests, and encumbrances, if any, attach to the proceeds of the Sale (in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable) following the use of such proceeds in accordance with the Cash Collateral Order and the Cash Collateral Term Sheet. All payments of cash from sale proceeds shall be subject in their entirety to the Cash Collateral Order and the Cash Collateral Term Sheet, and in the event of any conflict or inconsistency with respect to the application or use of Sale proceeds and the use of cash collateral following the Sale Closing between this Sale Order, on the one hand, and the Cash Collateral Order and Cash Collateral Order Term Sheet, on the other hand, the Cash Collateral Order and Cash Collateral Term Sheet shall control. All payments to the Prepetition Secured Parties in accordance with the Cash Collateral Order and Cash Collateral Term Sheet shall be for the indefeasible and permanent application of the Prepetition Secured Obligations until such obligations are indefeasibly paid in full. Those holders of claims who did object and that have an interest in the Transferred Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

V.      The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale and

the assumption and assignment of the Assigned Contracts (i) if the transfer of the Transferred Assets were not free and clear of all interests of any kind or nature whatsoever or (ii) if the Buyer or any of its affiliates or designees would, or in the future could, be liable for any interests, in each case, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, in each case subject only to the Assumed Liabilities. Not transferring the Transferred Assets free and clear of all interests of any kind or nature whatsoever would adversely impact the Debtors' efforts to maximize the value of their estates.

**Assumption and Assignment of the Assigned Contracts**

W.     Solely with respect to any Assigned Contract listed on a Cure Notice for which the Cure Notice Objection Deadline or Supplemental Cure Notice Objection Deadline, as applicable, has occurred, and for which there has been no objection to the assumption, assignment, adequate assurance of future performance thereof, or Cure Amount listed in such Cure Notice and with respect to which Buyer has requested that such Contract be treated as a "Transferred Contract" under the Asset Purchase Agreement (each such contract, a "Closing Date Assigned Contract"), the Cure Amounts listed on such Cure Notices are deemed to be the sole amounts necessary to be paid upon assumption of such Closing Date Assigned Contracts under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A).  All Cure Amounts, if any, with respect to the Closing Date Assigned Contracts shall be satisfied by the Buyer in accordance with the Asset Purchase Agreement.

**Prompt Consummation**

X.     Based on the record of the Sale Declarations and the Sale Hearing, the terms of the Cash Collateral Order and the Cash Collateral Term Sheet, and for the reasons stated on the record in the Sale Declarations and at the Sale Hearing, the sale of the Transferred Assets must be

approved and consummated promptly to preserve the value of the Transferred Assets. Time, therefore, is of the essence in effectuating the Asset Purchase Agreement. As such, the Debtors and the Buyer intend to close the sale of the Transferred Assets as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Asset Purchase Agreement and there is no legal or equitable reason to delay consummation of the Asset Purchase Agreement and the transactions contemplated therein. Accordingly, there is sufficient cause to waive the stay provided in the Bankruptcy Rules 6004(h) and 6006(d).

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to or reservation of rights with respect to the Motion or the relief requested therein that have not been withdrawn or resolved are overruled, except for objections to or reservation of rights with respect to the proposed assumption and assignment of a contract or unexpired lease (including the adequate assurance of future performance), or the Cure Amount proposed with respect thereto, which must be filed by the Cure Objection Deadline or the Supplemental Cure Objection Deadline, as applicable, and if not resolved prior to, may be adjudicated at an Assumption/Assignment/Cure Hearing. All persons and entities who did not object or withdraw their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code, except as otherwise set forth herein.

**Approval of Asset Purchase Agreement**

3.      The Asset Purchase Agreement and all other ancillary documents, including the TSA Term Sheet associated therewith and any other documents contemplated by the Asset

14

Purchase Agreement or that are necessary or appropriate to complete the transactions provided for in the Asset Purchase Agreement, and all of the terms and conditions thereof, and the Sale and related transactions contemplated therewith, are hereby approved in all respects. The failure specifically to include any particular terms of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the Sale be authorized and approved in their entireties.

4.      The Debtors are authorized to enter into a transition services agreement with Buyer on terms consistent with those set forth in the TSA Term Sheet (which is a material part of, and integrated with, the Asset Purchase Agreement) without further order of the Court; provided that the Debtors shall provide the Consultation Parties with at least two (2) business days prior notice of the transition services agreement with Buyer before such agreement is effective.

5.      Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the Asset Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors and their respective officers, employees, and agents are authorized, empowered, and directed to take any and all actions necessary or appropriate to (a) consummate the sale of the Transferred Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, and this Sale Order, (b) enter into all other agreements contemplated by the Asset Purchase Agreement and consummate all other transactions contemplated by the Asset Purchase Agreement, (c) consummate the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, (d) continue performance under and make all payments required by the Asset Purchase Agreement, (e) assume and assign any and all Assigned Contracts (subject to parties' rights as set forth in the Bid Protections Order, this Sale Order, and

the applicable Cure Notice), (f) assign the Assumed Liabilities, and (g) execute and deliver, perform under, consummate, and implement the Asset Purchase Agreement, together with all additional instruments and ancillary documents that may be reasonably necessary or desirable to implement the Sale, or as may be reasonably necessary or appropriate to implement or perform any of the obligations contemplated by the Asset Purchase Agreement and any other documentation relating to the Sale, all without further order of the Court. For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order, any Contract or Lease that is not a Closing Date Assigned Contract (as defined herein) shall not be an Assigned Contract or part of the Transferred Assets under this Sale Order or the Asset Purchase Agreement until further order of this Court.

6.     The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements and this Order, including amended and restated certificates, articles of incorporation and by-laws, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

**Transfer of the Transferred Assets as set forth in the Asset Purchase Agreement**

7.     Pursuant to Sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, and subject to the terms and conditions of the Asset Purchase Agreement and this Sale Order, the Debtors are authorized and directed to transfer the Transferred Assets to the

Buyer on the Closing in accordance with the Asset Purchase Agreement and this Sale Order. The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (as defined in the Asset Purchase Agreement).

8.      All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement and this Sale Order.

9.      At Closing and except as otherwise set forth in the Asset Purchase Agreement, TSA Term Sheet or in this Sale Order, all of the Debtors' right, title, and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Buyer (or its designee) pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Transferred Assets. All persons or entities, presently, or at or after the Closing, in possession of some or all of the Transferred Assets, are directed to surrender possession of any and all portions of the Transferred Assets to the Buyer (or its designee) or its respective designees on the Closing or at such time thereafter as the Buyer (or its designee) may request.

10.     Except as otherwise set forth in this Sale Order, this Sale Order (a) shall be effective as a determination that, as of the Closing, (i) the Transferred Assets shall have been transferred to the Buyer (or its designee) free and clear of all liens, claims, interests, and encumbrances, subject only to the Assumed Liabilities, (ii) holders of claims who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale being free and clear of their claims pursuant to section 363(f)(2) of the Bankruptcy Code and holders of claims who did object could be compelled in a legal or equitable proceeding to accept money

satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their claims that constitute interests in the Transferred Assets, if any, attach to the proceeds of the Sale with the same priority that existed immediately prior to the Closing only after such proceeds are first applied to the Prepetition Secured Parties' repayment rights as set forth in the Cash Collateral Order and Cash Collateral Term Sheet which payments shall be for the indefeasible and permanent application of the Prepetition Secured Obligations until such obligations are indefeasibly paid in full, and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Transferred Assets are sold free and clear of any reclamation rights. All liens, claims, interests, and encumbrances on the Transferred Assets shall attach to the proceeds of the Sale (in the same order of priority and with the same validity, force, and effect that such liens, claims, interests, and encumbrances applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein) only after such proceeds are first applied to the Prepetition Secured

Parties' repayment rights as set forth in the Cash Collateral Order and Cash Collateral Term Sheet which payments shall be for the indefeasible and permanent application of the Prepetition Secured Obligations until such obligations are indefeasibly paid in full.  Notwithstanding anything to the contrary in this Sale Order, no liens shall attach to any (x) Transferred Assets upon or after Closing that are contemplated to be transferred to Buyer pursuant to the Asset Purchase Agreement or TSA Term Sheet (as and when such assets are transferred to Buyer), including, without limitation, the inventory, proceeds from inventory, receivables, or proceeds of receivables purchased by Buyer in accordance with the Asset Purchase Agreement or supplied under the TSA Term Sheet, all of which constitute Transferred Assets, whether or not such Transferred Assets are transferred at Closing or thereafter, or remain in the possession or control of the estates following Closing pursuant to the TSA Term Sheet or otherwise, or (y) cash or other assets transferred from Buyer to Seller pursuant to the TSA Term Sheet to cover costs of the transition, as applicable, that will be transferred after Closing.

11.     Except as otherwise provided in the Asset Purchase Agreement and this Sale Order, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets, and the ownership, sale, or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to the Buyer (or its designee), are hereby forever barred, estopped, and permanently enjoined from asserting such claims against any Buyer Party and its property (including, without limitation, the Transferred Assets). Following the Closing, no holder of any claim or interest shall interfere with the Buyer's (or its designee's) title

to or use and enjoyment of the Transferred Assets based on or related to any such claim or interest, or based on any action the Debtor may take in their Chapter 11 cases.

12.     If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, interests, and encumbrances that the person or entity has with respect to the Debtors or the Transferred Assets or otherwise, then only with regard to the Transferred Assets that are purchased by the Buyer (or its designee) pursuant to the Asset Purchase Agreement, upon or after Closing, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Transferred Assets; provided, that neither the Debtors nor the Buyer is authorized to file any releases, statements, instruments or documents releasing the liens and/or security interests of the Prepetition Secured Parties without first obtaining the express written consent of the Prepetition Administrative Agent (as defined in the Cash Collateral Order) and providing the Prepetition Administrative Agent drafts of any such release documents for its review and approval, (b) the Buyer (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Buyer Parties and the Transferred Assets, and (c) the Buyer (or its designee) may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section

363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Transferred Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Transferred Assets free and clear of liens, claims, interests, and encumbrances shall be self-executing and neither the Debtors nor the Buyer (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

### No Successor or Transferee Liability

13.     No Buyer Party shall be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale contemplated by the Asset Purchase Agreement, or the transfer, operation, or use of the Transferred Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Buyer, with respect to any Assumed Liabilities arising after the Closing), (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 ("ERISA"), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

14.     Immediately prior to the Closing, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling stockholders existed between the Buyer and the Debtors.

15.    Other than as expressly provided in the Asset Purchase Agreement, the TSA Term Sheet or this Sale Order, no Buyer Party shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Transferred Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the Asset Purchase Agreement or the TSA Term Sheet, no Buyer Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Transferred Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation, or other employee benefits which is or has been sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute. Other than as contemplated in the Asset Purchase Agreement, the TSA Term Sheet, or this Sale Order, no Buyer Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act,

29 U.S.C. §§ 2101 *et seq.*, (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.*, or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Buyer's purchase of the Transferred Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Asset Purchase Agreement. Without limiting the foregoing, no Buyer Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Transferred Assets except to the extent they are Assumed Liabilities set forth in the Asset Purchase Agreement.

16.     Effective upon the Closing and subject to the terms of this Sale Order, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against any Buyer Party or their respective assets (including, without limitation, the Transferred Assets), with respect to any Successor or Transferee Liability including, without limitation, the following actions: (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff (to the extent not taken prepetition) or right of subrogation of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) to the maximum extent permitted under applicable law (including to the extent provided under Section

525 of the Bankruptcy Code), revoking, terminating, failing, or refusing to renew any license, permit, or authorization to operate any business in connection with the Transferred Assets or conduct any of the businesses operated with respect to such assets.

## Good Faith of Buyer

17.    The Sale contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without limitation, the assumption and assignment of the Assigned Contracts in accordance with this Order), unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

18.    Neither the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Transferred Assets under the Asset Purchase Agreement is fair and reasonable and the Sale may not be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy Code.

## Assumption and Assignment of Assigned Contracts

19.    The Debtors are authorized and directed at the Closing, and subject to payment of applicable Cure Amounts, to assume and assign each of the Closing Date Assigned Contracts to the Buyer (or its designee) and to have such Closing Date Assigned Contracts assumed by the Buyer (or its designee), pursuant to sections 105(a) and 365 of the Bankruptcy Code, and to execute and deliver to the Buyer (or its designee) such documents or other instruments as may be necessary to assign and transfer the Closing Date Assigned Contracts to the Buyer (or its designee). The payment of the applicable Cure Amounts (if any) for the Closing Date Assigned Contracts shall

24

(a) effect a cure of all defaults existing thereunder as of the Closing and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default.  Upon the payment of Cure Amounts, if any, by the Buyer for the Closing Date Assigned Contracts, such Closing Date Assigned Contracts shall remain in full force and effect, and no default shall exist under the Closing Date Assigned Contract, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such default.  The Cure Amounts with respect to such Closing Date Assigned Contracts shall not be subject to further dispute or audit, including, without limitation, any dispute or audit based on performance prior to the Closing. After payment of the Cure Amounts by Buyer for the Closing Date Assigned Contracts, none of the Debtors or the Buyer shall have any further liabilities to the counterparties to the Closing Date Assigned Contracts other than the Buyer's obligations under the Closing Date Assigned Contracts that accrue and become due and payable on or after Closing.

20.     For the avoidance of doubt and notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, all contract counterparties' rights with respect to the assumption and assignment of their respective Contracts or Leases that are not Closing Date Assigned Contracts, and any Cure Amount proposed with respect thereto, are reserved through the Cure Objection Deadline or a Supplemental Cure Objection Deadline (as applicable), and any such timely objections that are not resolved prior to an Assumption/Assignment/Cure Hearing shall be subject to adjudication at an Assumption/Assignment/Cure Hearing or such later hearing agreed to by the Debtors.

21.     Any non-Debtor counterparty to an Assigned Contract that does not file with the Court an objection to such assumption and assignment by the Cure Objection Deadline or the

Supplemental Cure Objection Deadline (as applicable) is deemed to have consented to such assumption and assignment.

22.     Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts, the Closing Date Assigned Contracts that Buyer designates to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer (or its designee) notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer. Any provisions in any Closing Date Assigned Contract that prohibit or condition the assignment of such Closing Date Assigned Contract to the Buyer (or its designee) or allow the counterparty to such Closing Date Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Closing Date Assigned Contract to the Buyer (or its designee), constitute unenforceable anti-assignment provisions that are void and of no force and effect. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or its designee) shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Closing Date Assigned Contracts, and such Closing Date Assigned Contracts shall remain in full force and effect for the benefit of the Buyer (or its designee). Each counterparty to the Closing Date Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or any Buyer Party or their respective property any assignment fee, acceleration, default, breach, or claim or pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing or arising by reason of the Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Assigned Contracts, or any purported written or oral modification to the Closing Date Assigned Contracts and (b) asserting against any Buyer Party (or its respective

property, including, without limitation, the Transferred Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against, the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

23.     Upon the Closing and the payment of the relevant Cure Amounts, if any, the Buyer (or its designee) shall be deemed to be substituted for the Debtors as a party to the applicable Closing Date Assigned Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Closing Date Assigned Contracts. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer (or its designee) or the Debtors as a result of the assumption and assignment of the Closing Date Assigned Contracts. The failure of the Debtors or the Buyer (or its designee) to enforce at any time one or more terms or conditions of any Closing Date Assigned Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer (or its designee), as the case may be, to enforce every term and condition of such Closing Date Assigned Contract. The validity of the assumption and assignment of any Closing Date Assigned Contract to the Buyer (or its designee) shall not be affected by any existing dispute between the Debtors and any counterparty to such Closing Date Assigned Contract. Any party that may have had the right to consent to the assignment of any Closing Date Assigned Contract and did not timely object prior to the passage of the Cure Objection Deadline or Supplemental Cure Objection Deadline, as applicable, will be deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

24.     Notwithstanding any term of any Closing Date Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Closing Date Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by

the Buyer subject to the other applicable terms of the Closing Date Assigned Contract. Any extension or renewal options in connection with all Closing Date Assigned Contracts that the Debtors validly exercised prior to the entry of this Order, and all terms of the Closing Date Assigned Contracts, are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Closing Date Assigned Contracts has not otherwise expired.

25.     The Debtors' obligations to counterparties of Leases that are not Closing Date Assigned Contracts pursuant to section 365(d)(3) of the Bankruptcy Code through the effective date of assumption and assignment or rejection of such Leases shall not be affected or modified by this Sale Order and use of Leases pursuant to the TSA Term Sheet (or any transition services agreement entered into) shall be subject to section 365(d)(4) of the Bankruptcy Code.

26.     The assignments of each of the Closing Date Assigned Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

27.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under Section 365 of the Bankruptcy Code.

28.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of their respective rights to enforce every term and condition of the Assigned Contracts.

### Other Provisions

29.     To the maximum extent permitted by applicable law, and in accordance with the Asset Purchase Agreement, the Buyer (or its designee) shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Transferred Assets. To the extent the Buyer (or its designee) cannot operate under any Licenses in accordance with the previous

sentence, such Licenses shall be in effect while the Buyer (or its designee), with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Buyer (or its designee). The Debtors shall maintain the Licenses in good standing to the fullest extent allowed by applicable law for the Buyer's benefit until equivalent new Licenses are issued to the Buyer (or its designee).

30.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or License relating to the Transferred Assets sold, transferred, or conveyed to the Buyer (or its designee) on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale contemplated by the Asset Purchase Agreement.

31.     Upon or after the Closing, the Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Sale-related document with respect to the Transferred Assets or implementation of the TSA Term Sheet. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

32.     Neither the Buyer nor the Debtors shall have an obligation to consummate the Sale until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to consummate the Sale have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement, but subject to the rights of the Prepetition Secured Parties under the Cash Collateral Order and the Cash Collateral Term Sheet with respect to the Sale.

33.     The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of

29

(whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Transferred Assets, all counterparties to the Assigned Contracts, the Buyer, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' Chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s), or receiver(s) such terms and provisions likewise shall be binding. The Asset Purchase Agreement shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), or receiver(s).

34.     The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of these Chapter 11 cases; (b) converting any of the Chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 cases. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)–(d) above, shall continue in these Chapter 11 cases, or following dismissal of these Chapter 11 cases.

35.     Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

36.     The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

37.     The Asset Purchase Agreement (including the TSA Term Sheet) may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof and subject to the Prepetition Secured Creditors' rights of consent, if any, to such modifications, amendments

or supplements to the extent set forth in the Cash Collateral Order and Cash Collateral Term Sheet, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' business judgment, and in consultation with the Consultation Parties,[3] have a material adverse effect on the Debtors' estates or their creditors. The Debtors shall provide the Consultation Parties with prior notice of any such modification, amendment, or supplement of the Asset Purchase Agreement or the TSA Term Sheet. For the avoidance of doubt, all other modifications, amendments, or supplements that have a material adverse effect on the Debtors' estates or their creditors shall require notice to the party or parties materially and adversely effected and Court approval.

38.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

39.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 or otherwise, the terms and conditions of this Sale Order shall be effective immediately upon entry and the Debtors and the Buyer are authorized to consummate the Sale immediately upon entry of this Sale Order.

40.     To the extent there is any conflict between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall control. Nothing contained in any chapter 11 plan hereinafter confirmed in these Chapter 11 cases or any order confirming such chapter 11 plan, or any other order of the Court, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

---

[3]     As defined in the Bid Protections Order, "Consultation Parties" means any statutory committee appointed in the Chapter 11 Cases, including by not limited to the Official Committee of Unsecured Creditors and PNC Bank, National Association, and each of their respective advisors.

41.     Notwithstanding anything else to the contrary in the Asset Purchase Agreement, the Sale Motion, or this Order, nothing therein or herein shall transfer title to property owned by any non-Debtor (excluding any portion of such title or interest owned by a Debtor), including any property owned by Ferrellgas, LP ("Blue Rhino") provided, however, no determination of any disputed ownership interest in any asset(s) is made herein.  For the avoidance of doubt, nothing in the Asset Purchase Agreement, the Sale Motion, or this Order shall transfer title to any propane tanks, displays, or cages (the "Blue Rhino Assets") to the extent the Debtors hold no ownership interest(s) in such Blue Rhino Assets. Blue Rhino reserves any and all Claims against the Debtors, their Co-Op Members, or independent retailers and the Debtors and their estates reserve any and all Claims against Blue Rhino

42.     Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of executory contracts to be assumed and assigned and/or any Cure Notices or Supplemental Cure Notices, any schedule of Assigned Contracts, this Order, or any documents relating to any of the foregoing; nothing shall permit or otherwise effect a sale, an assignment or any other transfer of (a) any insurance policies that have been issued as of or prior to the Petition Date by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Federal Insurance Company and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") to or that provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto entered into by, or issued for the benefit of, the Chubb Companies (collectively, the "Chubb Insurance Contracts"), and/or (b) any rights, proceeds, benefits, interests, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Successful Bidder; *provided*, *however*, that to the extent any claim with respect to the Transferred Assets or the

provision of Transition Services under the TSA Term Sheet (or the transition services agreement contemplated therein) arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Successful Bidder any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, *however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

43.    The Objections found at Docket Nos. 351 and 358 are continued to the December 4, 2024 Assumption/Assignment/Cure Hearing, and, if not earlier resolved or otherwise further adjourned, will be adjudicated at such hearing. The related Objectors and Debtors reserve all rights and defenses.

44.    For the avoidance of doubt, the issues raised by Cooper Lighting, LLC ("Cooper Lighting") pursuant to the Objection filed at Docket No. 357 are adjourned to the December 4, 2024 Assumption/Assignment/Cure Hearing, including without limitation the ability of the Debtors to transfer the TV Credits earned by the Debtors to Do it Best without assuming and assigning the Vendor Buying Agreement with Cooper Lighting, and nothing in the Sale Order shall impair the Debtors' or Cooper Lighting's rights and defenses with respect thereto.

45.    Prior to the Closing, the Debtors shall file a motion or a supplement to the Motion with the Court seeking entry of an order in form and substance reasonably satisfactory to the Buyer implementing a procedure for the implementation of the assumption and assignment of "Contracts" (as that term is defined in the TSA Term Sheet) (the "TSA Contracts") that Buyer designates as Transferred Contracts post-Closing pursuant to  Section 2.5(e) of the Asset Purchase Agreement.  Such procedures shall, among other things, (i) recognize the effects of any prior Cure Objection Deadline or Supplemental Cure Objection Deadline on any TSA Contracts and any Cure

Amounts arising under such TSA Contracts prior to such Cure Objection Deadline or Supplemental Cure Objection Deadline, including any prior resolution or adjudication of such Cure Amount with respect to such TSA Contract; (ii) provide TSA Contract counterparties with (a) prior notice of the proposed assumption and assignment of their Contracts as of a date certain and to the extent Buyer is designating an affiliate as the assignee, then identifying such assignee, (b) the opportunity to interpose an objection for adequate assurance to the extent of the assignment of a TSA Contract to an assignee other than Buyer and any default for any period of time following a prior Cure Objection Deadline or Supplemental Cure Objection Deadline applicable to such TSA Contract; and (c) the opportunity to interpose both a Cure Objection and an adequate assurance objection in the event that such TSA Contract was not included in any prior Cure Notice or was not otherwise subject to any prior Cure Objection Deadline or Supplemental Cure Objection Deadline; and (iii) schedule Assumption/Assignment/Cure Hearings with respect to such TSA Contracts.

46.     The Court shall retain exclusive jurisdiction with respect to the terms and provisions and enforcement of this Sale Order, the TSA Term Sheet, any Transition Services Agreement that might be entered, and the Asset Purchase Agreement.

**<u>EXHIBIT B</u>**

Redline - Proposed Sale Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No.** ~~24-____~~ **24-12337** (~~____~~ **KBO**) |
| **Debtors.**[1] | **(Jointly Administered)** |
| | Related Docket ~~No[s].~~ **Nos. 12, 297** |

## ORDER (A) APPROVING
## SALE OF SUBSTANTIALLY ALL
## OF DEBTORS' ASSETS FREE AND CLEAR
## OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS,
## AND ENCUMBRANCES, (B) AUTHORIZING DEBTORS
## TO ENTER INTO AND PERFORM UNDER ASSET PURCHASE
## AGREEMENT, (C) APPROVING ASSUMPTION AND ASSIGNMENT OF
## CERTAIN EXECUTORY CONTRACTS, AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Motion"),[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), for entry of an order (this "Sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Motion, the ~~Bidding Procedures~~ Bid Protections Order, or the Asset Purchase Agreement (each as defined herein), as applicable.

Order" or "Order"): (a) authorizing and approving the entry into and performance under the terms and conditions of that certain Amended and Restated Asset Purchase Agreement, substantially in the form attached hereto as **Exhibit 1** (together with all schedules, exhibits, and ancillary documents related thereto, and as may be amended, supplemented ~~or~~, restated, or otherwise modified, the "Asset Purchase Agreement"), by and among the Debtors and Do ~~It~~it Best Corp., an Indiana corporation (the "Buyer"), (b) authorizing and approving the sale (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Asset Purchase Agreement, the "Sale") of those assets set forth in Section 2.1 of the Asset Purchase Agreement (the "Transferred Assets") free and clear of all liens, claims, encumbrances, and other interests, except to the extent set forth in the Asset Purchase Agreement or this Order, and the assumption of certain assumed liabilities set forth in Section 2.3 of the Asset Purchase Agreement (the "Assumed Liabilities") pursuant to the Asset Purchase Agreement upon the closing of the Sale (the "Closing"), (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "Assigned Contract," and, collectively, the "Assigned Contracts") upon the Closing, subject to (i) the occurrence of the objection deadline set forth in the Cure Notice filed at Docket No. 339 (the "Cure Objection Deadline") or any supplemental cure objection deadline set forth in a Supplemental Cure Notice (as defined in the Bid Protections Order) (each, a "Supplemental Cure Objection Deadline"), as applicable, without any objection being filed with respect to such Assigned Contract, (ii) an order of this Court authorizing the assumption and assignment of the Assigned Contracts, and (iii) the payment by the Buyer of any payments to cure any defaults arising under any such Assigned Contract (the "Cure Amounts"), and (d) granting related relief,

all as more fully set forth in the Motion; and this Court having entered the *Order (I) ~~Establishing Bidding, Noticing, and~~Approving the Bid Protections; (II) Approving the* Assumption and Assignment Procedures*; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV) Authorizing and Scheduling the Sale Hearing and Setting Other Related Dates and Deadlines;* and (~~II~~V) Granting Related Relief [Docket No. ~~[●]]~~297 (the "~~Bidding Procedures~~Bid Protections Order");³ and the Debtors having determined that the Buyer has submitted the highest or otherwise best bid for the Debtors' assets and determined that the Buyer is the Successful Bidder (as defined in the ~~Bidding Procedures~~Bid Protections Order), each in accordance with the ~~Bidding Procedures~~Bid Protections Order; and the Court having conducted a hearing on the Motion (the "Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Asset Purchase Agreement, the Amended and Restated Transition Services Agreement Term Sheet attached as Exhibit H to the Asset Purchase Agreement filed at Docket No. 363 (as may be amended, supplemented, restated, or otherwise modified, the "TSA Term Sheet"), and any and all objections to the Sale, the Asset Purchase Agreement, and any other documents filed in accordance with the ~~Bidding Procedures~~Bid Protections Order; and the Court having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing and in the ~~declaration[s] of [●];~~declarations of John Hartigan, Nick Weber, and Harvey Tepner (collectively, the "Sale Declarations"); and it appearing that due notice of the Motion, the Sale

---

³ ~~All references herein to the Bidding Procedures Order shall also be deemed to be references to the bidding procedures approved thereby, as subsequently modified from time to time (the "Bidding Procedures").~~

Hearing, the Asset Purchase Agreement, and the Sale has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation, it is hereby:

**FOUND, CONCLUDED, AND DETERMINED THAT:**

<u>**Jurisdiction, Venue, and Final Order**</u>

A.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(a)–(b)(1) and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the ~~following~~ findings of fact

set forth herein constitute conclusions of law, they are adopted as such. To the extent any of the ~~following~~ conclusions of law set forth herein constitute findings of fact, they are adopted as such.

### Property of the Estate

D.    The Debtors are the sole and lawful owner of, and have clear and marketable title to, the Transferred Assets to be sold pursuant to the Asset Purchase Agreement. The Debtors' right, title and interest in and to the Transferred Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

### Notice of the Motion, Auction, Sale Hearing, Asset Purchase Agreement and Sale and the Cure Amounts

E.    As evidenced by the affidavits of service and publication previously filed with this Court, proper, timely, adequate, and sufficient notice of the Motion, ~~[the Auction,]~~ the Sale Hearing, the Asset Purchase Agreement, and the Sale has been provided to each party entitled to such notice in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and Local Bankruptcy Rule 2002-1(b), and in compliance with the ~~Bidding Procedures~~ Bid Protections Order. No other or further notice of the foregoing is required. With respect to parties whose identities or addresses are not reasonably ascertained by the Debtors, publication of the Sale Notice (as defined in the Motion) in the *New York Times* on ~~[●]~~ November 7, 2024, and the posting of the Sale Notice on the website of the Debtors' claims and noticing agent, Omni Agent Solutions, at https://omniagentsolutions.com/TrueValue on ~~[●]~~ November 4, 2024, was, and is deemed, sufficient and reasonably calculated under the circumstances to reach such parties.

Redline TV - Sale Order 2466853v2A and TV - Sale Order 2466853v7D 11/12/2024 2:07:19 AM

F.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

G.      In accordance with the ~~Bidding Procedures~~Bid Protections Order, the Debtors have served a notice of their intent to assume and assign ~~the~~certain Assigned Contracts and of the Cure Amounts upon each counterparty to ~~an~~such Assigned Contract~~.  The service and provision of~~ at Docket No. 339 (such notice ~~was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assigned Contracts or establishing a Cure Amount for the respective Assigned Contracts. Counterparties to the Assigned Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assigned Contracts and the Cure Amounts set forth in the notice (including objections related to~~ the adequate assurance of future performance ~~and objections based on whether applicable law excuses the counterparty from accepting performance by, or rendering performance to, the Buyer (or its designee) for purposes of section 365(c)(1) of the Bankruptcy Code~~or any Supplemental Cure Notice (as defined in the Bid Protections Order), the "Cure Notices"). All objections, responses, or requests for adequate assurance~~, if any, have been resolved, overruled, or denied, as applicable.~~ and with respect to Cure Amounts related to Assigned Contracts set forth on the Cure Notices, if any, will be resolved at or prior to, or adjudicated at, the hearing scheduled for December 4, 2024 at 10:00 a.m. Eastern Time, or at such later hearing as the Debtors and the counterparties may agree (each, an "Assumption/Assignment/Cure Hearing") and all rights of counterparties who filed objections to such Cure Notices are reserved until the parties have negotiated a consensual resolution or such objections are otherwise determined at the Assumption/Assignment/Cure

Hearing or by further order of this Court.  Additional Cure Notices may be served in accordance with the Bid Protections Order prior to the Assumption/Assignment/Cure Hearing, and if the objection deadline set forth therein precedes the Assumption/Assignment/Cure Hearing, any objections, responses or requests for adequate assurance related to the Assigned Contracts set forth on such Supplemental Cure Notices will be scheduled for the Assumption/Assignment/Cure Hearing to the extent not resolved prior thereto.

**Business Judgment**

H.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of and authorization to close, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Asset Purchase Agreement, including, without limitation, the assumption, assignment, and/or transfer of the Assigned Contracts, pursuant to Sections 105, 363, 365, 1107, and 1108 of the Bankruptcy Code and the TSA Term Sheet, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, their creditors, and other parties in interest. Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk of depreciation of the value of the Debtors' assets if the Sale is not consummated promptlyreasonably promptly and on a timeline consistent with the Cash Collateral Order (as defined herein)  and the settlement term sheet annexed as Exhibit 1 thereto (the "Cash Collateral Term Sheet"); (ii) the Sale of the Transferred Assets and the assignment and assumption of the Assumed Liabilities pursuant to the Asset Purchase Agreement at the Closing present the best opportunity and represent the best method to maximize the value of the Debtors' estates for the benefit of the Debtors, their estates, their

Redline TV - Sale Order 2466853v2A and TV - Sale Order 2466853v7D 11/12/2024 2:07:19 AM

7

creditors, and other parties in interest; (iii) the purchase price and other terms set forth in the Asset Purchase Agreement constitute the highest or otherwise best offer received for the Debtors' assets; and (iv) unless the Sale is concluded ~~expeditiously,~~ as provided for in this Sale Order, the Cash Collateral Order and the Cash Collateral Term Sheet , and pursuant to the Asset Purchase Agreement, including on the expedited timeline, the Debtors and their estates ~~would~~may receive significantly less value for all stakeholders.

**Marketing Process and Highest or Otherwise Best Offer**

I.     As demonstrated by the **[●] Declaration[s]**Sale Declarations, the evidence proffered or adduced at the Sale Hearing, and the representations of counsel made on the record at the Sale Hearing, the Debtors, consistent with their fiduciary duties, conducted a robust and extensive marketing process in accordance with, and have, along with the Buyer, complied in all respects with, the ~~Bidding Procedures~~Bid Protections Order and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Debtors' assets and assume the Debtors' liabilities.

J.     (i) The sale process,~~ the Bidding Procedures, and the Auction were~~ was non-collusive, duly noticed, and provided a full, fair, reasonable, and adequate opportunity for any person or entity to make an offer to purchase the Debtors' assets, including, without limitation the Transferred Assets; (ii) the Debtors and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good-faith manner; and (iii) the sale process conducted by the Debtors both prior to the commencement of the Chapter 11 Cases and post-petition pursuant to the ~~Bidding Procedures Order and the Bidding Procedures~~Bid Protections Order resulted in the highest or

otherwise best value for the Debtors' assets, was in the best interest of the Debtors, their creditors, and all parties in interest, and any other transaction would not have yielded as favorable a result.

K.      Approval of the Motion and the Asset Purchase Agreement, and the consummation of the Sale contemplated thereby, is in the best interests of the Debtors, their respective creditors, estates, and other parties in interest.

## Single, Integrated Transaction

L.      Entry of this Order approving the Sale Order, the Asset Purchase Agreement, and all provisions thereof are a necessary condition precedent to the Buyer consummating the Sale. The provisions of this Order and the Asset Purchase Agreement and the transactions contemplated by this Order and the Asset Purchase Agreement and Sale to the Buyer are inextricably linked and technically and collectively constitute a single, integrated transaction.

## No *Sub Rosa* Plan

M.      The consummation of the Sale outside a plan of reorganization pursuant to the Asset Purchase Agreement and the transactions contemplated thereby, including the assumption and assignment of the Assigned Contracts, neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.

## Good Faith of Buyer

N.      The consideration to be paid by the Buyer under the Asset Purchase Agreement was negotiated at arm's length, in good faith and without collusion pursuant to section 363(m) of

the Bankruptcy Code and is fair and reasonable under the circumstances. Specifically: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in purchasing the Transferred Assets; (ii) the Buyer complied with the provisions in the ~~Bidding Procedures~~Bid Protections Order; (iii) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the ~~Bidding Procedures~~Bid Protections Order; (iv) all payments made by the Buyer in connection with the Sale have been disclosed; (v) no common identity of directors, officers or controlling stockholders exists among the Buyer and the Debtors; (vi) the negotiation and execution of the Asset Purchase Agreement was at arm's length and in good faith, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing; and (vii) the Buyer has not acted in a collusive manner with any person.

O.      The Debtors, the Buyer, their affiliates, and each of their respective management, boards of directors, officers, directors, members, partners, principals, shareholders (or equivalent), employees, agents, and representatives, have acted in good faith. Neither the Buyer nor any of its affiliates, officers, directors, members, partners, principals, shareholders (or equivalent), or any of their respective representatives, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor. The Buyer is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and, as such, is entitled to all the protections afforded thereby.

**No Fraudulent Transfer**

P.      The Asset Purchase Agreement was not entered into, and the Sale is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement are

consummating the Sale with any fraudulent or otherwise improper purpose. The consideration provided by the Buyer pursuant to the Asset Purchase Agreement for its purchase of the Transferred Assets and the assumption of the Assumed Liabilities constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia. None of the Debtors, the Buyer, nor any of their respective affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, attorneys, successors, or assigns have engaged in any conduct that would cause or permit the consummation of the Sale or the other transactions contemplated by the Asset Purchase Agreement to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

### Buyer Not Successor

Q.      Neither the Buyer nor its past, present, and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, nor any of its nor their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies, or partners (collectively, the "Buyer Parties") is a continuation of the Debtors or their respective estates and no Buyer Party is holding itself out to the public as a continuation of the Debtors or their respective estates and the Sale does not amount to a consolidation, merger, or de facto merger of the Buyer (or any other Buyer Party) and the Debtors.

R.    ~~The~~ Except as expressly provided in the Asset Purchase Agreement, the TSA Term Sheet or as otherwise set forth herein or further order of this Court, the (i) transfer of the Transferred Assets to the Buyer and (ii) assignment to the Buyer of the Assigned Contracts (which shall be subject to further order of this Court except as set forth herein), will not subject the Buyer or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise. For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order, any Contract or Lease that is not a Closing Date Assigned Contract (as defined herein) shall not be an Assigned Contract or part of the Transferred Assets under this Sale Order or the Asset Purchase Agreement until further order of this Court.

**Validity of Transfer**

S.    Each Debtor's board of directors has authorized the execution and delivery of the Asset Purchase Agreement and the Sale of the Transferred Assets to the Buyer (or its designee). The Debtors and their affiliates (i) have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Sale, and (iii) have taken all action necessary to authorize and approve the Asset Purchase Agreement and to consummate the Sale, and no further consents or approvals, other than those expressly provided for in the Asset

Purchase Agreement or this Sale Order, are required for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement or this Sale Order. The Transferred Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

**Section 363(f) Is Satisfied**

T.    In accordance with *Final Order (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; and (C) Modifying the Automatic Stay; and (II) Granting Related Relief* [Dkt. No. 296] (the "Cash Collateral Order") and the Cash Collateral Term Sheet, the Prepetition Secured Parties (as defined in the Cash Collateral Order) and the Debtors reached an agreement setting forth, among other things, the terms and conditions on which the Prepetition Secured Parties would consent to the Sale of the Transferred Assets to the Buyer.  The terms and conditions of the Cash Collateral Order, including, without limitation, the Cash Collateral Term Sheet are hereby fully incorporated into this Sale Order.

U.    The Sale of the Transferred Assets to the Buyer (or its designee) and the assumption and assignment to the Buyer (or its designee) of the Assigned Contracts under the terms of the Asset Purchase Agreement meet the applicable provisions of section 363(f) of the Bankruptcy Code such that the Sale of the Transferred Assets will be a legal, valid, and effective transfer of all of the legal, equitable, and beneficial rights, title, and interests in the Transferred Assets free and clear of any and all liens, claims, interests, and encumbrances, and will not subject any Buyer Party to any liability for any liens, claims, interests, and encumbrances

whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), except as expressly provided in the Asset Purchase Agreement with respect to the Assumed Liabilities (as defined in the Asset Purchase Agreement) and this Sale Order. All holders of liens, claims, interests, and encumbrances who did not object, or withdrew their objections, to the Sale are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of liens, claims, interests, and encumbrances are adequately protected—thus satisfying section 363(e) of the Bankruptcy Code—by having their liens, claims, interests, and encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the property against or in which they assert liens, claims, interests, and encumbrances, or other specifically dedicated funds, (in the same order of priority and with the same validity, force, and effect that such holder had prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable.) following the use of such proceeds in accordance with the Cash Collateral Order and the Cash Collateral Term Sheet. All payments of cash from sale proceeds shall be subject in their entirety to the Cash Collateral Order and the Cash Collateral Term Sheet, and in the event of any conflict or inconsistency with respect to the application or use of Sale proceeds and the use of cash collateral following the Sale Closing between this Sale Order, on the one hand, and the Cash Collateral Order and Cash Collateral Order Term Sheet, on the other hand, the Cash Collateral Order and Cash Collateral Term Sheet shall control. All payments to the Prepetition Secured Parties in accordance with the Cash Collateral Order and Cash Collateral Term Sheet shall be for the indefeasible and permanent application of the Prepetition Secured Obligations until such obligations are indefeasibly paid in full. Those holders of claims who did object and that have an interest in the

Transferred Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.]

UV.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts (i) if the transfer of the Transferred Assets were not free and clear of all interests of any kind or nature whatsoever or (ii) if the Buyer or any of its affiliates or designees would, or in the future could, be liable for any interests, in each case, including, without limitation, rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise, in each case subject only to the Assumed Liabilities. Not transferring the Transferred Assets free and clear of all interests of any kind or nature whatsoever would adversely impact the Debtors' efforts to maximize the value of their estates.

**Assumption and Assignment of the Assigned Contracts**

V.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order are integral to the Asset Purchase Agreement, are in the best interests of the Debtors and their respective estates, creditors, and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors. Each and every provision of the documents governing the Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Assigned Contracts, if any, has been or will be satisfied or are otherwise unenforceable under Section 365 of the Bankruptcy Code.

W.    The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assigned Contracts. The Buyer (or its designee) and/or the Debtor has (i) cured and/or provided adequate assurance of cure of any default existing prior to the Closing under all of the Assigned Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default prior to the Closing under any of the Assigned Contracts, and (iii) provided adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) and in accordance with the Bidding Procedures to the extent that any such assurance is required and not waived by the counterparties to such Assigned Contracts.

XW.    The Solely with respect to any Assigned Contract listed on a Cure Notice for which the Cure Notice Objection Deadline or Supplemental Cure Notice Objection Deadline, as applicable, has occurred, and for which there has been no objection to the assumption, assignment, adequate assurance of future performance thereof, or Cure Amount listed in such Cure Notice and with respect to which Buyer has requested that such Contract be treated as a "Transferred Contract" under the Asset Purchase Agreement (each such contract, a "Closing Date Assigned Contract"), the Cure Amounts (as defined in the listed on such Cure Notices) listed on the Cure Notices are deemed to be the sole amounts necessary to be paid upon assumption of the such Closing Date Assigned Contracts under Bankruptcy Code sections 365(b)(1)(A) and (B) and 365(f)(2)(A).  All Cure Amounts, if any, with respect to the Closing Date Assigned Contracts shall be satisfied by the Buyer in accordance with the terms of the Asset Purchase Agreement. Upon the satisfaction of the Cure Amounts, if any, by the Buyer, the

Assigned Contracts shall remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The Cure Amounts shall not be subject to further dispute or audit, including, without limitation, any dispute or audit based on performance prior to the Closing. After the payment of the Cure Amounts by the Buyer, none of the Debtors or the Buyer shall have any further liabilities to the counterparties to the Assigned Contracts other than the Buyer's obligations under the Assigned Contracts that accrue and become due and payable on or after the Closing.

Y.     At any time prior to the rejection of an executory contract or unexpired lease, the Debtors shall have the right, in accordance with the Bidding Procedures Order, to serve a Supplemental Cure Notice upon any non Debtor counterparty thereto indicating the Debtors' intent to assume and assign such executory contract or unexpired lease. The objection deadline for all Assigned Contracts, other than those subject to a Supplemental Cure Notice, lapsed on [●], 2024. The objection deadline for Assigned Contracts subject to a Supplemental Cure Notice shall be governed by the Bidding Procedures Order.

**Prompt Consummation**

ZX.     Based on the record of the Sale Declarations and the Sale Hearing, the terms of the Cash Collateral Order and the Cash Collateral Term Sheet, and for the reasons stated on the record in the Sale Declarations and at the Sale Hearing, the sale of the Transferred Assets must be approved and consummated promptly to preserve the value of the Transferred Assets. Time, therefore, is of the essence in effectuating the Asset Purchase Agreement. As such, the Debtors and the Buyer intend to close the sale of the Transferred Assets as soon as reasonably

practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Asset Purchase Agreement and there is no legal or equitable reason to delay consummation of the Asset Purchase Agreement and the transactions contemplated therein. Accordingly, there is sufficient cause to waive the stay provided in the Bankruptcy Rules 6004(h) and 6006(d).

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

**General Provisions**

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to or reservation of rights with respect to the Motion or the relief requested therein that have not been withdrawn or resolved are overruled, except for objections to or reservation of rights with respect to the proposed assumption and assignment of a contract or unexpired lease (including the adequate assurance of future performance), or the Cure Amount proposed with respect thereto, which must be filed by the Cure Objection Deadline or the Supplemental Cure Objection Deadline, as applicable, and if not resolved prior to, may be adjudicated at an Assumption/Assignment/Cure Hearing. All persons and entities who did not object or withdraw their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code, except as otherwise set forth herein.

**Approval of Asset Purchase Agreement**

3.      The Asset Purchase Agreement and all other ancillary documents, including the ~~Transition Services Agreement~~ ~~and the term sheet~~TSA Term Sheet associated therewith and any other documents contemplated by the Asset Purchase Agreement or that are necessary or appropriate to complete the transactions provided for in the Asset Purchase Agreement, and all

of the terms and conditions thereof, and the Sale and related transactions contemplated therewith, are hereby approved in all respects. The failure specifically to include any particular terms of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement and the Sale be authorized and approved in their entireties.

4.      The Debtors are authorized to enter into a transition services agreement with Buyer on terms consistent with those set forth in the TSA Term Sheet (which is a material part of, and integrated with, the Asset Purchase Agreement) without further order of the Court; provided that the Debtors shall provide the Consultation Parties with at least two (2) business days prior notice of the transition services agreement with Buyer before such agreement is effective.

45.      Pursuant to sections 363 and 365 of the Bankruptcy Code, entry by the Debtors into the Asset Purchase Agreement is hereby authorized and approved as a valid exercise of the Debtors' business judgment. Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors and their respective officers, employees, and agents are authorized, empowered, and directed to take any and all actions necessary or appropriate to (a) consummate the sale of the Transferred Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, and this Sale Order, (b) enter into all other agreements contemplated by the Asset Purchase Agreement and consummate all other transactions contemplated by the Asset Purchase Agreement, (c) consummate the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, (d) continue performance under and make all payments required by the Asset Purchase Agreement, (e) assume and assign any and all Assigned

Contracts, (subject to parties' rights as set forth in the Bid Protections Order, this Sale Order, and the applicable Cure Notice), (f) assign the Assumed Liabilities, and (g) execute and deliver, perform under, consummate, and implement the Asset Purchase Agreement, together with all additional instruments and ancillary documents that may be reasonably necessary or desirable to implement the Sale, or as may be reasonably necessary or appropriate to implement or perform any of the obligations contemplated by the Asset Purchase Agreement and any other documentation relating to the Sale, all without further order of the Court. For the avoidance of doubt, and notwithstanding anything to the contrary in this Sale Order, any Contract or Lease that is not a Closing Date Assigned Contract (as defined herein) shall not be an Assigned Contract or part of the Transferred Assets under this Sale Order or the Asset Purchase Agreement until further order of this Court.

56.    The Debtors are authorized to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Units (as defined in section 101(27) of the Bankruptcy Code), any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Asset Purchase Agreement, any related agreements and this Order, including amended and restated certificates, articles of incorporation and by-laws, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

**Transfer of the Transferred Assets as set forth in the Asset Purchase Agreement**

6~~7~~.     Pursuant to Sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, and subject to the terms and conditions of the Asset Purchase Agreement and this Sale Order, the Debtors are authorized and directed to transfer the Transferred Assets to the Buyer on the Closing in accordance with the Asset Purchase Agreement and this Sale Order. The Buyer is not acquiring any of the Excluded Assets or assuming any of the Excluded Liabilities (as defined in the Asset Purchase Agreement).

7~~8~~.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Transferred Assets to the Buyer (or its designee) in accordance with the Asset Purchase Agreement and this Sale Order.

8~~9~~.     At Closing and except as otherwise set forth in the Asset Purchase Agreement, TSA Term Sheet or in this Sale Order, all of the Debtors' right, title, and interest in and to, and possession of, the Transferred Assets shall be immediately vested in the Buyer (or its designee) pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code. Such transfer shall constitute a legal, valid, enforceable, and effective transfer of the Transferred Assets. All persons or entities, presently, or at or after the Closing, in possession of some or all of the Transferred Assets, are directed to surrender possession of any and all portions of the Transferred Assets to the Buyer (or its designee) or its respective designees on the Closing or at such time thereafter as the Buyer (or its designee) may request.

9~~10~~.     ~~This~~Except as otherwise set forth in this Sale Order, this Sale Order (a) shall be effective        as        a        determination        that,        as        of        the        Closing,

(i) the Transferred Assets shall have been transferred to the Buyer (or its designee) free and clear of all liens, claims, interests, and encumbrances, subject only to the Assumed Liabilities, (ii) holders of claims who did not object (or who ultimately withdrew their objections, if any) to the Sale are deemed to have consented to the Sale being free and clear of their claims pursuant to section 363(f)(2) of the Bankruptcy Code and holders of claims who did object could be compelled in a legal or equitable proceeding to accept money satisfaction of such claims pursuant to section 363(f)(5) of the Bankruptcy Code or fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their claims that constitute interests in the Transferred Assets, if any, attach to the proceeds of the Sale with the same priority that existed immediately prior to the closing,Closing only after such proceeds are first applied to the Prepetition Secured Parties' repayment rights as set forth in the Cash Collateral Order and Cash Collateral Term Sheet which payments shall be for the indefeasible and permanent application of the Prepetition Secured Obligations until such obligations are indefeasibly paid in full, and (iii) the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept

for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement. The Transferred Assets are sold free and clear of any reclamation rights. All liens, claims, interests, and encumbrances on the Transferred Assets shall attach to the proceeds of the Sale ~~ultimately attributable to the property against which such liens, claims, interests, and encumbrances applied or other specifically dedicated funds,~~ (in the same order of priority and with the same validity, force, and effect that such liens, claims, interests, and encumbrances applied prior to the Sale, subject to any rights, claims, and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein~~.~~) only after such proceeds are first applied to the Prepetition Secured Parties' repayment rights as set forth in the Cash Collateral Order and Cash Collateral Term Sheet which payments shall be for the indefeasible and permanent application of the Prepetition Secured Obligations until such obligations are indefeasibly paid in full.  Notwithstanding anything to the contrary in this Sale Order, no liens shall attach to any (x) Transferred Assets upon or after Closing that are contemplated to be transferred to Buyer pursuant to the Asset Purchase Agreement or TSA Term Sheet (as and when such assets are transferred to Buyer), including, without limitation, the inventory, proceeds from inventory, receivables, or proceeds of receivables purchased by Buyer in accordance with the Asset Purchase Agreement or supplied under the TSA Term Sheet, all of which constitute Transferred Assets, whether or not such Transferred Assets are transferred at Closing or thereafter, or remain in the possession or control of the estates following Closing pursuant to the TSA Term Sheet or otherwise, or (y) cash or other assets transferred from Buyer to Seller pursuant to the TSA Term Sheet to cover costs of the transition, as applicable, that will be transferred after Closing.

10<u>11</u>.  Except as otherwise provided in the Asset Purchase Agreement <u>and this Sale Order</u>, all persons and entities (and their respective successors and assigns), including, but not limited to, all debt security holders, equity security holders, affiliates, governmental, tax, and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Assets, and the ownership, sale, or operation of the Transferred Assets prior to Closing or the transfer of the Transferred Assets to the Buyer (or its designee), are hereby forever barred, estopped, and permanently enjoined from asserting such claims against any Buyer Party and its property (including, without limitation, the Transferred Assets). Following the Closing, no holder of any claim or interest shall interfere with the Buyer's (or its designee's) title to or use and enjoyment of the Transferred Assets based on or related to any such claim or interest, or based on any action the Debtor may take in their Chapter 11 cases.

11<u>12</u>.  If any person or entity that has filed financing statements, mortgages, mechanic's claims, lis pendens, or other documents or agreements evidencing claims against the Debtors or in the Transferred Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, and/or releases of all liens, claims, interests, and encumbrances that the person or entity has with respect to the Debtors or the Transferred Assets or otherwise, then only with regard to the Transferred Assets that are purchased by the Buyer (or its designee) pursuant to the Asset Purchase Agreement ~~and this Sale Order~~<u>, upon or after Closing</u>, (a) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Transferred

Assets.; provided, that neither the Debtors nor the Buyer is authorized to file any releases, statements, instruments or documents releasing the liens and/or security interests of the Prepetition Secured Parties without first obtaining the express written consent of the Prepetition Administrative Agent (as defined in the Cash Collateral Order) and providing the Prepetition Administrative Agent drafts of any such release documents for its review and approval, (b) the Buyer (or its designee) is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens, claims, interests, and encumbrances against the Buyer Parties and the Transferred Assets, and (c) upon consummation of the Sale, the Buyer (or its designee) may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all liens, claims, interests, and encumbrances that are extinguished or otherwise released pursuant to this Sale Order under section 363 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, with respect to the Transferred Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this Sale Order authorizing the Sale and assignment of the Transferred Assets free and clear of liens, claims, interests, and encumbrances shall be self-executing and neither the Debtors nor the Buyer (or its designee) shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Sale Order.

## No Successor or Transferee Liability

~~12~~13.   No Buyer Party shall be deemed, as a result of any action taken in connection with the Asset Purchase Agreement, the consummation of the Sale contemplated by the Asset Purchase Agreement, or the transfer, operation, or use of the Transferred Assets to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for the Buyer, with respect to any Assumed Liabilities arising after the Closing), (b) have, de facto or otherwise, merged with or into the Debtors, or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act of 1974 ("ERISA"), tax law, labor law, products liability law, employment law, environmental law, or other law, rule, or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule, or regulation.

~~13~~14.   Immediately prior to the Closing, the Buyer was not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or controlling stockholders existed between the Buyer and the Debtors.

~~14~~15.   Other than as expressly ~~set forth~~provided in the Asset Purchase Agreement, the TSA Term Sheet or this Sale Order, no Buyer Party shall have any responsibility for (a) any liability or other obligation of the Debtors or related to the Transferred Assets or (b) any claims against the Debtors or any of their predecessors or affiliates. Except as expressly provided in the Asset Purchase Agreement or the TSA Term Sheet, no Buyer Party shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or affiliates') respective

businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as defined herein, "Successor or Transferee Liability") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor, or transferee liability, de facto merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, liabilities on account of (a) any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the Transferred Assets or the Assumed Liabilities prior to the Closing or in respect of pre-Closing periods or (b) any plan, agreement, practice, policy, or program, whether written or unwritten, providing for pension, retirement, health, welfare, compensation, or other employee benefits which is or has been sponsored, maintained, or contributed to by any Debtor or with respect to which any Debtor has any liability, whether or not contingent, including, without limitation, any "multiemployer plan" (as defined in Section 3(37) of ERISA) or "pension plan" (as defined in Section 3(2) of ERISA) to which any Debtor has at any time contributed, or had any obligation to contribute. Except ~~to the extent~~ ~~expressly included in the Assumed Liabilities~~ ~~with respect to the~~ ~~Buyer~~ ~~or~~ ~~as~~ ~~otherwise~~ ~~expressly~~ ~~set~~ ~~forth~~Other than as contemplated in the Asset Purchase Agreement, the TSA Term Sheet, or this Sale Order, no Buyer Party shall have any liability or obligation under any applicable law, including, without limitation, (a) the WARN Act, 29 U.S.C. §§ 2101 *et seq.*, (b) the Comprehensive Environmental Response Compensation and Liability Act, (c) the Age Discrimination and Employment Act of 1967 (as amended), (d) the Federal Rehabilitation Act of 1973 (as amended), (e) the National Labor Relations Act, 29 U.S.C. §§ 151

*et seq.*, or (f) any foreign, federal, state, or local labor, employment or environmental law, by virtue of the Buyer's purchase of the Transferred Assets, assumption of the Assumed Liabilities, or hiring of certain employees of the Debtors pursuant to the terms of the Asset Purchase Agreement. Without limiting the foregoing, no Buyer Party shall have any liability or obligation with respect to any environmental liabilities of the Debtors or any environmental liabilities associated with the Transferred Assets except to the extent they are Assumed Liabilities set forth in the Asset Purchase Agreement.

1516.   Effective upon the Closing and subject to the terms of this Sale Order, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against any Buyer Party or their respective assets (including, without limitation, the Transferred Assets), with respect to any Successor or Transferee Liability including, without limitation, the following actions: (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien, claim, interest, or encumbrance; (iv) asserting any setoff, (to the extent not taken prepetition) or right of subrogation, or recoupment of any kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) to the maximum extent permitted under applicable law (including to the extent provided under Section 525 of the Bankruptcy Code), revoking, terminating, failing, or

refusing to renew any license, permit, or authorization to operate any business in connection with the Transferred Assets or conduct any of the businesses operated with respect to such assets.

**Good Faith of Buyer**

1617.  The Sale contemplated by the Asset Purchase Agreement is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including, without limitation, the assumption and assignment of the Assigned Contracts in accordance with this Order), unless such authorization and consummation of such Sale are duly and properly stayed pending such appeal.

1718.  Neither the Debtors nor the Buyer have engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The consideration provided by the Buyer for the Transferred Assets under the Asset Purchase Agreement is fair and reasonable and the Sale may not be avoided, and costs and damages may not be imposed, under section 363(n) of the Bankruptcy Code.

**Assumption and Assignment of Assigned Contracts**

1819.  The Debtors are authorized and directed at the Closing, and subject to payment of applicable Cure Amounts, to assume and assign each of the Closing Date Assigned Contracts to the Buyer (or its designee) and to have such Closing Date Assigned Contracts assumed by the Buyer (or its designee), pursuant to sections 105(a) and 365 of the Bankruptcy Code, and to execute and deliver to the Buyer (or its designee) such documents or other instruments as may be

necessary to assign and transfer the Closing Date Assigned Contracts to the Buyer (or its designee). The payment of the applicable Cure Amounts (if any) for the Closing Date Assigned Contracts shall (a) effect a cure of all defaults existing thereunder as of the Closing and (b) compensate for any actual pecuniary loss to such counterparty resulting from such default. Upon the payment of Cure Amounts, if any, by the Buyer for the Closing Date Assigned Contracts, such Closing Date Assigned Contracts shall remain in full force and effect, and no default shall exist under the Closing Date Assigned Contract, nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such default. The Cure Amounts with respect to such Closing Date Assigned Contracts shall not be subject to further dispute or audit, including, without limitation, any dispute or audit based on performance prior to the Closing. After payment of the Cure Amounts by Buyer for the Closing Date Assigned Contracts, none of the Debtors or the Buyer shall have any further liabilities to the counterparties to the Closing Date Assigned Contracts other than the Buyer's obligations under the Closing Date Assigned Contracts that accrue and become due and payable on or after Closing.

20.    For the avoidance of doubt and notwithstanding anything to the contrary in this Sale Order or the Asset Purchase Agreement, all contract counterparties' rights with respect to the assumption and assignment of their respective Contracts or Leases that are not Closing Date Assigned Contracts, and any Cure Amount proposed with respect thereto, are reserved through the Cure Objection Deadline or a Supplemental Cure Objection Deadline (as applicable), and any such timely objections that are not resolved prior to an Assumption/Assignment/Cure Hearing

Redline TV - Sale Order 2466853v2A and TV - Sale Order 2466853v7D 11/12/2024 2:07:19 AM

shall be subject to adjudication at an Assumption/Assignment/Cure Hearing or such later hearing agreed to by the Debtors.

1921.    Any non-Debtor counterparty to an Assigned Contract that ~~has~~does not ~~filed~~file with the Court an objection to such assumption and assignment ~~in accordance with the terms of the  Motion~~by the Cure Objection Deadline or the Supplemental Cure Objection Deadline (as applicable) is deemed to have consented to such assumption and assignment.

2022.    Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts, the Closing Date Assigned Contracts that Buyer designates to be assumed and assigned under the Asset Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer (or its designee) notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer. Any provisions in any Closing Date Assigned Contract that prohibit or condition the assignment of such Closing Date Assigned Contract to the Buyer (or its designee) or allow the counterparty to such Closing Date Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Closing Date Assigned Contract to the Buyer (or its designee), constitute unenforceable anti-assignment provisions that are void and of no force and effect.~~ All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer (or its designee) of the Assigned Contracts have been satisfied~~. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer (or its designee) shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Closing Date Assigned Contracts, and such Closing Date Assigned Contracts shall remain in full force

and effect for the benefit of the Buyer (or its designee). Each counterparty to the Closing Date Assigned Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or any Buyer Party or their respective property any assignment fee, acceleration, default, breach, or claim or pecuniary loss, or condition to assignment existing, arising, or accruing as of the Closing or arising by reason of the Closing, including, without limitation, any breach related to or arising out of change-in-control provisions in such Assigned Contracts, or any purported written or oral modification to the Closing Date Assigned Contracts and (b) asserting against any Buyer Party (or its respective property, including, without limitation, the Transferred Assets) any claim, counterclaim, defense, breach, condition, or setoff asserted, or assertable against, the Debtors existing as of the Closing or arising by reason of the Closing except for the Assumed Liabilities.

2123.   Upon the Closing and the payment of the relevant Cure Amounts, if any, the Buyer (or its designee) shall be deemed to be substituted for the Debtors as a party to the applicable Closing Date Assigned Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Closing Date Assigned Contracts. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer (or its designee) or the Debtors as a result of the assumption and assignment of the Closing Date Assigned Contracts. The failure of the Debtors or the Buyer (or its designee) to enforce at any time one or more terms or conditions of any Closing Date Assigned Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Buyer (or its designee), as the case may be, to enforce every term and condition of such Closing Date Assigned Contract. The validity of the assumption and assignment of any Closing

Case 24-12337-KBO    Doc 382    Filed 11/12/24    Page 73 of 82

Date Assigned Contract to the Buyer (or its designee) shall not be affected by any existing dispute between the Debtors and any counterparty to such Closing Date Assigned Contract. Any party that may have had the right to consent to the assignment of any Closing Date Assigned Contract and did not timely object ~~is~~ prior to the passage of the Cure Objection Deadline or Supplemental Cure Objection Deadline, as applicable, will be deemed to have consented for the purposes of section 365(e)(2)(A) of the Bankruptcy Code.

~~22.    All defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing after the deadline for parties to object to the Sale and prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing, or as soon thereafter as reasonably practicable.~~

~~23~~24.    Notwithstanding any term of any Closing Date Assigned Contract to the contrary, any extension or renewal options or other rights contained in such Closing Date Assigned Contract that purport to be personal only to, or exercisable only by, the Debtors, a named entity, or an entity operating under a specific trade name, may, in each case, be freely exercised to their full extent by the Buyer subject to the other applicable terms of the Closing Date Assigned Contract. Any extension or renewal options in connection with all Closing Date Assigned Contracts that the Debtors validly exercised prior to the entry of this Order, and all terms of the Closing Date Assigned Contracts, are in full force and effect and have not been previously rejected, and the Debtors' time to assume or reject the Closing Date Assigned Contracts has not otherwise expired.

25.     The Debtors' obligations to counterparties of Leases that are not Closing Date Assigned Contracts pursuant to section 365(d)(3) of the Bankruptcy Code through the effective date of assumption and assignment or rejection of such Leases shall not be affected or modified by this Sale Order and use of Leases pursuant to the TSA Term Sheet (or any transition services agreement entered into) shall be subject to section 365(d)(4) of the Bankruptcy Code.

2426.   The assignments of each of the Closing Date Assigned Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

2527.   Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease under Section 365 of the Bankruptcy Code.

2628.   The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions or of their respective rights to enforce every term and condition of the Assigned Contracts.

**Other Provisions**

2729.   To the maximum extent permitted by applicable law, and in accordance with the Asset Purchase Agreement, the Buyer (or its designee) shall be authorized, as of the Closing, to operate under any license, permit, registration, and governmental authorization or approval (collectively, the "Licenses") of the Debtors with respect to the Transferred Assets. To the extent the Buyer (or its designee) cannot operate under any Licenses in accordance with the previous sentence, such Licenses shall be in effect while the Buyer (or its designee), with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for new issuance of Licenses to the Buyer (or its designee). The Debtors shall maintain

the Licenses in good standing to the fullest extent allowed by applicable law for the Buyer's benefit until equivalent new Licenses are issued to the Buyer (or its designee).

2830.   To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or License relating to the Transferred Assets sold, transferred, or conveyed to the Buyer (or its designee) on account of the filing or pendency of these Chapter 11 cases or the consummation of the Sale contemplated by the Asset Purchase Agreement.

29.   The31. Upon or after the Closing, the Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Sale-related document with respect to the Transferred Assets or implementation of the TSA Term Sheet. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence, *provided*, *however*, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

3032.   Neither the Buyer nor the Debtors shall have an obligation to consummate the Sale until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to consummate the Sale have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement, but subject to the rights of the Prepetition Secured Parties under the Cash Collateral Order and the Cash Collateral Term Sheet with respect to the Sale.

3133.   The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon the Debtors, their affiliates, their estates, all creditors of

(whether known or unknown) and holders of equity interests in any Debtor, any holders of claims against or on all or any portion of the Transferred Assets, all counterparties to the Assigned Contracts, the Buyer, and all of their respective successors and assigns including, but not limited to, any subsequent trustee(s), examiner(s), or receiver(s) appointed in any of the Debtors' Chapter 11 cases or upon conversion to Chapter 7 under the Bankruptcy Code, as to which trustee(s), examiner(s), or receiver(s) such terms and provisions likewise shall be binding. The Asset Purchase Agreement shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders, or any trustee(s), examiner(s), or receiver(s).

3234.    The terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in any of these Chapter 11 cases; (b) converting any of the Chapter 11 cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 cases. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)–(d) above, shall continue in these Chapter 11 cases, or following dismissal of these Chapter 11 cases.

3335.    Each and every federal, state, and local governmental agency, department, or official is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

3436.    The Asset Purchase Agreement and the Sale contemplated hereunder shall not be subject to any bulk sales laws or any similar law of any state or jurisdiction.

3537.    The Asset Purchase Agreement (including the TSA Term Sheet) may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof

and subject to the Prepetition Secured Creditors' rights of consent, if any, to such modifications, amendments or supplements to the extent set forth in the Cash Collateral Order and Cash Collateral Term Sheet, without further order of the Court, provided that any such modification, amendment, or supplement does not, based on the Debtors' business judgment, and in consultation with the Consultation Parties,[3] have a material adverse effect on the Debtors' estates or their creditors. The Debtors shall provide the Consultation Parties with prior notice of any such modification, amendment, or supplement of the Asset Purchase Agreement or the TSA Term Sheet. For the avoidance of doubt, all other modifications, amendments, or supplements that have a material adverse effect on the Debtors' estates or their creditors shall require notice to the party or parties materially and adversely effected and Court approval.

3638.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

3739.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014 or otherwise, the terms and conditions of this Sale Order shall be effective immediately upon entry and the Debtors and the Buyer are authorized to consummate the Sale immediately upon entry of this Sale Order.

3840.    To the extent there is any conflict between the terms of this Sale Order and the Asset Purchase Agreement, the terms of this Sale Order shall control. Nothing contained in any chapter 11 plan hereinafter confirmed in these Chapter 11 cases or any order confirming such

---

[3]    As defined in the Bid Protections Order, "Consultation Parties" means any statutory committee appointed in the Chapter 11 Cases, including by not limited to the Official Committee of Unsecured Creditors and PNC Bank, National Association, and each of their respective advisors.

chapter 11 plan, or any other order of the Court, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.

41. Notwithstanding anything else to the contrary in the Asset Purchase Agreement, the Sale Motion, or this Order, nothing therein or herein shall transfer title to property owned by any non-Debtor (excluding any portion of such title or interest owned by a Debtor), including any property owned by Ferrellgas, LP ("Blue Rhino") provided, however, no determination of any disputed ownership interest in any asset(s) is made herein. For the avoidance of doubt, nothing in the Asset Purchase Agreement, the Sale Motion, or this Order shall transfer title to any propane tanks, displays, or cages (the "Blue Rhino Assets") to the extent the Debtors hold no ownership interest(s) in such Blue Rhino Assets. Blue Rhino reserves any and all Claims against the Debtors, their Co-Op Members, or independent retailers and the Debtors and their estates reserve any and all Claims against Blue Rhino

42. Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of executory contracts to be assumed and assigned and/or any Cure Notices or Supplemental Cure Notices, any schedule of Assigned Contracts, this Order, or any documents relating to any of the foregoing; nothing shall permit or otherwise effect a sale, an assignment or any other transfer of (a) any insurance policies that have been issued as of or prior to the Petition Date by ACE American Insurance Company, Westchester Surplus Lines Insurance Company, Westchester Fire Insurance Company, Federal Insurance Company and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") to or that provide coverage to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto entered into by, or issued for the benefit of, the Chubb Companies

(collectively, the "Chubb Insurance Contracts"), and/or (b) any rights, proceeds, benefits, interests, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Successful Bidder; *provided*, *however*, that to the extent any claim with respect to the Transferred Assets or the provision of Transition Services under the TSA Term Sheet (or the transition services agreement contemplated therein) arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Successful Bidder any such insurance proceeds (each, a "Proceed Turnover"), *provided*, *further*, *however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

43.     The Objections found at Docket Nos. 351 and 358 are continued to the December 4, 2024 Assumption/Assignment/Cure Hearing, and, if not earlier resolved or otherwise further adjourned, will be adjudicated at such hearing. The related Objectors and Debtors reserve all rights and defenses.

44.     For the avoidance of doubt, the issues raised by Cooper Lighting, LLC ("Cooper Lighting") pursuant to the Objection filed at Docket No. 357 are adjourned to the December 4, 2024 Assumption/Assignment/Cure Hearing, including without limitation the ability of the Debtors to transfer the TV Credits earned by the Debtors to Do it Best without assuming and assigning the Vendor Buying Agreement with Cooper Lighting, and nothing in the Sale Order shall impair the Debtors' or Cooper Lighting's rights and defenses with respect thereto.

45.     Prior to the Closing, the Debtors shall file a motion or a supplement to the Motion with the Court seeking entry of an order in form and substance reasonably satisfactory to the

Buyer implementing a procedure for the implementation of the assumption and assignment of "Contracts" (as that term is defined in the TSA Term Sheet) (the "TSA Contracts") that Buyer designates as Transferred Contracts post-Closing pursuant to  Section 2.5(e) of the Asset Purchase Agreement.  Such procedures shall, among other things, (i) recognize the effects of any prior Cure Objection Deadline or Supplemental Cure Objection Deadline on any TSA Contracts and any Cure Amounts arising under such TSA Contracts prior to such Cure Objection Deadline or Supplemental Cure Objection Deadline, including any prior resolution or adjudication of such Cure Amount with respect to such TSA Contract; (ii) provide TSA Contract counterparties with (a) prior notice of the proposed assumption and assignment of their Contracts as of a date certain and to the extent Buyer is designating an affiliate as the assignee, then identifying such assignee, (b) the opportunity to interpose an objection for adequate assurance to the extent of the assignment of a TSA Contract to an assignee other than Buyer and any default for any period of time following a prior Cure Objection Deadline or Supplemental Cure Objection Deadline applicable to such TSA Contract; and (c) the opportunity to interpose both a Cure Objection and an adequate assurance objection in the event that such TSA Contract was not included in any prior Cure Notice or was not otherwise subject to any prior Cure Objection Deadline or Supplemental Cure Objection Deadline; and (iii) schedule Assumption/Assignment/Cure Hearings with respect to such TSA Contracts.

3946.   The Court shall retain exclusive jurisdiction with respect to the terms and provisions and enforcement of this Sale Order, the TSA Term Sheet, any Transition Services Agreement that might be entered, and the Asset Purchase Agreement.

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 11/12/2024 2:07:19 AM | |
|---|---|
| **Style name:** Option 3b (Opt 3 + No Format) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://NYCSR03A/2466853/2A | |
| **Description:** TV - Sale Order | |
| **Modified DMS:** dm://NYCSR03A/2466853/7D | |
| **Description:** TV - Sale Order | |
| **Changes:** | |
| Add | 201 |
| Delete | 131 |
| Move From | 27 |
| Move To | 27 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 386 |