IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | Case No. 24-12337 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline:** February 4, 2025 at 4:00 p.m. (ET) |
| | **Hearing Date:** February 11, 2025 at 10:30 a.m. (ET) |

**DEBTORS' MOTION FOR AN ORDER, PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE, EXTENDING THE EXCLUSIVE PERIODS WITHIN WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

True Value Company, L.L.C. and certain of its affiliates (collectively, the "Debtors," and together with their non-Debtor affiliates, the "Company") in the above-captioned cases, hereby move (this "Motion") the United States Bankruptcy Court for the District of Delaware (the "Court") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), extending the exclusive periods during which only the Debtors may file a chapter 11 plan and solicit acceptances thereof in these chapter 11 cases (the "Chapter 11 Cases") by approximately 90 days. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

**RELIEF REQUESTED**

1.    By this Motion, out of an abundance of caution, the Debtors respectfully request that the Court enter the Proposed Order, extending the Exclusive Filing Period (defined below) and Exclusive Solicitation Period (defined below) by ninety (90) days each, through and including May 12, 2025 and July 14, 2025,[2] respectively, without prejudice to the Debtors' rights to seek additional extensions of the Exclusive Periods for cause.[3]

**JURISDICTION AND VENUE**

2.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.    The legal predicates for the relief requested herein are section 1121(d) of the Bankruptcy Code, Bankruptcy Rule 9006(b), and Local Rule 9006-2.

4.    Pursuant to Local Rule 9013-1(f), the Debtors confirm their consent to the entry of a final judgment or order by the Court in connection with this Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2] Ninety (90) days from the expiration of the Exclusive Filing Period is Sunday, July 13, 2025. Pursuant to Bankruptcy Rule 9006, the next business day for the purposes of establishing the Exclusive Filing Period is Monday, July 14, 2025.

[3] Pursuant to Local Rule 9006-2, the Exclusive Filing Period is automatically extended until the Court has had an opportunity to consider the relief requested in this Motion.

## BACKGROUND

**A.     General Background**

5.     On October 14, 2024 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases (the "Chapter 11 Cases") are being jointly administered.

6.     The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On October 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed, pursuant to section 1102 of the Bankruptcy Code, an official committee of unsecured creditors (the "Committee") [Docket No. 144]. No other trustee or examiner has been appointed in the Chapter 11 Cases.

8.     Prior to the Sale (defined below), the Company was one of the world's leading hardlines wholesalers, serving approximately 4,500 stores worldwide. A globally recognized retail brand, the Company provided customers in over 55 countries an expansive product set across key categories such as Hardware Lumber & Building, Outdoor Living & Tools, and Plumbing & Heating. The Company's business operations, corporate and capital structure, and the events leading up to the filing of the Chapter 11 Cases are described in greater detail in the *Declaration of Kunal S. Kamlani in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 18] (the "First Day Declaration").[4]

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

B.  **Sale of Substantially All of the Debtors' Assets and the Solicitation Process**

9.  The Debtors sold substantially all of their assets (the "Sale") during the Chapter 11 Cases to Do it Best Corp. ("Do it Best"), pursuant to the *Order Approving Sale of Substantially All of Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (B) Authorizing Debtors to Enter Into and Perform Under Asset Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts, and (D) Granting Related Relief* [Docket No. 411] (the "Sale Order").  The Sale closed on November 22, 2024.  Pursuant to the Sale Order, the Debtors entered into the Transition Services Agreement (the "TSA") with Do it Best.  The Debtors continue to transition operations and services in accordance with the Sale Order and the TSA Term Sheet.

10.  On January 21, 2025, the Debtors filed the (i) *Joint Chapter 11 Plan of True Value Company, L.L.C and Its Debtor Affiliates* [Docket No. 796] (the "Plan") and (b) *Disclosure Statement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* [Docket No. 797] (the "Disclosure Statement"), and sought authority to solicit votes to accept or reject the Plan [Docket No. 795] (the "Solicitation Procedures Motion").  A hearing on the Solicitation Procedures Motion and to determine whether interim approval of the Disclosure Statement is currently scheduled for February 11, 2025.

C.  **The Debtors' Exclusivity Periods**

11.  Section 1121(b) of the Bankruptcy Code provides for an initial period of one hundred twenty (120) days after the commencement of a chapter 11 case during which the debtor has the exclusive right to file a chapter 11 plan (the "Exclusive Filing Period").  Furthermore, section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan within the Exclusive Filing Period, the debtor has an exclusive period of one hundred eighty (180) days from

the commencement of a chapter 11 case to solicit acceptances of and confirm such a plan (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods").

12. The initial Exclusive Filing Period in the Chapter 11 Cases extends through and including February 11, 2025, while the initial Exclusive Solicitation Period extends through and including April 14, 2025.

## BASIS FOR RELIEF

13. The exclusive periods under section 1121(d) of the Bankruptcy Code are intended to afford a debtor a full and fair opportunity to formulate and propose a chapter 11 plan and to solicit acceptances thereof without the disruption that might be caused by the filing of competing plans of reorganization by non-debtor parties. To this end, section 1121(d) of the Bankruptcy Code allows the Court to extend such exclusive periods for "cause":

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

**A.    Section 1121(d) of the Bankruptcy Code Permits the Court to Extend the Exclusive Periods for "Cause."**

14. The decision to extend the exclusive periods for a debtor is committed to the sound discretion of the Court and should be based upon the facts and circumstances of a particular case. *See First Am. Bank of New York v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *203 N. LaSalle Street P'ship v. Bank of Am., N.A.*, 1999 U.S. Dist. LEXIS 19425, at

*12 (N.D. Ill. 1999); *In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of an extension request under section 1121(d), courts have looked to the legislative history of section 1121(d) for guidance. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Such legislative history indicates that Congress did not intend that the 120- and 180-day exclusive periods be a hard and fast limit. *See Amko Plastics, Inc.*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of [section 1121(d)] is flexibility."). Rather, Congress intended that the exclusive periods be of an adequate length, given the circumstances, for a debtor to formulate, negotiate and draft a viable plan without the disruptions that would occur with the filing of competing plans of reorganization. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business."). Further, Congress recognized that often a one hundred twenty (120) day exclusive period will not afford a debtor sufficient time to formulate and negotiate a chapter 11 plan:

> [t]he court is given the power, though, to increase . . . the 120-day period depending on the circumstances of the case. [T]he bill allows the flexibility for individual cases that is not available today. For example, if an unusually large company were to seek reorganization under chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.

H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 232 (1977) (footnotes omitted); *see also In re Amko Plastics*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines*, 71 B.R. at 297.

6

15. Courts consider, among others, the following factors in deciding whether cause exists to grant an extension of a debtor's exclusive periods: (a) the size of the debtor and difficulty in formulating a plan; (b) the necessity of sufficient time to negotiate a plan and prepare adequate information to allow a creditor to determine whether to accept the plan; (c) the existence of good faith progress toward reorganization; (d) whether the debtor is paying its debts as they come due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiating with creditors; (g) the length of time the case has been pending; (h) whether the debtor is seeking the extension to pressure creditors; and (i) whether unresolved contingencies exist. *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002).

16. Not all of the above factors are necessary or relevant in determining whether to grant an extension of the exclusivity periods. *See, e.g., In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying only four of the factors as relevant in determining whether cause exists to support an extension); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding cause to extend exclusivity based on three of the factors). Here, nearly all of the factors weigh in favor of extending the Exclusive Periods. Accordingly, cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

**B.    Cause Exists for an Extension of the Debtors' Exclusive Periods.**

17. The Chapter 11 Cases have been pending for approximately three (3) months. During this short period of time, the Debtors and their advisors have devoted a significant amount of time and effort to preserving and maximizing the value of the Debtors' estates for the benefit of

7

all stakeholders through the Sale, along with preparing and filing motions, applications, and other pleadings to ensure a smooth transition into chapter 11.

18. In the approximately three months since the Petition Date, the Debtors have: (i) commenced a robust sale process to sell the Assets and obtained Court approval of Bidding Procedures [Docket No. 297]; (ii) obtained approval of [Docket No. 441] and closing on the Sale; (iii) pursuant to an order of the Court [Docket No. 262], established a bar date for prepetition claims and claims pursuant to section 503(b)(9) of the Bankruptcy Code; (iv) obtained interim and final approval of certain "first-day" motions, including, among others, motions to pay certain prepetition tax, insurance, critical vendor, and employee wage claims, and to continue the use of their prepetition cash management system; (v) obtained entry of interim orders [Docket Nos. 106, 175, 224] and a final order [Docket No. 296] approving the Debtors' postpetition consensual use of cash collateral; (vi) retained professionals [Docket Nos. 419, 420, 421, 424, 435]; (vii) worked with the U.S. Trustee and the Committee to resolve a number of their comments with respect to the various pleadings in the Chapter 11 Cases; (viii) prepared and filed their Schedules of Assets and Liabilities and Statements of Financial Affairs, made certain amendments thereto, and complied with their other reporting requirements under the Bankruptcy Code and the U.S. Trustee Guidelines; (ix) responded to numerous creditor, customer, and other counterparty inquiries and demands; (x) filed the Plan, the Disclosure Statement, and the Solicitation Procedures Motion; (xi) performed obligations under the TSA to continue the transition process post-Sale closing; and (xii) handled other various tasks related to the administration of the Debtors' estates and the Chapter 11 Cases. Finally, since the Committee's appointment, the Debtors have worked

diligently to respond to the Committee's information requests, and address issues raised by the Committee in connection with the Chapter 11 Cases and the Sale.

19. Accomplishing these tasks has been a resource-intensive process, occupying the attention of the Debtors' representatives and professionals for the approximately three (3) months that the Chapter 11 Cases have been pending. In light of these circumstances, the Debtors submit that extension of the Exclusive Periods is appropriate and necessary to afford the Debtors sufficient time to execute an appropriate chapter 11 exit strategy. The Committee has consented to the extension requested herein.

      **(i)    The Circumstances of the Chapter 11 Cases Necessitates an Extension of the Debtors' Exclusive Periods.**

20. Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive period to file a plan and solicit acceptances of such a plan. H.R. No. 95-595, at 231-232,406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement"); *see also In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

21. Conducting the Sale, negotiating and documenting the TSA, obtaining entry of the Sale Order and performing under the TSA involved extensive negotiations and effort. Subsequent to obtaining approval and closing of the Sale, the Debtors engaged in extensive discussions with various stakeholders to formulate a Plan. Accomplishing these tasks and addressing the concerns of the Debtors' creditors and stakeholders along the way, among other things, required the full

attention of the Debtors' employees and advisors. Further, the Debtors have been required to devote a significant amount of time, energy, and resources to their transition into chapter 11 more generally and addressing the myriad issues attendant thereto.

22. Given the foregoing progress in a short period of time, the Debtors submit that the complexity and relatively short duration of the Chapter 11 Cases weigh in favor of extending the Exclusive Periods.

      **(ii)    The Debtors Have Shown Good Faith Progress in the Chapter 11 Cases.**

23. The requested extension of the Exclusive Periods is reasonable given the Debtors' progress to date and the current posture of the Chapter 11 Cases. It is without question that the Debtors have made significant progress in the three (3) months the Chapter 11 Cases have been pending, which is demonstrated most notably by filing of the Plan and Disclosure Statement. The substantial attention and effort of the Debtors and their professionals will no doubt be a continued requirement with the upcoming hearing on the Disclosure Statement. Accordingly, the Debtors' current progress in the Chapter 11 Cases and the remaining tasks justify the requested extension of the Exclusive Periods.

      **(iii)    The Debtors are Paying Their Debts as They Come Due.**

24. The Debtors continue to timely pay their undisputed postpetition obligations. As such, the requested extension of the Exclusive Periods will afford the Debtors a meaningful opportunity to obtain approval of the Disclosure Statement for solicitation purposes and work to confirm the Plan without prejudice to the parties in interest in the Chapter 11 Cases.

      **(iv)    An Extension of the Debtors' Exclusive Periods Will Not Prejudice the Debtors' Creditors.**

25. Throughout the chapter 11 process, the Debtors have endeavored to establish and maintain cooperative working relationships with their primary creditor constituencies.

Importantly, the Debtors are not seeking the extension of the Exclusive Periods to delay administration of the Chapter 11 Cases or to exert pressure on their creditors, but rather to continue the orderly, efficient, and cost-effective chapter 11 process. Thus, this factor also weighs in favor of the requested extension of the Exclusive Periods.

### (v) Additional Factors Exist to Support an Extension of the Debtors' Exclusive Periods.

26. In addition to the factors discussed above, termination of the Exclusive Periods in the Chapter 11 Cases would adversely impact the Debtors' administration of the Chapter 11 Cases. Simply put, if the Court were to deny the Debtors' request for an extension of the Exclusive Periods, upon the expiration of the Exclusive Filing Period, any party in interest would be free to propose a chapter 11 plan for the Debtors and solicit acceptances thereof. Such a ruling could foster a chaotic environment for the Debtors and their estates, significantly delay the administration of the Chapter 11 Cases, and otherwise impair the Debtors' ability to pursue the Plan and prosecute the Chapter 11 Cases without any corresponding benefit to the Debtors' estates and creditors. Indeed, denying the relief requested herein could very well thwart the objectives of the chapter 11 process, and result in reduced recoveries for the Debtors' stakeholders.

27. Based on the foregoing, the Debtors respectfully submit that sufficient cause exists, pursuant to section 1121(d) of the Bankruptcy Code, for the Court to extend the Debtors' Exclusive Filing Period through and including May 12, 2025, and the Debtors' Exclusive Solicitation Period through and including July 13, 2025.

## NOTICE

28. Notice on this Motion will be given to: (a) the U.S. Trustee; (b) counsel to the Prepetition Lender; (c) counsel to the Committee; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) all parties that have filed a notice of appearance and request for

service of papers pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be given.

## CONCLUSION

The Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: January 28, 2025

| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **GLENN AGRE BERGMAN & FUENTES LLP** |
|---|---|
| */s/ Carol E. Thompson* | Andrew K. Glenn (admitted *pro hac vice*) |
| Edmon L. Morton (Del. Bar No. 3856) | Trevor J. Welch (admitted *pro hac vice*) |
| Kenneth J. Enos (Del. Bar No. 4544) | Malak S. Doss (admitted *pro hac vice*) |
| Kristin L. McElroy (Del. Bar No. 6871) | Michelle C. Perez (admitted *pro hac vice*) |
| Timothy R. Powell (Del. Bar No. 6894) | Esther Hong (admitted *pro hac vice*) |
| Carol E. Thompson (Del. Bar No. 6936) | 1185 Avenue of the Americas |
| One Rodney Square | 22nd Floor |
| 1000 North King Street | New York, New York 10036 |
| Wilmington, Delaware 19801 | Telephone: (212) 970-1600 |
| Telephone: (302) 571-6600 | Email:   aglenn@glennagre.com |
| Email:  emorton@ycst.com | twelch@glennagre.com |
|             kenos@ycst.com | mdoss@glennagre.com |
|             kmcelroy@ycst.com | mperez@glennagre.com |
|             tpowell@ycst.com | ehong@glennagre.com |
|             cthompson@ycst.com | |
| *Efficiency Counsel to the Debtors and Debtors in Possession* | *Conflicts Counsel to the Debtors and Debtors in Possession* |