IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> **TRUE VALUE COMPANY, L.L.C.** *et al.*, <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 24-12337 (KBO) <br><br> (Jointly Administered) <br><br> Re: Dkt. Nos. 795, 860 and 865 |

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE DISCLOSURE
STATEMENT ON AN INTERIM BASIS; (B) ESTABLISHING SOLICITATION AND
TABULATION PROCEDURES; (C) APPROVING THE FORM OF BALLOT AND
SOLICITATION MATERIALS; (D) ESTABLISHING THE VOTING RECORD DATE;
(E) FIXING THE DATE, TIME, AND PLACE FOR THE COMBINED
CONFIRMATOIN HEARING AND THE DEADLINE FOR FILING OBJECTIONS
THERETO; AND (F) GRANTING RELATED RELIEF**

True Value Company, L.L.C. and certain of its affiliates (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company") in the above-captioned cases (the "Chapter 11 Cases") hereby files this reply (this "Reply") in support of the *Debtors' Motion for Entry of an Order (a) Approving the Disclosure Statement on an Interim Basis; (b) Establishing Solicitation and Tabulation Procedures; (c) Approving the Form of Ballot and Solicitation Materials; (d) Establishing the Voting Record Date; (e) Fixing the Date, Time, and Place for the Combined Confirmation Hearing and the Deadline for Filing Objections Thereto; and (f) Granting Related Relief* [Docket No. 795] (the "Solicitation Procedures Motion")[2] and in response to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Solicitation Procedures Motion.

objections to the Solicitation Procedures Motion filed by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") [Docket No. 860] ("U.S. Trustee Objection"); and Somerset Leasing XXV, LLC, as successor-in-interest to Somerset Capital Group, Ltd. itself successor-in-interest to ARC Equipment Finance LLC, Somerset Leasing Corp. XXII, as successor-in-interest to Somerset Capital, itself successor-in-interest to ARC, and Somerset Leasing Corp. 27, as successor in-interest to Somerset Capital, itself successor-in-interest to ARC (the "Somerset Entities") [Docket No. 865] (the "Somerset Objection", and together with the U.S. Trustee Objection, the "Objections"). In further support of the Motion and in response to the Objections, the Debtors state as follows:

## PRELIMINARY STATEMENT

1. The Debtors have reached a critical juncture in their chapter 11 process: they are positioned to solicit votes on and seek confirmation of their Plan. At the outset of these Chapter 11 Cases, it was very much in question whether the Debtors would reach this point. However, having successfully negotiated the consensual use of cash collateral with the prepetition secured lenders (the "Prepetition Lenders") in the weeks immediately following the Petition Date, followed by the consummation of the sale of substantially all of their assets to Do it Best, the Debtors now seek this Court's approval to begin the solicitation process.

2. Prior to the filing of the U.S. Trustee Objection, the Debtors received comments to the Plan, the Disclosure Statement, and proposed order and exhibits filed with the Solicitation Procedures Motion (the "Solicitation Procedures Order") from the U.S. Trustee. The Debtors engaged with the U.S. Trustee to resolve his concerns and believe that they have addressed every one of his points, other than the Plan's proposed limited third-party releases (the "Third-Party Release"), through revised versions of the Plan, the Disclosure Statement, and the Solicitation Procedures Order. *See* Docket Nos. 876, 878, and 879. With respect to the U.S. Trustee's

objection to the Third-Party Release, such Objection should be overruled. The Debtors were mindful of the Court's previous rulings on this issue and structured the Third-Party Release to be consistent with those rulings – as this Court has ruled, the Third-Party Release is consensual. Further, the U.S. Trustee's objection to the Third-Party Release is more appropriately raised in connection with confirmation of the Plan and not in connection with the matters currently before the Court.

3. The Somerset Objection, which raises issues concerning to the adequacy of the disclosures in the Disclosure Statement, to the extent not resolved by the revisions to the amended versions of the Disclosure Statement and Plan, should likewise be overruled. The Disclosure Statement contains adequate information for the Somerset Entities, as well as the Debtors' other creditors to make an informed decision about whether to accept or reject the Plan, as required by section 1125 of the Bankruptcy Code.

## REPLY

**I.     The U.S. Trustee Objection**

4. The U.S. Trustee Objection asserts that the Disclosure Statement should not be approved even on an interim basis because the Plan is "patently unconfirmable" as it proposes "non-consensual third-party releases that are not authorized under the Bankruptcy Code." Objection, ¶ 26. Courts in this District have consistently held that arguments regarding the propriety of releases are properly raised at plan confirmation, not disclosure statement approval. *See, e.g.*, Hr'g Tr. at 161:22-162:12, *In re Imerys Talc Am., Inc.,* Case No. 19-10289 (LSS) (Bankr. D. Del. Oct. 8, 2024) [Docket No. 6710] (at the disclosure statement hearing, expressly saving the propriety of the proposed third-party releases for approval at the confirmation hearing); Hr'g Tr. at 24:24-25:8, *In re Alto Maipo Delaware LLC*, Case No. 21-11507 (KBO) (Bankr. D. Del. Apr. 6, 2022) [Docket No. 479] (approving disclosure statement over objections by the United States

3

Trustee to the definition of releasing party, and finding it to be an issue for confirmation); Hr'g Tr. at 90:20, *In re Emerge Energy Servs.*, Case No. 19-11563 (KBO) (Bankr. D. Del. Sept. 9, 2019) [Docket No. 348] (noting that, "[o]n the releases, it's a confirmation issue"); Hr'g Tr. at 28:14-15, *In re GT Real Estate Holdings, LLC*, Case No. 22-10505 (KBO) (Bankr. D. Del. Sept. 19, 2022) [Docket No. 410] (approving disclosure statement and overruling objections in connection with the releases as confirmation issues); Hr'g Tr. at 199:9-13, *In re TK Holdings, Inc.,* Case No. 17-11375 (BLS) (Bankr. D. Del. Jan. 3, 2018) [Docket No. 1642] (approving disclosure statement while declining to rule on releases at the hearing, as such issues are "classically [for] a confirmation hearing"); Hr'g Tr. at 67:12 14-15, *In re Molycorp, Inc.,* Case No. 15 11357 (CSS) (Bankr. D. Del. Jan. 8, 2016) [Docket No. 1050] (noting that potential issues with releases should be dealt with at confirmation); Hr'g Tr. at 57:3-8, *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. Sept. 21, 2015) [Docket No. 6132] ("To say that releases [are] an issue for confirmation doesn't make the [proposed plan] patently unconfirmable.  It can either be addressed in one of two ways and we'll figure that out when we get to confirmation.  And I think that really goes to the heart of all of the confirmation, certainly patently unconfirmable confirmation objections."). This is particularly apt where, as here, the terms of the proposed release and the means for evidencing consent by those asked to consent are clear.

5.     Nonetheless, the Debtors briefly respond to the U.S. Trustee's argument.  To reach his conclusion that the Third-Party Release renders the Plan patently unconfirmable, the U.S. Trustee asserts that *Purdue* mandates revisiting what constitutes "consent" and that a Releasing Party's failure to opt out of the Third-Party Release is insufficient to demonstrate consent.  U.S. Trustee Objection ¶ 57; *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204, 144 S. Ct. 2071, 2082-88 (2024).

6. However, the Supreme Court expressly did not opine on *consensual* third-party releases in *Purdue*, other than to note that a consensual release would be permitted. It held only that a court may not approve a plan of reorganization with a release and injunction that extinguishes claims against non-debtor third parties *without* the consent of affected claimants. *Purdue Pharma*, 603 U.S. at 226.[3] Indeed, the U.S. Trustee concedes this in his Objection. U.S. Trustee Objection ¶ 37 ("The Supreme Court in *Purdue* did not address whether consensual non-debtor releases can be included in a chapter 11 plan and confirmation order."). Nevertheless, the U.S. Trustee ignores the very limitation that he concedes and misapplies *Purdue* in furtherance of his attempts[4] to upset well-established law on consensual third-party releases, dedicating the bulk of the U.S. Trustee Objection to his position that various provisions of state contract law, rather than federal bankruptcy law, should govern whether non-debtor releases in a chapter 11 plan are consensual. This is not the law. *See, e.g., In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 273 (Bankr. D. Del. 2017) ("[T]here is no state law equivalent to confirmation of a plan. And, third party releases do not exist without regard to the bankruptcy proceeding. Rather, a ruling approving third party releases is a determination that the plan at issue meets the federally created requisites for confirmation and third party releases."); Hr'g Tr. at 80:21-25, *In re Extraction Oil & Gas, Inc.*, Case No. 20-11548 (CSS) (Bankr. D. Del. Dec. 22, 2020) [Docket No. 1534] ("Very importantly, these are consensual releases, these are not nonconsensual releases. I have repeatedly ruled that you can imply consent by failing to opt out or respond to a plan, either through a ballot or on the

---

[3] The Supreme Court expressly stated: "Nothing in what we have said should be construed to call into question *consensual* third-party releases offered in connection with a bankruptcy reorganization plan." *Id.* at 226 (emphasis added).

[4] *See In re Robertshaw U.S. Holdings Corp.*, Case No. 24-90052 (CML), 2024 WL 3897812, at *17 (Bankr. S.D. Tex. Aug. 16, 2024) ("[T]he Trustee wants to use the *Purdue* holding as an opportunity to advance its long-held position that consensual third-party releases in a plan should require an opt-in feature, rather than an optout.").

5

docket, that calls for a release. I don't believe this is necessarily a contractual point . . . as much as it is a point of notice under the Bankruptcy Code and the Bankruptcy Rules, because it's the plan that serves as the mechanism to have the release take effect and, thus, it's really the rules, the Federal Rules of Bankruptcy Procedures that figure out whether someone has achieved proper notice and has, by not responding, given their implied consent."). Rather, the law and longstanding precedent by courts in the Third Circuit and other Circuits approves third-party releases where creditors have the opportunity to opt out, consistently finding that opt-out release provisions are consensual. *See, e.g., Arsenal Intermediate Holdings, LLC*, Case No. 23-10097 (CTG) (Bankr. D. Del. Mar. 27, 2023) [Docket No. 176] (same); *In re Kabbage, Inc.,* Case No. 22-10951 (CTG) (Bankr. D. Del. Jan. 19, 2023) [Docket No. 680] (approving plan containing third-party releases with opt-out mechanism); *In re Mallinckrodt*, 639 B.R. 837, 879 (Bankr. D. Del. 2022) (same); *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) (Bankr. D. Del. Oct. 6, 2020) [Docket No. 586] (same); *In re DBSD N. Am, Inc.*, 419 B.R. 179 (Bankr. S.D.N.Y. 2009), *rev'd in part on other grounds*, 627 F.3d 496 (2d Cir. 2010); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013).

7. Indeed, the Third-Party Release fits squarely within the contours of what numerous courts in this Circuit (and throughout the country) have determined (over nearly identical objections by the U.S. Trustee) to be consensual and deemed appropriate and permissible. *See, e.g.*, *In re Fisker, Inc.,* No. 24-11390 (TMH) (Bankr. D. Del. Oct. 16, 2024); *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Bankr. D. Del. Oct. 8, 2024); *In re Smallhold, Inc.*, No. 24-10267 (CTG), 2024 Bankr. LEXIS 2332 (Bankr. D. Del. Sep. 25, 2024); *In re Sam Ash Music Corp.*, No. 24-14727 (SLM) (Bankr D.N.J. Aug. 15, 2024); *In re Robertshaw US Holding Corp.*, Case No. 24-90052 (CML)

6

(Bankr. S.D. Tex. Aug. 16, 2024); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024); *In re Bowflex Inc.*, No. 24-12364 (ABA) (Bankr. D. N.J. Aug. 18, 2024); *In re Jambys, Inc., et al.*, No. 24-10913 (KBO) (Bankr. D. Del. Sept. 10, 2024).

8. Further, the scope of the Third-Party Release is limited.[5] The Third-Party Release is granted only by those parties who ***affirmatively vote to accept*** the Plan and ***choose not to opt-out*** of the Third-Party Release or ***reject*** the plan and ***opt-in*** to the Third-Party Release. The Debtors do not seek to bind to the Third-Party Release any parties without their express consent who either: (x) do not affirmatively vote to accept the Plan, or (y) reject or fail to vote on the Plan.  Thus, the scope of the Third-Party Release aligns with the rationale recently provided for the permissibility of third-party releases by this Court in *Jambys* and by Judge Goldblatt in *Smallhold*, without pursuing additional arguments for a broader form of release that these decisions and others leave open for another day. *In re Smallhold, Inc.*, No. 24-10267 (CTG), 2024 Bankr. LEXIS 2332, *42-43 ("As to consent to the third-party release, the touchstone is whether the creditor engaged in ***affirmative conduct*** to indicate the creditor's consent.") (emphasis added); *In re Jambys, Inc., et al*, No. 24-10913 (KBO) (Bankr. D. Del. Sept. 10, 2024), Hr'g Tr. Sept. 10, 2024, 57:17-58:15 ("The question here is narrow, I submit, and it's whether a vote in favor of the plan and the creditor who voted in favor of the plan's failure to check the box to opt out of the release is ***sufficient manifestation of affirmative consent*** . . . [t]hey took affirmative steps here.") (emphasis added).

---

[5] Pursuant to the Plan, "Releasing Parties" means, collectively, each of the following in their respective capacities as such: (a) the Released Parties; (b) all Holders of Claims or Interests that (i) vote to reject or abstain from voting on the Plan and (ii) check the box on the applicable ballot indicating that they "opt in" to granting the Releasing Party Releases; (c) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively "opt out" of granting the Releasing Party Releases; (d) all Holders of Claims or Interests that (i) are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and (ii) after receiving notice, affirmatively "opt in" to the Releasing Party Releases; (e) all Holders of Claims or Interests that (i) are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and, (ii) after receiving notice, affirmatively "opt in" to the Releasing Party Releases; and (f) each Related Party of each Entity in the foregoing clauses (a) through (e), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (e).  *See* Plan Article 1.1.118.

This comports with long-recognized doctrine in the federal courts regarding consent, *see Wellness Int'l Network v. Sharif*, 575 U.S. 665, 683 (2015) ("Adjudication based on litigant consent has been a consistent feature of the federal court system since its inception."), including that such consent may be implied by clear notice and conduct. *Id.* at 684-85; *In re Tribune Media*, Co., 902 F.3d 384 (3d Cir. 2018) (implying consent from party's knowing and voluntary action). As articulated by Judge Goldblatt in *Smallhold*, such consent can and should be implied in a bankruptcy context at least where Congress gave parties in interest the opportunity to take an affirmative act to vote on a plan, the vote was cast and the voting creditor was given clear instructions on the additional right to opt-out or opt-in (depending on the vote) to the release contained therein and the consequences thereof. *In re Smallhold, Inc.*, 2024 Bankr. LEXIS 2332, at *40-42.

9. The Third-Party Release therefore is consensual and permissible with respect to all Holders of Claims in the Voting Classes, because they only release claims if such Holders consent (i.e., by not opting out of the releases). Accordingly, the U.S. Trustee Objection should be overruled.

## II.  Somerset Objection

10. The Somerset Objection contends that the Disclosure Statement does not provide adequate information for the Somerset Entities to make an informed judgment about the proposed Plan, and therefore should not be approved. The Somerset Entities contend that: (i) the Disclosure Statement does not include sufficient information regarding the Litigation Trust and recoveries to General Unsecured Creditors, (ii) the Liquidation Analysis has not been filed, and (iii) the Debtors should be required to file the Plan Supplement no less than two weeks prior to the Plan Voting and Objection Deadline. The Liquidation Analysis was filed with the amended Disclosure Statement.

Accordingly, the Debtors believe that issue has been resolved. Concerning Somerset's remaining objections, they should be overruled.

11. As set forth in the Plan, the Plan Supplement will include, among other things, the Litigation Trust Agreement and the Schedule of Retained Causes of Action, so the Somerset Entities will have an opportunity to review this information in advance of Voting Deadline. Whether Holders of General Unsecured Claims will be entitled to any recovery is dependent upon the success of any litigation pursued by the Litigation Trustee after the Effective Date of the Plan, and whether there are any settlements or compromises that would inure to such Holders. By the very nature of the assets of the Litigation Trust, any estimate of value to be ascribed would be entirely hypothetical, speculative and could (as a result) be misleading in itself. The Debtors believe such assets of the Trust and circumstances are adequately described in the Disclosure Statement, and by providing the relevant information regarding the Litigation Trust and the Retained Causes of Action in the Plan Supplement, which will be filed seven days before the Voting Deadline as required by Local Rule 3016-3, they adequately comply with their disclosure obligations.

12. Importantly, any improvement in the treatment of Allowed General Unsecured Claims would only increase recoveries to the class, not decrease them. In other words, creditors *are* aware that their treatment might change, *and they are also aware* that they will not be prejudiced, only benefitted by any such change. The only impact of knowing more precise information today would be that more creditors would presumably vote in favor of the Plan due to their improved treatment—not that creditors who would vote to accept the Plan as currently drafted would instead vote to reject the Plan or wish to object to its terms.

13. As detailed in the Solicitation Procedures Motion and for the reasons set forth herein, the Debtors submit that the Disclosure Statement contains "adequate information"

9

necessary to allow all creditors to make an informed decision to vote on the Plan. Accordingly, the Somerset Objection should be overruled.

14. For these reasons, the Debtors respectfully request that the Court overrule the Objections, approve the Disclosure Statement on an interim basis, and grant such other and further relief as is just and proper.

Dated: February 10, 2025

| **YOUNG CONAWAY STARGATT & TAYLOR, LLP** | **GLENN AGRE BERGMAN & FUENTES LLP** |
|---|---|
| */s/ Kenneth J. Enos* | Andrew K. Glenn (admitted *pro hac vice*) |
| Edmon L. Morton (Del. Bar No. 3856) | Trevor J. Welch (admitted *pro hac vice*) |
| Kenneth J. Enos (Del. Bar No. 4544) | Malak S. Doss (admitted *pro hac vice*) |
| Kristin L. McElroy (Del. Bar No. 6871) | Michelle C. Perez (admitted *pro hac vice*) |
| Timothy R. Powell (Del. Bar No. 6894) | Esther Hong (admitted *pro hac vice*) |
| Carol E. Thompson (Del. Bar No. 6936) | 1185 Avenue of the Americas |
| One Rodney Square | 22nd Floor |
| 1000 North King Street | New York, New York 10036 |
| Wilmington, Delaware 19801 | Telephone: (212) 970-1600 |
| Telephone: (302) 571-6600 | Email:   aglenn@glennagre.com |
| Email: emorton@ycst.com | twelch@glennagre.com |
|   kenos@ycst.com | mdoss@glennagre.com |
|   kmcelroy@ycst.com | mperez@glennagre.com |
|   tpowell@ycst.com | ehong@glennagre.com |
|   cthompson@ycst.com |  |
| *Efficiency Counsel to the* | *Conflicts Counsel to the* |
| *Debtors and Debtors in Possession* | *Debtors and Debtors in Possession* |