## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |

## SECOND AMENDED JOINT CHAPTER 11 PLAN OF TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Joseph O. Larkin
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

Ron E. Meisler (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0705
Ron.Meisler@skadden.com
Jennifer.Madden@skadden.com

- and -

Evan A. Hill (admitted *pro hac vice*)
Moshe S. Jacob (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Evan.Hill@skadden.com
Moshe.Jacob@skadden.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
One Rodney Square
1000 North King Street
Wilmington, Delaware 1801
Telephone: (302) 571-6600
emorton@ycst.com
kenos@ycst.com
kmcelroy@ycst.com
tpowell@ycst.com

GLENN AGRE BERGMAN & FUENTES LLP
Andrew K. Glenn (admitted *pro hac vice*)
Trevor J. Welch (admitted *pro hac vice*)
Malak S. Doss (admitted *pro hac vice*)
Michelle C. Perez (admitted *pro hac vice*)
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
aglenn@glennagre.com
twelch@glennagre.com
mdoss@glennagre.com
mperez@glennagre.com

*Counsel to Debtors and Debtors-in-Possession*

Dated:   February 12, 2025
         Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1
ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF
TIME    ..................................................................................................................1
    Section 1.1    Defined Terms ............................................................................1
    Section 1.2    Rules of Interpretation ............................................................15
    Section 1.3    Computation of Time ...............................................................16
    Section 1.4    Exhibits ....................................................................................16
    Section 1.5    Reference to the Debtors or the Post-Effective Date Debtors ...16
    Section 1.6    References to the Asset Purchase Agreement and any Ancillary
                   Agreements ..............................................................................16
    Section 1.7    Controlling Document .............................................................16
ARTICLE II ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS .......................16
    Section 2.1    Administrative Claims .............................................................16
    Section 2.2    Professional Claims .................................................................18
    Section 2.3    Restructuring Expenses ...........................................................19
    Section 2.4    Plan Administration Reserve ...................................................19
    Section 2.5    Priority Tax Claims ..................................................................20
ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND
INTERESTS    ..................................................................................................................20
    Section 3.1    Classification of Claims and Interests .....................................20
    Section 3.2    Treatment and Voting of Claims and Interests ........................21
    Section 3.3    Voting, Presumptions, and Solicitation. ..................................25
ARTICLE IV MEANS OF IMPLEMENTATION OF THE PLAN .........................................26
    Section 4.1    Corporate Action......................................................................26
    Section 4.2    Effectuating Documents; Further Transactions .......................26
    Section 4.3    Corporate Existence Post-Effective Date..................................26
    Section 4.4    Settlement of Claims and Interests ..........................................27
    Section 4.5    Plan Funding ............................................................................27
    Section 4.6    Cancellation of Old Securities and Agreements ......................28
    Section 4.7    Vesting of Assets .....................................................................28
    Section 4.8    Plan Administrator. ..................................................................29
    Section 4.9    Litigation Trust .......................................................................31
    Section 4.10   Sale Order ................................................................................33
    Section 4.11   Exemption from Certain Transfer Taxes ..................................33
    Section 4.12   Preservation of Causes of Action.............................................33
ARTICLE V EXECUTORY CONTRACTS.............................................................................34
    Section 5.1    Assumption and Rejection of Executory Contracts .................34
    Section 5.2    Rejection Damages Claim Procedures......................................35
    Section 5.3    Cure of Defaults for Assumed Executory Contracts ...............36
    Section 5.4    Modifications, Amendments, Restatements, Supplements,
                   Restatements, and Other Agreements......................................37
    Section 5.5    Reservation of Rights................................................................38
    Section 5.6    Employee Compensation and Benefit Programs ......................38
    Section 5.7    Insurance Policies ....................................................................39

i

Section 5.8     D&O Policies ...................................................................39
Section 5.9     Indemnification Obligations .............................................39
Section 5.10    Nonoccurrence of the Effective Date................................40
ARTICLE VI PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS..40
Section 6.1     Determination of Claims and Interests ..............................40
Section 6.2     Claims Administration Responsibility ...............................40
Section 6.3     Objections to Claims.........................................................41
Section 6.4     Disallowance of Claims ....................................................41
Section 6.5     Estimation of Claims.........................................................41
Section 6.6     No Interest on Claims ........................................................42
Section 6.7     Amendments to Claims......................................................42
ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS.............................42
Section 7.1     Distributions Allowed as of the Effective Date .................42
Section 7.2     Distribution on Account of Claims and Equity Interests Allowed
                After the Effective Date.....................................................43
Section 7.3     Timing and Calculation of Amounts to Be Distributed .........43
Section 7.4     Delivery of Distributions ..................................................43
Section 7.5     Currency............................................................................44
Section 7.6     Distribution Agent (if any)................................................45
Section 7.7     Undeliverable Distributions ..............................................45
Section 7.8     De Minimis Distributions ..................................................46
Section 7.9     Surrender of Securities or Instruments ..............................46
Section 7.10    Compliance Matters...........................................................46
Section 7.11    Claims Paid or Payable by Third Parties ...........................46
Section 7.12    Setoffs ...............................................................................46
Section 7.13    Allocation of Plan Distributions Between Principal and Interest ...........47
ARTICLE VIII EFFECT OF PLAN ON CLAIMS AND INTERESTS ........................47
Section 8.1     Compromise and Settlement .............................................47
Section 8.2     Releases by the Debtors ....................................................47
Section 8.3     Releases by Releasing Parties...........................................48
Section 8.4     Exculpation and Limitation of Liability ............................49
Section 8.5     Injunction ..........................................................................50
Section 8.6     Subordinated Claims..........................................................51
Section 8.7     Protection Against Discriminatory Treatment ...................52
Section 8.8     Release of Liens ................................................................52
Section 8.9     Reimbursement or Contribution ........................................52
ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ...................52
Section 9.1     Conditions Precedent to the Effective Date of the Plan.........52
Section 9.2     Waiver of Conditions Precedent ........................................53
Section 9.3     Notice of Effective Date ....................................................53
Section 9.4     Effect of Non-Occurrence of Conditions to Consummation .................53
ARTICLE X BANKRUPTCY COURT JURISDICTION ..........................................54
Section 10.1    Retention of Jurisdiction ..................................................54
ARTICLE XI MISCELLANEOUS PROVISIONS ...................................................56
Section 11.1    Binding Effect....................................................................56
Section 11.2    Payment of Statutory Fees ................................................56

Section 11.3      Statutory Committee Dissolution..............................................................56
Section 11.4      Modification and Amendment .................................................................57
Section 11.5      Confirmation of Plan..............................................................................57
Section 11.6      Additional Document...............................................................................57
Section 11.7      Revocation, Withdrawal, Non-Consummation.......................................57
Section 11.8      Notices ....................................................................................................58
Section 11.9      Term of Injunctions or Stays..................................................................59
Section 11.10     Governing Law .......................................................................................59
Section 11.11     Entire Agreement ...................................................................................59
Section 11.12     Severability ............................................................................................59
Section 11.13     No Waiver or Estoppel...........................................................................60

iii

## INTRODUCTION

True Value Company, L.L.C. and its debtor affiliates in the above-captioned chapter 11 cases propose this joint chapter 11 plan (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") for the resolution of the outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in **Section 1.1** hereof or the Bankruptcy Code or Bankruptcy Rules. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor. Each Debtor is a proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth herein shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, and operations, as well as a summary and description of the Plan and certain related matters.

> **ALL HOLDERS OF CLAIMS WHO ARE ELIGIBLE TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO) IN THEIR ENTIRETIES BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

### Section 1.1    Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.

**1.1.1**    "**90 Day Buckets**" means collectively the following items in the Cash Collateral Budget: "Employee Benefit Reserve", "Vendor Payments", "Tax Payments", and "Critical Foreign Vendors."

**1.1.2**    "**90+ Day Buckets**" means collectively the following items in the Cash Collateral Budget: "Total Professional Fees", "UST Fees", "Employee Benefit Claims Reserve", and "Wind Down Budget Reserve."

**1.1.3**    "**Administrative Agent**" means PNC Bank, National Association, as administrative agent under the Credit Agreement.

**1.1.4**    "**Administrative Claim**" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services and

payments for goods and other services and leased premises); (b) Professional Claims; (c) Restructuring Expenses and (d) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code.

     **1.1.5**     "**Administrative Claim Bar Date**" means the deadline for filing requests for payment of Administrative Claims, which shall be (a) December 23, 2024, at 11:59 p.m. (prevailing Eastern Time) with respect to Administrative Claims incurred from the Petition Date through November 22, 2024; and (b) 30 days after the Effective Date with respect to Administrative Claims incurred from November 22, 2024 through the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to (i) Professional Claims, (ii) Restructuring Expenses, (iii) Administrative Claims Allowed by a Final Order of the Bankruptcy Court on or before the Effective Date, (iv) Administrative Claims that are not Disputed and arose in the ordinary course of business and were paid or are to be paid in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim, or (v) Administrative Claims arising under chapter 123 of title 28 of the United States Code.

     **1.1.6**     "**Affiliate**" has the meaning set forth in Section 101(2) of the Bankruptcy Code.

     **1.1.7**     "**Allowed**" means (a) any Claim against the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with the Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective Holder, (c) any Claim expressly allowed by the Plan, or (d) any Claim expressly allowed by a Final Order.

     **1.1.8**     "**Ancillary Agreements**" means, collectively, the agreements to be executed in connection with the transactions contemplated by the Asset Purchase Agreement, including, but not limited, to, the Transition Services Agreement.

     **1.1.9**     "**Asset Purchase Agreement**" means the asset purchase agreement entered into by and between the Purchaser and the Debtors, dated as of November 10, 2024, which is attached as Exhibit 1 to the Sale Order, including all schedules and exhibits thereto, and as may be amended or modified from time to time.

     **1.1.10**     "**Assets**" means all of the rights, title, and interests of the Debtors, of any nature in property of any kind, wherever located, as specified in Section 541 of the Bankruptcy Code.

     **1.1.11**     "**Assumed Contracts**" means all Executory Contracts that are not Transferred Contracts but are designated as being assumed on the Schedule of Assumed Executory Contracts.

**1.1.12**    "**Assumption and Assignment Procedures**" has the meaning set forth in the Bidding Procedures Order.

**1.1.13**    "**Avoidance Actions**" means any and all actual or potential Claims or Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including Sections 502(d), 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

**1.1.14**    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and in effect during the pendency of these Chapter 11 Cases.

**1.1.15**    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under Section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under Section 151 of title 28 of the United States Code.

**1.1.16**    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

**1.1.17**    "**Bar Date**" means, as applicable, the date of the General Bar Date, Administrative Claims Bar Date, Governmental Bar Date, and any other deadline set by the Bankruptcy Court for filing proofs of claim or requests for allowance of Administrative Claims in the Chapter 11 Cases.

**1.1.18**    "**Bidding Procedures**" means the competitive marketing and bidding process conducted by the Debtors for the Sale pursuant to the Bidding Procedures Order.

**1.1.19**    "**Bidding Procedures Order**" means the *Order (I) Approving the Bid Protections; (II) Approving the Assumption and Assignment Procedures; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV) Authorizing and Scheduling the Sale Hearing and Setting Other Related Dates and Deadlines; and (V) Granting Related Relief* [Docket No. 297].

**1.1.20**    "**Budget Reserve Buckets**" means collectively the 90 Day Buckets and the 90+ Day Buckets.

**1.1.21**    "**Business Day**" means any day, excluding Saturdays, Sundays, and "legal holidays" (as defined in Bankruptcy Rule 9006(a)).

**1.1.22**    "**Cash**" means legal tender of the United States of America.

**1.1.23**    "**Cash Collateral Budget**" means the budget attached to the Cash Collateral Order as Exhibit 2 (together with the detailed version of such budget in which, among

other things, each of the Budget Reserve Buckets is set forth), as the same may be modified from time to time as permitted by the Cash Collateral Order.

**1.1.24** "**Cash Collateral Order**" means the *Final Order (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; and (C) Modifying the Automatic Stay; and (II) Granting Related Relief* [Docket No. 296], including all exhibits thereto. Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Cash Collateral Order, which remains in full force and effect and governs in the event of any inconsistency with the Plan.

**1.1.25** "**Causes of Action**" means any action, claim, cause of action, controversy, third-party claim, demand, right, action, Lien, indemnity, contribution, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law. For the avoidance of doubt, a "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to Section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defense set forth in Section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

**1.1.26** "**Certificate**" means any instrument evidencing a Claim or an Interest.

**1.1.27** "**Chapter 11 Cases**" means the chapter 11 cases of the Debtors pending in the Bankruptcy Court and being jointly administered under Case No. 24-12337.

**1.1.28** "**Claim**" means a "claim" against one or more of the Debtors, as defined in Section 101(5) of the Bankruptcy Code.

**1.1.29** "**Claims and Solicitation Agent**" means Omni Agent Solutions, in its capacity as "claims and noticing agent" for the Debtors, or any successor thereto.

**1.1.30** "**Claims Objection Deadline**" means the deadline to object to a Claim, which shall be the date that is the later of (a) one-hundred and eighty (180) days after the Effective Date and (b) such other deadline as may be fixed by an order of the Bankruptcy Court for objecting to such Claims.

**1.1.31** "**Class**" means a category of Claims or Interests classified together under the Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.1.32** "**Closing**" means the closing of the Sale, which occurred on November 22, 2024.

**1.1.33** "**Combined Hearing**" means the hearing(s) conducted by the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code (a) to consider confirmation of the

Plan under Section 1129 of the Bankruptcy Code and (b) final approval of the adequacy of the disclosures contained in the Disclosure Statement under Section 1125 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**1.1.34** "**Confirmation**" means the entry, within the meaning of Bankruptcy Rules 5003 and 9012, of the Confirmation Order, on the docket of the Chapter 11 Cases.

**1.1.35** "**Confirmation Date**" means the date on which Confirmation occurs.

**1.1.36** "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code.

**1.1.37** "**Credit Agreement**" means that certain Credit Agreement dated as of April 20, 2018, by and among the Debtors, the Prepetition Lenders, and the Administrative Agent, including all agreements, notes, instruments, and any other documents delivered pursuant thereto or in connection therewith, as amended, supplemented, restated or otherwise modified prior to the Petition Date.

**1.1.38** "**Credit Facility**" means all term loans, revolving loan commitments, and other financial accommodations provided to the Debtors by the Prepetition Secured Parties under the Credit Agreement.

**1.1.39** "**Creditors' Committee**" means the statutory committee of unsecured creditors appointed by the U.S. Trustee on October 23, 2024 pursuant to Section 1102(a)(1) of the Bankruptcy Code.

**1.1.40** "**Cure Amount**" means the amount to be paid in Cash or by the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract and (ii) permit the Debtors to assume such Executory Contract under Section 365(a) of the Bankruptcy Code.

**1.1.41** "**Cure Notice**" means any notice that informs each counterparty to an Executory Contract of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) Debtors' good faith estimate of the Cure Amount (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) with respect to Assumed Contracts to be assumed or Transferred Contracts to be assumed and assigned in connection with the Asset Purchase Agreement.

**1.1.42** "**Cure Objection**" means an objection by a counterparty to an Executory Contract that is timely filed by the applicable Cure Objection Deadline.

**1.1.43** "**Cure Objection Deadline**" means the applicable deadline for filing objections to a Cure Notice or proposed Cure Amount.

1.1.44    "**Cure Payment**" means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract and (ii) permit the Debtors to assume such Executory Contract under Section 365(a) of the Bankruptcy Code.

1.1.45    "**D&O Policies**" means all directors' and officers' liability insurance policies (including any tail policy) issued or providing coverage to any of the Debtors covering potential liability of current or former directors, officers and/or employees of the Debtors.

1.1.46    "**Debtor Release**" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in **Section 8.2** of the Plan.

1.1.47    "**Debtors**" means True Value Company, L.L.C. and all of its affiliates that are debtors in the Chapter 11 Cases.

1.1.48    "**Disallowed**" means, with respect to any Claim, or any portion thereof, that such Claim, or such portion thereof, is not Allowed.

1.1.49    "**Disclosure Statement**" means the disclosure statement for the Plan, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, which is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

1.1.50    "**Disclosure Statement Order**" means the Final Order entered by the Bankruptcy Court approving the Disclosure Statement.

1.1.51    "**Disputed**" means any Claim, or any portion thereof, that is not yet Allowed or Disallowed.

1.1.52    "**Dissolution Date**" means the date that the Debtors dissolve in accordance with applicable state law.

1.1.53

1.1.54    "**Distribution**" means a distribution under the Plan of property to a Holder of a Claim on account of such Claim.

1.1.55    "**Distribution Agent**" means (a) prior to the Effective Date, the Debtors and (b) on and after the Effective Date, the Plan Administrator, or, in each case, any Person designated by the Debtors or the Plan Administrator, as applicable, in the capacity of distribution agent under the Plan; *provided* that, distributions on account of Class 3 Claims shall be made to, or at the direction of the Administrative Agent in accordance with the Plan.

1.1.56    "**Distribution Date**" means the date(s) on which Holders of Allowed Claims are eligible to receive distributions under the Plan.

1.1.57    "**Distribution Record Date**" means the date for determining which Holders of Allowed Claims are eligible to receive distributions under the Plan, which shall be (a) the Confirmation Date, or (b) such other date as designated by an order of the Bankruptcy Court.

1.1.58    "**Do it Best**" means Do it Best Corp., an Indiana corporation.

1.1.59    "**Effective Date**" means the first Business Day on which (a) all conditions precedent to the effectiveness of the Plan set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

1.1.60    "**Entity**" has the meaning set forth in Section 101(15) of the Bankruptcy Code.

1.1.61    "**Estates**" means the bankruptcy estates of the Debtors created under Section 541 of the Bankruptcy Code.

1.1.62    "**Exculpated Parties**" means, collectively, each of the following in their respective capacities as such: (a) the Debtors; (b) the Estates; (c) the Creditors' Committee and each of its current and former members (provided, for the avoidance of doubt, that former members of the Creditors' Committee shall not be exculpated for any act or omission occurring after their tenure on the Creditors' Committee); and (d) each of the preceding parties' respective Related Parties, in each case, who served as a fiduciary of the Estates or on behalf of holders of General Unsecured Claims at any time between the Petition Date and the Effective Date of this Plan.

1.1.63    "**Executory Contract**" means any contract or unexpired lease of non-residential property to which any of the Debtors is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

1.1.64    "**Existing Interests**" means any and all Interests in any of the Debtors that are not Intercompany Interests.

1.1.65    "**Final Decree**" means a final decree entered by the Bankruptcy Court closing the Chapter 11 Cases pursuant to Bankruptcy Rule 3022.

1.1.66    "**Final Order**" means an order, the operation or effect of which has not been stayed, reversed, or amended and as to which order the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing by all Entities possessing such right, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or from which reargument or rehearing was sought or certiorari has been denied, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous

rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.1.67** "**Fungibility Mechanisms**" means the rights, pursuant to the Cash Collateral Order, of the Debtors, the Post-Effective Date Debtors and the Plan Administrator to (i) use excess amounts within any of the 90 Day Buckets to fund any shortfall in any other 90 Day Bucket, and (ii) use excess amounts within any 90+ Day Bucket to fund any shortfall in any other 90+ Day Bucket; provided, however, that no funds in any Budget Reserve Bucket may be moved to, or used to fund, any shortfalls in the 90+ Day Buckets established for "Total Professional Fees," and the "Wind Down Budget Reserve," as such terms are used in the Cash Collateral Budget.

**1.1.68** "**General Bar Date**" means December 5, 2024 at 11:59 p.m. (prevailing Eastern Time).

**1.1.69** "**General Unsecured Claim**" means any Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Prepetition Lender Claim, or Intercompany Claims. For the avoidance of doubt, General Unsecured Claims include, without limitation, any Prepetition Lender Deficiency Claims.

**1.1.70** "**Governmental Bar Date**" means April 14, 2025 at 11:59 p.m. (prevailing Eastern Time).

**1.1.71** "**Governmental Unit**" has the meaning set forth in Section 101(27) of the Bankruptcy Code.

**1.1.72** "**Holder**" means a holder of a Claim against, or Interest in, the Debtors.

**1.1.73** "**Impaired**" has the meaning as defined in Section 1124 of the Bankruptcy Code.

**1.1.74** "**Initial Litigation Trust Funded Amount**" means $150,000, to be funded by the Debtors, out of the "Wind Down Budget Reserve," as such term is used in the Cash Collateral Budget, to the Litigation Trust in accordance with the terms of the Litigation Trust Agreement.

**1.1.75** "**Intercompany Claim**" means a Claim held by a Debtor against another Debtor.

**1.1.76** "**Intercompany Interest**" means any and all Interests in a Debtor held by another Debtor.

**1.1.77** "**Interest**" means any issued, unissued, authorized, or outstanding shares of common stock, preferred stock, membership or limited liability company interests (whether certificated or uncertificated), any "equity security" (as defined in the Bankruptcy Code), or other instrument evidencing an ownership interest in a Debtor, whether or not transferable, together with any warrants, equity-based awards or contractual rights to purchase or acquire

such equity interests at any time and all rights arising with respect thereto that existed immediately before the Petition Date..

**1.1.78** "**Lien**" has the meaning set forth in Section 101(37) of the Bankruptcy Code.

**1.1.79** "**Litigation Trust**" means the trust to be established on the Effective Date for the benefit of Holders of Allowed General Unsecured Claims and the Prepetition Lenders in accordance with the Plan and the Litigation Trust Agreement.

**1.1.80** "**Litigation Trust Agreement**" means the agreement establishing and governing the Litigation Trust, a form of which shall be filed with the Plan Supplement.

**1.1.81** "**Litigation Trust Assets**" means (i) the Initial Litigation Trust Funded Amount and (ii) the Retained Causes of Action.

**1.1.82** "**Litigation Trust Beneficiaries**" means all Holders entitled to Litigation Trust Distributable Proceeds.

**1.1.83** "**Litigation Trust Distributable Proceeds**" means the Cash proceeds, whether by settlement, adjudication or otherwise, of any Retained Causes of Action net of any Litigation Trust Expenses.

**1.1.84** "**Litigation Trust Expenses**" means any fees and expenses incurred by the Litigation Trustee (including, but not limited to, the compensation of the Litigation Trustee and the reasonable fees and expenses of professionals or other persons retained by the Litigation Trustee) in connection with the administration of the Litigation Trust.

**1.1.85** "**Litigation Trust GUC Interests**" means all of the interests in the Litigation Trust other than the Litigation Trust Prepetition Lender Interests, which shall be distributed to the Holders of Allowed General Unsecured Claims, in accordance with the Plan and the Litigation Trust Agreement.

**1.1.86** "**Litigation Trust Prepetition Lender Interests**" means the interests in (i) 50% of the proceeds from commercial tort claims pursued by the Litigation Trust and (ii) the proceeds from any other claims or causes of action pursued by the Litigation Trust. The Litigation Trust Prepetition Lender Interests shall be distributed to the Prepetition Lenders on account of their Prepetition Lender Claims in accordance with the Plan and the Litigation Trust Agreement and subject to the Cash Collateral Order.

**1.1.87** "**Litigation Trustee**" means the Person or Persons appointed by the Debtors in consultation with the Creditors' Committee as the Plan Administrator acting in the capacity as trustee of, and to administer, the Litigation Trust, and take such other actions as may be authorized under the Litigation Trust Agreement, along with any successor thereto.

**1.1.88** "**Other Priority Claim**" means any Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority of payment as set forth in Section 507(a) of the Bankruptcy Code.

**1.1.89**      "**Other Secured Claim**" means a Secured Claim, other than any Prepetition Lender Claim.

**1.1.90**      "**Person**" has the meaning set forth in Section 101(41) of the Bankruptcy Code.

**1.1.91**      "**Petition Date**" means the date on which the Debtors filed their voluntary petitions for relief commencing the Chapter 11 Cases.

**1.1.92**      "**Plan**" has the meaning set forth in the Introduction.

**1.1.93**      "**Plan Administration Budget**" means a budget to be prepared by the Debtors, which shall be consistent with the Cash Collateral Order and filed with the Bankruptcy Court as part of the Plan Supplement, and which may be amended from time to time by the Debtors or the Plan Administrator (including in the capacity as Litigation Trustee), as applicable, and which shall estimate the funds necessary to administer the Plan and wind down the Debtors' affairs, including the costs of holding and liquidating any Assets that are not Transferred Assets, reconciling, objecting to, and resolving Claims and Interests, making the distributions required by the Plan, prosecuting Causes of Action and Avoidance Actions, paying taxes, filing tax returns, paying the fees and expenses of the Plan Administrator and the Plan Administrator Professionals, providing for the purchase of errors and omissions insurance and/or other forms of indemnification for the Plan Administrator, satisfying any post-Closing obligations under Asset Purchase Agreement, and all such items and other costs of implementing the terms of the Plan and the Asset Purchase Agreement, and upon fulfilling all such obligations, any costs associated with dissolving the Post-Effective Date Debtors and their Affiliates; *provided that*, for the avoidance of doubt, any costs associated with fulfilling the obligations under the Transition Services Agreement shall be funded directly by the Purchaser and will not be calculated for purposes of the Plan Administration Budget.

**1.1.94**      "**Plan Administration Indemnified Parties**" means (a) the Plan Administrator (in its capacity as such and as the Litigation Trustee and as officer and director of the Debtors as of and following the Effective Date), (b) such individuals that may serve as officers and directors of the Post-Effective Date Debtors, if any, and (c) the Plan Administrator Professionals.

**1.1.95**      "**Plan Administration Reserve**" means a Cash reserve to be funded out of the "Wind Down Budget Reserve," as such term is used in the Cash Collateral Budget, in the amount of the Plan Administration Budget, which, for the avoidance of doubt, is separate from the funds that will be provided by the Purchaser to fund any costs associated with the Post-Effective Date Debtors' obligations under the Transition Services Agreement, which shall be covered directly by the Purchaser.  A portion of the Plan Administration Reserve shall comprise the Initial Litigation Trust Funded Amounts.

**1.1.96**      "**Plan Administrator**" means the Person or Persons identified in the Plan Supplement (as determined by the Debtors in consultation with the Creditors' Committee) and appointed on the Effective Date, who will serve as the trustee and administrator for the Post-

Effective Date Debtors, including as the Litigation Trustee, on and after the Effective Date in accordance with the Plan.

**1.1.97** "**Plan Administrator Agreement**" means the agreement between the Debtors and the Plan Administrator specifying the rights, duties and responsibilities of the Plan Administrator under the Plan and providing for the Plan Administrator's retention of the Plan Administrator Professionals, a form of which shall be filed with the Plan Supplement.

**1.1.98** "**Plan Administrator Professionals**" means the agents, financial advisors, attorneys, consultants, independent contractors, representatives and other professionals of the Plan Administrator and the Post-Effective Date Debtors, in their capacities as such.

**1.1.99** "**Plan Supplement**" means a supplemental appendix to the Plan containing, among other things, substantially final forms of documents, schedules, and exhibits relevant to the implementation of the Plan, to be filed with the Bankruptcy Court, including, among other things, the following: the Plan Administrator Agreement, the Plan Administration Budget, the Litigation Trust Agreement, the Schedule of Assumed Executory Contracts, and the Schedule of Retained Causes of Action. The Plan Supplement shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date; *provided that,* through the Effective Date, the Debtors shall have the right to amend and supplement the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the Litigation Trust Agreement.

**1.1.100** "**Plan Supplement Filing Date**" means March 7, 2025 (prevailing Eastern Time).

**1.1.101** "**Post-Effective Date Debtors**" means the Debtors as of and following the Effective Date.

**1.1.102** "**Prepetition Lenders**" means the lenders and issuing banks party to the Credit Agreement.

**1.1.103** "**Prepetition Lender Claims**" means a Claim arising under, derived from, or based on the Credit Agreement, other than any Prepetition Lender Deficiency Claims.

**1.1.104** "**Prepetition Lender Deficiency Claim**s" means, subject in all respects to the agreements set forth under the "Releases" section of the Cash Collateral Order, any unsecured Claim of a Holder of Prepetition Lender Claims arising under, derived from, or based on the Credit Agreement.

**1.1.105** "**Prepetition Lender Subordinated Liens**" means the Prepetition Lenders' Liens on the cash collateral used to fund the Retained Funds and the Budget Reserve Buckets which Liens are subordinated pursuant to the Cash Collateral Order to the payment of the Allowed Administrative Claims and/or other Claims for which the Retained Funds and the Budget Reserve Buckets were established to address, and which lien subordination shall remain in effect notwithstanding a conversion of the Debtors' Chapter 11 Cases to cases under chapter 7.

1.1.106     "**Prepetition Secured Parties**" means, collectively, the Administrative Agent and the Prepetition Lenders.

1.1.107     "**Priority Tax Claim**" means any Claim of a Governmental Unit entitled to priority of payment under Section 507(a)(8) of the Bankruptcy Code.

1.1.108     "**Pro Rata**" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims or Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claims or Allowed Interests under the Plan.

1.1.109     "**Professional**" means any Entity retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code; *provided*, *however*, that Professional does not include any Entity retained pursuant to an order of the Bankruptcy Court authorizing the retention of "ordinary-course professionals" or the Plan Administrator Professionals.

1.1.110     "**Professional Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges and disbursements incurred relating to services rendered or expenses incurred after the Petition Date and prior to and including the Confirmation Date.

1.1.111     "**Professional Claim Estimate**" means the sum of (a) the billed but unpaid fees and expenses of Professionals as of the Effective Date, and (b) the unbilled fees and expenses of Professionals estimated pursuant **Section 2.2(b)** of the Plan attributable to fees and expenses to be incurred as of the Effective Date; *provided*, *however*, that if a Professional does not provide an estimate pursuant to **Section 2.2(b)** of the Plan, the Debtors may estimate the unbilled fees and expenses of such Professional incurred as of the Effective Date.

1.1.112     "**Professional Claims Reserve**" means the interest-bearing escrow account, maintained by the Plan Administrator, on behalf of the Debtors, into which, subject to and in accordance with the Cash Collateral Order, Cash equal to the Professional Claim Estimate has been deposited under the Cash Collateral Order or shall be deposited on or before the Effective Date to fund all Professional Claims of Professionals.

1.1.113     "**Purchaser**" means Do it Best and, to the extent applicable, any Affiliates thereof.

1.1.114     "**Rejection Damages Claim**" means any Claim on account of the rejection of an Executory Contract pursuant to Section 365 of the Bankruptcy Code.

1.1.115     "**Related Party**" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or

managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

1.1.116    "**Released Parties**" means, collectively, each of the following in their respective capacities as such: (a) the Debtors' and the Estates' Related Parties; (b) the Prepetition Secured Parties; (c) the Creditors' Committee and each of its current and former members; and (d) the Related Parties of each of the Entities in clauses (b) and (c).

1.1.117    "**Releasing Parties**" means, collectively, each of the following in their respective capacities as such: (a) the Released Parties; (b) all Holders of Claims or Interests that (i) vote to reject or abstain from voting on the Plan and (ii) check the box on the applicable ballot indicating that they "opt in" to granting the Releasing Party Releases; (c) all Holders of Claims or Interests that vote to accept the Plan and do not affirmatively "opt out" of granting the Releasing Party Releases; (d) all Holders of Claims or Interests that (i) are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code, and (ii) after receiving notice, affirmatively "opt in" to the Releasing Party Releases; (e) all Holders of Claims or Interests that (i) are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code and, (ii) after receiving notice, affirmatively "opt in" to the Releasing Party Releases; and (f) each Related Party of each Entity in the foregoing clauses (a) through (e), solely to the extent such Related Party may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (e).

1.1.118    "**Releasing Party Release**" means the release given by each of the Releasing Parties to the Released Parties as set forth in **Section 8.3** of the Plan.

1.1.119    "**Representatives**" means, with respect to any Person or Entity, such Person's or Entity's current and former principals, members, equity holders, managers, partners, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, experts, and other professionals acting in such capacity for such Person or Entity.

1.1.120    "**Restructuring Expenses**" means the reasonable and documented professional fees and expenses incurred pursuant to the Asset Purchase Agreement, the Cash Collateral Order, or other applicable agreement pursuant to which the Debtors have agreed to reimburse the reasonable professional fees and expenses of the respective party, to the extent such fees and expenses are not paid or contemplated to be paid from other sources.

1.1.121    "**Retained Causes of Action**" means all Causes of Action owned by the Debtors, other than any Causes of Action that are Transferred Assets under the Asset Purchase Agreement or released pursuant to the terms of the Plan or an order of the Bankruptcy Court.

1.1.122    "**Retained Funds**" shall have the meaning ascribed to such term in the Cash Collateral Order.

1.1.123    "**Sale Order**" means the *Order (A) Approving Sale of Substantially All of Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (B) Authorizing Debtors to Enter Into and Perform Under Asset Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts, and (D) Granting Related Relief* [Docket No. 411].

1.1.124    "**Sale**" means the sale of substantially all of the Debtors' Assets to the Purchaser pursuant to the Asset Purchase Agreement and the Sale Order.

1.1.125    "**Schedule of Assumed Executory Contracts**" means the schedule of Executory Contracts to be assumed by the Debtors pursuant to the Plan, along with the proposed Cure Amount, if any, with respect to each such Executory Contract, in the form filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

1.1.126    "**Schedule of Retained Causes of Action**" means the schedule of Retained Causes of Action, in the form filed as part of the Plan Supplement, as the same may be amended, modified, or supplemented from time to time. For the avoidance of doubt, exclusion of a Person or Entity on the schedule of Retained Causes of Action does not, and should not be interpreted to, mean that Causes of Action against such Person or Entity are released or waived under the Plan.

1.1.127    "**Schedules**" means the schedules of assets and liabilities, statements of financial affairs, lists of Holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court to the extent such filing is not waived pursuant to an order of the Bankruptcy Court.

1.1.128    "**Secured Claim**" means a Claim to the extent it is (a) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property (i) as set forth in the Plan, (ii) as agreed to by the Holder of such Claim and the Debtors, or (iii) as determined by a Final Order in accordance with Section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any rights of setoff of the Holder thereof under Section 553 of the Bankruptcy Code.

1.1.129    "**Statutory Fees**" means all fees and charges assessed against the Estates under Section 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-4001, plus any interest thereon pursuant to 31 U.S.C. § 3717.

1.1.130    "**Subordinated Claim**" means any Claim arising from rescission of a purchase or sale of an equity security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such an equity security, for reimbursement or contribution allowed under Section 502 of the Bankruptcy Code on account of such a Claim or otherwise subordinated under Section 510 of the Bankruptcy Code.

1.1.131    "**Transferred Assets**" means all assets transferred to the Purchaser pursuant to the Asset Purchase Agreement.

**1.1.132** "**Transferred Contracts**" means collectively, all Executory Contracts that are assumed and assigned by the Debtors to the Purchaser under the Asset Purchase Agreement.

**1.1.133** "**Transition Services Agreement**" means the Amended and Restated Transition Services Agreement Term Sheet among the Purchaser and Debtors, which is attached as Exhibit H to the Asset Purchase Agreement as the same may be modified or amended by the parties thereto as provided therein.

**1.1.134** "**TSA Assumption Order**" means the *Order Approving TSA Contract Assumption and Assignment Procedures* [Docket No. 688].

**1.1.135** "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated and/or cashed such check; (b) given notice to the Debtors or the Plan Administrator, as applicable, of an intent to accept a particular distribution; (c) responded to the Debtors' or the Plan Administrator's, as applicable, request for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

**1.1.136** "**Unimpaired**" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired.

**1.1.137** "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

### Section 1.2    *Rules of Interpretation*

For purposes of the Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter shall include the masculine, feminine, and neuter; (c) any reference in the Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (f) the words "herein," "hereunder," "hereto," and the like refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; (i) references to "shares," "shareholders," "directors," and/or "officers" shall also include "membership units," "members," "managers," or other functional equivalents, as applicable, as such terms are defined under the applicable state limited liability company or alternative comparable laws, as applicable; and (j) any immaterial effectuating provision may be interpreted by the Post-Effective Date Debtors in a manner that is consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

### Section 1.3    Computation of Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

### Section 1.4    Exhibits

All Exhibits hereto are incorporated into and are part of the Plan as if set forth in full herein and such Exhibits shall be filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the Plan Supplement is filed, copies of Exhibits may be obtained upon email request to the Claims and Solicitation Agent at TrueValueInquiries@OmniAgnt.com.

### Section 1.5    Reference to the Debtors or the Post-Effective Date Debtors

Except as otherwise specifically provided to the contrary, references in the Plan to the Debtors or the Post-Effective Date Debtors shall mean the Debtors and the Post-Effective Date Debtors, as applicable, to the extent the context requires.

### Section 1.6    References to the Asset Purchase Agreement and any Ancillary Agreements

Except as otherwise specifically provided to the contrary, references in the Plan to the Asset Purchase Agreement shall also include any Ancillary Agreements entered in connection with the *Asset Purchase Agreement.*

### Section 1.7    Controlling Document

In the event that there is any inconsistency between the Plan, the Plan Supplement or any other instrument or document created or executed pursuant to the Plan, the Disclosure Statement, and the Litigation Trust Agreement, the terms of the Plan shall govern. In the event that the provisions of the Plan, the Confirmation Order, the Disclosure Statement, the Plan Supplement, and the Litigation Trust Agreement conflict, the terms of the Confirmation Order shall govern.

## ARTICLE II
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

### Section 2.1    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors), as applicable, to the extent an Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases and except as otherwise provided in this Article II, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction and settlement of and in exchange for of its Allowed Administrative Claim an amount of Cash equal to the unpaid portion of such Allowed Administrative Claim: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then

due, when such Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

All requests for payment of an Administrative Claim (other than Professional Claims or Administrative Claims that are not disputed and arose in the ordinary course of business) that accrued on or before the Effective Date must be filed with the Bankruptcy Court and served on the Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors) no later than the Administrative Claims Bar Date or be forever barred. Holders of Administrative Claims (other than Professional Claims or Administrative Claims that are not disputed and arose in the ordinary course of business) that are required to, but do not, file and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Post-Effective Date Debtors, or their Estates, and such Administrative Claims shall be deemed discharged, compromised, settled, and released as of the Effective Date.

The Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors), as applicable, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval. The Debtors or the Litigation Trustee may also choose to object to any Administrative Claim no later than forty-five (45) days after the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court. Unless the Debtors or the Litigation Trustee (or other party with standing) object to a timely filed and properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtors or the Litigation Trustee object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount.

### Section 2.2    Professional Claims

(a)    *Final Fee Applications*

All final requests for payment of Professional Claims must be filed no later than forty-five (45) days after the Effective Date. Objections to Professional Claims must be filed and served no later than twenty-one (21) days after the Filing of the Professional Claim. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims of Professionals after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. Unless otherwise agreed to by the Debtors and the Professional, the Plan Administrator shall pay

Professional Claims that are Allowed by Final Order following the Effective Date in Cash within five (5) Business Days of the entry of such Final Order.

(b)      *Professional Claim Estimate*

The Professionals shall reasonably estimate in good faith their respective Professional Claim prior to and as of the Effective Date and shall deliver such estimate to the Debtors no later than five (5) Business Days before the anticipated Effective Date; *provided* that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. If a Professional does not provide such estimate, the Debtors may estimate the unbilled fees and expenses of such Professional; *provided that* such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional. The total amount estimated as of the Effective Date shall consist of the Professional Claim Estimate.

(c)      *Professional Claims Reserve*

On or before the Effective Date, the Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors) shall establish and fund, in a manner consistent with the Cash Collateral Order, the Professional Claims Reserve with Cash equal to the Professional Claim Estimate. The Professional Claims Reserve shall be maintained in trust solely for the benefit of the Professionals to pay Professional Claims. Other than the Prepetition Lender Subordinated Liens, no Liens, Claims, or Interests shall encumber the Professional Claims Reserve in any way. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Claims Reserve shall be remitted to the Prepetition Lenders in accordance with the Cash Collateral Order.

(d)      *Post-Effective Date Retention*

Upon the Effective Date, any requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate, and the Plan Administrator shall be permitted to employ and pay Professionals and Plan Administrator Professionals in its discretion (including the fees and expenses incurred by professionals in preparing, reviewing, prosecuting, defending, or addressing any issues with respect to final fee applications). The Debtors or the Post-Effective Date Debtors, as applicable, may employ and pay any Professional for fees and expenses incurred after the Effective Date in the ordinary course of business without any further notice to or action, order, or approval of the Court. For the avoidance of doubt, professional persons employed or compensated by the Litigation Trust shall be employed and compensated by the Litigation Trust and not by the Debtors, their Estates or the Post-Effective Date Debtors.

**Section 2.3      Restructuring Expenses**

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date, but not paid, shall be paid in full in Cash on or as soon as practicable after the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to the Plan and the Cash Collateral Order, without any requirement to file a fee application with the Bankruptcy Court, without the need for itemized time detail, and

without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date (or such shorter period as the Debtors may agree); *provided* that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses.  On or as soon as reasonably practicable after the Effective Date, final invoices for all Restructuring Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.  In addition, the Debtors and the Post-Effective Date Debtors (as applicable) shall continue to pay, subject to the Cash Collateral Budget, pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses whether incurred before, on, or after the Effective Date.

### Section 2.4    Plan Administration Reserve

Before the Effective Date, the Debtors shall establish and fund the Plan Administration Reserve with Cash equal to the Plan Administration Budget.  The Plan Administration Reserve shall be maintained in trust solely for the benefit of the Plan Administrator to satisfy all obligations under the Plan Administrator Agreement, the Plan, the Asset Purchase Agreement, and any Ancillary Agreements.  Such funds shall not be considered property of the Estates of the Debtors.  Other than the Prepetition Lender Subordinated Liens, no Liens, Claims, or Interests shall encumber the Plan Administration Reserve in any way.  For the avoidance of doubt, any costs incurred in connection with the obligations owed by the Post-Effective Date Debtors under the Transition Services Agreement shall be separately funded by the Purchaser to a separate bank account managed by the Plan Administrator on behalf of the Post-Effective Date Debtors.

### Section 2.5    Priority Tax Claims

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction and settlement of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on or before the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or when such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law, or in the ordinary course of business.  In the event an Allowed Priority Tax Claim is also a Secured Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

## ARTICLE III
## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

### Section 3.1    Classification of Claims and Interests

The Plan, though proposed jointly, constitutes a separate plan for each of the Debtors and does not constitute a substantive consolidation of the Debtors' Estates.  The Plan provides for consolidation of the Debtors solely for voting, confirmation and distribution, but not for any other purpose.  Therefore, all Claims against and Interests in a particular Debtor are placed in the Classes set forth below with respect to such Debtor.  Classes that are not applicable as to a particular Debtor

shall be eliminated as set forth more fully in **Section 3.3(d)** of the Plan.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and their treatment is set forth in **Article II** of the Plan.

A Claim or Interest is placed in a particular Class for all purposes, including voting, Confirmation, and distribution under the Plan and under Sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, *however*, that a Claim or Interest is placed in a particular Class for the purpose of voting on the Plan and, to the extent applicable, receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

Claims and Interests are divided into the numbered Classes set forth below:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Prepetition Lender Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired/ Impaired | Presumed to Accept or Deemed to Reject |
| 6 | Intercompany Interests | Unimpaired/ Impaired | Presumed to Accept or Deemed to Reject |
| 7 | Subordinated Claims | Impaired | Deemed to Reject |
| 8 | Existing Interests | Impaired | Deemed to Reject |

### Section 3.2    Treatment and Voting of Claims and Interests

(a)    *Class 1 – Other Priority Claims*

(i)    *Classification*: Class 1 consists of all Other Priority Claims.

(ii)    *Treatment*: Except as otherwise provided in the Plan, and except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed Other Priority Claim, each such Holder of an Allowed Other Priority Claim shall be paid in full in Cash  as soon as reasonably practicable after the latest of (1) the Effective Date; (2) thirty (30) days after the date when an Other Priority Claim becomes an Allowed Other Priority Claim, or (3) such other date as agreed upon by the Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors) and the Holder of such Other Priority Claim; *provided*, *however*, that Other Priority Claims that arise in the ordinary course of the Debtors' business and which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

(iii)    *Impairment and Voting*.  Class 1 is Unimpaired, and Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan.

(b)    <u>*Class 2 – Other Secured Claims*</u>

(i)    *Classification.*  Class 2 consists of all Other Secured Claims.

(ii)    *Treatment*.  Except as otherwise provided in the Plan, and except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed Other Secured Claim, each such Holder of an Allowed Other Secured Claim shall, at the sole option of the Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors), as applicable, (1) be paid in full in Cash in an amount equal to such Allowed Other Secured Claim required to be paid pursuant to Section 506 of the Bankruptcy Code, as soon as reasonably practicable after the latest of (A) the Effective Date or (B) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (C) such other date as agreed upon by the Debtors or the Plan Administrator (on behalf of the Post-Effective Date Debtors) and the Holder of such Other Secured Claim; (2) delivery of collateral securing any such Claim; or (3) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired under the Bankruptcy Code; *provided*, that Other Secured Claims that arise in the ordinary course of the Debtors' business and that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof; *provided further*, that nothing in this **Section 3.2(b)** or elsewhere in the Plan shall preclude the Debtors or the Litigation Trustee (on behalf of the Post-Effective Date Debtors), as applicable, from challenging the validity of any alleged Lien on any asset of the Debtors or the value of the property that secures any alleged Lien.

(iii)    *Impairment and Voting*.  Class 2 is Unimpaired, and Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan.

(c)    <u>*Class 3 – Prepetition Lender Claims*</u>

(i)    *Classification*.  Class 3 consists of all Prepetition Lender Claims.

(ii)    *Allowance*.  The Prepetition Lender Claims shall be Allowed in the aggregate principal amount of $238.2 million *plus* accrued unpaid interest on the Allowed amount of the Prepetition Lender Claims under the Credit Agreement.  For the avoidance of doubt, any Restructuring Expenses incurred by the Prepetition Secured Parties in connection with their participation in these Chapter 11 Cases shall be paid in accordance with **Section 2.3** of the Plan.

(iii)    *Treatment*.  Except to the extent that a Holder of an Allowed Prepetition Lender Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each and every Allowed Prepetition Lender Claim, each Holder of an Allowed Prepetition Lender Claim shall receive:

(1)    Subject to the terms and conditions of the Cash Collateral Order:

(A)        upon the conclusion of the Administrative Claims Reconciliation Period (as defined in the Cash Collateral Order), i.e., February 20, 2025, any Retained Funds that were not used, or identified for use on account of incurred or accrued Administrative Claims that have been reconciled, by the Debtors' Estates to pay Allowed Administrative Claims up to the full amount of the Indebtedness (as defined in the Cash Collateral Order);

(B)        no later than 90 days following the closing of the Sale (i.e., February 20, 2025), any excess funds in any of the 90 Day Buckets that are not required to address or pay the Allowed Administrative Claims or priority Claims for which such 90 Day Buckets were established to address, or to cover shortfalls in other 90 Day Buckets in accordance with the Fungibility Mechanisms up to the full amount of the Indebtedness;

(C)        no later than the earlier of (1) the Effective Date and (2) 90 days following the termination of the Transition Services Agreement, any excess funds in any of the 90+ Day Buckets other than the Wind Down Budget Reserve that are not required to address or pay the Allowed Administrative Claims or priority Claims for which such 90+ Day Buckets were established to address, or to cover shortfalls in other reserves in accordance with the Fungibility Mechanisms up to the full amount of the Indebtedness; and

(D)        no later than 90 days following the termination of the Transition Services Agreement, any excess funds in the Wind Down Budget Reserve that are not required to address or pay the Allowed Administrative Claims or priority Claims for which the Wind Down Budget Reserve was established to address up to the full amount of the Indebtedness.

(2)        As and when received, in accordance with the Cash Collateral Order, promptly upon receipt, any Cash the Debtors have on hand, including, for the avoidance of doubt, such funds received by the Debtors after the Closing other than funds received pursuant to the Transition Services Agreement.

(3)        On the Effective Date, the Litigation Trust Prepetition Lender Interests.

(iv)        On the Effective Date, the Prepetition Lenders' liens, including the Prepetition Lender Subordinated Liens, shall be subject to and consistent with the Cash Collateral Order.

(v)     *Impairment and Voting*.  Class 3 is Impaired, and Holders of Allowed Prepetition Lender Claims are entitled to vote to accept or reject the Plan.

(d)     <u>*Class 4 – General Unsecured Claims*</u>

(i)     *Classification*.  Class 4 consists of all General Unsecured Claims.

(ii)     *Treatment*.  On the Effective Date, each Holder of a General Unsecured Claim shall receive its Pro Rata share of the Litigation Trust GUC Interests.

(iii)     *Impairment and Voting*.  Class 4 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

(e)     <u>*Class 5 – Intercompany Claims*</u>

(i)     *Classification*.  Class 5 consists of all Intercompany Claims.

(ii)     *Treatment*.  On the Effective Date, all Intercompany Claims shall be: (1) reinstated; (2) canceled, released, waived, and discharged; or (3) otherwise settled in the Debtors' or the Post-Effective Date Debtors' sole discretion.

(iii)     *Impairment and Voting*.  Holders of Intercompany Claims that are reinstated are conclusively presumed to accept the Plan pursuant to Section 1126(f) and Holders of Intercompany Claims that are canceled, released and discharged under the Plan without any distribution are deemed to reject pursuant to Section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Intercompany Claims.

(f)     <u>*Class 6 – Intercompany Interests*</u>

(i)     *Classification*.  Class 6 consists of all Intercompany Interests.

(ii)     *Treatment*.  On the Effective Date, all Intercompany Interests shall be: (1) reinstated; (2) canceled, released, waived, and discharged; or (3) otherwise settled in the Debtors' or the Post-Effective Date Debtors' sole discretion.

(iii)     *Impairment and Voting*.  Holders of Intercompany Interests that are reinstated are conclusively presumed to accept the Plan pursuant to Section 1126(f) and Holders of Intercompany Interests that are canceled, released and discharged under the Plan without any distribution are deemed to reject pursuant to Section 1126(g) of the Bankruptcy Code, respectively.  Therefore, Holders of Allowed Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Intercompany Interest.

(g)     <u>*Class 7 – Subordinated Claims*</u>

(i)     *Classification*.  Class 7 consists of all Subordinated Claims, if any.

(ii)      *Treatment*.  On the Effective Date, all Subordinated Claims shall be canceled, released, extinguished and discharged, and Holders of Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.

(iii)      *Impairment and Voting*.  Class 7 is Impaired, and Holders of Subordinated Claims are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Claims.

(h)      *Class 8 – Existing Interests*

(i)      *Classification*.  Class 8 consists of all Existing Interests.

(ii)      *Treatment*.  On the Effective Date, all Existing Interests shall be canceled without any distribution on account of such Existing Interest

(iii)      *Impairment and Voting*.  Class 8 is Impaired and Holders of Existing Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Interests.

### Section 3.3      Voting, Presumptions, and Solicitation.

(a)      *Classes Entitled to Vote; Acceptance*

Classes 3 and 4 are Impaired and are entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (a) Holders of at least 2/3 in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) Holders of more than 1/2 in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

(b)      *Conclusively Presumed Acceptance by Unimpaired Classes*

Pursuant to Section 1126(f) of the Bankruptcy Code, Classes 1 and 2, and certain Holders of Claims or Interests under Class 5 or Class 6 are Unimpaired and are conclusively presumed to have accepted the Plan.  Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the vote of such Holders shall not be solicited.

(c)      *Deemed to Reject by Certain Impaired Classes*

Pursuant to Section 1126(g) of the Bankruptcy Code, Classes 7 and 8, and certain Holders of Claims or Interests under Class 5 or Class 6 are fully Impaired and are deemed to have rejected the Plan.  Accordingly, such Holders are not entitled to vote to accept or reject the Plan and the vote of such Holders shall not be solicited.

(d)    _Elimination of Classes_

To the extent applicable, any Class that does not contain any Allowed Claims or any Claims or Interests temporarily Allowed for voting purposes under Bankruptcy Rule 3018 as of the date of commencement of the Combined Hearing for all Debtors or with respect to any particular Debtor shall be deemed to have been deleted from the Plan for all Debtors or for such particular Debtor, as applicable, for purposes of (a) voting to accept or reject the Plan and (b) determining whether it has accepted or rejected the Plan under Section 1129(a)(8) of the Bankruptcy Code.

(e)    _Deemed Acceptance If No Votes Cast_

If no Holders of Claims or Interests eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by Holders of such Claims or Interests in such Class.

(f)    _Cramdown_

To the extent necessary with respect to Classes 4, 7 and 8, the Debtors shall request Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to modify, amend, or withdraw the Plan, with respect to all Debtors or any individual Debtor, to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

(g)    _Controversy Concerning Impairment_

If a controversy arises as to whether any Claims or Interests, or any Class thereof, is Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV
## MEANS OF IMPLEMENTATION OF THE PLAN

### Section 4.1    _Corporate Action_

Upon the Effective Date, by virtue of entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Litigation Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, Post-Effective Date Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

### Section 4.2    _Effectuating Documents; Further Transactions_

On and after the Effective Date, the Debtors, the Plan Administrator (on behalf of the Post-Effective Date Debtors) and the Litigation Trustee (on behalf of the Post-Effective Date Debtors), as applicable, is authorized to and may issue, execute, deliver, file or record such contracts,

securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### Section 4.3    Corporate Existence Post-Effective Date

(a)    _Directors and Officers_

Immediately following the occurrence of the Effective Date, (i) the respective boards of directors or managers, as applicable, and the current officers, of each of the Debtors, shall be terminated without cause and such members of the boards of directors or managers, as applicable, and the current officers of the Debtors shall be deemed to have resigned; and (ii) the Plan Administrator shall: (1) be appointed as the sole member of the board of directors or board of managers, as applicable, and the sole officer; (2) succeed as the sole Holder of Interests in each Post-Effective Date Debtor; (3) have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code; (4) be a "representative of the estate" pursuant to Section 1123(b)(3) of the Bankruptcy Code; (5) be vested with the rights, powers, and benefits afforded to a "trustee" under Sections 704 and 1106 of the Bankruptcy Code; and (6) have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary.

(b)    _Organizational and Governance Documents_

Immediately following the occurrence of the Effective Date, the Post-Effective Date Debtors shall continue to exist in accordance with the laws of their respective states of formation and pursuant to their respective certificates of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended under the Plan, for the limited purposes of liquidating all of the assets of the Estates and making distributions in accordance with the Plan.  The Post-Effective Date Debtors shall exist for the limited purposes of completing the Debtors' obligations under the Transition Services Agreement and fully administering the Estates.  Promptly after performing all duties and functions that are consistent with the implementation of the Plan, the Confirmation Order, the Asset Purchase Agreement, and the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all actions to wind down, dissolve, or liquidate the Post-Effective Date Debtors without the necessity for any other or further actions to be taken by or on behalf of such dissolving Post-Effective Date Debtors or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state law.

The certificate and articles of in-corporation and by-laws of each Post-Effective Date Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, a provision (a) prohibiting the issuance of non-voting equity securities under Section 1123(a)(6) of the Bankruptcy Code and (b) limiting the activities of the Post-Effective Date Debtors to matters authorized under the Plan.

### Section 4.4    Settlement of Claims and Interests

Pursuant to Section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests or Causes of Action that (a) are subject to compromise and settlement pursuant to the terms of the Plan; (b) have been released pursuant to **Section 8.2** of the Plan; (c) have been released pursuant to **Section 8.3** of the Plan; (d) are subject to the exculpation pursuant to **Section 8.4** of the Plan; or (e) are otherwise stayed or terminated pursuant to the terms of the Plan.

### Section 4.5    Plan Funding

All Cash necessary for the Debtors to fund distributions, make payments or otherwise satisfy any obligations under the Plan shall be funded in accordance with the Cash Collateral Order; *provided that*, to the extent the Transition Services Agreement requires the Debtors to make any payments or take any other actions associated therewith, the amount of any such payments or distributions or the cost of taking such actions shall be funded solely by the Purchaser.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers may be accounted for and/or settled in accordance with the Debtors' historical intercompany account settlement practices and any such action will not violate the terms of the Plan.

### Section 4.6    Cancellation of Old Securities and Agreements

Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including, without limitation, Prepetition Lender Claims and Existing Interests, shall be deemed canceled and surrendered without any need for further action or approval of the Bankruptcy Court or any Holder or other Entity and the obligations of the Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and satisfied with the distributions, if any, provided hereunder, and the Administrative Agent shall be released from all duties thereunder; *provided* that notwithstanding entry of the Confirmation Order or consummation of the Plan, any such indenture or agreement that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of: (a) allowing Holders to receive distributions under the Plan; (b) allowing the Administrative Agent to enforce its rights, claims, and interests vis-à-vis any parties other than the Debtors or the Post-Effective Date Debtors; (c) allowing the Administrative Agent to make the distributions on account of Prepetition Lender Claims in accordance with the Plan (if any), as applicable; (d) preserving any rights of the Administrative Agent to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders under the Credit Agreement, including any rights to priority of payment and/or to exercise charging liens; (e) allowing the Administrative Agent to exercise rights and obligations relating to the interests of Holders of Prepetition Lender Claims; (f) allowing the Administrative Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including, but not limited, to enforce the respective obligations owed to such parties under the Plan; and (g) permitting the Administrative Agent to perform any functions that are necessary to effectuate the foregoing; *provided, further,* that except as provided herein, the preceding proviso shall not affect the

settlement and release of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, as applicable, or result in any expense or liability to the Debtors.

### Section 4.7    Vesting of Assets

Except as otherwise provided in the Plan, the Asset Purchase Agreement, the Plan Supplement, or in any agreement, instrument, or other document incorporated herein or therein, on the Effective Date all property in each Debtor's Estate, and all Causes of Action held by the Debtors or their Estates (except those released pursuant to the Plan or an order of the Bankruptcy Court) shall either be transferred to the Purchaser in accordance with the Asset Purchase Agreement or re-vest with the Post-Effective Date Debtors, as applicable, free and clear of all Liens, Claims, charges, and other encumbrances to the fullest extent possible under the Bankruptcy Code, and neither the Purchaser nor the Post-Effective Date Debtors shall have any liability for such Liens, Claims, charges, or other encumbrances whatsoever (other than to the extent provided in the Asset Purchase Agreement). On and after the Effective Date, except as provided in this Plan, the Purchaser (and, to the extent acting on behalf of the Post-Effective Date Debtors pursuant to this Plan, the Plan Administrator Agreement, or the Asset Purchase Agreement, the Plan Administrator) may operate their business and may (a) use, acquire, and dispose of property; (b) compromise or settle Claims, Interests, and Causes of Action; and (c) take any other action contemplated by the Plan, the Asset Purchase Agreement, the Plan Supplement, or the Confirmation Order, in each case, without Bankruptcy Court supervision or approval, and free of any Bankruptcy Code or Bankruptcy Rule restrictions, provided, however, that any derivative actions may be settled, voluntarily dismissed, or compromised only with court approval, to the extent that such court approval is required by Bankruptcy Rule 7023.1(c).

### Section 4.8    Plan Administrator.

(a)    _Appointment of the Plan Administrator_

From and after the Effective Date, a Person or Persons to be designated by the Debtors in consultation with the Creditors' Committee shall serve as the Plan Administrator pursuant to the Plan Administrator Agreement and the Plan, until the resignation or discharge and the appointment of a successor Plan Administrator in accordance with the Plan Administrator Agreement and the Plan. The Debtors shall include, in the Plan Supplement, the information set forth in Sections 1129(a)(4) and (5) of the Bankruptcy Code and the identity of Person or Entity who the Debtors have selected as the Plan Administrator. The appointment of the Plan Administrator shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date. The Plan Administrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and the Plan Administrator Agreement.

(b)    _The Plan Administrator Agreement_

Prior to or on the Effective Date, the Debtors shall execute a Plan Administrator Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Plan Administrator Agreement made by the Debtors prior to the Effective Date are hereby ratified. The Plan Administrator Agreement will contain provisions permitting the amendment or

modification of the Plan Administrator Agreement as necessary to implement the provisions of the Plan.

      (c)     *Rights, Powers, and Duties of the Debtors and the Plan Administrator*

On and after the Effective Date, the Plan Administrator will act for the Post-Effective Date Debtors in the same capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval. From and after the Effective Date, the Plan Administrator will be the sole representative of, and will act for, the Post-Effective Date Debtors. Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all corporate actions consistent with the Plan, the Confirmation Order, the Asset Purchase Agreement, all other applicable orders of the Bankruptcy Court, and the Plan Administrator Agreement, in each case, that are necessary and/or desirable to effectuate the terms of the Plan on behalf of the Post-Effective Date Debtors and use its reasonable best efforts to assist with or effectuate the transition of the Debtors' business, wind down, dissolution, or liquidation of the Post-Effective Date Debtors and any non-Debtor Affiliates. In taking such actions, the Plan Administrator may control and exercise authority over any Assets, vested in the Post-Effective Date Debtors pursuant to the Plan, over the acquisition, management, and disposition thereof and over the management and conduct of the affairs of the Post-Effective Date Debtors. Such rights, powers and duties, which shall be exercisable by the Plan Administrator on behalf of the Post-Effective Date Debtors pursuant to the Plan and the Plan Administrator Agreement, shall include, among others, (a) making distributions to Holders of Allowed Claims and Interests as provided for in the Plan, (b) administering, reconciling and resolving Administrative Claims, Professional Claims, Restructuring Expenses, Priority Tax Claims and Other Priority Claims, (c) filing tax returns and paying taxes, (d) performing all obligations required of the Post-Effective Date Debtors under the Transition Services Agreement, (e) paying any Statutory Fees, (f) maintaining the books and records and accounts of the Debtors, (g) defending the Debtors in any pending or future litigation (except with respect to any counterclaims filed against the Litigation Trust), (h) selling, abandoning, or otherwise fully administering the Estates, (i) closing the Chapter 11 Cases, (j) dissolving the Post-Effective Date Debtors, and (xi) performing other duties and functions that are consistent with the implementation of the Plan.

      (d)     *Transition Services*

On the Effective Date, and continuing until the end of the term under the Transition Services Agreement, the Plan Administrator shall serve as an appointed agent of the designated operator or as the operator of the Debtors in accordance with the Plan for the purpose of fulfilling any obligations thereunder.

      (e)     *Compensation of the Plan Administrator and Plan Administrator Professionals*

          (i)     The Plan Administrator shall be compensated from the Plan Administration Reserve, in accordance with the Plan Administration Budget, and pursuant to the terms of the Plan Administrator Agreement. For the avoidance of doubt, any costs

of the Plan Administrator associated with fulfilling the obligations under the Transition Services Agreement shall be funded directly by the Purchaser and will not be paid out of the Plan Administrative Reserve or calculated for purposes of the Plan Administration Budget.

(ii)    The Plan Administrator Professionals shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred from the Plan Administration Reserve.  Payment of the fees and expenses of the Plan Administrator and the Plan Administrator Professionals shall be made in the ordinary course of business; *provided*, *however*, that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

(f)    *Indemnification of the Plan Administration Indemnified Parties*

The Post-Effective Date Debtors shall indemnify and hold harmless the Plan Administration Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to, attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Plan Administration Indemnified Party's willful misconduct or gross negligence, with respect to the Debtors or the implementation or administration of the Plan or the Plan Administrator Agreement.  To the extent any Plan Administration Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to the Plan Administrator in monitoring and participating in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Plan Administration Indemnified Party (and such Plan Administration Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Plan Administration Indemnified Party is not entitled to be indemnified therefore) out of the Plan Administration Reserve or any insurance purchased using the Plan Administration Reserve.  The indemnification provisions of the Plan Administrator Agreement shall remain available to and be binding upon any former Plan Administrator or the estate of any decedent of the Plan Administrator and shall survive the termination of the Plan Administrator Agreement.

(g)    *Exculpation of the Plan Administrator*

As of the Effective Date, to the extent not already included, the organizational documents of the Debtors shall be modified to provide for the exculpation of the Plan Administrator to the fullest extent permitted by applicable law.

(h)    *Insurance for the Plan Administrator*

The Plan Administrator shall be authorized to obtain and pay for out of the Plan Administration Reserve all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, and the Post-Effective Date Debtors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under the Plan Administrator Agreement (in the form of an errors and omissions policy or otherwise),

the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of the Plan Administrator Agreement.

### Section 4.9    Litigation Trust

(a)    _Establishment of the Litigation Trust_

On or prior to the Effective Date, the Debtors and the Litigation Trustee shall execute the Litigation Trust Agreement in form and substance consistent with the terms set forth herein and otherwise reasonably acceptable to the Debtors and the Creditors' Committee.

On the Effective Date, the Debtors shall (x) automatically be deemed to have transferred and assigned to the Litigation Trust all of their right, title, and interest in and to all the Retained Causes of Action, and, in accordance with Section 1141 of the Bankruptcy Code, all such Retained Causes of Action shall automatically vest in the Litigation Trust free and clear of all Liens, Claims, charges, encumbrances and interests, for the benefit of Holders of Allowed General Unsecured Claims and (y) transfer the Initial Litigation Trust Funded Amount to an account established by the Litigation Trust to fund the administration of such trust.

Immediately following the occurrence of the Effective Date, the Litigation Trustee shall be deemed appointed to serve as the trustee and administrator of the Litigation Trust. The Litigation Trust shall have standing to pursue, assert, litigate, and fully resolve the Litigation Trust Causes of Action, and neither the Debtors nor the Post-Effective Date Debtors shall have any interest in or with respect to the Retained Causes of Action or any Cash or assets contained in the Litigation Trust.

(b)    _Purpose of the Litigation Trust_

The Litigation Trust shall be established for the purpose of (i) investigating, commencing, litigating, and settling the Retained Causes of Action, (ii) liquidation of the Litigation Trust's assets, (iii) distribution of the Litigation Trust Distributable Proceeds, if any, to the Litigation Trust Beneficiaries, and (iv) performing such other duties as set forth in the Litigation Trust Agreement, in each case in accordance with Section 301.7701-4(d) of the Treasury Regulations, with no objective to continue or engage in the conduct of a trade or business.

(c)    _The Litigation Trust Agreement_

The Litigation Trust shall be administered by the Litigation Trustee in accordance with the Litigation Trust Agreement. The Litigation Trust Agreement may establish certain powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Litigation Trust as a liquidating trust for United States federal income tax purposes as discussed below. Upon execution of the Litigation Trust Agreement, the Litigation Trustee shall be authorized to take all steps necessary to complete the formation of the Litigation Trust. The Litigation Trustee shall serve as representative of the Estates under Section 1123(b) of the Bankruptcy Code for the purpose of (i) enforcing the Litigation Trust Causes of Action and (ii) administering the Litigation Trust and distributing its assets to the Litigation Trust Beneficiaries.

(d)    *Powers and Duties of the Litigation Trustee*

On and after the Effective Date, the powers and duties of the Litigation Trustee shall include, *inter alia*, (i) analyzing Retained Causes of Action and determining whether to abandon, pursue, litigate, or settle such claims; (ii) retaining and compensating professionals, employees, and consultants to assist with the administration of the Litigation Trust; (iii) making distributions to the Litigation Trust Beneficiaries in accordance with the Plan and Litigation Trust Agreement; (iv) administering, reconciling and resolving General Unsecured Claims; and (v) performing other duties and functions that are consistent with the purpose of the Litigation Trust.

In pursuing any Litigation Trust Causes of Action, the Litigation Trustee shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Litigation Trust Causes of Action may be brought under Section 546 of the Bankruptcy Code.

(e)    *Litigation Trust Treatment*

In furtherance of the Plan, (i) the terms of the Litigation Trust shall be set forth in the Litigation Trust Agreement, (ii) the Litigation Trust shall be structured to qualify as a "liquidating trust" within the meaning of Section 301.7701-4(d) of the Treasury Regulations and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code to Holders of Allowed General Unsecured Claims, consistent with the terms of the Plan, (iii) all parties (including the Debtors, the Post-Effective Date Debtors, the Litigation Trust Beneficiaries, and the Litigation Trustee) shall report consistently with such treatment, (iv) all parties shall report consistently with the valuation of the assets transferred to the Litigation Trust as determined by the Litigation Trustee (or its designee), (v) the Litigation Trustee shall be responsible for filing returns for the trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations, and (vi) the Litigation Trustee shall annually send to each holder of an interest in the Litigation Trust a separate statement regarding the receipts and expenditures of the trust as relevant for federal income tax purposes.

(f)    *Litigation Trust Distributions*

Distributions from the Litigation Trust shall be made from the Litigation Trust Distributable Proceeds, in accordance with the Plan and the Litigation Trust Agreement.

(g)    *Litigation Trust Expenses*

The Litigation Trust Expenses shall be paid from (i) the Initial Litigation Trust Funded Amount and (ii) the Cash proceeds, whether by settlement, adjudication or otherwise, of any Retained Causes of Action.

### Section 4.10    Sale Order

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair or supersede the Sale Order, which remains in full force and effect and governs in the event of any inconsistency with the Plan.

### Section 4.11    Exemption from Certain Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment to the fullest extent contemplated by Section 1146(a) of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall be directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### Section 4.12    Preservation of Causes of Action

In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Debtors and their Estates shall retain all of the Retained Causes of Action, which shall be vested in the Post-Effective Date Debtors on the Effective Date.  The Litigation Trustee, on behalf of the Post-Effective Date Debtors, may enforce all rights to commence and pursue any and all Retained Causes of Action, whether arising before or after the Petition Date (including, without limitation, any actions or categories of actions specifically enumerated in a list of retained Causes of Action contained in the Plan Supplement), and all Retained Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or the dissolution of the Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Litigation Trustee will not pursue any and all available Retained Causes of Action against it.  The Litigation Trustee expressly reserves all rights to prosecute any and all** Retained **Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**

The Litigation Trustee, in its sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce any Retained Causes of Action (or decline to do any of the foregoing) in accordance with the best interests of the Litigation Trust, and shall not be required to seek further approval of the Bankruptcy Court for such action; provided, however, the Litigation Trustee may settle, voluntarily dismiss, or compromise any derivative actions as such term is used in Bankruptcy Rule 7023.1(c) only with court approval, to the extent such court approval is required by Bankruptcy Rule 7023.1(c).

Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or an order of the Bankruptcy Court, or acquired by the Purchaser or otherwise released pursuant to the Asset Purchase Agreement, the Plan expressly reserves all of the Debtors' Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or consummation of the Plan.

# ARTICLE V
## EXECUTORY CONTRACTS

***Section 5.1      Assumption and Rejection of Executory Contracts*** On the Effective Date, each Executory Contract shall be deemed rejected in accordance with, and subject to, Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract: (a) is designated as a Transferred Contract under the Asset Purchase Agreement; (b) is designated as an Assumed Contract on the Schedule of Assumed Executory Contracts or a Transferred Contract on a TSA Contract Notice or a Supplemental TSA Contract Notice (each as defined in the TSA Assumption Order); (c) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court, including the Bidding Procedures Order, Sale Order and TSA Assumption Order, or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (d) is the subject of a motion to assume pending as of the Effective Date; or (e) is otherwise assumed pursuant to the terms herein. The Rejection Damages Claims of counterparties to Executory Contracts that are deemed rejected as of the Effective Date shall be classified as General Unsecured Claims and shall be treated in accordance with **Section 3.2(d)** of the Plan.

As of the Effective Date, each Executory Contract that is designated as an Assumed Contract on the Schedule of Assumed Executory Contracts shall revest in and be fully enforceable by the Plan Administrator on behalf of the Post-Effective Date Debtors, except as modified by the provisions of the Plan, any Final Order of the Bankruptcy Court, or applicable law. The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption, assumption and assignment, or rejection, as the case may be, of such Executory Contracts, pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. To the extent any provision in any Executory Contract assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption of or the assumption and assignment of such Executory Contract then such provision shall be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto.

Rejection of any Executory Contract pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Post-Effective Date Debtors, and the Plan Administrator expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties, or continued maintenance obligations on goods previously purchased by the contracting Debtors from counterparties to rejected or repudiated Executory Contracts.

Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts pursuant to the Plan are effective as of the Effective Date. Notwithstanding anything to the contrary in the Plan, Asset Purchase Agreement, or Plan Supplement, the Debtors reserve the right to, with the consent of the Purchaser, as required, alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and any TSA Contract Notice or Supplemental TSA Contract Notice at any time prior to the Effective Date, in accordance with the

Assumption and Assignment Procedures, the Asset Purchase Agreement and the TSA Assumption Order, as applicable.

### Section 5.2    Rejection Damages Claim Procedures

Unless otherwise provided by a Bankruptcy Court order, <u>any Rejection Damages Claim must be filed with the Claims and Solicitation Agent and served on the Plan Administrator and the Litigation Trustee no later than thirty (30) days after the filing of the notice of the occurrence of the Effective Date</u>.  Any Rejection Damages Claims that are not timely filed shall be Disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Post-Effective Date Debtors without the need for any objection by the Debtors or the Litigation Trustee or any further notice to or action, order, or approval of the Bankruptcy Court, and all Rejection Damages Claims shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or any Proofs of Claim to the contrary.  All Allowed Rejection Damages Claims shall be classified as General Unsecured Claims and shall be treated in accordance with **Section 3.2(d)** of the Plan.

### Section 5.3    Cure of Defaults for Assumed Executory Contracts

(a)    <u>*Proofs of Claim Based on Assumed Contracts or Transferred Contracts*</u>

Any and all Proofs of Claim based on Executory Contracts that have been designated as Transferred Contracts or Assumed Contracts, except Proofs of Claim asserting Cure Amount, pursuant to the order approving such assumption or assumption and assignment, including the Confirmation Order, shall be deemed Disallowed and expunged from the claims register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

(b)    <u>*Cure Proceedings and Payments*</u>

With respect to each of the Transferred Contracts and Assumed Contracts, the Debtors have designated or shall designate a proposed Cure Amount in the Cure Notice and the determination of the Cure Amount shall be governed by the Bankruptcy Court's order related thereto.  Except with respect to Executory Contracts for which the Cure Amount is zero dollars, or for which the Cure Amount is in dispute, (i) with respect to Transferred Contacts, the Cure Amount shall be satisfied by the Purchaser; and (ii) with respect to Assumed Contracts, the Cure Amount shall be satisfied by the Plan Administrator on behalf of the Post-Effective Date Debtors, in each case, in accordance with the terms of the TSA Assumption Order, Bidding Procedures, Sale Order, Asset Purchase Agreement (including the Transition Services Agreement), or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract without any further notice to or action, order, or approval of the Bankruptcy Court.

Any provisions or terms of a Transferred Contract or Assumed Contract that are, or may be, alleged to be in default, shall be satisfied solely by payment of the Cure Amount, or by an agreed-upon waiver of the Cure Amount.  If there is a dispute regarding such Cure Amount, the ability of the Purchaser or Plan Administrator, as applicable, to provide "adequate assurance of future performance" within the meaning of Section 365 of the Bankruptcy Code, or any other matter pertaining to assumption or assignment, then payment of the Cure Amount shall occur as

soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption, or as may be agreed upon by the Purchaser or the Plan Administrator, as applicable, and the counterparty to the Executory Contract; *provided, however*, that the Purchaser or the Plan Administrator (on behalf of the Post-Effective Date Debtors), as applicable, shall have the right either to reject or nullify the assumption of any Executory Contract after entry of a Final Order determining the Cure Amount or any request for adequate assurance of future performance required to assume such Executory Contract.

Assumption or assumption and assignment of any Executory Contract pursuant to the Plan, the Sale Order, the Asset Purchase Agreement, the TSA Assumption Order, or otherwise, shall result in the full release and satisfaction of any Cure Amount, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time prior to the effective date of assumption, as applicable.

(c)    *Cure Notice*

The Debtors shall serve the Cure Notice on counterparties to any Assumed Contracts or Transferred Contracts in accordance with the terms of the applicable orders of the Bankruptcy Court, including in the case of Transferred Contracts, the TSA Assumption Order.  If no Cure Objection is timely received, (a) the non-Debtor party to the assumed Executory Contract shall be deemed to have consented to the assumption or assumption and assignment of the applicable Executory Contract and shall be forever barred from asserting any objection with regard to such assumption, and (b) the proposed Cure Amount shall be controlling, notwithstanding anything to the contrary in any applicable Executory Contract or other document, and the non-Debtor party to an applicable Executory Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors, the Post-Effective Date Debtors, the Purchaser, or the property of any of the foregoing.

(d)    *Cure Objections*

If a proper and timely Cure Objection is filed by the applicable Cure Objection Deadline, including in the case of Transferred Contracts, in accordance with the TSA Assumption Order, the Cure Amount shall be equal to (a) the amount agreed to between the Debtors, Plan Administrator (on behalf of the Post-Effective Date Debtors), or Purchaser, as applicable, and the applicable counterparty or (b) to the extent the Plan Administrator (on behalf of the Post-Effective Date Debtors), or Purchaser, as applicable, and counterparty do not reach an agreement regarding any Cure Amount or any other matter related to assumption, the Bankruptcy Court shall determine the Allowed amount of such Cure Amount and any related issues.  Objections, if any, to the proposed assumption and/or Cure Amount must be in writing, filed with the Bankruptcy Court, and served in hard-copy form on the parties identified in the Cure Notice so that they are actually received by the Cure Objection Deadline.

If a Cure Objection is timely filed and received in accordance with the applicable procedures, and the parties do not reach a consensual resolution of such objection, a hearing with

respect to such objection shall be held at such time scheduled by the Bankruptcy Court. Cure Objections will not be treated as objections to Confirmation of the Plan.

### Section 5.4    Modifications, Amendments, Restatements, Supplements, Restatements, and Other Agreements

Unless otherwise provided in the Plan, each Executory Contract that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated pursuant to the Plan. Modifications, amendments, supplements, and re-statements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### Section 5.5    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease on the Schedule of Assumed Executory Contracts, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that the Debtors, the Plan Administrator, or any of their Affiliates, has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Plan Administrator, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### Section 5.6    Employee Compensation and Benefit Programs

Except as otherwise provided in the Plan, the Asset Purchase Agreement or the Plan Supplement, on and after the Effective Date, the Post-Effective Date Debtors may, but are not required to, honor in the ordinary course of business, any employee benefit plans (as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974) and any other contracts, agreements, policies, programs, and plans for, among other things, employment, compensation, health care, disability and other welfare benefits, deferred compensation benefits, severance policies and benefits, retirement benefits, workers' compensation insurance and accidental death and dismemberment insurance that, as of immediately prior to the Petition Date are, and as of immediately prior to the Effective Date continue to be, sponsored, maintained, or contributed to by any of the Debtors for the directors, officers, employees and other service providers of any of the Debtors who served in such capacity at any time.

Nothing contained herein shall entitle any Person to any benefit or alleged entitlement under any policy, program, or plan that has expired or been terminated before the Effective Date, or restore, reinstate, or revive any such expired benefit plan or alleged entitlement under any such expired benefit plan. Nothing herein shall limit, diminish, or otherwise alter the Post-Effective Date Debtors' defenses, Claims, Causes of Action, or other rights with respect to any benefit plan, whether expired or unexpired.

Except as otherwise provided in the Plan, the Asset Purchase Agreement, or the Plan Supplement, none of (a) the Debtors' emergence from chapter 11 of the Bankruptcy Code as contemplated by the Plan or (b) the consummation of the transactions provided in the Plan (or otherwise contemplated by the Sale and the Plan to occur prior to or on or about the Effective Date), in each case alone or together with any other event, shall (i) entitle any current or former director, officer, employee or other service provider of any of the Debtors to any payment or benefit, (ii) accelerate the time of payment or vesting or trigger any payment or funding of compensation or benefits under, or increase the amount payable or trigger any other obligation under, any benefit plan or expired benefit plan or (iii) limit or restrict the right of the Debtors or Post-Effective Date Debtors to merge, amend or terminate any benefit plan, in each case including as a result of a "change in control" or similar provision or as a result of giving rise to any Person to terminate his or her service with the Debtors or Post-Effective Date Debtors for "good reason" or similar provision.

### Section 5.7    Insurance Policies

Except as otherwise provided in the Plan, the Asset Purchase Agreement, or the Plan Supplement, all insurance policies pursuant to which any Debtor has any obligations in effect as of the Effective Date shall be deemed and treated as Executory Contracts pursuant to the Plan and, unless such insurance policy is assumed or assumed and assigned in accordance with **Section 5.1** of the Plan, such insurance policy shall be deemed to be rejected in accordance with, and subject to, Sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

### Section 5.8    D&O Policies

The Debtors or the Plan Administrator on behalf of the Post-Effective Date Debtors, as applicable, shall maintain D&O Policies providing coverage for those insureds currently covered by such policies for the remaining term of such policies and shall maintain runoff policies or tail coverage under policies in effect as of the Effective Date for a period of six years after the Effective Date, to the fullest extent permitted by such provisions, in each case insuring such parties in respect of any claims, demands, suits, Causes of Action, or proceedings against such insureds in at least the scope and amount as currently maintained by the Debtors.  Nothing in the Plan shall be deemed to impair any Entity's claim, if any, to proceeds of the D&O Policies or the priority of payment on such claim, if any, under the D&O Policies.  Notwithstanding any other provision in the Plan, all D&O Policies shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by the Post-Effective Date Debtors, shall remain in full force and effect thereafter and shall continue as obligations of the Post-Effective Date Debtors in accordance with their respective terms, and all such D&O Policies shall vest in the Post-Effective Date Debtors.

### Section 5.9    Indemnification Obligations

Except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law, any and all obligations of the Debtors pursuant to their corporate charters, bylaws, limited liability company agreements, memorandum and articles of association, or other organizational documents or agreements to indemnify officers, directors or employees, in each case solely in their capacity as such, employed by the Debtors (i) on and/or after the Petition Date or (ii) prior to the Petition Date (but only to the extent necessary to preserve the D&O Policies)

with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors or employees based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; *provided,* that, the Debtors or the Plan Administrator on behalf of the Post-Effective Date Debtors, as applicable, shall not indemnify any such officers, directors or employees of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission for which indemnification is barred under applicable law or that is excluded under the terms of the foregoing organizational documents or applicable agreements governing the Debtors' indemnification obligations.   The Plan Administrator on behalf of the Post-Effective Date Debtors shall not indemnify any Entities for any Claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence or willful misconduct.   Except as otherwise provided in the Plan, all such indemnification obligations shall be deemed and treated as Executory Contracts that are assumed by the Debtors under the Plan.

### Section 5.10   *Nonoccurrence of the Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to Section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

### ARTICLE VI
### PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

### Section 6.1   *Determination of Claims and Interests*

After the Effective Date, the Plan Administrator or the Litigation Trustee, as the case may be, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately prior to the Effective Date, including the Causes of Action retained pursuant to **Section 4.12** of the Plan, except with respect to any Claim or Interest deemed Allowed under the Plan.   Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Cases allowing such Claim or Interest.   All settled Claims approved prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court, pursuant to Bankruptcy Rule 9019 or otherwise, shall be binding on all parties.   For the avoidance of doubt, any Claim determined and liquidated pursuant to (a) an order of the Bankruptcy Court or (b) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and as to which determination or any revision, modification, or amendment thereof as to which the time to appeal or seek review or rehearing has expired and no appeal or petition for review or rehearing was filed or, if filed, remains pending) shall be deemed an Allowed Claim in such liquidated amount and satisfied in accordance with the Plan.   Nothing contained in this **Section 6.1** shall constitute or be deemed a waiver of any claim, right, or Cause of Action that the Debtors or the Post-Effective Date Debtors may have against any Entity in connection with or arising out of any Claim, including any rights under Section 157(b) of title 28 of the United States Code.

### Section 6.2    Claims Administration Responsibility

Notwithstanding anything to the contrary herein, after the Effective Date: (a) the Plan Administrator shall have responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Claims, except for General Unsecured Claims and Prepetition Lender Claims; (b) the Litigation Trustee shall have responsibility for administering, disputing, objecting to, compromising, or otherwise resolving General Unsecured Claims; and (c) the Administrative Agent shall have responsibility for administering, disputing, objecting to, compromising, or otherwise resolving all Prepetition Lender Claims.  Nothing herein is intended to limit the right of any party in interest from objecting to any Claims, except to the extent such Claims, including the Prepetition Lender Claims, have already been Allowed, and, subject, however, to any limitation in any prior order of the Bankruptcy Court, including the Cash Collateral Order.

### Section 6.3    Objections to Claims

Unless otherwise extended by the Bankruptcy Court, any objections to Claims (other than Administrative Claims) shall be served and filed on or before the Claims Objection Deadline (or such later date as may be established by the Bankruptcy Court upon request of the Litigation Trustee without further notice to parties-in-interest).  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Litigation Trustee effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Holder of a Claim or Interest is unknown, by first class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto (or at the last known addresses of such Holder if no proof of Claim is filed or if the Debtors have been notified in writing of a change of address); or (c) by first class mail, postage prepaid, on any counsel that has appeared on behalf of the Holder of the Claim in the Chapter 11 Cases and has not withdrawn such appearance.

### Section 6.4    Disallowance of Claims

Except as otherwise agreed, any and all Proofs of Claim filed after the applicable deadline for filing such Proofs of Claim shall be deemed Disallowed and expunged as of the Effective Date without any further notice to, or action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any distributions on account of such Claims, unless any such late proof of Claim is deemed timely filed by a Final Order of the Bankruptcy Court.  Nothing herein shall in any way alter, impair, or abridge the rights of the Debtors, the Litigation Trustee, or other parties-in-interest to object to Claims on the grounds that they are time-barred or otherwise subject to disallowance or modification.  Except as set forth in section 6.7, nothing in the Plan shall preclude amendments to timely filed Proofs of Claim to the extent permitted by applicable law. All Claims of any Person or Entity from which property is sought by the Debtors under Section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Litigation Trustee allege is a transferee of a transfer that is avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be Disallowed if (a) the Person or Entity, on the one hand, and the Debtors or the Litigation Trustee, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned Sections of the Bankruptcy Code and (b) such Person or

Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

### Section 6.5    Estimation of Claims

Before the Effective Date, the Debtors, and after the Effective Date, the Litigation Trustee (on behalf of the Post-Effective Date Debtors), may (but are not required to) at any time request that the Bankruptcy Court estimate a Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Disputed Claim, including during the litigation of any objection to any Disputed Claim or during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan, without prejudice to the Holder of such Claim's right to request that estimation should be for the purpose of determining the Allowed amount of such Claim, and the Plan Administrator or Litigation Trustee, as the case may be, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  All estimation procedures set forth in the Plan shall be applied in accordance with Section 502(c) of the Bankruptcy Code.  Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

### Section 6.6    No Interest on Claims

Unless otherwise specifically provided for in the Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, postpetition interest shall not accrue or be paid on Claims or Interests, and no Holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any Claim or Interest.  Additionally, and without limiting the foregoing, unless otherwise specifically provided for in the Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made, when and if such Disputed Claim becomes an Allowed Claim.

### Section 6.7    Amendments to Claims

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the authorization of the Bankruptcy Court or the Post-Effective Date Debtors, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VII
## PROVISIONS GOVERNING DISTRIBUTIONS

### Section 7.1    *Distributions Allowed as of the Effective Date*

Except as otherwise provided in the Plan or a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Claims Allowed on or before the Effective Date shall be made on the Distribution Date; *provided that* (a) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors prior to the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (b) in accordance with Article II of the Plan, Allowed Priority Tax Claims, unless otherwise agreed, shall be treated in accordance with the terms set forth in Section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

### Section 7.2    *Distribution on Account of Claims Allowed After the Effective Date*

(a)    *No Distributions Pending Allowance*

No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

(b)    *Payments and Distributions on Disputed Claims*

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be  made on the first day that is thirty (30) Business Days after the Disputed Claims become Allowed Claims; *provided* that (i) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice and (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with the Plan and paid.

(c)    *Special Rules for Distributions to Holders of Disputed Claims*

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed to by the relevant parties, no payments or distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or agreement among the relevant parties, or by Final Order.

### Section 7.3    *Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided herein, on the Distribution Date, each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided in the Plan, or any order of the Bankruptcy Court, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### Section 7.4    *Delivery of Distributions*

(a)    <u>Record Date for Distributions</u>

On the Distribution Record Date, any party responsible for making distributions shall be authorized and entitled to recognize only those Holders of Claims listed on the register for Claims as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty (20) or fewer days before the Distribution Date, the Distribution Agent shall make distributions to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.  The Administrative Agent shall have no obligation to recognize any transfer of any applicable Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under the Plan with only those Holders of record on their respective lender registers as of the close of business on the Distribution Record Date.

(b)    <u>Cash Distributions</u>

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Post-Effective Date Debtors, except that Cash payments made to foreign creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(c)    <u>Delivery of Distributions in General</u>

Except as otherwise provided in the Plan, the Distribution Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution, including the address set forth in any Proof of Claim filed by that Holder; *provided* that the manner of such distributions shall be determined at the discretion of the Post-Effective Date Debtors.  The Distribution Agent shall not incur any liability whatsoever on account of any distributions under the Plan.

(d)    <u>Delivery of Distributions on Account of Prepetition Lender Claims</u>

In the case of Holders of Prepetition Lender Claims, the Administrative Agent shall be deemed to be the Holder of such Claims for purposes of distributions to be made hereunder.  The Distribution Agent shall make all distributions on account of such Claims to the Administrative Agent or as directed by the Administrative Agent, in the Administrative Agent' sole discretion. The Administrative Agent shall, at its option, hold or direct such distributions for the beneficial

Holders of such Allowed Claims, as applicable; *provided*, *however*, that the Administrative Agent shall retain all rights under its respective agreement in connection with delivery of distributions to the beneficial Holders of such Allowed Claims, including rights on account of its charging lien; *provided*, *further*, *however*, that the Debtors' obligations to make distributions pursuant to the Plan shall be deemed satisfied upon delivery of distributions to the Administrative Agent or the Entity or Entities designated by the Administrative Agent.   The Administrative Agent shall not be required to give any bond, surety, or other security for the performance of their duties with respect to such distributions.

### Section 7.5    Currency

Except as otherwise provided in the Plan or Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate as of the Effective Date at 4:00 p.m. (prevailing Eastern Time), mid-range spot rate of exchange for the applicable currency as published in the next *The Wall Street Journal* following the Effective Date.

### Section 7.6    Distribution Agent (if any)

The Distribution Agent shall make all distributions required under the Plan, subject to the terms and provisions of the Plan.  If the Distribution Agent is an independent third party designated to serve in such capacity, such Distribution Agent shall receive, without further Court approval, reasonable compensation from the Plan Administration Reserve for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses.  No Distribution Agent shall be required to give any bond or surety or other security for the performance of its duties.  The Distribution Agent shall be authorized and directed to rely upon the Debtors' books and records and, as applicable, the Plan Administrator's representatives and professionals in determining Allowed Claims not entitled to distributions under the Plan in accordance with the terms and conditions of the Plan.  The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

### Section 7.7    Undeliverable Distributions

(a)    <u>Holders of Undeliverable Distributions</u>

If any distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of such Claim shall be made unless and until the Distribution Agent or Administrative Agent is notified of then-current address of such Holder of the Claim, at which time all missed distributions shall be made to such Holder of the Claim without interest on the next Periodic Distribution Date.  Amounts in respect of undeliverable distributions shall be returned (1) if prior to the Dissolution Date, to the Debtors, and (2) if after the Dissolution Date, to the Administrative Agent to be redistributed, in each case, until such distributions are claimed.

(b)   *Reversion*

Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after such distribution shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revert to and vest in the Post-Effective Date Debtors. Upon vesting, the Claim of any Holder or successor to such Holder with respect to such property shall be canceled and forever barred, notwithstanding federal or state escheat, abandoned, or unclaimed property laws to the contrary. The provisions of the Plan regarding undeliverable distributions and Unclaimed Distributions shall apply with equal force to distributions that are issued by the Distribution Agent made pursuant to any indenture or Certificate (but only with respect to the initial distribution by the applicable trustee, agent, servicer, or other authorized representative to Holders that are entitled to be recognized under the relevant indenture or Certificate and not with respect to Entities to whom those recognized Holders distribute), notwithstanding any provision in such indenture or Certificate to the contrary and notwithstanding any otherwise applicable federal or state escheat, abandoned, or unclaimed property law.

### Section 7.8    De Minimis Distributions

Notwithstanding any other provision of the Plan to the contrary, the Distribution Agent and Administrative Agent shall not be required to make a distribution on account of an Allowed Claim or Interest if the aggregate amount of distributions to be made is less than $50 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars. Whenever any payment or distribution of a fraction of a dollar under the Plan would otherwise be called for, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

### Section 7.9    Surrender of Securities or Instruments

As a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of a Claim or Interest shall be deemed to have surrendered the certificates or other documentation underlying each such Claim, and all such surrendered certificates and other documentation shall be deemed to be cancelled pursuant to Article IV of the Plan, except to the extent otherwise provided in the Plan.

### Section 7.10   Compliance Matters

In connection with the Plan, to the extent applicable, the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Debtors and Plan Administrator reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

### Section 7.11    Claims Paid or Payable by Third Parties

The Claims and Solicitation Agent shall reduce in full a Claim to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Distribution Agent without any further notice to or action, order, or approval of the Bankruptcy Court.  To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Distribution Agent on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution under the Plan to the Distribution Agent, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

### Section 7.12    Setoffs

Except as otherwise expressly provided for in the Plan, the Debtors, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the Debtors or the Post-Effective Date Debtors, as applicable, may hold against the Holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtors of any such Claims, rights, and Causes of Action that the Debtors may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtors, unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date or has otherwise indicated in a timely filed proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to Section 553 of the Bankruptcy Code or otherwise.

### Section 7.13    Allocation of Plan Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

## ARTICLE VIII
## EFFECT OF PLAN ON CLAIMS AND INTERESTS

### Section 8.1    Compromise and Settlement

Pursuant to Bankruptcy Rule 9019(a), the Debtors may compromise and settle various (a) Claims or Interests and (b) Causes of Action that the Debtors have against other Persons or Entities up to the Effective Date.  After the Effective Date, any such right shall pass to the Litigation Trustee to the extent provided in the Plan without the need for further approval of the

Bankruptcy Court; provided, however, the Litigation Trustee may settle derivative claims/causes of action as such term is used in Bankruptcy Rule 7023.1(c), if any, only with court approval, to the extent that such court approval is required by Bankruptcy Rule 7023.1(c).

### Section 8.2    Releases by the Debtors

**Pursuant to Section 1123(b) of the Bankruptcy Code, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and their Estates, as applicable, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of any of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims, asserted or assertable on behalf of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or any other Entity, based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' prepetition and postpetition, in- or out-of-court restructuring and sale efforts, the Chapter 11 Cases, the Sale, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, preparation, entry, and execution of the Cash Collateral Order, the negotiation, formulation, preparation, dissemination and filing of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the Asset Purchase Agreement, the Sale Order or related agreements, instruments, or other documents, the pursuit of the Sale, the pursuit of consummation of the Sale, the pursuit of Confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan; *provided* that, nothing in this Section 8.2 shall be construed to release the Released Parties from their gross negligence, willful misconduct, or fraud as determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligation or liability of any Person or Entity under the Plan, the Asset Purchase Agreement, the Sale Order, the Cash Collateral Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties, (b) a good-faith settlement and compromise of the claims released by the Debtor Release; (c) given and made after due notice and opportunity for**

hearing; and (d) a bar to any of the Debtors or the Estates or any other Entities from asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property, released pursuant to the Debtor Release.

Section 8.3    Releases by Releasing Parties

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Released Party and each other Releasing Party from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or the Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' prepetition and postpetition, in- or out-of-court restructuring and sale efforts, the Chapter 11 Cases, the Sale, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, preparation, entry, and execution of the Cash Collateral Order, the negotiation, formulation, preparation, dissemination and filing of the Plan (including, for the avoidance of doubt, the Plan Supplement), the Disclosure Statement, the Asset Purchase Agreement, the Sale Order, or related agreements, instruments, or other documents, the pursuit of the Sale, the pursuit of consummation of the Sale, the pursuit of Confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date of the Plan related to the Debtors and the Chapter 11 Cases; provided that, nothing in this Section 8.3 shall be construed to release the Released Parties or Releasing Parties from their gross negligence, willful misconduct, or fraud as determined by a Final Order.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligation or liability of any Entity under the Plan, the Asset Purchase Agreement, the Sale Order, the Cash Collateral Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (b) any asbestos claims or any personal injury claims, in each case that have been or may be asserted against insurance or non-debtor third parties, unless such non-debtor third parties are Released Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Releasing Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Releasing Party Release is: (a) consensual, (b) in exchange for the good and valuable consideration provided by the Released Parties, (c) a good-faith settlement and

compromise of claims released by the Releasing Party Release; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Releasing Parties asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or Releasing Parties or their property, released pursuant to the Releasing Party Release.

### Section 8.4    Exculpation and Limitation of Liability

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Releasing Party Release, and notwithstanding anything herein to the contrary, each Exculpated Party is hereby released and exculpated from any claim, obligation, Cause of Action, or liability for any action taken or omitted to be taken during the period commencing on the Petition Date through and including the Effective Date in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming, administering, or implementing the Plan, or consummating the Plan, the Disclosure Statement, the Cash Collateral Order, the Asset Purchase Agreement, the Chapter 11 Cases, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; *provided* that, nothing in this Section 8.4 shall be construed to release the Exculpated Parties from their gross negligence, willful misconduct, or fraud as determined by a Final Order. Each Exculpated Party has, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the restructuring of Claims and Interests in the Chapter 11 Cases, the negotiation, formulation, or preparation of the agreements, instruments, or other documents pursuant to the Plan, and the solicitation and distribution of the Plan and, therefore, is not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not release any post-Effective Date obligation or liability of any Entity under the Plan, Asset Purchase Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### Section 8.5    Injunction

In accordance with Bankruptcy Code Section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code Section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and interests against the Debtors, and Bankruptcy Code Section 1141(a) provides that the Plan, as confirmed, will be binding to the extent provided therein. As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan. All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims, Interests, Causes of Action, or liabilities that: (1) are subject to compromise and settlement pursuant to the terms of the Plan; (2) have been released pursuant to the Plan; (3) were purchased and released by the Purchaser in connection with the Sale; (4) are subject to exculpation pursuant to the Plan; or (5) are otherwise satisfied, stayed, released, or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from commencing or continuing in any manner, any action or other proceeding, including on account of any claims, interests, Causes of Action, or liabilities that have been compromised or settled against the Debtors or any Entity so released or exculpated (or the property or estate of any Entity, directly or indirectly, so released or exculpated) on account of, or in connection with or with respect to, any discharged, released, settled, compromised, or exculpated claims, interests, Causes of Action, or liabilities, including being permanently enjoined and precluded, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtors, the Litigation Trust, the Released Parties, or Exculpated Parties (as applicable): (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estate of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff (*i.e.*, a Proof of Claim or motion asserting such rights), and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released, exculpated, or settled pursuant to the Plan.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan by the Debtors, the Post-Effective Date Debtors, the Litigation Trust, and their respective affiliates, employees, advisors, officers and directors, or agents.

### Section 8.6    *Subordinated Claims*

Except as otherwise provided in the Plan, the allowance, classification, and treatment of all Allowed Claims and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise. All Claims and all rights and claims between or among Holders of Claims relating in any manner whatsoever to distributions on account of Claims or Interests, based upon any claimed

subordination rights, whether asserted or unasserted, legal or equitable, shall be deemed satisfied by the distributions under the Plan to Holders of Claims having such subordination rights, and such subordination rights shall be deemed waived, released and terminated as of the Effective Date. Except as otherwise specifically provided for in the Plan, distributions to the various Classes of Claims hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any Holder of a Claim by reason of any subordination rights or otherwise, so that each Holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan

Except as otherwise provided in the Plan, the right of the Debtors or the Litigation Trustee on behalf of the Post-Effective Date Debtors to seek subordination of any Claim or Interest pursuant to Section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim or Interest that becomes a Subordinated Claim at any time shall be modified to reflect such subordination. Unless the Plan or the Confirmation Order otherwise provide, no distributions shall be made on account of a Claim subordinated pursuant to this **Section 8.6** unless ordered by the Bankruptcy Court.

### Section 8.7    Protection Against Discriminatory Treatment

Consistent with Section 525 of the Bankruptcy Code, no Governmental Unit shall discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Post-Effective Date Debtors, or another Entity with whom the Post-Effective Date Debtors have been associated, solely because the Post-Effective Date Debtors have been debtors under chapter 11, have been insolvent before the commencement of the Chapter 11 Cases, or have not paid a debt that is settled and released in the Chapter 11 Cases.

### Section 8.8    Release of Liens

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Post-Effective Date Debtors and their successors and assigns.

### Section 8.9    Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding Section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as non-contingent or (b) the relevant Holder of a Claim has filed a contingent proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE IX
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### Section 9.1    Conditions Precedent to the Effective Date of the Plan

The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with **Section 9.2** of the Plan:

(a)    the Plan and Confirmation Order shall be in form reasonably acceptable to the Debtors and, solely with respect to any provision that may adversely affect the Purchaser, as applicable, which consent or waiver shall not be unreasonably withheld, conditioned, or delayed;

(b)    the Bankruptcy Court shall have entered the Disclosure Statement Order and the Confirmation Order and, each shall be a Final Order;

(c)    the Professional Claims Reserve shall have been funded in Cash in full and the Plan Administration Reserve shall have been funded with the amount provided in the Plan Administration Budget;

(d)    All Restructuring Expenses incurred or estimated to be incurred as of the Effective Date shall have been paid in full;

(e)    all authorizations, consents, certifications, approvals, rulings, no action letters, opinions or other documents, or actions necessary to implement the Plan shall have been executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date);

(f)    the Plan Administrator shall have been appointed and shall have assumed all rights and responsibilities under the Plan and the Plan Administrator Agreement;

(g)    the Litigation Trust Agreement shall have been executed, and the Litigation Trustee shall have been appointed and shall have assumed all rights and responsibilities under the Plan and the Litigation Trust Agreement; and

(h)    all Statutory Fees then due and payable to the U.S. Trustee shall have been paid and satisfied in full.

### Section 9.2    Waiver of Conditions Precedent

The conditions set forth in **Section 9.1** of the Plan may be waived, in whole or in part, the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; *provided that*, solely with respect to any condition that may adversely affect the Purchaser or the Prepetition Secured Parties, subject to such party's consent (which in each instance shall not be unreasonably withheld).

### Section 9.3    Notice of Effective Date

The Plan Administrator shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in **Section 9.1** of the Plan have been satisfied or waived pursuant to **Section 9.2** of the Plan.

### Section 9.4    Effect of Non-Occurrence of Conditions to Consummation

If, prior to consummation of the Plan, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Debtors or any other Entity, or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE X
## BANKRUPTCY COURT JURISDICTION

### Section 10.1    Retention of Jurisdiction

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan (without prejudice to the rights, if any, of any party in interest to seek to withdraw the bankruptcy reference pursuant to 28 U.S.C. § 157(d) and related law with respect to any issue or proceeding subject to mandatory or discretionary withdrawal), including jurisdiction to:

(a)    resolve any matters related to Executory Contracts, including: (i) the assumption, assumption and assignment, or rejection of any Executory Contract to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear and determine, and, if necessary, liquidate any Claims arising therefrom including Cure Amount pursuant to Section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract that is assumed (or assumed and assigned); (iii) the Post-Effective Date Debtors' amendment, modification, or supplement after the Effective Date, pursuant to **Article V** of the Plan, of the lists of Executory Contracts to be assumed (or assumed and assigned) or rejected or otherwise; and (iv) any dispute regarding whether a contract or lease is or was executory, expired or terminated;

(b)    adjudicate any and all adversary proceedings, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases, the Plan, or that were the subject of proceedings before the Bankruptcy Court, prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(c)    ensure that distributions to Holders of Allowed Claims and Interests are accomplished as provided herein and adjudicate any and all disputes arising from or relating to distributions under the Plan;

(d)    allow in whole or in part, disallow in whole or in part, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest,

including hearing and determining any and all objections to the allowance or estimation of Claims or Interests filed, both before and after Confirmation of the Plan, including any objections to the classification of any Claim or Interest, and the resolution of request for payment of any Administrative Claim;

(e)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(f)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or, subject to any applicable forum selection clause, any contract, instrument, release, or other document created in connection with the Plan or the Disclosure Statement;

(g)     enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified, and/or vacated;

(h)     enter and implement such orders as may be necessary or appropriate to execute, implement or consummate the provisions of the Plan or the Asset Purchase Agreement and all contracts, instruments, releases, and other agreements and documents created in connection with the Plan, the Plan Supplement, and the Disclosure Statement;

(i)     enter and enforce any order for the sale of property pursuant to Sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(j)     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(k)     hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(l)     determine requests for the payment of Claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code;

(m)     adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

(n)     hear and determine all disputes involving the existence, nature, scope, or enforcement of the exculpations, injunctions and releases granted in connection with and under the Plan, including under **Article VIII** of the Plan;

(o)     enforce the injunction, release and exculpation provisions set forth in **Article VIII** of the Plan;

(p)     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with consummation of the Plan, including the interpretation, implementation, or

enforcement of the Plan and the Confirmation Order, as applicable, including disputes arising under agreements, documents, or instruments executed in connection with the Plan or any disputes arising in connection with any Entity's obligations incurred in connection with the Plan;

(q)     hear and determine all suits or adversary proceedings to recover assets of the Debtors and property of their Estates, wherever located;

(r)     hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(s)     grant any consensual request to extend the deadline for assuming or rejecting unexpired leases pursuant to Section 365(d)(4) of the Bankruptcy Code;

(t)     enter a Final Decree closing the Chapter 11 Cases;

(u)     hear any other matter not inconsistent with the Bankruptcy Code; and

(v)     enforce all orders previously entered by the Bankruptcy Court.

From the Confirmation Date through the Effective Date, the Bankruptcy Court shall retain jurisdiction with respect to each of the foregoing items and all other matters that were subject to its jurisdiction prior to the Confirmation Date.  Nothing contained herein shall be construed to increase, decrease, or otherwise modify the independence, sovereignty, or jurisdiction of the Bankruptcy Court.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

### Section 11.1    Binding Effect

Upon the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtors, all current and former Holders of Claims, all current and former Holders of Interests, and all other parties-in-interest and their respective heirs, successors, and assigns, and resolve any matters related to Executory Contracts, including: (i) the assumption, assumption and assignment, or rejection of any Executory Contract to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear and determine, and, if necessary, liquidate any Claims arising therefrom, including Cure Amount, pursuant to Section 365 of the Bankruptcy Code; (ii) any potential contractual obligation under any Executory Contract that is assumed (or assumed and assigned); (iii) the Post-Effective Date Debtors' amendment, modification, or supplement after the Effective Date.

### Section 11.2    Payment of Statutory Fees

All Statutory Fees payable on or before the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  On and after the Effective Date, the Post-Effective Date Debtors, the Plan Administrator, and the Litigation Trust shall be jointly and severally liable for paying any and all Statutory Fees in full in Cash when due in each Chapter 11 Case for each quarter (including

any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors shall file all monthly operating reports due before the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Post-Effective Date Debtors, the Plan Administrator, and the Litigation Trust shall file with the Bankruptcy Court a post-confirmation quarterly report for each Chapter 11 Case for each quarter (including any fraction thereof) such case is pending, using UST Form 11-PCR. Notwithstanding anything to the contrary in the Plan, (i) Statutory Fees are Allowed; (ii) the U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Statutory Fees; and (iii) the U.S. Trustee shall not be treated as providing any release under the Plan.

### Section 11.3   *Statutory Committee Dissolution*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Creditors' Committee, shall dissolve, and members thereof shall be released from all rights and duties from or related to the Chapter 11 Cases; *provided, however*, that the Creditors' Committee will stay in existence solely for the limited purpose of filing and prosecuting final fee applications.

### Section 11.4   *Modification and Amendment*

Except as otherwise specifically provided in the Plan, subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code, the Debtors reserve the right to modify the Plan, subject to any applicable consent rights set forth herein, whether such modification is material or immaterial prior to Confirmation, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan) and any consent rights as set forth herein, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to each Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan after Confirmation, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided* that any modifications or amendments, whether before or after Confirmation, that impact the treatment of the Prepetition Lender Claims shall require the consent of the Administrative Agent (whose consent may not be unreasonably withheld).

### Section 11.5   *Confirmation of Plan*

The Debtors request Confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to Section 1126 of the Bankruptcy Code. The Debtors reserve the right to amend the Plan to any extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

### Section 11.6    Additional Document

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator, as applicable, and Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provision and intent of the Plan.

### Section 11.7    Revocation, Withdrawal, Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Effective Date and file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain Claims or Class of Claims or the allocation of the distributions to be made hereunder), the assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan shall be null and void in all respects. In such event, nothing contained herein or in the Disclosure Statement, and no acts taken in preparation for consummation of the Plan, shall be deemed to constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the Debtors or any other Entity, to prejudice in any manner the rights and defenses of the Debtors, the Holder of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, or to constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

### Section 11.8    Notices

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered on the parties below shall be served as follows:

If to the Debtors:

    True Value Company, L.L.C.
    8600 West Bryn Mawr Ave.
    Chicago, IL, 60631

    *With copies (which shall not constitute notice) to:*

    Skadden, Arps, Slate, Meagher & Flom LLP
    320 S. Canal St.
    Chicago, IL 60606
    Attention:  Ron E. Meisler (Ron.Meisler@skadden.com)
                Jennifer Madden (Jennifer.Madden@skadden.com)

    One Manhattan West
    395 9th Ave.
    New York, NY 10001

Attention:  Evan A. Hill (Evan.Hill@skadden.com)
                Moshe S. Jacob (Moshe.Jacob@skadden.com)

920 North King Street
Wilmington, DE 19801
Attention:  Joseph O. Larkin (Joseph.Larkin@skadden.com)

- and -

Glenn Agre Bergman & Fuentes LLP
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
Attention:  Andrew K. Glenn (aglenn@glennagre.com)
                Malak S. Doss (mdoss@glennagre.com)

- and -

Young Conaway Stargatt & Taylor, LLP
One Rodney Square
1000 North King Street
Wilmington, DE 19801
Attention:  Edmon L. Morton (emorton@ycst.com)
                Timothy R. Powell (tpowell@ycst.com)

If to the Office of the United States Trustee:

Office of the United States Trustee
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
Attention: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov)

If to the Prepetition Lenders:

Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Attention:  Regina S. Kelbon (regina.kelbon@blankrome.com)
                Stanley B. Tarr (Stanley.tarr@blankrome.com)

One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Attention:  John E. Lucian (john.lucian@blankrome.com)

### Section 11.9    Term of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### Section 11.10  Governing Law

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law, rule or regulation is applicable, or to the extent that an exhibit, supplement, or other document related to the Plan, provides otherwise, the Plan shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.  Corporate governance matters shall be governed by the laws of the state of incorporation, formation, or functional equivalent thereof, as applicable, of the applicable Post-Effective Date Debtor.

### Section 11.11  Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### Section 11.12  Severability

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors, and (c) non-severable and mutually dependent.

### Section 11.13  No Waiver or Estoppel

Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert that its Claim or Interest should be Allowed in a certain amount, in a certain priority, be secured, or not be subordinated by virtue of an agreement made with the Debtors and/or their counsel or any other party, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court; provided however, that this provision is

without prejudice to any Governmental Unit whose claims are subject to the Governmental Bar Date.

Dated: Wilmington, Delaware
      February 12, 2025

Respectfully submitted,

TRUE VALUE COMPANY, L.L.C., on behalf of itself
and its Debtor affiliates

*/s/ Kunal S. Kamlani*
Name:  Kunal S. Kamlani
Title:    Chief Transformation Officer