**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRUE VALUE COMPANY, L.L.C., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-12337 (KBO)<br><br>Jointly-Administered<br><br>**Re: D.I. #905, 906, 996**<br><br>**Hearing Date: March 28, 2025**<br>**Obj. Deadline: March 17, 2025** |

**LIMITED OBJECTION OF SOMERSET LEASING XXV, LLC, AS SUCCESSOR-IN-INTEREST TO SOMERSET CAPITAL GROUP, LTD., ITSELF SUCCESSOR-IN-INTEREST TO ARC EQUIPMENT FINANCE LLC, SOMERSET LEASING CORP. XXII, AS SUCCESSOR-IN-INTEREST TO SOMERSET CAPITAL GROUP, LTD., ITSELF SUCCESSOR-IN-INTEREST TO ARC EQUIPMENT FINANCE LLC AND SOMERSET LEASING CORP. 27, AS SUCCESSOR-IN-INTEREST TO SOMERSET CAPITAL GROUP, LTD., ITSELF SUCCESSOR-IN-INTEREST TO ARC EQUIPMENT FINANCE LLC TO (1) THE DISCLOSURE STATEMENT FOR THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES AND (2) THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES**

Somerset Leasing XXV, LLC ("**Somerset XXV**"), as successor-in-interest to Somerset Capital Group, Ltd. ("**Somerset Capital**") itself successor-in-interest to ARC Equipment Finance LLC ("**ARC**"), Somerset Leasing Corp. XXII ("**Somerset XXII**"), as successor-in-interest to Somerset Capital, itself successor-in-interest to ARC, and Somerset Leasing Corp. 27 ("**Somerset 27**"; and, together with Somerset XXV and Somerset XXII, the "**Somerset Parties**"), as successor-in-interest to Somerset Capital, itself successor-in-interest to ARC, by and through their

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, are True Value Company, LLC (9896), TV Holdco II, LLC (2272), TV TSLC, LLC (7025), TV GPMC, LLC (8136), True Value Retail, LLC (7946), True Value.com Company, LLC (6386), True Value Virginia LLC (9197), and Distributors Hardware LLC (8106).

undersigned counsel, hereby file this limited objection (the "**Objection**") to: (1) the Disclosure Statement for the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**Disclosure Statement**") [Docket No. 906]; and (2) the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**Plan**") [Docket No. 905] and in support thereof, respectfully represent as follows:

## FACTUAL BACKGROUND

### I.   The Chapter 11 Case

1. On October 14, 2024 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed voluntary petitions for relief in the United States Bankruptcy Court for the District of Delaware (the "**Court**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. On October 14, 2024 the Debtors filed their *Motion of Debtors for Entry of an Order (I) Establishing Bidding, Noticing, and Assumption and Assignment Procedures, (II) Approving the Sale of Substantially All of The Debtors' Assets, and (III) Granting Related Relief* [Docket No. 12] (the "**Sale Motion**"). Pursuant to the Sale Motion, the Debtors seek to, *inter alia*: (i) sell substantially all of their assets; and (ii) assume and/or assign certain of the Debtors' executory contracts.

3. On November 4, 2024 the Court entered an *Order (I) Approving the Bid Protections; (II) Approving the Assumption and Assignment Procedures; (III) Authorizing and Approving the Form of Notice of the Sale of Substantially All of the Assets of the Debtors; (IV) Authorizing and Scheduling the Sale Hearing and Setting Other Related Dates and Deadlines; and (V) Granting Related Relief* [Docket No. 297] (the "**Bid Protections Order**").

4.  On November 9, 2024 the Debtors filed the *Notice of Cancellation of Auction and Designation of the Stalking Horse Bidder as the Successful Bidder* [Dkt. No. 362].

5.  On November 13, 2024, the Debtors filed the *Order (A) Approving Sale of Substantially All of Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests, and Encumbrances, (B) Authorizing Debtors to Enter Into and Perform Under Asset Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts, and (D) Granting Related Relief* [Dkt. No. 411] (the "**Sale Order**").

6.  On November 13, 2024, the Debtors file the *First Supplemental Notice of Proposed Assumption and Assignment of Certain Executory Contracts* (the "**First Cure Notice**") [Dkt. No. 416].

7.  On November 15, 2024, the Somerset Parties filed a *Limited Objection to the Debtors' Notice of Proposed Assumption and Assignment of Certain Executory Contracts* (the "**Somerset Objection to the First Cure Notice**") [Dkt. No. 444].

8.  On January 21, 2025, the Debtors filed the: (1) Motion to Approve the Disclosure Statement on an Interim Basis (the "**Interim Disclosure Motion**") [Dkt. No. 795]; (2) the Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**Initial Plan**") [Dkt. No. 796]; and (3) Disclosure Statement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**Initial Disclosure Statement**") [Dkt. No. 797].

9.  On January 24, 2025, the Debtors filed a *Second Supplemental Notice of Proposed Assumption and Assignment of Certain Executory Contracts* (the "**Second Cure Notice**") [Dkt. No. 822].

10. On February 3, 2025 the Somerset Parties filed a *Limited Objection to the Debtors' Second Supplemental Notice of Proposed Assumption and Assignment of Certain Executory Contracts* (the "**Somerset Objection to the Second Cure Notice**") [Dkt. No. 844].

11. On February 4, 2025, the Somerset Parties filed a Limited Objection to the Interim Disclosure Motion [Docket No. 865].

12. On February 7, 2025, the Debtors filed the: (1) First Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**First Amended Plan**") [Dkt. No. 878]; and (2) First Amended Disclosure Statement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**First Amended Disclosure Statement**") [Dkt. No. 879].

13. On February 10, 2025, the Somerset Parties withdrew their Limited Objection to the Interim Disclosure Motion [Docket No. 893].

14. On February 12, 2025, the Court entered an Order approving the Interim Disclosure Motion [Docket No 911].

15. On February 12, 2025, the Debtors filed the Disclosure Statement and Plan.

16. On March 7, 2025, the Debtors filed the Notice of Filing of Plan Supplement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates (the "**Plan Supplement**") [Docket No. 996].

**II.  The Leases between the Somerset Parties and the Debtors**

17. ARC and Debtor True Value Company, L.L.C. ("**TVC**") executed that certain Master Equipment Lease Agreement #107 dated November 23, 2020 (the "**Master Lease Agreement**"), and corresponding Schedules 2, 3, 4, and 7, whereby ARC agreed to lease various items of point of sale, packaging, conveyer, battery, palletizer and other equipment (collectively,

the "**Equipment**") to TVC, and Schedule 9 (together with Schedules 2, 3, 4, and 7, the "**Schedules**"), whereby ARC agreed to lease the Equipment to Debtor TV GPMC, LLC ("**TVGPMC**"), and certain Assignment, Assumption and Indemnity Agreements (collectively, the "**Assignments**"). TVC guaranteed the payment and performance of TVGPMC's obligations under Schedule 9.  The Master Lease Agreement, the Schedules, and the Assignments are collectively referred to as the "**Lease Documents**" and annexed hereto as **Exhibit A**. The Master Lease Agreement is incorporated by reference in each Schedule.  See Master Lease Agreement, ¶1.

18. The Schedules were assigned to Somerset Capital. Somerset Capital, which in turn assigned Schedule Nos. 2 and 3 to Somerset XXV, Schedule Nos. 4 and 9 to Somerset XXII, and Schedule No. 7 to Somerset 27.

19. Pursuant to Schedule No. 2, TVC agreed to make sixty (60) monthly payments of $6,347.21 to Somerset XXV, payable on the first (1st) day of each month, starting on July 1, 2021.

20. Pursuant to Schedule No. 3, TVC agreed to make sixty (60) monthly payments of $5,493.65 to Somerset XXV, payable on the first (1st) day of each month, starting on August 1, 2021.

21. Pursuant to Schedule No. 4, TVC agreed to make forty-two (42) monthly payments of $13,613.85 to Somerset XXII, payable on the first (1st) day of each month, starting on September 1, 2021.

22. Pursuant to Schedule No. 7, TVC agreed to make sixty (60) monthly payments of $33,110.92 to Somerset 27, payable on the first (1st) day of each month, starting on January 1, 2022.

23. Pursuant to Schedule No. 9, TVGPMC agreed to make sixty (60) monthly payments of $73,390.00 to Somerset XXII, payable on the first (1st) day of each month, starting on December 22, 2022.

24. Pursuant to the Lease Documents, the aggregate amount of monthly payments due and payable by TVC and TVGPMC to the Somerset Parties is $131,955.60, payable on the first (1st) day of each month (the "**Monthly Lease Payment**").

25. TVC is in prepetition default of the Lease by failing to remit monthly payments as of the Petition Date to: (i) Somerset XXV pursuant to Schedule No. 2 in the amount of $6,347.21; (ii) Somerset XXV pursuant to Schedule No. 3 in the amount of $20,463.91; (iii) Somerset XXII pursuant to Schedule No. 4 in the amount of $315.95; and (iv) Somerset 27 pursuant to Schedule No. 7 in the amount of $35,097.58.

26. Debtor TVGPMC is in prepetition default of the Lease by failing to remit monthly payments as of the Petition Date to Somerset XXII pursuant to Schedule No. 9 in the amount of $73,390.00.

27. Consequently, Somerset XXV holds a valid prepetition unsecured claim against the Debtors' estate in the amount of $26,811.12, Somerset XXII holds a valid prepetition unsecured claim against the Debtors' estate in the amount of $73,705.95, and Somerset 27 holds a valid prepetition unsecured claim against the Debtors' estate in the amount of $35,097.58. The total value of the Somerset Parties' prepetition unsecured claims is $135,614.65 (together, the "**Prepetition Claims**").

## THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION

28. The statutory standard for approval of a disclosure statement is that the disclosure statement must provide "adequate information" so that the creditors can decide whether or not to approve the proposed plan treatment of their respective claims. *In re Duratech Indus., Inc.*, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd,* 241 B.R. 283 (E.D.N.Y. 1999); *See also*, 11 U.S.C. § 1125.

29. The phrase "adequate information" is defined by statute. It means:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan ...

11 U.S.C. § 1125(a)(1). "Thus, it is understood that the general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan." *In re Phoenix Petroleum Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001). *See also Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988).

30. The Debtors' obligations to the Somerset Entities created under the Lease Documents are "true leases". As such, the Prepetition Claims of the Somerset Entities are considered Class 4, General Unsecured Claims, as defined by the Plan which states that a General Unsecured Claim "means any Claim that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, Prepetition Lender Claim, or Intercompany Claims." *See*

Plan, Section 1.1.69. The Somerset Entities are also an "impaired" creditor class, as defined by the Plan and thus, entitled to vote on the Plan. *See* Plan, Section 1.1.73.

31. The Somerset Entities object to approval of the Disclosure Statement because the Disclosure Statement does not provide adequate information for the Somerset Entities to make an informed judgment about the proposed Plan. More specifically, the Disclosure Statement provides no estimate as to how much Class 4 creditors such as the Somerset Entities can expect to recover with respect to their claims.

32. The Disclosure Statement discusses the creation of a "Litigation Trust" pursuant to a "Litigation Trust Agreement" to pursue "Retained Causes of Action" from which "Litigation Trust Distributable Proceeds", if any, are to be distributed to the "Litigation Trust Beneficiaries", defined as "all Holders entitled to Litigation Trust Distributable Proceeds" in the Plan. *See* Disclosure Statement, Article IV, par. 9. The Plan Supplement includes the Litigation Trust Agreement which categorizes the various types of "Retained Causes of Action" that the Litigation Trustee (as defined in the Plan and Litigation Trust Agreement) could potentially pursue. However, the Debtors do not even attempt to project the potential value of the Retained Causes of Action in the Disclosure Statement, the Plan Supplement or elsewhere. Moreover, the Initial Litigation Trust Funded Amount, as defined by the Plan, is just $150,000. *See* Plan, Section 1.1.74. Even as an initial estimate of the fees and costs to be incurred in pursuing the Retained Causes of Action, this amount is not very promising with respect to how much the Debtors' expect to recover on account of the Retained Causes of Action for distribution to Class 4 claimants such as the Somerset Entities.

33. Further, the lack of clarity as to the potential value of the Retained Causes of Action is concerning to the Somerset Entities for several reasons. First, while the Schedule of Assumed Executory Contracts filed as Exhibit D to the Plan Supplement is promising in that it indicates the

8

Debtors' intent to assume and assign the Lease Documents to Do It Best (the "**Purchaser**"), Section 5.1 of the Plan states, in relevant part, that any assumption and assignment of executory contracts is only final as of the Effective Date (as defined in the Plan). *See* Plan, Section 5.1. This is concerning to the Somerset Parties because the Plan defines "Effective Date" as the first business day after various conditions precedent are met, which include, but are not limited to, entry of an order confirming the Plan. In other words, the Somerset Parties will not know whether the Lease Documents will ultimately be assumed and assigned to the Purchaser even upon confirmation of the Plan, unless all other conditions precedent described in the Plan are also met, such as payment in full of all Restructuring Expenses (as defined in the Plan), the filing of various documents with applicable government entities, and other various requirements not directly related to entry of the order confirming the Plan. This is particularly troubling to the Somerset Parties, because as of the date of the instant filing, the Schedule of Assumed Executory Contracts in the Plan Supplement does not resolve all issues related to the cure of the Somerset Entities' Prepetition Claims that is required for the Lease Documents to be assumed and assigned to the Purchaser. More specifically, the cure amount proposed to Somerset XXV on account of Schedule 2 is listed as $79,737.21, when in fact it should be $6,347.21. Unless this discrepancy is reconciled, the Purchaser may ultimately decide not to become the assignee of the Lease Documents, leaving the Somerset Parties with rejection damages claims, which are general unsecured claims, for which the Debtors have not provided any estimate of recovery in the Disclosure Statement or Plan.

34. In sum, the Somerset Parties have a cure amount yet to be reconciled, do not know if or when the Lease Documents will be assumed and assigned to the Purchaser, and in the event no assumption and assignment occurs, do not even know how much they are projected to recover on account of any rejection damages claims. Consequently, the Disclosure Statement does not

9

contain adequate information for the Somerset Parties to make an informed decision as to how to vote on the Plan.

## THE DISCLOSURE STATEMENT AND PLAN FAIL THE BEST INTERESTS OF CREDITORS TEST

35.     Section 11292(a)(7)(A) states that:

(a) The court shall confirm a plan only if all of the following requirements are met:

…

(7) With respect to each impaired class of claims or interests--

(A) each holder of a claim or interest of such class--

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 11292(a)(7)(A). This test is known as the best interests of creditors test. *See generally, In re Valley Park Grp., Inc.*, 96 B.R. 16 (Bankr. N.D.N.Y 1989).

36.     The Disclosure Statement provides a liquidation analysis attached as Exhibit B to the Disclosure Statement. *See* Disclosure Statement, Exhibit B ("**Liquidation Analysis**"). However, the Liquidation Analysis fails to explain how much general unsecured creditors such as the Somerset Parties would have received in a hypothetical liquidation of the Debtor compared with the proposed recovery under the Plan. The amounts under the Chapter 11 Plan and Chapter 7 Liquidation columns in the Liquidation Analysis do not say zero, but are simply blank. As such, no holder of general unsecured claims can determine whether they would be paid more per the

Plan than they would in a hypothetical chapter 7 liquidation. Consequently the Plan cannot be confirmed.

## CONCLUSION

WHEREFORE, Somerset respectfully requests that this Court enter an Order denying approval of the Disclosure Statement and confirmation of the Plan.

Date:   March 17, 2025                                  Respectfully submitted,

**McCARTER & ENGLISH, LLP**

*/s/ Matthew J. Rifino*
Matthew J. Rifino (DE# 4749)
Renaissance Centre
405 North King Street, Suite 800
Wilmington, Delaware 19801
(T) 302.984.6300
(F) 302.984.6399
Mrifino@mccarter.com

-- And --

*/s/ Inez M. Markovich*
Inez M. Markovich, Esq. (*admitted pro hac vice*)
1600 Market Street, Suite 3900
Philadelphia, Pennsylvania 19103
Tel: 215-979-3800
Fax: 215-979-3899
imarkovich@mccarter.com

*/s/ Yan Borodanski*
Yan Borodanski, Esq. (*admitted pro hac vice*)
Four Gateway Center
100 Mulberry Street, 12th Floor
Newark, New Jersey 07102
Tel: 973-849-4135
Email: yborodanski@mccarter.com

*Counsel for Somerset Leasing XXV, LLC, Somerset Leasing Corp. XXII, and Somerset Leasing Corp. 27*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| TRUE VALUE COMPANY, L.L.C., *et al.*,[2] | : Case No. 24-12337 (KBO) |
| | : |
| Debtors. | : (Jointly Administered) |

**CERTIFICATE OF SERVICE**

I hereby certify that in addition to the notice and service provided through the court's ECF system, on March 17, 2025, I caused a true and correct copy of the *Limited Objection Of Somerset Leasing XXV, LLC, As Successor-In-Interest To Somerset Capital Group, Ltd., Itself Successor-In-Interest To Arc Equipment Finance LLC, Somerset Leasing Corp. XXII, As Successor-In-Interest To Somerset Capital Group, Ltd., Itself Successor-In-Interest To Arc Equipment Finance LLC and Somerset Leasing Corp. 27, as Successor-In-Interest To Somerset Capital Group, Ltd., Itself Successor-In-Interest to Arc Equipment Finance LLC To (1) The Disclosure Statement for the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates and (2) the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* to be served by email on:

Joseph O. Larkin
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801

---

[2] The Debtors in these Chapter 11 Cases, along with the last four digits of their federal tax identification numbers, are True Value Company, LLC (9896), TV Holdco II, LLC (2272), TV TSLC, LLC (7025), TV GPMC, LLC (8136), True Value Retail, LLC (7946), True Value.com Company, LLC (6386), True Value Virginia LLC (9197), and Distributors Hardware LLC (8106).

13

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Email: Joseph.Larkin@skadden.com
*Counsel for the Debtors*
*and Debtors in Possession*

-and

Ron E. Meisler
Jennifer Madden
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
320 South Canal Street
Chicago, Illinois 60606-5707
Email: Ron.Meisler@skadden.com; Jennifer.Madden@skadden.com
*Counsel for the Debtors*
*and Debtors in Possession*

-and-

Robert D. Drain
Evan A. Hill
Moshe S. Jacob
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Email:Robert.Drain@skadden.com;Evan.Hill@skadden.com; Moshe.Jacob@skadden.com
*Counsel for the Debtors*
*and Debtors in Possession*

-and-

Timothy R. Powell
Kristin L. McElroy
Kenneth J. Enos
Edmon L. Morton
YOUNG CONAWAY STARGATT & TAYLOR, LLP
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Email: tpowell@ycst.com; kmcelroy@ycst.com; kenos@ysct.com; emorton@ycst.com
*Efficiency Counsel to the*
*Debtors and Debtors in Possession*

Esther Hong
Malak Doss

Michelle Perez
GLENN AGRE BERGMAN & FUENTES
1185 Avenue of the Americas, 22nd Floor
New York, NY 10036
Email: ehong@glennagre.com; mdoss@glennagre.com; mperez@glennagre.com
*Counsel to the*
*Debtors and Debtors in Possession*

                                                              /s/ *Matthew J. Rifino*
                                                              Matthew J. Rifino (DE# 4749)