# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TRUE VALUE COMPANY, L.L.C., *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11939 (JTD)<br><br>Jointly Administered<br><br>**Objection Deadline: Extended to March 21, 2025 at 12:00 p.m. (ET)**<br>**Hearing Date: April 2, 2025 at 10:30 a.m. (ET)** |

## OBJECTION OF THE CHUBB COMPANIES TO SECOND AMENDED JOINT CHAPTER 11 PLAN OF TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES

ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Illinois Union Insurance Company, Westchester Fire Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc. Chubb Custom Insurance Company, ESIS, Inc. and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Objection (the "Objection") to the *Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 905] (as the same may be amended or otherwise supplemented from time to time, including by the Plan Modification (defined herein) the "Plan"),[2] and in support of the Objection, the Chubb Companies respectfully state as follows:

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2]   Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

## RELEVANT BACKGROUND

**A.     The Bankruptcy Case**

1.     On January 21, 2025 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

2.     On February 12, 2025, the Debtors filed the Plan [Docket No. 905].

3.     On March 7, 2025, the Debtors filed the *Notice of Filing Modifications to Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates and Blackline Thereof* [Docket No. 992] (the "<u>Plan Modification</u>").

4.     With respect to insurance policies generally, the Plan, as modified by the Plan Modification, provides as follows:

> Except as otherwise provided in the Plan (but notwithstanding section 5.1 of this Plan), the Asset Purchase Agreement, the Plan Supplement, or another applicable order of this Court, and unless such Insurance Policy (as defined below) (i) was previously rejected, assumed, or assumed and assigned by the Debtors or (ii) is the subject of a motion to reject or notice of rejection filed with the Court that is pending on the date of the Combined Hearing, each of the Debtors' insurance policies in existence on and as of the Effective Date, including any agreements, documents, or instruments relating thereto (collectively, the "Insurance Policies"), shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Post-Effective Date Debtors in accordance with, and subject to, sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, provided, however, that the Purchaser shall be responsible for any costs related to the assumption and assignment of the Insurance Policies. Any Insurance Policies that are not assumed, assumed and assigned or rejected on or prior to the Effective Date shall "ride through" the Effective Date and all of the Debtors' and Post-Effective Date Debtors' rights and defenses thereunder, including

>   defenses to any reliance on ipso facto provisions in any of the Insurance Policies, shall remain fully enforceable following the Effective Date. Nothing contained in the Plan shall (i) constitute an admission by the Debtors nor a determination by the Bankruptcy Court that any Insurance Policy is in fact an executory contract (or an Executory Contract, as used in this Plan), or that the Debtors or the Post-Effective Date Debtors, has any liability thereunder or (ii) constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, any insurer (the "Insurers") under any of the Insurance Policies.

Plan at Section 5.7.

5. The Plan also addresses D&O Policies and provides at "all D&O Policies shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by the Post-Effective Date Debtors, shall remain in full force and effect thereafter and shall continue as obligations of the Post-Effective Date Debtors in accordance with their respective terms, and all such D&O Policies shall vest in the Post-Effective Date Debtors." Plan at Section 5.8.

6. The Plan separately addresses the Debtors' workers' compensation insurance program and provides that "Except as otherwise provided in the Plan, the Asset Purchase Agreement or the Plan Supplement, on and after the Effective Date, the Post-Effective Date Debtors may, but are not required to, honor in the ordinary course of business. . .any other contracts, agreements, policies, programs, and plans for, among other things. . .workers' compensation insurance[.]" Plan at Section 5.6.

7. Finally, although the Plan generally provides for the rejection of all Executory Contracts unless the same are otherwise specifically assumed or otherwise provided for, the Plan also contemplates potential "assumption and assignment" of certain unidentified Executory Contracts. Plan at Section 5.1.

**B.    The Insurance Program.**

8. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors as named insureds.

9. Also prior to the Petition Date, the Chubb Companies and the Debtors and/or their affiliates also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

10. Pursuant to the Policies and Insurance Agreements (collectively, the "Insurance Program"),[3] the Chubb Companies provide, *inter alia*, general liability, workers' compensation, automobile, directors' and officer's, private company, excess, environmental, cargo, employment practices liability, accident, crime, special coverage, fiduciary liability, errors and omissions, Worldnet and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "Obligations").

11. The Insurance Program also includes, but is not limited to, certain documents pursuant to which ESIS, Inc. provides certain claims handling services to one or more of the Debtors and/or their affiliates or predecessors (collectively, the "ESIS Documents"), and the

---

[3] The descriptions of the Insurance Program set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Program. Reference is made to the Insurance Program for a complete description of their terms and conditions.

4

Obligations include, but are not limited to, amounts arising under and/or in connection with the ESIS Documents

13. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

13. Certain of the Debtors' Obligations are secured by certain collateral and other security provided by or on behalf of the Debtors in favor of the Chubb Companies.

## SUMMARY OF OBJECTION

14. The Chubb Companies object to the Plan on the grounds that: (I) the Post-Effective Date Debtors cannot continue to receive the benefits of the Insurance Program without remaining liable for the obligations thereunder; (II) to the extent that the Debtors seek to transfer the Insurance Program pursuant to the Plan or otherwise, the Insurance Program cannot be transferred without the consent of the Chubb Companies; (III) the terms of the Insurance Program cannot be altered through the Plan; and (IV) the Plan must provide that workers' compensation and direct action claims must continue in the ordinary course.

## OBJECTION

**I.    The Post-Effective Date Debtors Cannot Continue To Receive The Benefits Of The Insurance Program Without Remaining Liable For The Obligations Thereunder.**

15. As set forth above, the Debtors appear to seek to retain the benefits of their insurance policies, including their Insurance Policies, D&O Policies and workers' compensation policies; however, the Plan fails to clearly provide for the treatment of the obligations thereunder. *See, e.g.*, Plan Sections 5.6-5.8.

16. In addition, the Plan currently provides that "that the Purchaser shall be responsible for any costs related to the assumption and assignment of the Insurance Policies." *See* Plan at Section 5.7

17. It is well-established that debtors and their successors cannot receive benefits of a contract without being liable for the obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract

he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

18. Further, the Insurance Program is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

19. By proposing that the Purchaser be responsible for any costs related to the assumption and assignment of the Insurance Policies, the Plan currently contemplates an improper split of the Insurance Program and the obligations, rights, benefits, interests, and/or proceeds thereunder.

20. Accordingly, the Plan must be clarified to provide that, to the extent that the Debtors seek to retain the benefits of any portion of the Insurance Program, the entirety of the Insurance Program must be assumed by or must vest in the Post-Effective Date Debtors. The Post-Effective Date Debtors must also remain liable in full for all of the Debtors' Obligations arising under the Insurance Program, regardless of when they arise.

## II. The Insurance Program Cannot Be Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.

21. As noted above, the Plan contemplates the potential assignment of certain Executory Contracts assumed pursuant thereto.

22. To the extent the Debtors intend to assign or otherwise transfer any portion of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder, any such transfer cannot occur without the express written consent of the Chubb Companies.

23. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

24. Applicable non-bankruptcy law does, in fact, prohibit the assignment or transfer of insurance policies without the insurer's consent. *See, e.g.*, *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (declining to enforce agreement attempting to assign interest pertaining to rights under insurance policy which did not contain express written consent of insurance company explicitly required under policy)*; Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet*.) (holding same); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898, at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the

consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

25. Similarly, insurers cannot be compelled to provide insurance coverage to any entity that is not a party to the insurance contract. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Program cannot be assigned without the prior written consent of the Chubb Companies.

26. Any assignee will also need to satisfy the Chubb Companies' extensive underwriting and financial review process, which takes substantial time to complete. Additionally, as a condition precedent for any consent that may be given by the Chubb Companies to an

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Federal-Mogul Global*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) of the Bankruptcy Code to the extent they prohibit transfer to a § 524(g) trust); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g).

assignment or other transfer of the Insurance Program, certain requirements must be satisfied, which may include the execution an assumption agreement or similar agreement, in form and substance acceptable to the Chubb Companies.

27. Therefore, the Chubb Companies object to any and all such transfers of the Insurance Program and/or any of the rights, benefits, interests, and/or proceeds thereunder at this time.

### III. The Plan Cannot Modify, Alter Or Impair The Insurance Program.

28. The Plan contains provisions which provide for the release of liens, the vesting of assets free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan Sections 4.7; 8.3-8.5.

29. It is well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court").

30. Therefore, the Plan must also clarify that nothing in the Plan, Plan Supplement, Disclosure Statement, Confirmation Order or any other document related to the foregoing

including, but not limited to those provisions identified above, shall modify, alter or impair the Insurance Program, including the rights and obligations of the Chubb Companies and the Debtors thereunder, as well as the coverage provided thereunder.

**IV.    The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue In The Ordinary Course.**

31.    Although the Plan provides for certain treatment of the Debtors' workers' compensation insurance policies, the Plan does not address the treatment of workers' compensation claims and direct action claims.

32.    Both workers' compensation claims and direct action claims are subject to state-law regulations and other non-bankruptcy law that dictate the resolution of such claims, which cannot be modified by the terms of the Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

33.    Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and relatedly, the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Insurance Program and applicable non-bankruptcy law.

V.	**Reservation of Rights**

34.	The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their right to assert additional objections to the Plan.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the modifications requested herein; and (b) grant such other relief as the Court deems appropriate.

Dated: March 21, 2025

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Drew S. McGehrin*
Drew S. McGehrin (DE 6508)
DUANE MORRIS LLP
1201 North Market St, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email: DSMcGehrin@duanemorris.com

-and-

Wendy M. Simkulak
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com

*Counsel for the Chubb Companies*