## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
|  | Related Docket Nos. 796 & 996 |

## NOTICE OF FILING OF AMENDED PLAN SUPPLEMENT FOR THE JOINT CHAPTER 11 PLAN OF TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES AND BLACKLINES THEREOF

**PLEASE TAKE NOTICE** that, on March 7, 2025, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed the *Notice of Filing of Plan Supplement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 996] (the "Plan Supplement") in support of, and in accordance with, the *Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 796] (as the same has been or may be amended, supplemented, or modified from time to time, the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors reserved their rights to amend, supplement, or modify the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors have amended, supplemented, or modified certain documents contained in the Plan Supplement and hereby submit this amended Plan Supplement (the "Amended Plan Supplement") consisting of the following documents, each

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

as may be further amended, supplemented, or modified from time to time by the Debtors in accordance with the Plan:

| Exhibit | Amended Plan Supplement Documents |
|---------|-----------------------------------|
| A | Revised Plan Administrator Agreement |
| A-2 | CPO Blackline of Plan Administrator Agreement |
| B | Updated Plan Administration Budget |
| C | Revised Litigation Trust Agreement |
| C-2 | CPO Blackline of Litigation Trust Agreement |

**PLEASE TAKE FURTHER NOTICE** that certain documents, or portions thereof, contained in the Amended Plan Supplement remain subject to continuing negotiations among the Debtors and other interested parties.  Subject to the terms and conditions of the Plan, the Debtors reserve all rights to amend, revise, or supplement the Amended Plan Supplement, and any of the documents and designations contained herein, at the time before the Effective Date of the Plan, or any such other date as may be provided for the Plan or by the order of the Court.

**PLEASE TAKE FURTHER NOTICE** that, given the limited number of amendments, supplements and modifications to the documents in the Amended Plan Supplement and for the convenience of the Court and other interested parties, the Debtors are attaching changed pages only blacklines comparing the Plan Administrator Agreement to the Revised Plan Administrator Agreement as **Exhibit A-2**, and comparing the Litigation Trust Agreement to the Revised Litigation Trust Agreement as **Exhibit C-2**.

**PLEASE TAKE FURTHER NOTICE** that a hearing (the "Combined Hearing") to consider, among together things, approval of the adequacy of the Disclosure Statement on a final basis and confirmation of the Plan, shall be held before the Honorable Karen B. Owens, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 6th

Floor, Courtroom #3, 824 North Market Street, Wilmington, Delaware 19801, on **April 2, 2025 at 10:30 a.m. (prevailing Eastern Time)**.  The Combined Hearing may be continued from time to time without further notice other than the announcement by the Debtors in open court of the adjourned date at the Combined Hearing or any continued hearing or as indicated in any notice filed with the Court on the docket in these chapter 11 cases.

[*Signature Page Follows*]

Dated: March 31, 2025
Wilmington, DE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Carol E. Thompson*
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
Carol E. Thompson (Del. Bar No. 6936)
One Rodney Square
1000 North King Street Wilmington,
Delaware 19801
Telephone: (302) 571-6600
Email:
emorton@ycst.com
kenos@ycst.com
kmcelroy@ycst.com
tpowell@ycst.com
cthompson@ycst.com

*Efficiency Counsel to the*
*Debtors and Debtors in Possession*

**GLENN AGRE BERGMAN & FUENTES LLP**

Andrew K. Glenn (admitted pro hac vice)
Trevor J. Welch (admitted pro hac vice)
Malak S. Doss (admitted pro hac vice)
Michelle C. Perez (admitted pro hac vice)
Esther Hong (admitted pro hac vice)
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email:
aglenn@glennagre.com
twelch@glennagre.com
mdoss@glennagre.com
mperez@glennagre.com
ehong@glennagre.com

*Conflicts Counsel to the*
*Debtors and Debtors in Possession*

## EXHIBIT A

**Revised Plan Administrator Agreement**

## PLAN ADMINISTRATION AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made this _____ day of March, 2025, by and between True Value Company, L.L.C., TV Holdco II, L.L.C., TV TSLC, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., True Value Virginia, L.L.C., and Distributors Hardware, L.L.C. (collectively, the "Debtors" or, after the Effective Date of the Plan, the "Post-Effective Date Debtors") and Michael I. Goldberg (the "Plan Administrator"), solely in its capacity as the Plan Administrator, in accordance with that certain *Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* [Docket No. 905] (as the same may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan").[1]

## RECITALS

WHEREAS, on October 14, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Plan contemplates that a Plan Administrator will be appointed as of the Effective Date to administer the Plan in accordance with the terms of the Plan and this Agreement and to take such other actions as may be authorized under the Plan and this Agreement;

WHEREAS, the Plan provides that the powers of the Plan Administrator shall include any and all powers and authority to implement the Plan, assist with or effectuate the transition of the Debtors' business and wind down the businesses and affairs of the Debtors, including, without limitation, selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Debtors' assets other than the Litigation Trust Assets;

WHEREAS, an order confirming the Plan is expected to be entered by the Bankruptcy Court on or about April 2, 2025 (the "Confirmation Order") and the Plan is expected to go effective shortly thereafter; and

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Acceptance.  Michael I. Goldberg hereby accepts the engagement as the Plan Administrator and agrees, subject to the terms of this Agreement, to observe and perform all duties and obligations imposed upon the Plan Administrator by this Agreement, the Plan, orders of the Bankruptcy Court, and applicable law.

---

[1]      Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

2.     <u>Duties, Powers and Responsibilities of Plan Administrator for each of the Post-Effective Date Debtors</u>.

a.   On and after the Effective Date, the Plan Administrator shall act for the Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions of the Plan (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).   Immediately following the occurrence of the Effective Date, (i) the respective boards of directors or managers, as applicable, and the current officers, of each of the Debtors, shall be terminated without cause and such members of the boards of directors or managers, as applicable, and the current officers of the Debtors shall be deemed to have resigned; and (ii) the Plan Administrator shall: (1) be appointed as the sole member of the board of directors or board of managers, as applicable, and the sole officer; (2) succeed as the sole Holder of Interests in each Post-Effective Date Debtor; (3) have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code; (4) be a "representative of the estate" pursuant to Section 1123(b)(3) of the Bankruptcy Code; (5) be vested with the rights, powers, and benefits afforded to a "trustee" under Sections 704 and 1106 of the Bankruptcy Code; and (6) have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary.

b.   The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan, the Confirmation Order, the Asset Purchase Agreement, and all other applicable orders of the Bankruptcy Court and assist with or effectuate the transition of the Debtors' business and wind down the businesses and affairs of the Debtors without the need for Bankruptcy Court approval (unless otherwise indicated), including: (i) making distributions to Holders of Allowed Claims and Interests as provided for in the Plan; (ii) administering, reconciling, and resolving Administrative Claims, Professional Claims, Restructuring Expenses, Priority Tax Claims and Other Priority Claims; (iii) filing tax returns and paying taxes; (iv) performing all obligations required of the Post-Effective Date Debtors under the Transition Services Agreement; (v) paying any Statutory Fees; (vi) maintaining the books and records and accounts of the Debtors; (vii) defending the Debtors in any pending or future litigation (except with respect to any counterclaims filed against the Litigation Trust); (viii) selling, abandoning, or otherwise fully administering the Estates; (ix) closing the Chapter 11 Cases; (x) dissolving the Post-Effective Date Debtors; and (xi) performing other duties and functions that are consistent with the implementation of the Plan

c.   On the Effective Date, and continuing until the end of the term under the Transition Services Agreement, the Plan Administrator shall serve as an appointed agent of the designated operator or as the operator of the Debtors in accordance with the Plan for the purpose of fulfilling any obligations thereunder.

3.     <u>Retention of Professionals</u>.  The Plan Administrator may, without the need for further Bankruptcy Court approval, employ or retain agents, financial advisors, attorneys, consultants, independent contractors, representatives and other professionals to advise or assist the Plan Administrator in the performance of the Plan Administrator's duties (collectively, the "<u>Plan Administrator Professionals</u>"), which Plan Administrator Professionals may include Persons and Entities that have provided professional services to the Debtors or Committee.

2

Subject to and in accordance with the Plan Administration Budget, the Plan Administrator shall pay the undisputed reasonable fees and expenses of the Plan Administrator Professionals upon presentment of an invoice in customary form. If the Plan Administrator disputes any fees or expenses of any Plan Administrator Professional and the parties are unable to resolve the dispute consensually, the Bankruptcy Court shall determine the dispute.

4.      <u>Reports to be Filed by the Plan Administrator</u>. The Plan Administrator shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee.

5.      <u>No Other Duties</u>. Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, the Confirmation Order and any other order of the Bankruptcy Court, the Plan Administrator shall have no duties or obligations of any kind or nature with respect to its employment or position as such.

6.      <u>Cooperation of Post-Effective Date Debtors</u>. The Post-Effective Date Debtors shall cooperate with and assist the Plan Administrator in the Plan Administrator's execution of its duties pursuant to this Agreement, including, for the avoidance of doubt, paying the reasonable and documented fees and expenses of any professionals retained by the Plan Administrator, as well as the reasonable and documented fees and expenses of the Plan Administrator, in each case solely from the Plan Administration Reserve and using commercially reasonable efforts consistent with the Plan Administration Budget, in accordance with the terms of the Plan and this Agreement.

7.      <u>Representative of the Estate</u>. The Plan Administrator shall be deemed to be an Estate representative for the Post-Effective Date Debtors for all purposes under the Plan and the Chapter 11 Cases.

8.      <u>Liability</u>. As of and after the Effective Date, the Plan Administrator and the Plan Administrator's retained professionals shall not be liable for any act taken or omitted to be taken in their respective capacities as such in connection with or in furtherance of the Plan or this Agreement ("Related Matters"), in each case other than for acts or omissions constituting their respective gross negligence, actual fraud, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction. The Plan Administrator and/or the Plan Administrator's retained professionals may, in connection with the performance of their functions, and in their sole and absolute discretion and without any requirement or obligation, consult with attorneys, accountants, financial advisors, and other professionals of the Debtors, the Plan Administrator, or the Post-Effective Date Debtors, as applicable, and shall not be liable for any act taken, omitted to be taken or suffered to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions are provided in writing (other than for acts or omissions constituting the gross negligence, actual fraud or willful misconduct of such applicable Entity as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction). For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator, in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

9.     <u>Exculpation, Indemnification, and Insurance</u>.  The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified by the Post-Effective Date Debtors, in all respects by each of the Post-Effective Date Debtors, jointly and severally, except for actual fraud, willful misconduct, or gross negligence (as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction).

The Plan Administrator shall be authorized to obtain and pay for out of the Plan Administration Reserve all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, and the Post-Effective Date Debtors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under the Plan Administrator Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of this Plan Administrator Agreement.

10.     <u>Reliance by Plan Administrator</u>.  The Plan Administrator may rely, and shall be fully protected in acting or refraining from acting if they rely, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of cables, telecopies, and telexes, to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein.  The Plan Administrator shall be entitled to rely upon the advice of professionals in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting gross negligence, actual fraud, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction).  The Plan Administrator shall have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, or any other document executed in connection herewith or therewith, and the Plan Administrator shall be entitled to rely upon such instructions in acting or failing to act and shall not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting gross negligence, actual fraud, or willful misconduct as determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction).  It is understood that the Plan Administrator is relying solely upon the information supplied by the Post-Effective Date Debtors and their Representatives without assuming any responsibility for independent investigation or verification thereof.

11.     <u>Reliance by Persons Dealing with the Plan Administrator</u>.  In the absence of actual knowledge to the contrary, any Person dealing with the Post-Effective Date Debtors, the Plan Administrator, or the Plan Administrator's professionals shall be entitled to rely on the authority of the Plan Administrator to act on behalf of the Post-Effective Date Debtors and shall have no obligation to inquire into the existence of such authority.

12.     <u>Compensation of Plan Administrator</u>.  As compensation for his role both as Plan Administration, and Litigation Trustee on the terms otherwise set forth in the Litigation Trust Agreement, the Plan Administration  shall be compensated on a monthly basis at $25,000 for the

first three months, and $20,000 per month for all future months; provided, however, to the extent the Prepetition Secured Parties desire to convert the Plan Administration and Litigation Trustee positions to hourly engagement roles, they may do so at any time at a rate of $900 per hour plus costs. The Plan Administrator will periodically bill the Post-Effective Date Debtors for fees and out-of-pocket expenses. The payment of the fees, costs and expenses of the Plan Administrator shall be made in the ordinary course of business upon presentment of an invoice in customary form and shall not be subject to the approval of the Bankruptcy Court, but, for the avoidance of doubt shall be subject to the Plan Administration Budget as set forth in the Plan. Notwithstanding the foregoing, any costs of the Plan Administrator associated with fulfilling the obligations under the Transition Services Agreement shall be funded directly by the Purchaser and will not be paid out of the Plan Administrative Reserve or calculated for purposes of the Plan Administration Budget.

13.    _Service of Plan Administrator_.    The Plan Administrator shall serve until the (a) termination of this Agreement or (b) the Plan Administrator resigns (subject to the terms of this Agreement and the provisions of the Plan) or is otherwise discharged; _provided_ that if the Plan Administrator resigns for any reason other than for Cause (as defined below), they shall continue to serve until a new Plan Administrator is selected and begins to serve but in no event for a period longer than thirty (30) days.

14.    _Resignation or Removal of Plan Administrator_.    In the event of the dissolution, bankruptcy, insolvency, resignation, removal, or any other vacancy of the Plan Administrator, a successor Plan Administrator promptly shall be appointed.

(a)    The Plan Administrator may resign at any time upon thirty (30) days' advance written notice delivered to the Bankruptcy Court. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtors shall be terminated.

(b)    No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any predecessor. The resignation or removal of a Plan Administrator shall not operate to terminate this Agreement, revoke any existing agency created pursuant to this Agreement, or invalidate any action theretofore taken by any Plan Administrator. Every successor Plan Administrator appointed pursuant to this provision shall execute, acknowledge, and deliver to the Post-Effective Date Debtors an instrument in writing accepting such appointment. Thereupon, such successor Plan Administrator, without any further action required, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor.

(c)    The Plan Administrator may be removed, for Cause,[2] immediately upon notice thereof, or without Cause, upon 30 day's prior written notice, in each case, solely by the Post-Effective Date Debtors.

15.    _Closing of Chapter 11 Cases; Termination_.    This Agreement shall terminate upon the dissolution of the last remaining Post-Effective Date Debtor and the entry of an order by the

---

[2] "**Cause**" means willful misconduct, gross negligence, fraud, or breach of fiduciary duty.

5

Bankruptcy Court closing the Chapter 11 Case of the last remaining Post-Effective Date Debtor. All provisions of this Agreement that expressly survive termination shall remain in effect in accordance with their terms.

16.     <u>Obligations of the Plan Administrator Upon Termination</u>.  Before termination in accordance with the terms hereof, the Plan Administrator shall (a) provide, with such expenses to be paid for by the Post-Effective Date Debtors solely out of the Plan Administration Reserve and using commercially reasonable efforts consistent with the Plan Administration Budget, for the retention and storage of any books, records, and files until such time as such books, records, and files are no longer required to be retained under applicable law (as determined by the Plan Administrator in good faith) and (b) inform the Post-Effective Date Debtors of the location at which such books, records, and files are being stored.  Except as otherwise specifically provided herein, after the termination of this Agreement pursuant to Section 15 above, the Plan Administrator shall have no further duties or obligations hereunder.

17.     <u>Cooperation Among Plan Administrator, Litigation Trustee and the Post-Effective Date Debtors</u>.  Pursuant to the Plan, prior to the completion of the wind-down of the Estates and closing of the Chapter 11 Cases of the Post-Effective Date Debtors, the Plan Administrator and Litigation Trustee shall have reasonable access to, and the reasonable assistance of, the Post-Effective Date Debtors, and to the assets, software, and systems of the Post-Effective Date Debtors, to the extent necessary to (a) perform the claims reconciliation process in connection with the Chapter 11 Cases, (b) complete the wind-down of the Estates, and (c) perform the obligations of the Plan Administrator hereunder and under the Plan, and the Post-Effective Date Debtors shall cooperate, to the extent reasonably requested, therewith; *provided* that the Plan Administrator shall not be required to continue to employ any of the Debtors' employees for this purpose but rather shall allow the Litigation Trustee to contract with former employees as necessary.  The Plan Administrator shall, during the period that they serve in such capacity under this Agreement and following the termination of this Agreement or following the Plan Administrator's removal or resignation hereunder, hold strictly confidential and not use for personal gain any non-public information of or pertaining to the Debtors or Post-Effective Date Debtors or of which the Plan Administrator become aware in their capacity as such, except as otherwise required by law.

18.     <u>Governing Law</u>.  This Agreement is governed by and shall be construed in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

19.     <u>Dispute Resolution</u>.  Without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan Administrator in its official capacity as such, with respect to its status, duties, powers, acts, or omissions as Plan Administrator in any forum other than the Bankruptcy Court.

20.     <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain sole jurisdiction over the interpretation and implementation of the provisions of this Agreement.

21.     <u>Amendment; Waiver</u>.  No term or provision of this Agreement may be amended or waived without the prior written consent of the Plan Administrator and the Post-Effective Date Debtors and without notice and reasonable opportunity to object by all parties in interest as set

forth below.  Any party's failure, at any time or times, to require strict performance by the other party of any provision of this Agreement shall not waive, affect, or diminish any right of such party thereafter to demand strict compliance and performance therewith.  This Agreement may be amended without further order of the Bankruptcy Court, *provided, however,* that notices of any such amendments shall be filed with the Bankruptcy Court and provide all parties in interest a reasonable opportunity to object in writing to such amendment prior to such amendment becoming effective.

22.  <u>Conflict with Plan</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement (including any amendments pursuant to Section 21 hereof) are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

23.  <u>Severability</u>.  If any provision of this Agreement or the application thereof to any Entity or circumstance shall be determined by a Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Entities or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

24.  <u>Notices</u>.  Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of an e-mail or facsimile transmission or (b) confirmed delivery by a standard overnight carrier or when delivered by hand and addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

If to the Post-Effective Date Debtors:

      Young Conaway Stargatt &Taylor, LLP
      One Rodney Square
      1000 North King Street
      Wilmington, Delaware 19801
      Attn:  Kenneth J. Enos
      kenos@ycst.com

If to the Plan Administrator:

      Michael I. Goldberg, Trustee
      201 E. Las Olas Blvd., Ste. 1800
      Ft. Lauderdale, FL 33301
      michael.goldberg@akerman.com

25.  <u>Headings</u>.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

26.     <u>WAIVER OF JURY TRIAL</u>.  EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  For the avoidance of doubt, this waiver does not apply to any Claims or Retained Causes of Action.

27.     <u>Integration</u>.  This Agreement (together with the Plan) sets forth in full the terms of agreement between the parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements, and understandings, whether written or oral, between the parties with respect thereto.

28.     <u>Successors and Assigns; No Third Party Beneficiaries</u>.  This Agreement shall be binding on and shall inure to the benefit of each the parties and their respective successors and assigns, except as otherwise provided herein.  No party may assign, transfer, hypothecate, or otherwise convey its respective rights, benefits, obligations, or duties hereunder without the prior express written consent of the other party.  Any such purported assignment, transfer, hypothecation, or other conveyance by any party without the prior express written consent of the other party shall be null and void and of no force or effect.  The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties with respect to the transactions contemplated hereby and no Person shall be a third party beneficiary of any of the terms and provisions of this Agreement.

29.     <u>Counterparts; Effectiveness</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.  Provided the Effective Date has occurred, this Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.  The parties agree that this Agreement will be considered signed when the signature of a party is delivered by facsimile or electronic mail transmission.  Such facsimile or electronic mail signature shall be treated in all respects as having the same effect as an original signature.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

**DEBTORS:**

**TRUE VALUE COMPANY, L.L.C. ON BEHALF OF ITSELF AND EACH OF THE DEBTORS**

By:_____

Name:

Title:

**PLAN ADMINISTRATOR**:

By:_____

Name: Michael I. Goldberg

## <u>EXHIBIT A-2</u>

**CPO Blackline of Plan Administrator Agreement**

32910431.4

## PLAN ADMINISTRATION AGREEMENT

This Plan Administrator Agreement (this "Agreement") is made this [●]__day           of [●]March, 2025, by and between True Value Company, L.L.C., TV Holdco II, L.L.C., TV TSLC, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., True Value Virginia, L.L.C., and Distributors Hardware, L.L.C. (collectively, the "Debtors" or, after the Effective Date of the Plan, the "Post-Effective Date Debtors") and [●] ([●], or Michael I. Goldberg (the "Plan Administrator"), solely in its capacity as the Plan Administrator, in accordance with that certain *Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* [Docket No. 905] (as the same may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan").[1]

## RECITALS

WHEREAS, on October 14, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Plan contemplates that a Plan Administrator will be appointed as of the Effective Date to administer the Plan in accordance with the terms of the Plan and this Agreement and to take such other actions as may be authorized under the Plan and this Agreement;

WHEREAS, the Plan provides that the powers of the Plan Administrator shall include any and all powers and authority to implement the Plan, assist with or effectuate the transition of the Debtors' business and wind down the businesses and affairs of the Debtors, including, without limitation, selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Debtors' assets other than the Litigation Trust Assets;

WHEREAS, an order confirming the Plan wasis expected to be entered by the Bankruptcy Court on [●]or about April 2, 2025 (the "Confirmation Order") and the Plan becameis expected to go effective on [●], 2025shortly thereafter; and

WHEREAS, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    Acceptance. [●] of [●]Michael I. Goldberg hereby accepts the engagement as the Plan Administrator and agrees, subject to the terms of this Agreement, to observe and

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

32910431.5

32910431.4

authority of the Plan Administrator to act on behalf of the Post-Effective Date Debtors and shall have no obligation to inquire into the existence of such authority.

12.    <u>Compensation of Plan Administrator</u>.  ~~The Plan Administrator will be paid by the Estates and the Post-Effective Date Debtors for the Services at $[●] per month, subject to periodic adjustments to reflect economic and other conditions~~<u>As compensation for his role both as Plan Administration, and Litigation Trustee on the terms otherwise set forth in the Litigation Trust Agreement, the Plan Administration  shall be compensated on a monthly basis at $25,000 for the first three months, and $20,000 per month for all future months; provided, however, to the extent the Prepetition Secured Parties desire to convert the Plan Administration and Litigation Trustee positions to hourly engagement roles, they may do so at any time at a rate of $900 per hour plus costs</u>.  The Plan Administrator will periodically bill the Post-Effective Date Debtors for fees and out-of-pocket expenses.  The payment of the fees, costs and expenses of the Plan Administrator shall be made in the ordinary course of business upon presentment of an invoice in customary form and shall not be subject to the approval of the Bankruptcy Court, but, for the avoidance of doubt shall be subject to the Plan Administration Budget as set forth in the Plan. Notwithstanding the foregoing, any costs of the Plan Administrator associated with fulfilling the obligations under the Transition Services Agreement shall be funded directly by the Purchaser and will not be paid out of the Plan Administrative Reserve or calculated for purposes of the Plan Administration Budget.

13.    <u>Service of Plan Administrator</u>.  The Plan Administrator shall serve until the (a) termination of this Agreement or (b) the Plan Administrator resigns (subject to the terms of this Agreement and the provisions of the Plan) or is otherwise discharged; *provided* that if the Plan Administrator resigns for any reason other than for Cause (as defined below), they shall continue to serve until a new Plan Administrator is selected and begins to serve but in no event for a period longer than thirty (30) days.

14.    <u>Resignation or Removal of Plan Administrator</u>.  In the event of the dissolution, bankruptcy, insolvency, resignation, removal, or any other vacancy of the Plan Administrator, a successor Plan Administrator promptly shall be appointed.

(a)    The Plan Administrator may resign at any time upon thirty (30) days' advance written notice delivered to the Bankruptcy Court.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Debtors shall be terminated.

(b)    No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any predecessor.  The resignation or removal of a Plan Administrator shall not operate to terminate this Agreement, revoke any existing agency created pursuant to this Agreement, or invalidate any action theretofore taken by any Plan Administrator.  Every successor Plan Administrator appointed pursuant to this provision shall execute, acknowledge, and deliver to the Post-Effective Date Debtors an instrument in writing accepting such appointment.  Thereupon, such successor Plan

~~32910431.4~~

18.    <u>Governing Law</u>.  This Agreement is governed by and shall be construed in accordance with the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

19.    <u>Dispute Resolution</u>.  Without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan Administrator in its official capacity as such, with respect to its status, duties, powers, acts, or omissions as Plan Administrator in any forum other than the Bankruptcy Court.

20.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain sole jurisdiction over the interpretation and implementation of the provisions of this Agreement.

21.    <u>Amendment; Waiver</u>.  No term or provision of this Agreement may be amended or waived without the prior written consent of the Plan Administrator and the Post-Effective Date Debtors and without notice and reasonable opportunity to object by all parties in interest as set forth below.  Any party's failure, at any time or times, to require strict performance by the other party of any provision of this Agreement shall not waive, affect, or diminish any right of such party thereafter to demand strict compliance and performance therewith.  This Agreement may be amended without further order of the Bankruptcy Court, *provided, however,* that notices of any such amendments shall be filed with the Bankruptcy Court and provide all parties in interest a reasonable opportunity to object in writing to such amendment prior to such amendment becoming effective.

22.    <u>Conflict with Plan</u>.  The principal purpose of this Agreement is to aid in the implementation of the Plan and, therefore, this Agreement incorporates and is subject to the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purposes and provisions of the Plan.  In the event that the provisions of this Agreement (including any amendments pursuant to Section 21 hereof) are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

23.    <u>Severability</u>.  If any provision of this Agreement or the application thereof to any Entity or circumstance shall be determined by a Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Entities or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

24.    <u>Notices</u>.  Any notice or other communication hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of an e-mail or facsimile transmission or (b) confirmed delivery by a standard overnight carrier or when delivered by hand and addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

If to the Post-Effective Date Debtors:

Young Conaway Stargatt &Taylor, LLP
~~[●]~~One Rodney Square

7

32910431.4
with a copy to:

[•]

1000 North King Street
Wilmington, Delaware 19801
Attn:  Kenneth J. Enos
kenos@ycst.com

If to the Plan Administrator:

Michael I. Goldberg, Trustee
201 E. Las Olas Blvd., Ste. 1800
Ft. Lauderdale, FL 33301
michael.goldberg@akerman.com
[•]

25.    <u>Headings</u>.   The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

26.    <u>WAIVER OF JURY TRIAL</u>.   EACH OF THE PARTIES TO THIS AGREEMENT HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  For the avoidance of doubt, this waiver does not apply to any Claims or Retained Causes of Action.

27.    <u>Integration</u>.  This Agreement (together with the Plan) sets forth in full the terms of agreement between the parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements, and understandings, whether written or oral, between the parties with respect thereto.

28.    <u>Successors and Assigns; No Third Party Beneficiaries</u>.  This Agreement shall be binding on and shall inure to the benefit of each the parties and their respective successors and assigns, except as otherwise provided herein.  No party may assign, transfer, hypothecate, or otherwise convey its respective rights, benefits, obligations, or duties hereunder without the prior express written consent of the other party.  Any such purported assignment, transfer, hypothecation, or other conveyance by any party without the prior express written consent of the other party shall be null and void and of no force or effect.  The terms and provisions of this Agreement are for the purpose of defining the relative rights and obligations of the parties with respect to the transactions contemplated hereby and no Person shall be a third party beneficiary of any of the terms and provisions of this Agreement.

29.    <u>Counterparts; Effectiveness</u>.  This Agreement may be executed in one or more counterparts, each of which shall be an original, but all such counterparts shall together constitute one and the same agreement.  Provided the Effective Date has occurred, this Agreement shall become effective when each party hereto shall have received counterparts thereof signed by all the other parties hereto.  The parties agree that this Agreement will be

32910431.4

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers.

*[●], solely in his capacity as the Plan Administrator*

**DEBTORS:**

By: _____

Name: _____

Title: _____

Date: _____, 2025

True Value Company**TRUE VALUE COMPANY, L.L.C.** on behalf of itself and each of the Post-Effective Date Debtors**ON BEHALF OF ITSELF AND EACH OF THE DEBTORS**

By:_____ Name:

Name: _____

Title:

Date: _____, 2025

**PLAN ADMINISTRATOR:**

By:_____ Name: Michael I. G

**EXHIBIT B**

**Updated Plan Administrator Budget**

*($ in 000s)*

| Plan Administration Budget Overview | |
|---|---:|
| **Plan Administration Budget** | |
| Litigation Trust | $150 |
| Plan Administrator + Plan Administrator Professionals | 575 |
| Other Wind Down Expenses | 316 |
| **Total Plan Administration Budget**[1] | **$1,041** |

**Note:**

(1) The Plan Administration Budget does not include potential funds that may remain in the Professional Fee Carve-Out Account as of the Effective Date. The Debtors and Plan Administrator may use these funds for Post-Effective Date services performed on behalf of the Estate, including the Post-Effective Date Claims Reconciliation Process.

**<u>EXHIBIT C</u>**

**Revised Litigation Trust Agreement**

# LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (the "Litigation Trust Agreement") is made and entered into as of March _____, 2025, by and among True Value Company, L.L.C., TV Holdco II, L.L.C., TV TSLC, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., True Value Virginia, L.L.C., and Distributors Hardware, L.L.C (collectively, the "Debtors" or, after the Effective Date of the Plan, the "Post-Effective Date Debtors"), and Michael I. Goldberg, not in any individual capacity, but solely as trustee (the "Litigation Trustee") in accordance with that certain *Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* [Docket No. 905] (as the same may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan").[1]

## RECITALS

WHEREAS, on October 14, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, an order confirming the Plan is expected to be entered by the Bankruptcy Court on or about April 2, 2025 (the "Confirmation Order") and the Plan is expected to go effective shortly thereafter;

WHEREAS, the Plan and Confirmation Order contemplate, on the Effective Date, (i) the creation of a litigation trust (the "Litigation Trust") and the creation of the beneficial interests in the Litigation Trust for the benefit, as provided in the Plan, of Holders of Allowed General Unsecured Claims (the "Litigation Trust GUC Interests") and the Holders of Allowed Prepetition Lender Claims (the "Litigation Trust Prepetition Lender Interests," and collectively, with the Litigation Trust GUC Interests, the "Litigation Trust Interests") and the Holders thereof, collectively, the "Litigation Trust Beneficiaries" and, each individually, a "Litigation Trust Beneficiary", and (ii) the Litigation Trust Assets will be vested in the Litigation Trust as set forth in the Plan, including (i) the Initial Litigation Trust Funded Amount and (ii) the Retained Causes of Action (collectively, the "Litigation Trust Assets");

WHEREAS, the Litigation Trust is established pursuant to the Plan and this Litigation Trust Agreement as: (i) a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations, for the purpose of liquidating the Litigation Trust Assets and making distributions in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and the Plan; and (ii) a "grantor trust" pursuant to sections 671 and 677 of the Internal Revenue Code (the "Tax Code") for United States federal income tax purposes, with the Beneficiaries treated as the grantors and owners of the Litigation Trust Assets; and

WHEREAS, in accordance with the Plan, and pursuant to section 1145 of the Bankruptcy Code, the Litigation Trust is further intended to be exempt from the requirements of the Securities

---

[1]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

Act of 1933, as amended (the "Securities Act"), and any applicable state and local laws requiring registration of securities;

NOW, THEREFORE, pursuant to the Plan and the Confirmation Order, in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

## ARTICLE I
## DECLARATION OF TRUST

Section 1.1    Creation and Purpose of the Litigation Trust. The Debtors and the Litigation Trustee hereby create the Litigation Trust for the purpose of, among other things (a) investigating, commencing, litigating, and settling the Retained Causes of Action, (b) liquidation of the Litigation Trust's assets, (c) distribution of the Litigation Trust Distributable Proceeds, if any, to the Litigation Trust Beneficiaries, and (d) performing such other duties as provided for in the Plan and this Litigation Trust Agreement. The Litigation Trust shall be administered in accordance with section 301.7701-4(d) of the Treasury Regulations and Revenue Procedure 94-45, 1994-2 C.B. 684, with no objective to continue or engage in the conduct of a trade or business, except only if and to the extent necessary for, and consistent with, the liquidating purpose of the Litigation Trust.

Section 1.2    Declaration of Trust. In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan, the Debtors and the Litigation Trustee have executed this Litigation Trust Agreement and, effective on the Effective Date, all of the right, title, and interest of the Debtors and the Debtors' Estates in and to the Litigation Trust Assets shall be absolutely and irrevocably assigned to and vested in the Litigation Trust and to its successors in trust and its successors and assigns, to have and to hold unto the Litigation Trustee and his or her successors and assigns, to be held by the Litigation Trust and applied on behalf of the Litigation Trust by the Litigation Trustee, on and subject to the terms and conditions of this Litigation Trust Agreement, the Plan and the Confirmation Order, solely for the benefit of the Litigation Trust Beneficiaries and their successors and assigns as provided for in this Litigation Trust Agreement and in the Plan and Confirmation Order, and for no other party, provided that the Litigation Trust shall be required to satisfy the obligations set forth in the Plan to the extent required thereby.

Section 1.3    Vesting and Transfer of Assets to the Litigation Trust. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Litigation Trust Assets shall vest in the Litigation Trust, free and clear of all Claims, Liens, interests, encumbrances, and contractually imposed restrictions, except as otherwise specifically provided in the Plan or in the Confirmation Order. The Litigation Trust Assets include: (i) the Initial Litigation Trust Funded Amount and (ii) the Retained Causes of Action. The Litigation Trustee shall have no duty to arrange for any of the transfers of the Litigation Trust Assets to the Litigation Trust on the Effective Date contemplated hereunder or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

Moreover, subject to the Confirmation Order or another Bankruptcy Court order entered in the Chapter 11 Cases upon prior notice to creditors and other parties in interest, on the Effective Date, all privileges in connection with the prosecution of the Retained Causes of Action, including the attorney/client privilege, work product protection, or other privilege or immunity attaching to any documents or communications, to which the Debtors or Debtors' Estates are entitled shall be automatically vested in, and available for assertion by or waiver by the Litigation Trustee on behalf of the Litigation Trust.

The vesting of the attorney/client privilege, work product protection, or other privilege or immunity attaching to any documents or communications in the Litigation Trustee, as set forth herein, is not intended as, and will not constitute or affect, a waiver of any such privilege, protection or immunity in favor of any creditor, party in interest or other third party.

The Litigation Trust shall also be vested with the Debtors' rights, as such rights existed prior to the Effective Date, to conduct discovery and oral examinations of any party related to the Litigation Trust Assets under Bankruptcy Rule 2004, provided that all costs related to satisfying such discovery shall be funded exclusively from the Initial Litigation Trust Funded Amount. The Litigation Trust, however, shall not be considered a successor of any Debtor and shall not assume any obligations of the Debtors other than expressly provided for by the Plan or the Litigation Trust Agreement.

To the extent any of the foregoing vesting of Litigation Trust Assets and privileges, protections, or immunities described in this <u>Section 1.3</u> does not automatically occur on the Effective Date or is not effectuated through the Confirmation Order or this Litigation Trust Agreement, the Debtors shall, to the extent practicable, execute such other and further documents as are reasonably necessary to effectuate all of the foregoing vesting of Litigation Trust Assets and privileges, protections, or immunities described in this <u>Section 1.3</u> and shall reasonably cooperate with the Litigation Trustee in transitioning the administration of the Litigation Trust Assets to the Litigation Trust. To the extent any law or regulation prohibits the transfer of ownership of any of the Litigation Trust Assets to the Litigation Trust and such law is not superseded by the Bankruptcy Code, the Litigation Trust's interest shall be a lien upon and security interest in such Litigation Trust Assets, in trust for the sole use and purposes set forth in this Litigation Trust Agreement, the Plan and the Confirmation Order, which shall be deemed a valid security agreement granting such interest and perfected lien thereon without need to file financing statements or mortgages.

Section 1.4    <u>Funding of the Trust</u>. The Litigation Trust shall be funded on the Effective Date by the transfer of the Litigation Trust Assets, to the extent provided for in <u>Section 1.2</u> and <u>Section 1.3</u> of this Litigation Trust Agreement and in the Plan and Confirmation Order.

Section 1.5    <u>Acceptance by Litigation Trustee</u>. The Litigation Trustee hereby accepts the trust imposed upon it by this Litigation Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Litigation Trust Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Litigation Trust, the Litigation Trustee hereby accepts the funding for the Litigation Trust, including the transfer of the Litigation Trust Assets.

Section 1.6    Name of the Litigation Trust. The Litigation Trust established hereby shall be known as the "TV Litigation Trust."

Section 1.7    Capacity of Trust. To the fullest extent permitted by applicable law and notwithstanding anything herein to the contrary, the Litigation Trust shall itself have the capacity to act or refrain from acting, on its own behalf, including the capacity to sue and be sued. The Litigation Trustee, solely in its capacity as Litigation Trustee, may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state and federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

## ARTICLE II
## THE LITIGATION TRUSTEE

Section 2.1    Appointment. The Litigation Trustee is hereby appointed by the Debtors in consultation with the Committee pursuant to this Litigation Trust Agreement, the Plan, the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code and 26 U.S.C. § 6012(b)(3). The Litigation Trustee's appointment shall continue until the earlier of (i) the termination of the Litigation Trust or (ii) the Litigation Trustee's resignation, incapacity, death, dissolution, or removal.

Section 2.2    General Powers. Except as otherwise provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order, the Litigation Trustee may control and exercise authority over the Litigation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Litigation Trust. Nothing in this Litigation Trust Agreement shall be deemed to prevent the Litigation Trustee from taking, or failing to take, any action that, based upon the advice of counsel or other professionals, he determines he is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Litigation Trustee owes to the Litigation Trust Beneficiaries or any other person. No person dealing with the Litigation Trust shall be obligated to inquire into the Litigation Trustee's authority in connection with the acquisition, management, or disposition of Litigation Trust Assets. Without limiting the foregoing, and unless specifically limited, restricted, waived, or released by the Plan, the Confirmation Order, or other provisions of this Litigation Trust Agreement, the Litigation Trustee shall be expressly authorized to, with respect to the Litigation Trust and the Litigation Trust Assets, and may cause the Litigation Trust to, among other things:

(a)    Act on behalf of the Litigation Trust, including the right to take all actions and execute all agreements, instruments and other documents, and exercise all power and authority that may be exercised, to commence all proceedings associated with the Retained Causes of Action (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or manager of the Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and managers, including consummating the Plan and all transfers thereunder on behalf of the Debtors;

(b)    Hold any legal title to any and all of the Litigation Trust Assets;

(c)     If any Litigation Trust Asset is situated in any state or other jurisdiction in which the Litigation Trustee is not qualified to act as trustee: (i) to nominate and appoint a person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Litigation Trustee in its discretion; (ii) confer upon such trustee all the rights, powers, privileges and duties of the Litigation Trustee hereunder, subject to the conditions and limitations of this Litigation Trust Agreement, except as modified or limited by the Litigation Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the extent necessary); (iii) require such trustee to be answerable to the Litigation Trustee for all monies, assets and other property that may be received in connection with the administration of all property; (iv) solely from Litigation Trust Assets, compensate such trustee for its services in reasonable and customary amounts and reimburse such trustee's reasonable and authorized out-of-pocket expenses; and (v) remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Litigation Trustee of a written instrument declared such trustee removed from office, and specifying the effective date and time of removal;

(d)     Collect and liquidate and/or distribute all Litigation Trust Assets pursuant to the Plan, the Confirmation Order, and this Litigation Trust Agreement;

(e)     Maintain all accounts, authorize and make distributions to any Litigation Trust Beneficiaries provided for or contemplated under the Plan, the Confirmation Order, or this Litigation Trust Agreement; and take other actions required under or consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Litigation Trust;

(f)     Use, manage, sell, abandon, convert to Cash and/or otherwise dispose of the Litigation Trust Assets for the purpose of making distributions, to Holders of Prepetition Lender Claims and Allowed General Unsecured Claims;

(g)     Abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Litigation Trust Asset in the reasonable business judgment of the Litigation Trustee;

(h)     Prosecute, in reasonable coordination with the Plan Administrator,[2] objections to General Unsecured Claims and compromise or settle any such Claims (disputed or otherwise);

(i)     Investigate, prosecute and/or settle any Retained Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative, or other nonjudicial proceeding, and pursue to settlement or judgment such Retained Causes of Action;

(j)     Open and maintain bank and/or brokerage accounts on behalf of or in the name of the Litigation Trust, in reasonable coordination with the Plan Administrator, calculate and make

---

[2] Wherever this Litigation Trust Agreement refers to the Litigation Trustee's obligation to act "in reasonable coordination with the Plan Administrator," such obligation can be waived in writing by the Plan Administrator..

distributions, and take other actions consistent with the Plan and the Confirmation Order and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves, in the name of the Litigation Trust, provided that, the Litigation Trustee need not maintain the Litigation Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Litigation Trust; provided, however, that the Litigation Trustee shall treat all such reserved funds as being held in segregated accounts in its books and records;

(k)     Retain and compensate solely from the Litigation Trust Assets any and all such professionals and agents as the Litigation Trustee, in its sole discretion, deems reasonably necessary to perform its duties under the Plan without further order of the Bankruptcy Court;

(l)     Satisfy and pay all Litigation Trust expenses;

(m)     Purchase or create and carry all insurance policies, including liability insurance for the Litigation Trustee, and pay all insurance premiums and costs the Litigation Trustee deems necessary or advisable solely from the Litigation Trust Assets; and

(n)     Take all other actions not inconsistent with the provisions of the Plan that the Litigation Trustee deems reasonably necessary or desirable in connection with the administration of the Litigation Trust.

Section 2.3     <u>Safekeeping and Investment of Trust Assets</u>. All monies and other assets received by the Litigation Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Litigation Trust Beneficiaries, but need not be segregated in separate accounts from other Litigation Trust Assets, unless and to the extent required by law or the Plan or this Litigation Trust Agreement. The Litigation Trustee shall not be under any obligation to invest Litigation Trust Assets in the manner contemplated below or otherwise, nor responsible for any loss incurred by the Litigation Trust if any term investment or deposit permitted below is required to be sold, redeemed or withdrawn prior to maturity. Neither the Litigation Trust nor the Litigation Trustee shall have any liability for interest or producing income on any monies received by them and held for distribution or payment to the Litigation Trust Beneficiaries, except as such interest or income shall actually be received by the Litigation Trust or Litigation Trustee, which interest shall be applied to the permitted or required activities of the Litigation Trust as any other asset of the Litigation Trust. The powers of the Litigation Trustee to invest any monies held by the Litigation Trust, other than those powers reasonably necessary to maintain the value of the Litigation Trust Assets and to further the Litigation Trust's purpose, shall be limited to powers to invest in demand and time deposits, such as certificates of deposit, in banks or other savings institutions, or other liquid investments, such as Treasury bills, notes and bonds; *provided, however*, that the scope of permissible investments shall be limited to include only those investments that a Litigation Trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, may be permitted to hold pursuant to the Treasury Regulations, whether set forth in Internal Revenue Service (the "<u>IRS</u>") rulings, IRS pronouncements, any modification of the IRS guidelines or otherwise. No term deposit shall be made, nor certificate of deposit or U.S. Treasury security purchased, with a maturity longer than the earlier of (a) the date where by the Litigation Trustee expects to require access to the funds or (b) eighteen (18) months from the date of purchase.

Notwithstanding the foregoing, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account separate and unrelated to the Debtors or the Litigation Trust, provided that such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust.

Section 2.4    <u>Retention of Professionals</u>. The Litigation Trustee shall retain such legal counsel or other professionals as may be appropriate in accordance with the terms of the Plan and this Litigation Trust Agreement, whose reasonable fees and expenses shall be payable solely from the Litigation Trust Assets.

Section 2.5    <u>Compensation of Litigation Trustee and its Agents and Professionals</u>. The Litigation Trustee shall be entitled to receive reasonable compensation for the performance of its duties after the Effective Date as set forth on **<u>Exhibit A</u>**, payable solely from the Litigation Trust Assets. Any successor to the Litigation Trustee shall also be entitled to reasonable compensation in connection with the performance of its duties, which compensation may be different from the terms provided herein but in any event shall be payable solely from the Litigation Trust Assets.

Section 2.6    <u>Abandonment; Donation</u>. If, in the Litigation Trustee's reasonable judgment, any Litigation Trust Asset cannot be sold or distributed in a commercially reasonable manner or the Litigation Trustee believes in good faith that such Litigation Trust Asset has inconsequential value to the Litigation Trust or its Litigation Trust Beneficiaries or is insufficient to render a further distribution practicable, the Litigation Trustee shall have the right to cause the Litigation Trust to abandon or otherwise dispose of such Litigation Trust Asset, including by donation of any remaining funds to a charitable institution qualified as a not-for-profit corporation, under applicable federal and state laws without further order of the Bankruptcy Court.

Section 2.7    <u>Responsibility for Administration of Claims; Cooperation</u>. As of the Effective Date, the Litigation Trustee shall become responsible for administering and, in reasonable coordination with the Plan Administrator, paying distributions to Litigation Trust Beneficiaries in accordance with the Plan. The Litigation Trustee shall have the right, in coordination with the Plan Administrator, to object to the allowance of any General Unsecured Claim on any grounds and shall be entitled to assert, in reasonable coordination with the Plan Administrator, all defenses of the Debtors and the Debtors' Estates. The Litigation Trustee shall also be entitled, in reasonable coordination with the Plan Administrator, to assert all of the Debtors' Estates' rights under, without limitation, section 558 of the Bankruptcy Code with respect to any General Unsecured Claims. The Litigation Trustee may also, in reasonable coordination with the Plan Administrator, seek estimation of any General Unsecured Claim that is a Disputed Claim under and subject to section 502(c) of the Bankruptcy Code.  The Litigation Trustee shall cooperate with and provide reasonable advance notice to the Plan Administrator prior to the filing of any objections or estimation proceedings related to any General Unsecured Claim.

Section 2.8    <u>No Implied Obligations</u>. No implied covenants or obligations shall be read into this Litigation Trust Agreement against the Litigation Trustee.

Section 2.9    <u>Disputed Claims Reserve</u>. The Litigation Trustee, in reasonable coordination with the Plan Administrator, shall establish and maintain a disputed claims reserve

that shall consist of Cash necessary for the Litigation Trustee to make distributions of under the Plan and the Litigation Trust Agreement with respect to the General Unsecured Claims that have not been Allowed as of the date for any distribution on account of such Claims under the Plan if such Claims were to become Allowed Claims, pending the allowance or disallowance of such Disputed Claims (the "Disputed Claims Reserve"). If the Litigation Trustee wishes to deposit or hold a lesser amount than required hereunder and is unable to reach an agreement with the Holder of such Disputed Claim on the amount to be deposited or held, the Bankruptcy Court shall fix the amount after notice and hearing. The Disputed Claims Reserve is a separate and distinct reserve. The Litigation Trustee shall be authorized to make distributions from the Disputed Claims Reserve upon Final Order with respect to the General Unsecured Claim, to the Holder of such Disputed Claim, to the extent it has been determined to be an Allowed Claim, as soon as reasonably practical, in an amount of payment or distribution to which it would have been entitled if the portion of the Claim so allowed had been allowed as of the Effective Date, in accordance with the Plan and the Confirmation Order.

Section 2.10    Replacement of the Litigation Trustee. The Litigation Trustee may resign at any time upon thirty (30) days' written notice filed with the Bankruptcy Court, provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Litigation Trustee. The Litigation Trustee may be removed for cause, upon motion and after notice and a hearing, which motion may be brought by any party in interest. In the event of the resignation or removal, death, dissolution, or incapacity of the Litigation Trustee, the Bankruptcy Court shall designate another person to serve as Litigation Trustee and thereupon the successor Litigation Trustee shall become fully vested with all of the rights, powers, duties and obligations of its predecessor. The Litigation Trustee and its professionals shall be entitled to compensation payable from the Litigation Trust Assets as set forth in this Litigation Trust Agreement. Upon its appointment, the successor Litigation Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor, except as to amounts payable under Section 2.5 herein, and all responsibilities of the predecessor Litigation Trustee relating to the Litigation Trust shall be terminated. The provisions of Article IV of this Litigation Trust Agreement shall survive the resignation or removal of any Litigation Trustee.

Section 2.11    Litigation Trust Continuance. The death, dissolution, incapacity, resignation, or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency created by the Litigation Trustee pursuant to this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee, and the provisions of this Litigation Trust Agreement shall be binding upon and inure to the benefit of the successor Litigation Trustee and all its successors or assigns.

## ARTICLE III
## PROSECUTION AND RESOLUTION OF CAUSES OF ACTION

Section 3.1    Exclusive Authority to Pursue, Settle, or Abandon Certain Causes of Action. Pursuant to the Plan, from and after the Effective Date, the Litigation Trustee shall have exclusive rights, powers, and interests of the Debtors' Estates to pursue, settle or abandon any existing or potential Retained Causes of Action and objections to General Unsecured Claims, made prior to the Effective Date, and to make any objections to General Unsecured Claims, after the Effective

Date, as the sole representative of the Debtors' Estates pursuant to section 1123(b)(3) of the Bankruptcy Code, by informal demand and/or commencement of litigation. From and after the Effective Date, the Litigation Trustee may litigate to judgment, propose settlements of, or withdraw objections to, all pending or filed Disputed General Unsecured Claims and may settle or compromise any Disputed General Unsecured Claims Claim without notice and a hearing and without approval of the Bankruptcy Court.

Section 3.2    Court Approval. Nothing herein shall preclude the Litigation Trustee from seeking Bankruptcy Court approval of (i) any settlement or compromise of any Retained Cause of Action, or Disputed Claim or (ii) the exercise or non-exercise of any power or duty of the Litigation Trustee under this Litigation Trust Agreement, nor shall any provision hereof be construed as limiting the jurisdiction of the Bankruptcy Court to hear and determine any such request for relief.

Section 3.3    Ability to Seek and Obtain Discovery. From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including documents discovery and depositions) under Bankruptcy Rule 2004 or otherwise against any person or Entity other than parties that are Released Parties under the Plan as related to any Litigation Trust Assets, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any person or Entity, and to hear all matters with respect to the same.

**ARTICLE IV**
**LIABILITY OF LITIGATION TRUSTEE**

Section 4.1    Standard of Care; Exculpation. Neither the Litigation Trustee, nor any director, officer, member, affiliate, employee, employer, professional, successor, assign, agent, advisor, or representative of the Litigation Trust, or the Litigation Trustee (each, an "Exculpated Party" and collectively, the "Exculpated Parties") shall be liable for any losses, claims, damages, liabilities, obligations, settlements, proceedings, suits, judgments, causes of action, litigation, actions, or investigations (whether civil or administrative and whether sounding in tort, contract or otherwise), penalties, costs, and expenses, including reasonable fees and disbursements (collectively referred to herein as "Losses"), whether or not in connection with litigation in which any Exculpated Party is a party, or enforcing this Litigation Trust Agreement (including these exculpation provisions), as and when imposed on an Exculpated Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Litigation Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties and obligations under this Litigation Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission or error of an Exculpated Party; *provided, however*, that the foregoing limitation shall not apply to any Losses found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Exculpated Party. Every act taken or omitted, power exercised or obligation assumed by the Litigation Trustee or any Exculpated Party pursuant to the provisions of this Litigation Trust Agreement shall be held to be taken or omitted, exercised, or assumed, as the case may be, by the Litigation Trustee or any Exculpated Party acting for and on behalf of the Litigation Trust and not otherwise; *provided, however*, that none of the foregoing Entities or Persons are deemed to be responsible for any other such Entities' or Persons'

actions or inactions. Except as provided in the first provision of the first sentence of this <u>Section 4.1</u>, every Person or Entity contracting or otherwise dealing with or having any relationship with the Litigation Trust or any Exculpated Party shall have recourse only to the Litigation Trust Assets for payment of any liabilities or other obligations arising in connection with such contracts, dealings or relationships, and the Litigation Trust and the Exculpated Parties shall not be individually liable therefore. In no event shall an Exculpated Party be liable for indirect, punitive, special, incidental, or consequential damage or loss (including lost profits) whatsoever, even if the Exculpated Party had been informed of the likelihood of such loss or damages and regardless of the form of action. Except as provided in the first proviso of the first sentence of this <u>Section 4.1</u>, any liability of the Litigation Trustee under this Litigation Trust Agreement will be limited to the amount of fees paid annually to the Litigation Trustee.

Section 4.2    <u>Indemnification</u>.

(a)    The Litigation Trustee, and any director, officer, member, affiliate, employee, employer, professional, successor, assign, agent, or representative of the Litigation Trust (each, an "<u>Indemnified Party</u>" and collectively, the "<u>Indemnified Parties</u>") shall be defended, held harmless, and indemnified from time to time by the Litigation Trust against any and all Losses, including the costs for counsel or others in investigating, preparing, defending, or settling any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing this Litigation Trust Agreement (including these indemnity provisions), as and when imposed on the Indemnified Party, incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Litigation Trustee's execution, delivery, and acceptance of or the performance or nonperformance of its powers, duties, and obligations under this Litigation Trust Agreement, the Plan, or the Confirmation Order or as may arise by reason of any action, omission, or error of an Indemnified Party; *provided, however*, such indemnity shall not apply to any such Loss to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal or review) to have resulted primarily and directly from the fraud, gross negligence, or willful misconduct of such Indemnified Party. Satisfaction of any obligation of the Litigation Trust arising pursuant to the terms of this <u>Section 4.2</u> shall be payable only from the Litigation Trust Assets, shall be advanced prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights of Litigation Trust Beneficiaries to receive a distribution of the Litigation Trust Assets (other than to the prior payment in Cash or the creation of the Disputed Claims Reserves as set forth in the Plan, the Confirmation Order, and this Litigation Trust Agreement).

(b)    The Litigation Trust shall promptly pay to the Indemnified Party the expenses set forth in subparagraph (a) above upon submission of invoices therefore on a current basis solely from the Litigation Trust Assets or any insurance or similar recovery. Each Indemnified Party hereby undertakes, and the Litigation Trust hereby accepts its undertaking, to repay any and all such amounts so paid by the Litigation Trust if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefore under this Litigation Trust Agreement.

(c)    Notwithstanding any provision of this Litigation Trust Agreement to the contrary, any Person or Entity (including, without limitation, any Litigation Trust Beneficiary or third party) asserting a claim or cause of action against the Exculpated Parties, in their capacity as such, shall

first be required to seek and obtain an order from the Bankruptcy Court in the Chapter 11 Cases granting leave to bring such action.

Section 4.3    No Liability for Acts of Successor/Predecessor Litigation Trustees. Upon the appointment of a successor Litigation Trustee and the delivery of the Litigation Trust Assets to the successor Litigation Trustee, the predecessor Litigation Trustee and any director, officer, affiliate, employee, employer, professional, agent, or representative of the predecessor Litigation Trustee shall have no further liability or responsibility with respect to such Litigation Trust Assets. A successor Litigation Trustee shall have no duty to examine or inquire into the acts or omissions of its immediate or remote predecessor and no successor Litigation Trustee shall be in any way liable for the acts or omissions of any predecessor Litigation Trustee unless a successor Litigation Trustee expressly assumes such responsibility. A predecessor Litigation Trustee shall have no liability for the acts or omissions of any immediate or subsequent successor Litigation Trustee for any events or occurrences subsequent to the cessation of its role as Litigation Trustee.

Section 4.4    Reliance by Litigation Trustee. Except as otherwise provided in this Litigation Trust Agreement, the Litigation Trustee, any director, officer, member, affiliate, employee, employer, professional, agent, or representative of the Litigation Trustee may rely, and shall be protected from liability for acting or failing to act, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by the Litigation Trustee to be genuine and to have been presented by an authorized party. The Litigation Trustee shall not be liable for any action taken or omitted or suffered by the Litigation Trustee in reasonable reliance upon the advice of counsel or other professionals engaged by the Litigation Trustee in accordance with this Litigation Trust Agreement. The Litigation Trustee shall be fully indemnified by the Litigation Trust for or in respect of any action taken, suffered or omitted by it and in accordance with such advice or opinion.

Section 4.5    Conflicts of Interest. The Litigation Trustee will appoint a disinterested Person to handle any matter where the Litigation Trustee has identified a conflict of interest or the Bankruptcy Court, on motion of a party in interest, determines one exists. If the Litigation Trustee is unwilling or unable to appoint a disinterested Person to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.

Section 4.6    Insurance. The Litigation Trustee may purchase, using the Litigation Trust Assets and no other assets of the Estates, and carry all insurance policies and pay all insurance premiums and costs the Litigation Trustee deem reasonably necessary or advisable, including purchasing any errors and omissions insurance with regard to any Losses it may incur, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of fraud or willful misconduct, with respect to the implementation and administration of the Plan, the Confirmation Order, or this Litigation Trust Agreement.

Section 4.7    No Liability for Good Faith Error of Judgment. The Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Litigation Trustee was grossly negligent in ascertaining the pertinent facts.

Section 4.8    Survival. The provisions of this Article IV shall survive the termination of this Litigation Trust Agreement and the death, incapacity, resignation, removal, dissolution, or replacement of the Litigation Trustee.

## ARTICLE V
## GENERAL PROVISIONS CONCERNING
## ADMINISTRATION OF THE LITIGATION TRUST

Section 5.1    Responsibilities of the Litigation Trustee. Without limiting any of the duties and responsibilities of the Litigation Trustee otherwise set forth in this Litigation Trust Agreement or the Plan, the responsibilities of the Litigation Trustee under this Litigation Trust Agreement and the Plan shall include the following: (i) selling, disposing, liquidating, receiving, holding, investing, supervising, protecting, and abandoning the Litigation Trust Assets; (ii) administering, reconciling, settling, and resolving General Unsecured Claims, in reasonable coordination with the Plan Administrator; (iii) in reasonable coordination with the Plan Administrator, taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made to Holders of Allowed General Unsecured Claims and Holders of Allowed Prepetition Lender Claims; (iv) in reasonable coordination with the Plan Administrator, making distributions to Holders of Allowed General Unsecured Claims and Holders of Allowed Prepetition Lender Claims; and (v) retaining professionals or other advisors to assist in the performance of its duties.

Section 5.2    Claims Register of Litigation Trust Beneficiaries.

(a)    In reasonable coordination with the Plan Administrator, the Litigation Trustee shall maintain a record of the names and addresses of all Holders of Allowed General Unsecured Claims as of the Effective Date for purposes of mailing distributions to them (the "Claims Register"). The Litigation Trustee may rely on the name and address set forth in the Debtors' Schedules and/or Proofs of Claim as of the Effective Date as being true and correct unless and until notified otherwise in writing.

(b)    In the case of Holders of Prepetition Lender Claims, the Administrative Agent shall be deemed to be the Holder of such Claims for purposes of distributions to be made hereunder. In reasonable coordination with the Plan Administrator, the Litigation Trustee shall make all distributions on account of such Claims to the Administrative Agent or as directed by the Administrative Agent, in the Administrative Agent' sole discretion.

Section 5.3    Books and Records.

(a)    Upon written request by the Litigation Trustee, the Debtors shall use commercially reasonable efforts to maintain books and records for the sole purpose of assisting with collection of Retained Causes of Action, *provided* that all costs related to satisfying such request shall be funded exclusively from the Litigation Trust Assets, and *provided further* that all such requests will be submitted to the Debtors or the Plan Administrator (as applicable) by no later than thirty (30) calendar days following the Effective Date of the Plan. For the purpose of this Section 5.3, books and records include computer generated or computer maintained payroll data, tax returns, accounting, and accounts payable and computer data in the possession of the Debtors, as well as payroll data, tax returns, accounting, and accounts payable of the Debtors maintained by or in

possession of third parties and all of the claims and rights of the Debtors in and to their payroll data, tax returns, accounting, and accounts payable, wherever located.

(b)     All costs related to satisfying the Litigation Trustee's request for books and records shall be funded exclusively from the Litigation Trust Assets.

(c)     The Litigation Trustee also shall maintain in respect of the Litigation Trust and the Litigation Trust Beneficiaries books and records relating to the Litigation Trust Assets and any income or proceeds realized therefrom and the payment of expenses of and claims against or assumed by the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in this Litigation Trust Agreement is intended to require the Litigation Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust, or as a condition for making any payment or distribution out of the Litigation Trust Assets. Litigation Trust Beneficiaries shall have the right upon thirty (30) days' prior written notice delivered to the Litigation Trustee to inspect the Litigation Trust's books and records, provided such Litigation Trust Beneficiary shall have (i) entered into a confidentiality agreement in form and substance reasonably satisfactory to the Litigation Trustee and (ii) agreed to pay all reasonable costs related to such inspection. Satisfaction of the foregoing condition notwithstanding, if (a) the Litigation Trustee determines in good faith that the inspection of the Litigation Trust's books and records by any Litigation Trust Beneficiary would be detrimental to the Litigation Trust or (b) such Litigation Trust Beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Litigation Trust, including any Claim objection by the Litigation Trustee or the Plan Administrator, the Litigation Trust may deny such request for inspection. The Bankruptcy Court shall resolve any dispute between any Litigation Trust Beneficiary and the Litigation Trustee under this <u>Section 5.3</u>.

(d)     The books and records maintained by the Litigation Trustee may be disposed of by the Litigation Trustee upon the termination and completion of the winding down of the Litigation Trust.

## ARTICLE VI
## INTERESTS AND LITIGATION TRUST BENEFICIARIES

Section 6.1     <u>Litigation Trust Interests</u>. On the Effective Date, (i) each Holder of an Allowed General Unsecured Claim shall, by operation of the Plan, be deemed to have received its Pro Rata Share of the Litigation Trust GUC Interests pursuant to the terms of the Plan and (ii) each Holder of an Allowed Prepetition Lender Claim shall, by operation of the Plan, be deemed to have received its Pro Rata Share of the Litigation Trust Prepetition Lender Interests pursuant to the terms of the Plan.  The Litigation Trust Interests shall not represent an ownership interest in the Litigation Trust, but are merely a means to represent the scope of a Person's beneficial interest in and potential distribution of the Litigation Trust Assets.

In accordance with the Plan and <u>Section 2.9</u> of this Litigation Trust Agreement, Litigation Trust GUC Interests shall be deemed reserved for Holders of Disputed General Unsecured Claims

and issued by the Litigation Trust to, and held by the Litigation Trustee in, the Disputed Claims Reserve pending allowance or disallowance of such Disputed General Unsecured Claims.

Except as set forth herein, no other Person or Entity shall have any interest, legal, beneficial, or otherwise, in the Litigation Trust Assets upon the assignment and transfer of such assets to the Litigation Trust.

Section 6.2    <u>Litigation Trust Operating and Administrative Expenses</u>. Distributions from the Litigation Trust on account of Litigation Trust GUC Interests deemed to be held by Holders of Allowed General Unsecured Claims or Litigation Trust Prepetition Lender Interests deemed to be held by Holders of Allowed Prepetition Lender Claims shall be made from the Litigation Trust Assets after paying, reserving against, or satisfying, among other things, the operating and administrative expenses of the Litigation Trust, including all costs, expenses, and obligations incurred by the Litigation Trustee (or professionals who may be employed by the Litigation Trustee in administering the Litigation Trust) in carrying out their responsibilities to the Litigation Trust under the Litigation Trust Agreement, or in any manner connected, incidental, or related thereto. For the avoidance of doubt, any expenses related to claims and noticing fees incurred by Omni Agent Solutions, Inc. in connection with any noticing required by the Litigation Trustee shall be paid by the Litigation Trustee from the Litigation Trust Assets.

Section 6.3    <u>Interest Beneficial Only</u>. Being deemed to hold a Litigation Trust Interest shall not entitle any Litigation Trust Beneficiary to any title in or to the Litigation Trust Assets or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting.

Section 6.4    <u>Evidence of Interest</u>. Litigation Trust Interests shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever.

Section 6.5    <u>Exemption from Registration</u>. The Litigation Trust Interests and the entitlements hereunder, if any, of the Litigation Trust Beneficiaries are not intended to, and shall not, constitute "securities." If, notwithstanding the foregoing, the Litigation Trust Interests or any entitlements of the Litigation Trust Beneficiaries hereunder or under the Plan are deemed to be "securities," the deemed issuance of Litigation Trust Interests to Litigation Trust Beneficiaries or any entitlements hereunder or under the Plan (and any redistribution of any of the foregoing pursuant to the Plan or otherwise) shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under the Securities Act and any applicable state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with registration and/or reporting requirements of the Securities Act, the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), the Trust Indenture Act of 1939, as amended (the "<u>Trust Indenture Act</u>"), or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements, if any, and file reports with the Securities and Exchange Commission (the "<u>SEC</u>") to the extent required by applicable law. Notwithstanding the foregoing procedure, nothing herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure

that the Litigation Trust is not subject to registration and/or reporting requirements of the Securities Act, the Exchange Act, the Trust Indenture Act or the Investment Company Act, except that no amendment to this Litigation Trust Agreement may be made which would not be permitted by <u>Section 12.1</u> of this Litigation Trust Agreement.

Section 6.6    <u>Transfers of Beneficial Interests; Successor Beneficiaries</u>. A Litigation Trust Beneficiary's beneficial interest, as represented by the Litigation Trust Interests, shall be nontransferable, and shall not be assigned, pledged or hypothecated, in whole or in part; provided, however, upon the death of an individual Litigation Trust Beneficiary, such individual's estate shall be deemed a successor beneficiary to such to the extent of such Litigation Trust Beneficiary's Litigation Trust Interests or as otherwise required by operation of law. Any purported transfer, assignment, pledge or hypothecation of a Litigation Trust Interest or any part thereof not permitted by this <u>Section 6.6</u> shall constitute a violation of this Litigation Trust Agreement and shall be void *ab initio*. The Litigation Trust shall not have any obligation to recognize any transfer of Claims occurring after the Effective Date. Only those Holders of Claims of record stated on the transfer ledgers as of the close of business on the Effective Date, to the extent applicable, shall be entitled to be recognized as potential Litigation Trust Beneficiaries for all purposes hereunder.

Section 6.7    <u>Absolute Beneficiaries</u>. The Litigation Trustee may deem and treat the Litigation Trust Beneficiary reflected as the deemed recipient of a Litigation Trust Interest on the Claims Register as the absolute Litigation Trust Beneficiary with respect thereto for the purposes of receiving distributions and payments on account thereof for federal and state income tax purposes and for all other purposes whatsoever. In no event shall the Debtors be deemed to have any ownership interest in the Litigation Trust for federal or state income tax purposes.

Section 6.8    <u>Change of Address</u>. A Litigation Trust Beneficiary may, after the Effective Date, select an alternative distribution address by filing a notice with the Bankruptcy Court (with a copy served on the Litigation Trustee) identifying such alternative distribution address. Absent such notice, the Litigation Trustee shall not recognize any such change of distribution address. Such notification shall be effective only upon receipt by the Litigation Trustee.

Section 6.9    <u>Effect of Death, Dissolution, Incapacity, or Bankruptcy of Litigation Trust Beneficiary</u>. The death, dissolution, incapacity, or bankruptcy of a Litigation Trust Beneficiary during the term of the Litigation Trust shall not operate to terminate the Litigation Trust during the term of the Litigation Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Litigation Trust Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Litigation Trust Assets or for a partition thereof, nor shall it otherwise affect the rights and obligations of the Litigation Trust Beneficiary under this Litigation Trust Agreement or in the Litigation Trust.

Section 6.10    <u>Standing</u>. Except as expressly provided in this Litigation Trust Agreement, the Plan or the Confirmation Order, a Litigation Trust Beneficiary does not have standing to direct the Litigation Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party upon or with respect to the Litigation Trust Assets.

# ARTICLE VII
# PROCEDURES FOR RECONCILING CLAIMS
# AND MAKING DISTRIBUTIONS

Section 7.1    <u>Prosecuting and Resolving Disputed Claims</u>. As of the Effective Date, the Litigation Trustee shall have the right and authority, along with and in reasonable coordination with the Plan Administrator to (i) make, file, withdraw and prosecute objections to all General Unsecured Claims, (ii) litigate to judgment, propose settlements of, compromise or otherwise resolve or withdraw any objections to, all pending or filed General Unsecured Claims that are Disputed Claims and may settle or compromise any General Unsecured Claims that are Disputed Claims without notice and a hearing and without approval of the Bankruptcy Court and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

Section 7.2    <u>Distributions</u>.  All payments to be made by the Litigation Trust to any Litigation Trust Beneficiary shall be made only in accordance with the Plan, the Confirmation Order and this Litigation Trust Agreement and from the Litigation Trust Assets (or from the income and proceeds realized from the Litigation Trust Assets) net of reserves established by the Litigation Trustee or otherwise required by the Plan, if any, and only to the extent that the Litigation Trust has sufficient Litigation Trust Assets (or income and proceeds realized from the Litigation Trust Assets) to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Litigation Trust Agreement.

Section 7.3    <u>Litigation Trust Reserve</u>. The Litigation Trustee in reasonable coordination with the Plan Administrator shall make distributions to Litigation Trust Beneficiaries as provided in the Plan; *provided, however*, that the Litigation Trustee may retain and supplement from time to time a reserve (the "<u>Litigation Trust Reserve</u>") in such amount (i) as is reasonably necessary to satisfy the obligations under the Plan and meet contingent liabilities and to maintain the value of the Litigation Trust Assets during the term of the Litigation Trust, and (ii) to pay the Litigation Trust's incurred and projected expenses, including the compensation and the reimbursement of reasonable, actual and necessary costs, fees, and expenses (including attorneys' fees and expenses, financial advisor fees and expenses, and disbursing agent fees and expenses) of the Litigation Trustee in connection with the performance of its duties in connection with this Litigation Trust Agreement. The funding of the Litigation Trust Reserve may preclude or reduce distributions to Litigation Trust Beneficiaries. All such distributions shall be made as provided, and subject to any withholding or reserve, in this Litigation Trust Agreement, the Plan, or the Confirmation Order. Additionally, the Litigation Trustee may withhold from amounts distributable to any Litigation Trust Beneficiary any and all amounts, determined in the Litigation Trustee's sole and reasonable discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement; provided that no such withholding is required under current law. In addition, all distributions under this Litigation Trust Agreement shall be net of the actual and reasonable costs of making such distributions.  For the avoidance of doubt, on and after the Effective Date, the Post-Effective Date Debtors and the Litigation Trust shall be jointly and severally liable for paying any and all Statutory Fees in full in Cash when due in each Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code

Section 7.4    <u>No Distributions Pending Allowance</u>. No payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim has become an Allowed Claim.

Section 7.5    <u>Distributions after Allowance</u>. Distributions to each Holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan, Confirmation Order, and this Litigation Trust Agreement.

Section 7.6    <u>Non-Cash Property</u>. Any non-Cash Litigation Trust Assets may be sold, transferred or abandoned by the Litigation Trustee. If, in the Litigation Trustee's reasonable judgment, such property cannot be sold in a commercially reasonable manner, or the Litigation Trustee believes, in good faith, such property has no value to the Litigation Trust, the Litigation Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Litigation Trustee. Except in the case of fraud, willful misconduct, or gross negligence, neither the Litigation Trustee nor any director, officer, employee, consultant, authorized agent or professional of the Litigation Trustee or of any of its members or professionals, shall have any liability arising from or related to the disposition of non-Cash Litigation Trust Assets in accordance with this <u>Section 7.6</u>.

Section 7.7    <u>Withholding Taxes and Expenses of Distribution</u>. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions pursuant to the Plan. The Litigation Trustee may withhold from amounts distributable pursuant to the Plan to any Person any and all amounts, determined in the sole and reasonable discretion of the Litigation Trustee, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement; provided that no such withholding is required under current law. All Holders of Claims shall be required to provide the Litigation Trustee with any information necessary to effect the withholding of such taxes. In addition, all distributions under the Plan shall be net of the actual and reasonable costs of making such distributions. If such information is not provided within one hundred and twenty (120) days of being requested, all distributions to which such Holders are or become entitled shall be treated as Unclaimed Property, unless determined otherwise in the discretion of the Litigation Trustee.

Section 7.8    <u>Conflicting Claims</u>.

(a)    If any conflicting claims or demands are made or asserted with respect to a Litigation Trust Interest of a Litigation Trust Beneficiary under this Litigation Trust Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Litigation Trustee shall be entitled, in its sole discretion, to refuse in a writing to such parties to comply with any such conflicting claims or demands.

In so refusing, the Litigation Trustee may elect to cause the Litigation Trust to make no payment or distribution with respect to the Litigation Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, neither the Litigation Trust nor the Litigation Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Litigation Trust or Litigation Trustee be liable for interest on any funds which may be so withheld.

(b)    The Litigation Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a final order of the Bankruptcy Court or (ii) all differences have been resolved by a valid written agreement among all such parties to the reasonable satisfaction of the Litigation Trustee, which agreement shall include a complete release of the Litigation Trust and Litigation Trustee. Until the Litigation Trustee receives written notice that one of the conditions of the preceding sentence is met, the Litigation Trustee may deem and treat as the absolute beneficiary under this Litigation Trust Agreement as to the relevant Litigation Trust Interest the Litigation Trust Beneficiary identified as the beneficiary with regard to such Litigation Trust Interest in the books and records maintained by the Litigation Trustee. The Litigation Trustee may deem and treat such Litigation Trust Beneficiary as the absolute beneficiary for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

(c)    In acting or refraining from acting under and in accordance with this Section 7.8 of the Litigation Trust Agreement, the Litigation Trustee shall be fully protected and incur no liability to any purported claimant or any other Person or Entity pursuant to Article IV of this Litigation Trust Agreement.

Section 7.9    Setoff and Recoupment. On the Effective Date or at a reasonable time thereafter, the Debtors and the Post-Effective Date Debtors shall use their commercially reasonable best efforts to disclose to the Litigation Trustee all known claims of the Debtors against the Holders of General Unsecured Claims. The Litigation Trustee shall be authorized but not required to use such claims to set off Allowed Claims or recoup from any such claims.

Section 7.10    Priority of Expenses of Trust. The Litigation Trust must pay or reserve for payment of all of its expenses before making distributions hereunder.

## ARTICLE XIII
## TAXES

Section 8.1    Income Tax Status. For federal income tax purposes, it is intended that the Litigation Trust be classified as a liquidation trust under section 301.7701-4(d) of the Treasury Regulations and Revenue Procedure 94-45, 1994-2 C.B. 684 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Litigation Trust Beneficiaries be treated as if they had received a distribution from the Debtors' Estates of an undivided interest in each Litigation Trust Asset (to the extent of the value of their Pro Rata Share

in the Litigation Trust Assets) and then contributed such interests to the Litigation Trust, and the Litigation Trust Beneficiaries will be treated as the grantors and owners thereof.

Section 8.2    Payment of Taxes. The Litigation Trust shall be responsible for payments, out of Litigation Trust Assets, of all taxes imposed on the Litigation Trust or Litigation Trust Assets. In the event, and to the extent, any Cash retained on account of Disputed General Unsecured Claims associated with the Litigation Trust is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed General Unsecured Claims, the Litigation Trustee may, in its discretion, (a) sell any non-Cash assets relating to such Disputed General Unsecured Claims (including any assets otherwise distributable as a result of disallowance of such Claim) to pay such taxes or (b) reimburse the Litigation Trust for the payment of such taxes from any subsequent Cash amounts allocable to, or retained on account of, such taxes from any subsequent Cash amounts allocable to, or retained on account of, such Disputed General Unsecured Claims (including any Cash otherwise distributable as a result of disallowance of such Claims).

Section 8.3    Tax Returns. The Litigation Trustee shall file tax returns for the Litigation Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations and in accordance with the Plan. The Litigation Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items is respect of any assets allocable to, or retained on account of, Disputed Claims) to be allocated among Litigation Trust Beneficiaries shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Litigation Trust had distributed all of its assets (valued at their tax book value, other than assets allocable to Disputed Claims) to the Litigation Trust Beneficiaries and taking into account all prior and concurrent distributions from the Litigation Trust. Similarly, taxable loss of the Litigation Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical distribution of the remaining Litigation Trust Assets. The tax book value of Litigation Trust Assets for purposes of this Section 8.3 shall equal their fair market value as of the date such Litigation Trust Asset is transferred to the Litigation Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

Section 8.4    Valuation. As soon as possible after the Effective Date, the Litigation Trustee shall make a good faith valuation of the Litigation Trust Assets, and such valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Litigation Trust shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that are required by any Governmental Unit for taxing purposes.

Section 8.5    Treatment of Disputed Claims Reserves. The Litigation Trust shall be responsible for payment, out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust (including any "disputed ownership fund" within the meaning of section 1.468B-9 of the Treasury Regulations) or the Litigation Trust Assets. In accordance therewith, any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund and netted against any subsequent distribution in respect of the allowance or disallowance of

such Claims. The Litigation Trustee (i) may timely elect to treat any Litigation Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by section 1.468B-9 of the Treasury Regulations, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including the Litigation Trustee and the Litigation Trust Beneficiaries) shall report for U.S. federal, state and local income tax purposes consistently with the foregoing. The Litigation Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the U.S. federal, state and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

Section 8.6    Expedited Determination of Taxes. The Litigation Trust may request an expedited determination of taxes or tax refund rights of the Litigation Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code for all returns or claims filed for the Litigation Trust for all taxable periods through the termination of the Litigation Trust.

## ARTICLE IX
## DISSOLUTION OF LITIGATION TRUST

Section 9.1    Dissolution of Litigation Trust. The Litigation Trust shall be dissolved as soon as practicable after the date that is the earlier to occur of: (a) the distribution of all Litigation Trust Assets pursuant to the Plan, or (b) the determination by the Litigation Trustee that the continued prosecution of any Retained Causes of Action is not likely to yield sufficient additional proceeds to justify further pursuit. Notwithstanding the foregoing sentence, the Litigation Trust shall dissolve after five (5) years from the Effective Date, unless (x) the Bankruptcy Court or other court with jurisdiction over the Litigation Trust, within ninety (90) days prior to the fifth (5th) anniversary of the Effective Date (or within ninety (90) days prior to the end of an extension period), determines that a fixed-period extension, together with any prior extensions, is necessary to facilitate or complete the recovery on and liquidation of the Litigation Trust Assets, provided that no one individual fixed-period extension shall exceed three (3) years or (y) the Litigation Trust obtains a favorable private letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a grantor trust that is a liquidating trust for United States federal income tax purposes.

Section 9.2    Events Upon Termination. At the conclusion of the term of the Litigation Trust, the Litigation Trustee shall distribute the remaining Litigation Trust Assets (subject to a reserve for expenses incurred in winding up the affairs of the Litigation Trust), if any, to the Litigation Trust Beneficiaries or other parties entitled thereto, in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement.

Section 9.3    Winding Up, Discharge, and Release of the Litigation Trustee. For the purposes of winding up the affairs of the Litigation Trust at the conclusion of its term, the Litigation Trustee shall continue to act as Litigation Trustee until its duties under this Litigation Trust Agreement have been fully discharged or its role as Litigation Trustee is otherwise terminated under this Litigation Trust Agreement and the Plan. Upon a motion by the Litigation Trustee, the Bankruptcy Court may enter an order relieving the Litigation Trustee, its agents and employees of any further duties, discharging, and releasing the Litigation Trustee and its bond.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

Section 10.1    Amendments. Subject to written consent or approval of the Plan Administrator or the Debtors, as applicable, the Litigation Trustee may modify, supplement, or amend this Litigation Trust Agreement in any way that is not inconsistent with the Plan or the Confirmation Order. Any modified or amended Litigation Trust Agreement shall be filed with the Bankruptcy Court.

Section 10.2    Waiver. No failure by the Litigation Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

Section 10.3    Cumulative Rights and Remedies. The rights and remedies provided in this Litigation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

Section 10.4    No Bond Required. Notwithstanding any state law to the contrary, the Litigation Trustee (including any successor Litigation Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 10.5    Irrevocability. This Litigation Trust Agreement and the Litigation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Litigation Trust Agreement.

Section 10.6    Tax Identification Numbers. The Litigation Trustee shall require any Litigation Trust Beneficiary or Holder of a Claim to furnish to the Litigation Trustee its social security number or employer or taxpayer identification number as assigned by the IRS, and the Litigation Trustee may condition any distribution to any Litigation Trust Beneficiary or Holder of Claim upon the receipt of such identification number. No distribution shall be made to or on behalf of a Litigation Trust Beneficiary or Holder of Claim unless and until such Holder has provided the Litigation Trustee with any information, records, or documents necessary to satisfy the Litigation Trustee's associated tax reporting obligations, including completed IRS Form W-9, or, where applicable, a completed Form W-8 or certificate of non-foreign status. If a Litigation Trust Beneficiary or Holder of Claim does not timely provide the Litigation Trustee with its taxpayer identification number in the manner and by the deadline established by the Litigation Trustee, then the distribution to such Litigation Trust Beneficiary or Holder of Claim shall be administered as Unclaimed Property in accordance with the relevant provisions of the Plan.

Section 10.7    Relationship to the Plan. The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Litigation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. If any provision of this Litigation Trust Agreement is found to be inconsistent with a provision of the Plan, the provisions of the Plan or Confirmation Order, as applicable, shall control.

Section 10.8    Applicable Law. This Litigation Trust shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws; provided, however, that, except as expressly provided in this Litigation Trust Agreement, there shall not be applicable to the Litigation Trust, the Litigation Trustee, or this Litigation Trust Agreement (a) the provisions of Section 3540 of Title 12 of the Delaware Code, or (b) any provisions of the laws (statutory or common) of the State of Delaware pertaining to trusts which relate to or regulate: (i) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (ii) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (iii) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property, (iv) fees or other sums payable to trustees, officers, agents or employees of a trust, (v) the allocation of receipts and expenditures to income or principal, (vi) restrictions or limitations on the permissible nature, amount or concentration of trust investments or requirements relating to the titling, storage or other manner of holding of trust assets, or (vii) the establishment of fiduciary or other standards or responsibilities or limitations on the acts or powers of trustees, which are inconsistent with the limitations or liabilities or authorities and powers of the Litigation Trustee set forth or referenced in this Litigation Trust Agreement.

Section 10.9    Retention of Jurisdiction. Notwithstanding the Effective Date, and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Litigation Trust after the Effective Date, including jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, as set forth in Article X of the Plan. Each party to this Litigation Trust Agreement hereby irrevocably consents to the exclusive jurisdiction and venue of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Litigation Trust Agreement or of any other agreement or document delivered in connection with this Litigation Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum *non conveniens* or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Litigation Trust Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, of any process in any action to enforce, interpret or construe any provision of this Litigation Trust Agreement.

Section 10.10    Severability. If any term, provision, covenant, or restriction contained in this Litigation Trust Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable, or against its regulatory policy, the remainder of the terms, provisions, covenants, and restrictions contained in this Litigation Trust Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

Section 10.11    Limitation of Benefits. Except as otherwise specifically provided in this Litigation Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any Person or Entity other than the parties hereto and the Litigation Trust Beneficiaries any rights or remedies under or by reason of this Litigation Trust Agreement.

Section 10.12  <u>Notices</u>. Except as may otherwise be specifically provided in this Litigation Trust Agreement, all notices, requests and demands to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Litigation Trustee:

>Michael I. Goldberg, Trustee
>201 E. Las Olas Blvd., Ste. 1800
>Ft. Lauderdale, FL 33301
>michael.goldberg@akerman.com

If to a Holder of a Litigation Trust GUC Interests:

>To the name and distribution address set forth in the Claims Register with respect to such Holder.

If to a Holder of a Litigation Trust Prepetition Lender Interest:

>Otterbourg P.C.
>230 Park Avenue
>New York, NY 10169
>Attn:  Daniel F. Fiorillo
>dfiorillo@otterbourg.com
>
>and
>
>Blank Rome LLP
>1201 N. Market Street, Suite 800
>Wilmington, Delaware 19801
>Attn:  Regina Stango Kelbon
>regina.kelbon@blankrome.com

If to the Debtors and Post-Effective Date Debtors:

>Young Conaway Stargatt &Taylor, LLP
>One Rodney Square
>1000 North King Street
>Wilmington, Delaware 19801
>Attn:  Kenneth J. Enos
>kenos@ycst.com

The parties may designate in writing from time to time other and additional places to which notices may be sent.

Section 10.13 <u>Further Assurances</u>. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Litigation Trust Agreement, and to consummate the transactions contemplated hereby.

Section 10.14 <u>Integration</u>. This Litigation Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by and among the parties hereto, with respect to the subject matter hereof. This Litigation Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder. To the extent of any conflict between the terms of the Plan or the Confirmation Order and this Litigation Trust Agreement, the Plan or Confirmation Order, as applicable, shall govern.

Section 10.15 <u>Interpretation</u>. The enumeration and Section headings contained in this Litigation Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Litigation Trust Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Litigation Trust Agreement the singular shall include the plural and the plural shall include the singular. The words herein, hereby, and hereunder and words with similar import, refer to this Litigation Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise. Any reference to the "Litigation Trustee" shall be deemed to include a reference to the "Litigation Trust" and any reference to the "Litigation Trust" shall be deemed to include a reference to the "Litigation Trustee" except for any provisions in which the context otherwise requires. Any provision of this Litigation Trust Agreement that refers to the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation".

Section 10.16 <u>Counterparts</u>. This Litigation Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of this Litigation Trust Agreement by facsimile or electronic mail (portable document format or otherwise) shall be equally effective as delivery of a manually executed counterpart.

  IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**DEBTORS:**

**TRUE VALUE COMPANY, L.L.C. ON BEHALF OF ITSELF AND EACH OF THE DEBTORS**

By:_____
Name:
Title:

**LITIGATION TRUSTEE**:

By:_____
Name: Michael I. Goldberg
Title: Litigation Trustee

**EXHIBIT A**
**LITIGATION TRUSTEE COMPENSATION**

Pursuant to <u>Section 2.5</u> of this Litigation Trust Agreement, this Exhibit sets forth the terms of the Litigation Trustee's compensation.

1.    <u>**Fees**</u>.    The Litigation Trustee, Michael Goldberg, also will serve as the Plan Administrator. He will receive no additional compensation as Litigation Trustee, his compensation for both positions being as set forth and on the terms of the Plan Administration Agreement:  on a monthly basis at $25,000 for the first three months, and $20,000 per month for all future months; provided, however, to the extent the Prepetition Secured Parties desire to convert the Plan Administration and Litigation Trustee positions to hourly engagement roles, they may do so at any time at a rate to $900 per hour plus costs.

2.    <u>**Costs and Expenses**</u>.    The Litigation Trustee will also be entitled to reimbursement of actual and necessary out-of- pocket expenses incurred in his role as Litigation Trustee.

## **EXHIBIT C-2**

**CPO Blackline of Litigation Trust Agreement**

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (the "Litigation Trust Agreement") is made and entered into as of [●]March   , 2025, by and among True Value Company, L.L.C., TV Holdco II, L.L.C., TV TSLC, L.L.C., TV GPMC, L.L.C., True Value Retail, L.L.C., TrueValue.com Company, L.L.C., True Value Virginia, L.L.C., and Distributors Hardware, L.L.C (collectively, the "Debtors" or, after the Effective Date of the Plan, the "Post-Effective Date Debtors"), and [●]Michael I. Goldberg, not in any individual capacity, but solely as trustee (the "Litigation Trustee") in accordance with that certain *Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* [Docket No. 905] (as the same may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "Plan").[1]

## RECITALS

WHEREAS, on October 14, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, an order confirming the Plan wasis expected to be entered by the Bankruptcy Court on [●]or about April 2, 2025 (the "Confirmation Order") and the Plan becameis expected to go effective on [ ● ], 2025shortly thereafter;

WHEREAS, the Plan and Confirmation Order contemplate, on the Effective Date, (i) the creation of a litigation trust (the "Litigation Trust") and the creation of the beneficial interests in the Litigation Trust for the benefit, as provided in the Plan, of Holders of Allowed General Unsecured Claims (the "Litigation Trust GUC Interests") and the Holders of Allowed Prepetition Lender Claims (the "Litigation Trust Prepetition Lender Interests," and collectively, with the Litigation Trust GUC Interests, the "Litigation Trust Interests") and the Holders thereof, collectively, the "Litigation Trust Beneficiaries" and, each individually, a "Litigation Trust Beneficiary", and (ii) the Litigation Trust Assets will be vested in the Litigation Trust as set forth in the Plan, including (i) the Initial Litigation Trust Funded Amount and (ii) the Retained Causes of Action (collectively, the "Litigation Trust Assets");

WHEREAS, the Litigation Trust is established pursuant to the Plan and this Litigation Trust Agreement as: (i) a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations, for the purpose of liquidating the Litigation Trust Assets and making distributions in accordance with the Plan, the Confirmation Order, and this Litigation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust and the Plan; and (ii) a "grantor trust" pursuant to sections 671 and 677 of the Internal Revenue Code (the "Tax Code") for United States federal income tax purposes, with the Beneficiaries treated as the grantors and owners of the Litigation Trust Assets; and

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.



Section 1.4    Funding of the Trust. The Litigation Trust shall be funded on the Effective Date by the transfer of the Litigation Trust Assets, to the extent provided for in Section 1.2 and Section 1.3 of this Litigation Trust Agreement and in the Plan and Confirmation Order.

Section 1.5    Acceptance by Litigation Trustee. The Litigation Trustee hereby accepts the trust imposed upon it by this Litigation Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Litigation Trust Agreement, the Plan, and the Confirmation Order. In connection with and in furtherance of the purposes of the Litigation Trust, the Litigation Trustee hereby accepts the funding for the Litigation Trust, including the transfer of the Litigation Trust Assets.

Section 1.6    Name of the Litigation Trust. The Litigation Trust established hereby shall be known as the "[TV] Litigation Trust."

Section 1.7    Capacity of Trust. To the fullest extent permitted by applicable law and notwithstanding anything herein to the contrary, the Litigation Trust shall itself have the capacity to act or refrain from acting, on its own behalf, including the capacity to sue and be sued. The Litigation Trustee, solely in its capacity as Litigation Trustee, may alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary proceedings, contested matters, and other state and federal proceedings brought by or against it, and may settle and compromise all such matters in its own name.

## ARTICLE II
## THE LITIGATION TRUSTEE

Section 2.1    Appointment. The Litigation Trustee is hereby appointed by the Debtors in consultation with the Committee pursuant to this Litigation Trust Agreement, the Plan, the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code and 26 U.S.C. § 6012(b)(3). The Litigation Trustee's appointment shall continue until the earlier of (i) the termination of the Litigation Trust or (ii) the Litigation Trustee's resignation, incapacity, death, dissolution, or removal.

Section 2.2    General Powers. Except as otherwise provided in this Litigation Trust Agreement, the Plan, or the Confirmation Order, the Litigation Trustee may control and exercise authority over the Litigation Trust Assets, over the acquisition, management, and disposition thereof, and over the management and conduct of the affairs of the Litigation Trust. Nothing in this Litigation Trust Agreement shall be deemed to prevent the Litigation Trustee from taking, or failing to take, any action that, based upon the advice of counsel or other professionals, he determines he is obligated to take (or fail to take) in the performance of any fiduciary or similar duty which the Litigation Trustee owes to the Litigation Trust Beneficiaries or any other person. No person dealing with the Litigation Trust shall be obligated to inquire into the Litigation Trustee's authority in connection with the acquisition, management, or disposition of Litigation Trust Assets. Without limiting the foregoing, and unless specifically limited, restricted, waived, or released by the Plan, the Confirmation Order, or other provisions of this Litigation Trust Agreement, the Litigation Trustee shall be expressly authorized to, with respect to the Litigation Trust and the Litigation Trust Assets, and may cause the Litigation Trust to, among other things:



Section 10.2    Waiver. No failure by the Litigation Trustee to exercise or delay in exercising any right, power, or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any further exercise thereof, or of any other right, power, or privilege.

Section 10.3    Cumulative Rights and Remedies. The rights and remedies provided in this Litigation Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

Section 10.4    No Bond Required. Notwithstanding any state law to the contrary, the Litigation Trustee (including any successor Litigation Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

Section 10.5    Irrevocability. This Litigation Trust Agreement and the Litigation Trust created hereunder shall be irrevocable, except as otherwise expressly provided in this Litigation Trust Agreement.

Section 10.6    Tax Identification Numbers. The Litigation Trustee shall require any Litigation Trust Beneficiary or Holder of a Claim to furnish to the Litigation Trustee its social security number or employer or taxpayer identification number as assigned by the IRS, and the Litigation Trustee may condition any distribution to any Litigation Trust Beneficiary or Holder of Claim upon the receipt of such identification number. No distribution shall be made to or on behalf of a Litigation Trust Beneficiary or Holder of Claim unless and until such Holder has provided the Litigation Trustee with any information, records, or documents necessary to satisfy the Litigation Trustee's associated tax reporting obligations, including completed IRS Form W-9, or, where applicable, a completed Form W-8 or certificate of non-foreign status. If a Litigation Trust Beneficiary or Holder of Claim does not timely provide the Litigation Trustee with its taxpayer identification number in the manner and by the deadline established by the Litigation Trustee, then the distribution to such Litigation Trust Beneficiary or Holder of Claim shall be administered as Unclaimed Property in accordance with the relevant provisions of the Plan.

Section 10.7    Relationship to the Plan. The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Plan and, therefore, this Litigation Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. If any provision of this Litigation Trust Agreement is found to be inconsistent with a provision of the Plan, the provisions of the Plan or Confirmation Order, as applicable, shall control.

Section 10.8    Applicable Law. This Litigation Trust shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws; provided, however, that, except as expressly provided in this Litigation Trust Agreement, there shall not be applicable to the Litigation Trust, the Litigation Trustee, or this Litigation Trust Agreement (a) the provisions of Section 3540 of Title 12 of the Delaware Code, or (b) any provisions of the laws (statutory or common) of the State of Delaware pertaining to trusts which relate to or regulate: (i) the filing with any court or governmental body or agency of trustee accounts or schedules of

[*]

Michael I. Goldberg, Trustee
201 E. Las Olas Blvd., Ste. 1800
Ft. Lauderdale, FL 33301
michael.goldberg@akerman.com

If to a Holder of a Litigation Trust GUC Interests:

To the name and distribution address set forth in the Claims Register with respect to such Holder.

If to a Holder of a Litigation Trust Prepetition Lender Interest:

[*]

Otterbourg P.C.
230 Park Avenue
New York, NY 10169
Attn:  Daniel F. Fiorillo
dfiorillo@otterbourg.com

and

Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Attn:  Regina Stango Kelbon
regina.kelbon@blankrome.com

If to the Debtors and Post-Effective Date Debtors:

[*]

Young Conaway Stargatt &Taylor, LLP
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Attn:  Kenneth J. Enos
kenos@ycst.com

The parties may designate in writing from time to time other and additional places to which notices may be sent.

Section 10.13  Further Assurances. From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Litigation Trust Agreement, and to consummate the transactions contemplated hereby.


32913445.6
32913445.8

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Litigation Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**DEBTORS:**

**TRUE VALUE COMPANY, L.L.C. ON BEHALF OF ITSELF AND EACH OF THE DEBTORS**

By:_____ Name:

Title:

**LITIGATION TRUSTEE**:

By:_____ Name: Michael I. G
Title: Litigation Trustee

**EXHIBIT A**
**LITIGATION TRUSTEE COMPENSATION**

Pursuant to <u>Section 2.5</u> of this Litigation Trust Agreement, this Exhibit sets forth the terms of the Litigation Trustee's compensation.

1. <u>**Fees**</u>.   The Litigation Trustee ~~shall be compensated~~, Michael Goldberg, also will serve as the Plan Administrator. He will receive no additional compensation as Litigation Trustee, his compensation for both positions being as set forth and on the terms of the Plan Administration Agreement:   on a monthly basis at $~~[] per month, payable solely from the Litigation Trust Assets.~~25,000 for the first three months, and $20,000 per month for all future months; provided, however, to the extent the Prepetition Secured Parties desire to convert the Plan Administration and Litigation Trustee positions to hourly engagement roles, they may do so at any time at a rate to $900 per hour plus costs.

2. <u>**Costs and Expenses**</u>. The Litigation Trustee will also be entitled to reimbursement of actual and necessary out-of- pocket expenses incurred in his role as Litigation Trustee.

A-1

