,IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **TRUE VALUE COMPANY, L.L.C.,** *et al.,* | Case No. 24-12337 (KBO) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF APPROVAL OF THE DISCLOSURE STATEMENT ON A FINAL BASIS AND CONFIRMATION OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Joseph O. Larkin
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 651-3000
Joseph.Larkin@skadden.com

- and -

Ron E. Meisler (admitted *pro hac vice*)
Jennifer Madden (admitted *pro hac vice*)
320 South Canal Street
Chicago, Illinois 60606-5707
Telephone: (312) 407-0705
Ron.Meisler@skadden.com
Jennifer.Madden@skadden.com

- and -

Evan A. Hill (admitted *pro hac vice*)
Moshe S. Jacob (admitted *pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Evan.Hill@skadden.com
Moshe.Jacob@skadden.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
One Rodney Square
1000 North King Street
Wilmington, Delaware 1801
Telephone: (302) 571-6600
emorton@ycst.com
kenos@ycst.com
kmcelroy@ycst.com
tpowell@ycst.com

GLENN AGRE BERGMAN & FUENTES LLP
Andrew K. Glenn (admitted *pro hac vice*)
Trevor J. Welch (admitted *pro hac vice*)
Malak S. Doss (admitted *pro hac vice*)
Michelle C. Perez (admitted *pro hac vice*)
1185 Avenue of the Americas, 22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
aglenn@glennagre.com
twelch@glennagre.com
mdoss@glennagre.com
mperez@glennagre.com

*Counsel to Debtors and Debtors-in-Possession*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................................. 1

I.    BACKGROUND .......................................................................................................... 3

    A.    General Background ........................................................................................ 3

    B.    The Plan and Disclosure Statement ................................................................ 4

    C.    Plan Solicitation and Notification Process....................................................... 5

    D.    Informal Comments and Limited Objections .................................................... 7

II.    ARGUMENT ................................................................................................................ 8

    A.    The Disclosure Statement Should Be Approved on a Final Basis......................... 8

    B.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy
        Code ............................................................................................................. 11

    C.    The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code ............... 11

        1.    The Plan Properly Classifies Creditors' Claims Under Section
            1122 of the Bankruptcy Code ................................................................ 12

        2.    The Plan Satisfies the Mandatory Plan Requirements of
            Section 1123(a) of the Bankruptcy Code.................................................... 14

            a.    Designation of Classes of Claims and Interests
                (Section 1123(a)(1) of the Bankruptcy Code) ............................. 14

            b.    Specification of Unimpaired Classes (Section 1123(a)(2) of
                the Bankruptcy Code) ................................................................. 14

            c.    Treatment of Impaired Classes (Section 1123(a)(3) of the
                Bankruptcy Code) ....................................................................... 15

            d.    Equal Treatment Within Classes (Section 1123(a)(4) of the
                Bankruptcy Code) ....................................................................... 15

            e.    Means for Implementation (Section 1123(a)(5) of the
                Bankruptcy Code) ....................................................................... 15

            f.    Issuance of Non-Voting Securities (Section 1123(a)(6) of
                the Bankruptcy Code) ................................................................. 16

            g.    Directors and Officers (Section 1123(a)(7) of the
                Bankruptcy Code) ....................................................................... 16

        3.    The Plan Complies with the Discretionary Provisions of Section
            1123(b) of the Bankruptcy Code.................................................................. 17

            a.    Impairment and Unimpairment of Classes (Section
                1123(b)(1) of the Bankruptcy Code)............................................ 18

            b.    Treatment of Executory Contracts and Unexpired Leases
                (Section 1123(b)(2) of the Bankruptcy Code) ............................. 18

           c.        The Plan's Release, Exculpation, and Injunction Provisions Satisfy Section 1123(b) of the Bankruptcy Code ...................... 19

                i.      The Debtor Release Is Appropriate................................. 19

                ii.     The Releasing Party Release Is Wholly Consensual and Appropriate Under the Facts and Circumstances of This Case .................................................................... 23

                iii.    The Exculpation Provision Is Appropriate ..................... 24

                iv.    The Injunction Provision Is Appropriate ....................... 25

           d.        The Retention of the Retained Causes of Action is Appropriate ................................................................................. 26

           e.        The Plan Complies with the Additional Provisions of Section 1123(b) of the Bankruptcy Code.................................... 26

D.     The Plan Complies with Section 1123(d) of the Bankruptcy Code.................. 26

E.     The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code ............... 27

         1.      The Debtors Complied with Section 1125 of the Bankruptcy Code ....... 28

         2.      The Debtors Complied with Section 1126 of the Bankruptcy Code ....... 29

F.     The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code ........................................................ 30

G.    The Plan Provides that the Payment of Debtors' Professional Fees and Expenses Are Subject to Court Order in Compliance with Section 1129(a)(4) of the Bankruptcy Code ...................................................................... 32

H.    The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, or Insiders and Therefore Complies with Section 1129(a)(5) of the Bankruptcy Code.................................................................................... 33

I.     The Plan Does Not Require Governmental Regulatory Approval and Therefore Complies with Section 1129(a)(6) of the Bankruptcy Code .............. 33

J.     The Plan is in the Best Interest of Creditors and Therefore Complies with Section 1129(a)(7) of the Bankruptcy Code ........................................................ 34

K.    The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code ................................................................... 35

L.     The Plan Provides for Payment in Full of All Allowed Priority Claims in Compliance with Section 1129(a)(9) of the Bankruptcy Code........................... 36

M.   At Least One Class of Impaired, Non-Insider Claims Accepted the Plan in Compliance with Section 1129(a)(10) of the Bankruptcy Code........................ 38

N.    The Plan is Feasible in Compliance with Section 1129(a)(11) of the Bankruptcy Code ................................................................................................. 38

O.    All Statutory Fees Have or Will Be Paid in Compliance with Section 1129(a)(12) of the Bankruptcy Code .................................................................. 40

P.    The Debtors Have No Retiree Benefit Obligations (Section 1129(a)(13) of the Bankruptcy Code) ......................................................................................... 41

Q.    Sections 1129(a)(14), (a)(15) and (a)(16) of the Bankruptcy Code Do Not Apply to the Plan .................................................................................................. 42

R.    The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code............................................................................................ 43

     1.    The Plan is Fair and Equitable and Thus Satisfies Section 1129(b)(2)(B) of the Bankruptcy Code...................................................... 43

     2.    The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan in Accordance with Section 1129(b)(1) of the Bankruptcy Code................ 44

S.    The Debtors Complied with Sections 1129(d) and (e) of the Bankruptcy Code ....................................................................................................................... 45

T.    The Retiree Settlement Should Be Approved. ..................................................... 46

     2.    The Retiree Settlement Satisfies the Requirements of Bankruptcy Code Section 1114 and Bankruptcy Rule 9019, Is Fair, Equitable, and in the Best Interests of The Estates and the Retiree Parties ............. 47

U.    Modifications to the Plan ..................................................................................... 50

V.    Good Cause Exist to Waive the Stay of the Confirmation Order ........................ 51

W.    The Limited Objections Should be Overruled ..................................................... 52

     1.    HOT Limited Objection........................................................................... 52

     2.    Chubb Limited Objection ........................................................................ 53

          a.    Post-Effective Date Liability ....................................................... 53

          b.    Consent to Assignment ................................................................ 54

          c.    Policies Unaltered ........................................................................ 54

          d.    Continuation of Workers' Compensation Actions........................ 54

     3.    Oracle Reservation of Rights ................................................................... 56

     4.    Fifth Third Limited Objection ................................................................. 57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship.*,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*, 526 U.S. 434
  (1999) ................................................................................................................................45

*In re 710 Long Ridge Rd. Operating Co., II, LLC*,
  Case No. 13-13653 (DHS), 2014 WL 886433 (Bankr. D.N.J. Mar. 5, 2014) ........................22

*In re Abbotts Dairies of Pa., Inc.*,
  788 F.2d 143 (3d Cir. 1986) ................................................................................................32

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) ............................................................................13, 35

*In re Aleris Int'l, Inc.*,
  2010 WL 3492664 (Bankr. D. Del. May 13, 2010) ..............................................................29

*In re Am. Cap. Equip., LLC*,
  688 F.3d 145 (3d Cir. 2012) ................................................................................................40

*In re Ambanc La Mesa L.P.*,
  115 F.3d 650 (9th Cir. 1997) .........................................................................................44, 46

*In re AOV Indus., Inc.*,
  792 F.2d 1140 (D.C. Cir. 1986) ...........................................................................................13

*In re Armstrong World Indus., Inc.*,
  348 B.R. 111 (D. Del. 2006) ..........................................................................................12, 13

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) ........................................................................45, 46

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999) .......................................................................................................35, 44

*In re Barakat*,
  99 F.3d 1520 (9th Cir. 1996) ...............................................................................................13

*Beal Bank, S.S.B. v. Jack's Marine, Inc. (In re Beal Bank, S.S.B.)*,
  201 B.R. 376 (E.D. Pa. 1996) ..............................................................................................51

*Boston Post Road Ltd. P'ship v. F.D.I.C. (In re Boston Post Road Ltd. P'ship)*,
  21 F.3d 477 (2nd Cir. 1994) .................................................................................................13

*Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*,
    764 F.2d 406 (5th Cir. 1985) ................................................................32

*In re Burns & Roe Enters., Inc.*,
    No. 08-4191 (GEB), 2009 WL 438694 (D. N.J. Feb. 23, 2009) ...........................................51

*In re Caribbean Petroleum Corp.*,
    512 B.R. 774 (Bankr. D. Del. 2014) .....................................................21

*In re Century Glove, Inc.*,
    Civ. A. Nos. 90-400 and 90-401,1993 WL 239489 (D. Del. Feb. 10, 1993) ..................32, 35

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
    860 F.2d 94 (3d Cir. 1988)........................................................9, 38, 45

*In re Chapel Gate Apartments, Ltd.*,
    64 B.R. 569 (Bankr. N.D. Tex. 1986)....................................................33

*In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*,
    187 B.R. 683 (Bankr. D. Colo. 1995) .....................................................13

*In re Coram Healthcare Corp.*,
    315 B.R. 321 (Bankr. D. Del. 2004) ..........................................20, 46, 48

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
    699 F.2d 599 (2d Cir. 1983)........................................................20

*In re Dex One Corp.*,
    No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013)................................................52

*In re Exaeris, Inc.*,
    380 B.R. 741 (Bankr. D. Del. 2008) ....................................................20

*In re Exide Techs.*,
    303 B.R. 48 (Bankr. D. Del. 2003) .......................................................21

*In re Federal–Mogul Glob. Inc.*,
    2007 Bankr. LEXIS 3940 (Bankr. D. Del. 2007) ..................................................51

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*,
    116 F.3d 790 (5th Cir. 1997) ............................................................32

*In re Finlay Enters., Inc.*,
    No. 09-14873 JMP, 2010 WL 6580628 (Bankr. S.D.N.Y. June 29, 2010) ............................40

*First Am. Bank of N.Y. v. Century Glove, Inc.*,
    81 B.R. 274 (D. Del. 1988)........................................................10

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ...............................................................45

*In re Future Energy Corp.*,
83 B.R. 470 (Bankr. S.D. Ohio 1988*)*...................................................................33

*In re Gatehouse Media, Inc.*,
No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) ...........................................52

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ......................................................................12

*In re Geokinetics Inc.*,
No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) ............................................52

*In re Glob. Safety Textiles Holdings LLC*,
No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009).............51

*In re GSE Envtl., Inc.*,
No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) ..........................................52

*Harrington v. Purdue Pharma, L.P.*,
603 U.S. 204, 144 S. Ct. 2071 (2024)....................................................................25

*In re Heritage Highgate, Inc.*,
679 F.3d 132 (3d Cir. 2012)...................................................................................40

*In re Heritage Org., L.L.C.*,
375 B.R. 230 (Bankr. N.D. Tex. Aug. 31, 2007)...................................................40

*In re Hyatt*,
509 B.R. 707 (Bankr. D.N.M. 2014) .....................................................................13

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ................................................................21, 22

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993)..............................................................................14, 44

*In re Johns-Manville Corp.*,
68 B.R. 618 (Bankr. S.D.N.Y. 1986).....................................................................46

*In re Kaiser Aluminum Corp.*,
No. 02-10429(JKF), 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006), *aff'd*, 343 B.R. 88 (D. Del. 2006) .............................................................................................................50

*In re Key3Media Grp., Inc.*,
336 B.R. 87 (Bankr. D. Del. 2005), *aff'd*, 2006 WL 2842462 (D. Del. 2006) ......24

*In re Kreider*,
  No. 05-15018 (ELF), 2006 WL 3068834 (Bankr. E.D. Pa. Sept. 27, 2006) .........................40

*In re Lapworth*,
  1998 WL 767456 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ....................................................29

*In re Lason, Inc.*,
  300 B.R. 227 (Bankr. D. Del. 2003) .......................................................................................35

*In re Lernout & Hauspie Speech Prods., N.V.*,
  301 B.R. 651 (Bankr. D. Del. 2003) .......................................................................................46

*In re Lisanti Foods, Inc.*,
  329 B.R. 491 (D.N.J. 2005), *aff'd*, 241 F. App'x 1 (3d Cir. 2007) .................................10, 33

*In re Louise's, Inc.*,
  211 B.R. 798 (D. Del. 1997) ...................................................................................................49

*In re Marvel Entm't Group, Inc.*,
  222 B.R. 243 (D. Del. 1998) ...................................................................................................48

*In re Master Mortg. Inv. Fund, Inc.*,
  168 B.R. 930 (Bankr. W.D. Mo. 1994) ...............................................................................21, 24

*In re Metrocraft Pub. Serv., Inc.*,
  39 B.R. 567 (Bankr. N.D. Ga. 1984) .......................................................................................11

*Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*,
  25 F.3d 1132 (2d Cir. 1994) ....................................................................................................29

*In re Monnier Bros.*,
  755 F.2d 1336 (8th Cir. 1985) ...................................................................................................9

*In re Murray Energy Holdings Co.*,
  615 B.R. 461 (Bankr. S.D. Ohio 2020) ...................................................................................49

*Myers v. Martin (In re Martin)*,
  91 F.3d 389 (3d Cir. 1996) .................................................................................................48, 49

*In re NII Holdings, Inc.*,
  288 B.R. 356 (Bankr. D. Del. 2002) .......................................................................................32

*In re Nutritional Sourcing Corp.*,
  398 B.R. 816 (Bankr. D. Del. 2008) ..................................................................................13, 48

*In re One Times Square Assocs. Ltd. P'ship*,
  159 B.R. 695 (Bankr. S.D.N.Y. 1993) ...................................................................................13

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
    848 F.2d 414 (3d Cir. 1988)...................................................................................10

*In re PC Liquidation Corp.*,
    383 B.R. 856 (E.D.N.Y. 2008) ...............................................................................10

*In re Penn Cent. Transp. Co.*,
    596 F.2d 1102 (3d Cir. 1979).................................................................................48

*In re Phoenix Petroleum, Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) .........................................................9, 10, 11

*In re Physiotherapy Holdings, Inc.*,
    No. 13¬12965 (KG) (Bankr. D. Del. Dec. 23, 2013) ............................................52

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968)................................................................................................48

*In re Prussia Assocs.*,
    322 B.R. 572 (Bankr. E.D. Pa. 2005) .....................................................................40

*PWS Holding Corp.*, 228 F.3d at 242 .........................................................................32

*In re River Village Assoc.*,
    181 B.R. 795 (E.D. Pa. 1995) ................................................................................10

*In re S&W Enter.*,
    37 B.R. 153 (Bankr. N.D. Ill. 1984) ......................................................................12

*In re Scioto Valley Mortg. Co.*,
    88 B.R. 168 (Bankr. S.D. Ohio 1988)....................................................................11

*In re Sea Garden Motel & Apartments*,
    195 B.R. 294 (D. N.J. 1996) ..................................................................................40

*In re Source Home Entm't, LLC*,
    No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015)..............................................52

*In re Spansion, Inc.*,
    426 B.R. 114 (Bankr. D. Del. 2010) ................................................................20, 22

*In re Spiegel, Inc.*,
    No. 03-11540 (BRL), 2005 WL 1278094 (Bankr. S.D.N.Y. May 25, 2005) ..........17

*In re Stoneway Cap. Ltd.*,
    No. 21-10646 (JLG) (Bankr. S.D.N.Y. May 12, 2022) ECF No. 594.....................17

*Tex. Extrusion Corp. v. Lockheed Corp.* (*In re Tex. Extrusion Corp.*),
   844 F.2d 1142 (5th Cir. 1988) .................................................................10

*In re Tower Auto., Inc.*,
   342 B.R. 158 (Bankr. S.D.N.Y.), *aff'd sub nom. In re Tower Auto. Inc.*, 241 F.R.D. 162
   (S.D.N.Y. 2006) ......................................................................................49

*Travelers Cas. & Sur. Co. v. Future Claimants Representative*,
   No. 07-2785, 2008 WL 821088 (D.N.J. Mar. 25, 2008) .........................49

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464 B.R. 208
   (Bankr. D. Del. 2011) .........................................................................22, 40

*In re U.S. Brass Corp.*,
   194 B.R. 420 (Bankr. E.D. Tex. 1996) ...................................................11

*In re Unichem Corp.*,
   72 B.R. 95 (Bankr. N.D. Ill. 1987) ...........................................................9

*In re Visteon Corp.*,
   612 F.3d 210 (3d Cir. 2010)...................................................................42

*In re W.R. Grace & Co.*,
   475 B.R. 34 (D. Del. 2012).....................................................................32

*In re W.R. Grace & Co.*,
   729 F.3d 311 (3d Cir. 2013)...................................................................13

*In re Wash. Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) ...............................20, 21, 24, 25

*In re World Health Alts., Inc.*,
   344 B.R. 291 (Bankr. D. Del. 2006) ...............................................20, 48

*In re Zenith Elec. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ..................................21, 22, 24

**Statutes**

11 U.S.C.
   § 101(31) ...............................................................................................34
   §§ 101-1532...............................................................................................1
   § 503(b) ..................................................................................................37
   § 507(a)(1) ..............................................................................................37
   §§ 507(a)(1)–(7) .....................................................................................37
   § 507(a)(2)........................................................................................37, 41
   § 507(a)(4)..............................................................................................37

§ 507(a)(7) ................................................................................................................. 37
§ 507(a)(8) ................................................................................................................. 37
§ 1114 ........................................................................................................ 42, 48, 49, 50
§ 1122 ................................................................................................................. *passim*
§ 1122(a) .................................................................................................................. 13
§ 1122(b) .................................................................................................................. 13
§ 1123 ........................................................................................................... 12, 20, 48
§ 1123(a) .................................................................................................................. 15
§ 1123(a)(1) .............................................................................................................. 15
§ 1123(a)(2) .............................................................................................................. 15
§ 1123(a)(3) .............................................................................................................. 16
§ 1123(a)(4) .............................................................................................................. 16
§ 1123(a)(5) .......................................................................................................... 16, 17
§ 1123(a)(6) .............................................................................................................. 17
§ 1123(a)(7) .......................................................................................................... 17, 18
§ 1123(b) ........................................................................................................ 18, 20, 27
§ 1123(b)(1) .......................................................................................................... 18, 19
§ 1123(b)(2) .......................................................................................................... 19, 20
§ 1123(b)(3) .............................................................................................................. 48
§ 1123(b)(3)(A) ...................................................................................................... 20, 24
§ 1123(b)(5) .............................................................................................................. 27
§ 1123(b)(6) .......................................................................................................... 18, 27
§ 1123(d) .............................................................................................................. 27, 28
§ 1125 ................................................................................................................. *passim*
§ 1125(a) .................................................................................................................. 30
§ 1125(a)(1) ............................................................................................................... 9
§ 1125(b) .............................................................................................................. 29, 30
§ 1125(c) .................................................................................................................. 30
§ 1126 ................................................................................................................. *passim*
§ 1126(c) .................................................................................................................. 31
§ 1126(e) .................................................................................................................. 31
§ 1127 ...................................................................................................................... 51
§ 1127(a) .............................................................................................................. 47, 51
§ 1127(b) .................................................................................................................. 51
§ 1127(c) .................................................................................................................. 51
§ 1129 .................................................................................................................... 1, 12
§ 1129(a) .............................................................................................................. 44, 45
§ 1129(a)(1) .............................................................................................................. 12
§ 1129(a)(2) ...................................................................................................... 28, 29, 31
§ 1129(a)(3) .......................................................................................................... 31, 32
§ 1129(a)(4) .............................................................................................................. 33
§ 1129(a)(5) .............................................................................................................. 34
§ 1129(a)(5)(A)(i) ....................................................................................................... 34
§ 1129(a)(5)(A)(ii) ...................................................................................................... 34
§ 1129(a)(6) .......................................................................................................... 34, 35
§ 1129(a)(7) .......................................................................................................... 35, 36

§ 1129(a)(8) ................................................................................................................... *passim*
§ 1129(a)(9) ................................................................................................................... 37
§ 1129(a)(9) ................................................................................................................... 37
§ 1129(a)(9)(A) .............................................................................................................. 37, 38
§ 1129(a)(9)(B) .............................................................................................................. 37, 38
§ 1129(a)(9)(C) .............................................................................................................. 37, 38
§ 1129(a)(10) ................................................................................................................. 37, 39
§ 1129(a)(11) ................................................................................................................. 39, 40, 41
§ 1129(a)(12) ................................................................................................................. 41, 42
§ 1129(a)(13) ................................................................................................................. 42, 43
§ 1129(a)(14) ................................................................................................................. 43
§ 1129(a)(15) ................................................................................................................. 43
§ 1129(a)(16) ................................................................................................................. 43, 44
§ 1129(b) ....................................................................................................................... 37, 44, 45
§ 1129(b)(1) ................................................................................................................... 44, 45
§ 1129(b)(2)(B) .............................................................................................................. 44
§ 1129(d) ....................................................................................................................... 46, 47
§ 1129(e) ....................................................................................................................... 46, 47
§ 1145 ........................................................................................................................... 1
§ 1146 ........................................................................................................................... 1

## Other Authorities

Bankr. R.
3017 ............................................................................................................................. 29
3018 ............................................................................................................................. 29
3019 ............................................................................................................................. 51
3020 ............................................................................................................................. 52
6004 ............................................................................................................................. 52
6006 ............................................................................................................................. 52
9019 ............................................................................................................................. 20, 48, 49

True Value Company, L.L.C. and its affiliated debtors and debtors in possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company"), submit this memorandum of law (this "Memorandum") in support of final approval of the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 906] (the "Disclosure Statement") and confirmation of the *Third Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates*, filed contemporaneously herewith (as modified, amended, or supplemented from time to time hereafter, the "Plan"),[2] pursuant to sections 1125, 1126, 1129, 1145, and 1146 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      After successfully completing a value-maximizing going concern sale that saved many jobs, generated to date more than $205 million in recoveries for the Prepetition Lenders and addressed approximately $227 million dollars of trade claims, the Debtors seek confirmation of their widely supported Plan on a largely uncontested basis.

2.      These cases were not always marked by consensus. As this Court is aware, when the Debtors filed for chapter 11 in October, the Prepetition Lenders did not consent to the use of their cash collateral.  It was only through extensive, good faith negotiations that the Debtors achieved a resolution with the Committee and the Prepetition Lenders, authorizing the use of cash collateral and obtaining support for the proposed sale to Do it Best Corp. ("Do it Best" or the "Purchaser").  Following a sale process run in accordance with the Bidding Procedures Order, the Court approved the sale to Do It Best on November 13, 2024.  The sale closed on November 22,

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan, the Disclosure Statement, the Disclosure Statement Motion (as defined herein) or the Confirmation Order (as defined herein), as applicable.

2024.  Since then, the Debtors have been working closely with Do it Best to successfully transition the Debtors' operations.   In parallel, the Debtors worked diligently with all of their key stakeholders to develop and build consensus around the Plan.  The Plan would allow the Debtors to exit chapter 11 in an orderly manner, continue performing under the Transition Services Agreement, reconcile remaining administrative expense claims and return excess cash collateral to the Prepetition Lenders, and provide a pathway to potential recoveries for general unsecured creditors.

3.     Through the Plan, the Debtors seek to distribute their remaining assets to their creditors in accordance with the priority scheme set forth in the Bankruptcy Code, conclude the transition services, and conduct an orderly wind down of their affairs. The Plan—which was overwhelmingly accepted by the Classes entitled to vote on the Plan—Class 3 (Prepetition Lender Claims) and Class 4 (General Unsecured Claims)—provides the best possible outcome for creditors. It is the product of continuous efforts of the Debtors' directors, officers, and professionals, in consultation with the Committee, to maximize value for the benefit of the Estates.

4.     The Plan facilitates payments to the Prepetition Lenders in accordance with the negotiated cash collateral resolution.   It also establishes a Litigation Trust for the benefit of general unsecured creditors and the Prepetition Lenders.  In addition, the Plan provides for the payment of allowed administrative and priority claims and provides for the appointment of the Plan Administrator and the Litigation Trustee to administer the Plan.

5.     The Debtors now submit this Memorandum and the *Declaration of Nick Weber in Support of Approval of the Disclosure Statement on a Final Basis and Confirmation of the Third Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates*

(the "Weber Declaration"), filed contemporaneously herewith, in support of the final approval of the Disclosure Statement and confirmation of the Plan.

6.      For the reasons set forth herein and in the Weber Declaration, the Debtors submit that the Disclosure Statement and the Plan satisfy all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law, and respectfully request that the Court approve the Disclosure Statement on a final basis and confirm the Plan.

## I.      **BACKGROUND**

### A.      **General Background**

7.      On October 14, 2024 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

8.      The Debtors continue to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.      On October 23, 2024, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") [Docket No. 144].  No other trustee or examiner has been appointed in the Chapter 11 Cases.

10.      Additional factual background regarding the Company, including its business operations, corporate and capital structure, and the events leading up to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Kunal S. Kamlani in Support of Chapter 11 Petitions and First Day Papers* [Docket No. 18], which is incorporated herein by reference.

**B.      The Plan and Disclosure Statement**

11.     On January 21, 2025, the Debtors filed the *Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 796] and the *Disclosure Statement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 797] (the "Initial Disclosure Statement"), along with a motion [Docket No. 795] (the "Disclosure Statement Motion") seeking approval of the Initial Disclosure Statement on an interim basis for solicitation purposes only and approval of related solicitation and voting procedures.

12.     On February 7, 2025, the Debtors filed the *First Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 878] and the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 879].

13.     On February 12, 2025, the Debtors filed the *Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 905] and the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 906].

14.     On February 12, 2024, the Court entered an order [Docket No. 911] approving the Disclosure Statement Motion which, among other things: (a) approved the Disclosure Statement on an interim basis; (b) approved the form of ballot, solicitation materials, and solicitation procedures set forth in the Disclosure Statement Motion; (c) established March 17, 2025 at 4:00 p.m. (prevailing Eastern Time) as the deadline for all Holders of Claims entitled to vote on the Plan to cast their ballots; (d) established March 17, 2025, at 4:00 p.m. (prevailing Eastern Time) as the deadline to object to final approval of the Disclosure Statement and confirmation of the Plan

(the "<u>Objection Deadline</u>"); and (e) fixed the date, time, and place for the Combined Hearing on final approval of the Disclosure Statement and confirmation of the Plan.

15.    On or about February 18, 2025, the Debtors caused Omni Agent Solutions, Inc. (the "<u>Notice and Claims Agent</u>") to serve the Solicitation Packages and Combined Hearing Notice in accordance with the terms of the Disclosure Statement Order.[3]   The Debtors caused the Publication Notice to be published in *The New York Times* (national edition) on February 20, 2025.[4]

16.    On March 7, 2025, the Debtors filed the *Notice of Filing of Plan Supplement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 996] (as amended, the "<u>Plan Supplement</u>"), which was subsequently amended on March 31, 2025 [Docket No. 1056], and includes: (a) Plan Administrator Agreement; (b) Plan Administration Budget; (c) the Litigation Trust Agreement; (d) Schedule of Assumed Executory Contracts; and (e)  Schedule of Retained Causes of Action.

17.    On March 7, 2025, the Debtors also filed the *Notice of Filing Modifications to the Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates and Blackline Thereof* [Docket No. 992].

18.    Contemporaneously herewith, the Debtors filed the *Third Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 1054].

**C.    Plan Solicitation and Notification Process**

19.    In compliance with the Bankruptcy Code, the Debtors solicited votes on the Plan only from Holders of Claims in Class 3 (Prepetition Lender Claims) and Class 4 (General

---

[3]    *See Affidavit of Service* [Docket No. 976].

[4]    *See* Proof of Publication for the Combined Hearing Notice [Docket No. 945].

Unsecured Claims).[5]  The Debtors did not solicit votes from Holders of Claims and Interests in the remaining Classes set forth below because those Holders were **not** entitled to vote on the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 5 | Intercompany Claims | Unimpaired /Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 6 | Intercompany Interests | Unimpaired /Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 7 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Existing Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

20.     The voting results for Class 3 (Prepetition Lender Claims) and Class 4 (General Unsecured Claims), as reflected in the Voting Report, filed contemporaneously herewith, are summarized as follows:

| CLASS | TOTAL BALLOTS RECEIVED | | | |
|---|---|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Class 3 – Prepetition Lender Claims | $43,249,720.73  100% | 6  100% | $0  0% | 0  0% |
| Class 4 – General Unsecured Claims | $52,636,182.01  94.14% | 330  87.30% | $3,278,875.52  5.86% | 48  12.70% |

---

[5]     *See* 11 U.S.C. § 1126.

21.     As set forth above and in the Voting Report, Holders of Claims in Class 3 (Prepetition Lender Claims) and Class 4 (General Unsecured Claims) (the "Voting Classes") voted to accept the Plan.

**D.     Informal Comments and Limited Objections**

22.     The Debtors received informal comments to the Plan from seven (7) interested parties, including the U.S. Trustee, all of which were resolved either informally or through the inclusion of language in the Confirmation Order or revisions to the Plan. The Plan revisions were limited to (i) clarifying the provisions related to the assumption, assumption and assignment, and rejection of Executory Contracts, (ii) ensuring the preservation of the Debtors' Insurance Policies, (iii) ensuring that the terms of the Plan are consistent with the terms of the Sale Order and Cash Collateral Order, and (iv) incorporating the terms of the Retiree Settlement. The Debtors submit that the revisions made to the Plan to resolve these informal comments do not negatively impact any parties and do not require additional disclosure or re-solicitation of the Plan.

23.     There were also five limited objections (the "Limited Objections") to final approval of the Disclosure Statement or certain provisions of the Plan that were filed with the Court. The Debtors were able to resolve able to resolve the Limited Objection [D.I. 1007] filed by Somerset Leasing XXV, LLC, as successor-in-interest to Somerset Capital Group, Ltd., itself successor-in-interest to ARC Equipment Finance LLC, Somerset Leasing Corp. XXII, as successor-in-interest to Somerset Capital, itself successor-in-interest to ARC, and Somerset Leasing Corp. 27, as successor in-interest to Somerset Capital, itself successor-in-interest to ARC (collectively, "Somerset") through an agreement that Somerset's equipment leases will be assumed and assigned to Do it Best. The remaining Limited Objections are addressed in Section II.W of this Memorandum. The Debtors are continuing to work with the parties that filed the remaining

Limited Objections, and are hopeful that some or all of those objections will be resolved prior to the Combined Hearing.  To the extent the Limited Objections remain pending as of the Combined Hearing, they should be overruled for the reasons discussed below.

## II.    <u>ARGUMENT</u>

### A.    **The Disclosure Statement Should Be Approved on a Final Basis**

24.    Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code states, in relevant part, as follows:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan[.][6]

25.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision

---

[6]    11 U.S.C. § 1125(a)(1).

regarding whether or not to vote for the plan.[7]   Congress intended that such informed judgments

would be needed to both negotiate the terms of, and vote on, a chapter 11 plan.[8]

26.     "Adequate information" is a flexible standard, based on the facts and circumstances

of each case.[9]   Courts in the Third Circuit and elsewhere acknowledge that determining what

constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy

Code resides within the broad discretion of the court.[10]

27.     In making a determination as to whether a disclosure statement contains adequate

information as required by section 1125 of the Bankruptcy Code, courts typically look for

disclosures related to topics such as: (a)  the events that led to the filing of a bankruptcy petition;

(b) the relationship of the debtor with its affiliates; (c) a description of the available assets and

---

[7]     *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petroleum, Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan").

[8]     *Century Glove,* 860 F.2d at 100.

[9]     *See also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("The information required will necessarily be governed by the circumstances of the case.").

[10]    *See, e.g., In re River Village Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *Tex. Extrusion Corp. v. Lockheed Corp.* (*In re Tex. Extrusion Corp.*), 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."); *Phoenix Petroleum Co.*, 278 B.R. at 393 (same); *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate information' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court."); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (D.N.J. 2005), *aff'd*, 241 F. App'x 1 (3d Cir. 2007) ("The information required will necessarily be governed by the circumstances of the case.").

their value; (d) the company's anticipated future; (e) the source of information stated in the disclosure statement; (f) the debtor's condition while in chapter 11; (g) claims asserted against the debtor; (h) the estimated return to creditors under a chapter 7 liquidation; (i) the future management of the debtor; (j) the chapter 11 plan or a summary thereof; (k) financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan; (l) information relevant to the risks posed to creditors under the plan; (m) the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers; (n) litigation likely to arise in a non-bankruptcy context; and (o) tax attributes of the debtor.[11]

28.    The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes to make an informed decision about whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, among other things: (a) the major events that occurred prior to, and during the course of, the Chapter 11 Cases; (b) a summary of the classification and treatment of all Classes of Claims and Interests under the Plan; (c) an estimate of distributions to certain Holders of Allowed Claims pursuant to the Plan; (d) the provisions governing distributions under the Plan; (e) the means for implementation of the Plan; (f) an analysis as to the distributions creditors would receive from the Estates in a chapter 7 liquidation; (g) information regarding the Post-Effective Date Debtors, including a summary of the Debtors' assets that will be transferred to the Post-Effective Date Debtors on the Effective Date (h) information regarding the Litigation Trust,

---

[11]    *See, e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (same); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case. *See U.S. Brass Corp*., 194 B.R. at 424; *see also Phoenix Petroleum Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

including a summary of the Debtors' assets that will be transferred to the Litigation Trust on the Effective Date; (i) information regarding the Plan Administrator and the Litigation Trustee, including their respective rights, powers, duties, and nature of compensation; (j) information regarding certain risk factors that could affect recoveries under the Plan or the implementation of the Plan; (k) the right and ability of the Litigation Trustee to assert, compromise or dispose of the certain causes of action; (l) the tax consequences of the Plan; (m) conspicuous language regarding the Debtor Release, the Releasing Party Release, exculpation and limitation of liabilities, and the injunction to be entered by the Court in connection with the Plan; and (n) such other and further information that informs Holders of Claims in the Voting Classes arising from and relating to the Plan.[12]

29.     Accordingly, the Debtors respectfully submit that the Disclosure Statement contains "adequate information," satisfies section 1125 of the Bankruptcy Code, and should be approved on a final basis.

**B.     The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code**

30.     To confirm the Plan, the Court must find that the Debtors have satisfied the provisions of section 1129 of the Bankruptcy Code by a preponderance of the evidence.[13]  As set forth herein, the Plan fully complies with all relevant sections of the Bankruptcy Code—including sections 1122, 1123, 1125, 1126, and 1129—as well as the Bankruptcy Rules and applicable non-bankruptcy law.

**C.     The Plan Complies with Section 1129(a)(1) of the Bankruptcy Code**

31.     Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."  The legislative history of section 1129(a)(1) of

---

[12]   *See* Weber Decl. ¶ 9.

[13]   *See In re Armstrong World Indus., Inc.*, 348 B.R. 111, 120, n.15 (D. Del. 2006); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 616 n.23 (Bankr. D. Del. 2001).

the Bankruptcy Code explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the contents of a plan, respectively.[14]  As explained below, the Plan complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other applicable provisions.

1.    **The Plan Properly Classifies Creditors' Claims Under Section 1122 of the Bankruptcy Code**

32.    The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to other claims or interests of such class.[15]

33.    Although section 1122(a) of the Bankruptcy Code requires that all claims or interests in a class be substantially similar to all other claims or interests in the class, it "does not expressly require that all substantially similar claims or interests be placed in the same class."[16] Courts in this jurisdiction, as well as others, frequently recognize the significant flexibility that plan proponents have to place similar claims in different classes, provided there is a legitimate business justification to do so.[17]  Grounds justifying separate classification, including separate

---

[14]    S. Rep. No. 95-989, at 126, reprinted in 1978 U.S.C. C.A.N. 5787, 5912 (1978); H.R. Rep. No. 95-595, at 412, reprinted in 1978 U.S.C. C.A.N. 5963, 6368 (1977); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123."); *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008).

[15]    11 U.S.C. § 1122(a).

[16]    *In re Hyatt*, 509 B.R. 707, 714–15 (Bankr. D.N.M. 2014) (citing *In re City of Colorado Springs Spring Creek Gen. Improvement Dist.*, 187 B.R. 683, 687 (Bankr. D. Colo. 1995)) (observing that "[t]here is no requirement [in subsection (a)] that all substantially similar claims be placed in the same class . . ."); *see also Armstrong World Indus.*, 348 B.R. at 159.

[17]    *See, e.g., In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) (citing *In re AOV Indus., Inc.*, 792 F.2d 1140, 1150 (D.C. Cir. 1986)) (concluding that when analyzing whether claims are "substantially similar," the proper focus is on "the legal character of the claim as it relates to the assets of the debtor"); *Armstrong World Indus.*, 348 B.R. at 159 ("A classification structure satisfies section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and the claims or interests within each particular class are substantially similar.") (citations omitted); *see also In re Barakat*, 99 F.3d 1520, 1526 (9th Cir. 1996) (separate classification of similar

classification of unsecured claims, include: (a) where members of a class possess different legal rights; and (b) where there is a good business reason for separate classification.[18]

34.    The Plan's classification of Claims and Interests satisfies the requirements of section 1122 of the Bankruptcy Code because the Plan places the Claims and Interests into eight (8) separate Classes, with Claims and Interests in each Class differing from the Claims and Interests in each other Class in a legal or factual manner, or based on other relevant criteria.[19] Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

- <u>Class 1:</u> Other Priority Claims
- <u>Class 2:</u> Other Secured Claims
- <u>Class 3:</u> Prepetition Lender Claims
- <u>Class 4:</u> General Unsecured Claims
- <u>Class 5:</u> Intercompany Claims
- <u>Class 6:</u> Intercompany Interests
- <u>Class 7:</u> Subordinated Claims
- <u>Class 8:</u> Existing Interests

35.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class.[20]   In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests

---

claims requires a "legitimate business or economic justification"); *Boston Post Road Ltd. P'ship v. F.D.I.C.* (*In re Boston Post Road Ltd. P'ship*), 21 F.3d 477, 483 (2nd Cir. 1994) ("[T]he debtor must adduce credible proof of a legitimate reason for separate classification of similar claims."); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 246–47 (Bankr. S.D.N.Y. 2007) ("Although section 1122(a), by its terms, doesn't require that all similarly-situated claims be classified together, caselaw has made clear that separate classification of substantially similar unsecured claims is permissible only when there is a reasonable basis for doing so or when the decision to separately classify 'does not offend one's sensibility of due process and fair play.'") (quoting *In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 703 (Bankr. S.D.N.Y. 1993)).

[18]    *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158–59 (3d Cir. 1993) (holding that, as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed," the classification is proper).

[19]    *See* Plan, Art. III.

[20]    *See* Weber Decl. ¶ 10.

into the Classes set forth in the Plan, and the classification scheme was not implemented for any improper purpose and does not unfairly discriminate between or among the Holders of Claims or Interests.[21]   Specifically, the Plan separately classifies the Claims because each Holder of such Claim may hold (or may have held at the time the Plan was filed) rights in the Estates that were legally dissimilar to the Claims in other Classes.[22]   The Debtors thus submit that the Plan fully complies with and satisfies section 1122 of the Bankruptcy Code.

### 2. The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code

36.     Section 1123(a) of the Bankruptcy Code sets forth seven criteria that every chapter 11 plan must satisfy.   The Plan satisfies each of these requirements, and no party has asserted otherwise.

### a. Designation of Classes of Claims and Interests (Section 1123(a)(1) of the Bankruptcy Code)

37.     For the reasons set forth above, Article III of the Plan properly designates classes of Claims and Interests and thus satisfies the requirements of section 1123(a)(1) of the Bankruptcy Code.[23]

### b. Specification of Unimpaired Classes (Section 1123(a)(2) of the Bankruptcy Code)

38.     Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."[24]   The Plan meets this requirement by identifying in Article III each Class that is Unimpaired.[25]

---

[21]   *Id.*

[22]   *Id.*

[23]   *Id*.

[24]   11 U.S.C. § 1123(a)(2).

[25]   *See* Plan, Art. III; Weber Decl. ¶ 11.b.

c.   **Treatment of Impaired Classes (Section 1123(a)(3) of the Bankruptcy Code)**

39.   Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the plan."[26]  The Plan meets this requirement by setting forth in Article III the treatment of each Class that is Impaired.[27]

d.   **Equal Treatment Within Classes (Section 1123(a)(4) of the Bankruptcy Code)**

40.   Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[28]  The Plan meets this requirement because holders of Allowed Claims or Interests will receive the same rights and treatment as other holders of Allowed Claims or Interests within such holders' respective Class.[29]

e.   **Means for Implementation (Section 1123(a)(5) of the Bankruptcy Code)**

41.   Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[30]  The Plan satisfies this requirement because Article IV of the Plan, as well as other provisions thereof, provides for the means by which the Plan will be implemented.[31]

42.   Among other things, the Plan provides for: (a) the appointment of the Plan Administrator to assist with or effectuate the transition of the Debtors' business and wind-down,

---

[26]   11 U.S.C. § 1123(a)(3).

[27]   *See* Plan, Art. III; Weber Decl. ¶ 11.b.

[28]   11 U.S.C. § 1123(a)(4).

[29]   *See* Plan, Art. III.; Weber Decl. ¶ 11.b.

[30]   11 U.S.C. § 1123(a)(5).

[31]   *See* Plan, Art. IV; Weber Decl. ¶ 11.c.

dissolve or liquidate the Post-Effective Date Debtors; (b) the formation of the Litigation Trust and the vesting of the Litigation Trust Assets therein, and the appointment of the Litigation Trustee; (c) the sources of consideration for Plan distributions; (d) the treatment of Executory Contracts and Insurance Policies; (e) the treatment of Claims and Interests; (f) the preservation and vesting of certain Retained Causes of Action in the Litigation Trust; and (g) the taking of all necessary and appropriate actions by the Debtors to effectuate the transactions under and in connection with the Plan.[32]  Accordingly, the Plan complies with section 1123(a)(5) of the Bankruptcy Code.

<strong>f. Issuance of Non-Voting Securities (Section 1123(a)(6) of the Bankruptcy Code)</strong>

43.    Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of nonvoting equity securities.[33]  This provision of the Bankruptcy Code does not apply to any of the Post-Effective Date Debtors because they will be wound down, dissolved or liquidated by the Plan Administrator pursuant to the Plan.[34]

<strong>g. Directors and Officers (Section 1123(a)(7) of the Bankruptcy Code)</strong>

44.    Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions with respect to the manner of selection of any director, officer, or trustee, or any other successor thereto, be "consistent with the interests of creditors and equity security holders and with public policy."[35] In accordance with Sections 4.3 and 4.8 of the Plan, as of the Effective Date, the existing board of directors of the Debtors shall be deemed to have resigned and the remaining officers of the Debtors

---

[32]    *See* Plan, Art. IV & V.

[33]    11 U.S.C. § 1123(a)(6).

[34]    *See In re Spiegel, Inc.*, No. 03-11540 (BRL), 2005 WL 1278094, at *5 (Bankr. S.D.N.Y. May 25, 2005) (finding 1123(a)(6) is satisfied when either a reorganized debtor's charter is amended or where the issuance of non-voting securities would be impossible because the debtors in question were being dissolved following the effective date of the plan); *see also In re Stoneway Cap. Ltd.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y. May 12, 2022) ECF No. 594. *See also* Weber Decl. ¶ 11.e.

[35]    11 U.S.C. § 1123(a)(7).

terminated without any further action required.  From and after the Effective Date, the Plan
Administrator shall be authorized to act on behalf of the Estates, provided that the Plan
Administrator shall have no duties other than as expressly set forth in the Plan, in the Confirmation
Order, and in the Plan Administrator Agreement, as applicable. The identity of the Plan
Administrator along with the nature of the Plan Administrator's compensation are disclosed in the
Plan Supplement.  The appointment of the Plan Administrator is consistent with the interests of
creditors and with public policy.[36]   Accordingly, the Plan satisfies the requirements of section
1123(a)(7) of the Bankruptcy Code.

**3.      The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code**

45.      Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions
that may be incorporated into a chapter 11 plan.  Among other things, section 1123(b) of the
Bankruptcy Code provides that a plan may: (a) impair or leave unimpaired any class of claims or
interests; (b) modify or leave unaffected the rights of holders of secured or unsecured claims;
(c) provide for the settlement or adjustment of claims against or interests in a debtor or its estate
or the retention and enforcement by a debtor, trustee, or other representative of claims or interests;
(d) provide for the assumption or rejection of executory contracts and unexpired leases; (e) provide
for the sale of all or substantially all of the property of a debtor's estate, and the distribution of the
proceeds of such sale among holders of claims or interests; or (f) "include any other appropriate
provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[37]

---

[36]      *See* Weber Decl. ¶ 11.e.; Plan, Art. IV.3(a).

[37]      *See* U.S.C. § 1123(b)(1)–(6).

   **a. Impairment and Unimpairment of Classes (Section 1123(b)(1) of the Bankruptcy Code)**

46. The Plan satisfies the requirements of section 1123(b)(1) of the Bankruptcy Code because Article III impairs or leaves Unimpaired each Class of Claims and Interests.[38]

   **b. Treatment of Executory Contracts and Unexpired Leases (Section 1123(b)(2) of the Bankruptcy Code)**

47. The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts not previously assumed, assumed and assigned, or rejected pursuant to an order of the Court, other than any Executory Contracts that:  (a) is designated as a Transferred Contract under the Asset Purchase Agreement; (b) is designated as an Assumed Contract or Assumed and Assigned Contract on the Schedule of Assumed Executory Contracts or a Transferred Contract on a TSA Contract Notice or a Supplemental TSA Contract Notice (each as defined in the TSA Assumption Order); (c) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court, including the Bidding Procedures Order, Sale Order and TSA Assumption Order, or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (d) is the subject of a motion to assume pending as of the Effective Date; (e) is otherwise assumed pursuant to the terms of the Plan; (f) is an Insurance Policy; or (g) is subject to an executed agreement by and between the counterparty to such Executory Contract, the Debtors, and Do It Best (provided that Do It Best shall be responsible for any costs associated with continuing the obligations of any such Executory Contract).[39]  The Debtors determined, in their sound business judgment, that all of their remaining Executory Contracts, other than those

---

[38] Plan, Art. III; Weber Decl. ¶ 12.a.

[39] Plan, Art. V § 1.

identified should be automatically rejected upon the Effective Date, as they do not provide any benefit to the Estates or to parties in interest as part of the Debtors' wind-down.[40]  Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.[41]

> ### c.   The Plan's Release, Exculpation, and Injunction Provisions Satisfy Section 1123(b) of the Bankruptcy Code

48.     The Plan also includes certain releases, an exculpation provision, and an injunction provision.   These discretionary provisions are proper because, among other things, they are supported by the Debtors and are consistent with applicable precedent.[42]

> ### i.    The Debtor Release Is Appropriate

49.     Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[43]   Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."[44]   Article VIII of the Plan provides for releases by the Debtors and their Estates, as of the Effective Date, of, among other things, certain claims, rights, and Causes

---

[40]   *See* Weber Decl. ¶ 12.b.

[41]   *Id.*

[42]   *Id*. ¶ 12.c.

[43]   *See In re Coram Healthcare Corp*., 315 B.R. 321, 334–35 (Bankr. D. Del. 2004) (holding that standards for approval of settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019).  Generally, courts in the Third Circuit approve a settlement by the debtor if the settlement "exceed[s] the lowest point in the range of reasonableness. *In re Exaeris, Inc.*, 380 B.R. 741, 746– 47 (Bankr. D. Del. 2008) (citation omitted); *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983) (examining whether settlement "fall[s] below the lowest point in the range of reasonableness") (alteration in original) (citation omitted); *In re World Health Alts., Inc*., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that settlement must be within reasonable range of litigation possibilities).

[44]   *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal citations omitted).

of Action that the Debtors or their Estates may have against the Released Parties,[45] subject to

certain carve-outs and limitations as reflected in Section 8.2 of the Plan (the "Debtor Release").

50.     The Debtors believe the business judgment standard is the appropriate standard to

apply to the Debtor Release; however, some courts in this district have also examined the following

list of non-exclusive and disjunctive factors (the "*Zenith* Factors"):[46]  (a) an identity of interest

between the debtor and the third party; (b) substantial contribution by the non-debtor of assets to

the reorganization; (c) the essential nature of the injunction to the reorganization to the extent that,

without the injunction, there is little likelihood of success; (d) an agreement by a substantial

majority of creditors to support the injunction; (e) specifically if the impaired class or classes

"overwhelmingly" votes to accept the plan; and (f) a provision in the plan for payment of all or

substantially all of the claims of the class or classes affected by the injunction.[47]  As a list of non-

conjunctive factors, these factors provide a way of "weighing the equities of the particular case

after a fact-specific review."[48]  Notably, courts have approved releases where only one or two

factors are present.[49]

---

[45]   "Released Party" means, collectively, "each of the following in their respective capacities as such: (a) the Debtors'
and the Estates' Related Parties; (b) the Prepetition Secured Parties; (c) the Creditors' Committee and each of its
current and former members; and (d) the Related Parties of each of the Entities in clauses (b) and (c)."  Plan,
1.1.116.

[46]   The *Zenith* Factors were first articulated as the standard for approving a third-party release (*i.e.*, a provision
releasing a non-debtor's claim against another non-debtor).   *See In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).  Later, in *Zenith*, this Court applied the *Master Mortgage* factors to
a debtor release.  *See In re Zenith Elec. Corp.*, 241 B.R. 92, 110–11 (Bankr. D. Del. 1999) (citing *Master Mortg.
Inv. Fund, Inc.*, 168 B.R. 930).  As such, the Debtors have applied the *Zenith* Factors to the Debtor Release and,
for the reasons set forth herein, submit that the Debtor Release in this case satisfies the *Zenith* Factors and should
be approved.

[47]   *Zenith Elecs. Corp.*, 241 B.R. at 110; *see also Indianapolis Downs, LLC*, 486 B.R. 286, 303-04 (Bankr. D. Del.
2013) ("These factors are neither exclusive nor are they a list of conjunctive requirements."); *Wash. Mut. Inc.*,
442 B.R. at 346 (stating that the factors "simply provide guidance in the [c]ourt's determination of fairness");
*In re Exide Techs.*, 303 B.R. 48, 72 (Bankr. D. Del. 2003) (finding that *Zenith* factors are not exclusive or
conjunctive requirements).

[48]   *Indianapolis Downs, LLC*, 486 B.R. at 303.

[49]   *See*, *e.g.*, *In re Caribbean Petroleum Corp.*, 512 B.R. 774, 777-78 (Bankr. D. Del. 2014) (finding "no question"
that release of debtor's claims was proper because non-debtor "provided Debtors with substantial consideration

51.     Notably, here, the Debtor Release is limited and does not include any post-Effective Date obligation or liability of any Person or Entity under the Plan, the Asset Purchase Agreement, the Sale Order, the Cash Collateral Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. Considering the foregoing limitations to the Debtor Release, each *Zenith* Factor supports the Debtor Release.  There is an identity of interest between the Debtors and the Debtor Released Parties.  Each of the Debtor Released Parties shares the common goals of resolving Claims and achieving fair and equitable distributions to creditors under the Plan.  This unified interest in formulating and confirming the Plan establishes an identity of interest under applicable law.[50]

52.     Moreover, with respect to certain of the releases—*e.g.*, those releasing the Debtors' current and former directors and officers—there is a clear identity of interest supporting the release because the Debtors owe certain indemnification obligations to such parties pursuant to the Debtors' governance documents, which would otherwise increase the Claims pool and delay distributions to Holders of Allowed Claims to the detriment of all parties in interest.[51]  Thus, a lawsuit commenced by the Debtors (or derivatively on behalf of the Debtors) against certain individuals would effectively be a lawsuit against the Debtors themselves, except to the extent the

---

in exchange for the releases, providing the justification for the Court approving the releases"); *Spansion, Inc.*, 426 B.R. at 143 (approving release where releasees were actively involved in negotiating the plan and four of five creditor classes voted overwhelmingly in favor).

[50]  *See, e.g.*, *Zenith Elecs. Corp.*, 241 B.R. at 110 (finding an identity of interest with debtor where certain released parties who "were instrumental in formulating the Plan" shared an identity of interest with debtor "in seeing that the Plan succeed . . ."); *Tribune Co.*, 464 B.R. at 187 (noting an identity of interest between debtors and settling parties where such parties "share[d] the common goal of confirming the [] Plan and implementing the [] Plan Settlement"); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, Case No. 13-13653 (DHS), 2014 WL 886433, at *15 (Bankr. D.N.J. Mar. 5, 2014) (approving non-consensual third-party release and finding identity of interest where both debtor and non-debtor released parties shared a common goal of "confirming [a plan] and implementing the transactions contemplated thereunder").

[51]  *See Indianapolis Downs*, 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release.").

lawsuit is instituted for the limited and sole purpose of triggering coverage under any applicable Insurance Policies.

53.     In addition to the foregoing, the Debtors' current officers and directors engaged in the performance of roles related to the Debtors' chapter 11 process, which was beyond their compensated duties, including, among other things: (a) assisting the Debtors' professionals in the preparation of sale materials pre- and post-petition; (b) responding to due diligence inquiries; (c) assisting in the implementation of a successful sale of the Debtors' assets, including through abbreviated closing periods that required workloads at hours outside of normal working hours; (d) assisting in the maximization of value in such sale through support in negotiations; (e) actively participating in negotiations with the Debtors' lenders and other creditors; (f) actively engaging in numerous meetings in the Chapter 11 Cases that were outside of stated officer roles or duties in an effort to minimize professional costs and maximize value for the Estates; and (g) forbearing from new and additional professional and financial opportunities through the completion of the Debtors' ongoing Chapter 11 Cases.[52]

54.     Third, the overwhelming support for the Plan by the Voting Classes is compelling evidence that the Debtor Release constitutes a valid exercise of the Debtors' business judgment that should be approved.  Further, no Holder of a Claim or Interest has objected to the Plan or the Debtor Release included therein.  This is a significant endorsement of the Debtor Release that the Court should not overlook: it reinforces and affirms the Debtors' determination that the Debtor Release is a valid exercise of the Debtors' business judgment and is in the best interest of the Estates.  There could be no better evidence as to the reasonableness and fairness of the Debtor

---

[52]   *See* Weber Decl. ¶ 12.c.ii.

Release than the support of those Holders of Claims most affected by a release of the Debtors' claims or Causes of Action against the Released Parties.[53]

55.     Finally, the Plan provides substantial recoveries for Holders of Claims in Class 3 and contemplates potential recoveries for Holders of Claims in Class 4, the Voting Classes affected by the Debtor Release.  The Debtors, together with the Released Parties, have worked diligently to preserve the Estates' limited resources and maximize recoveries for the benefit of all Holders of Allowed Claims. Accordingly, the Debtors submit that the Debtor Release is a sound exercise of their business judgment, satisfy the *Zenith* Factors, and should be approved under section 1123(b)(3)(A) of the Bankruptcy Code.

> **ii.     The Releasing Party Release Is Wholly Consensual and Appropriate Under the Facts and Circumstances of This Case**

56.     Section 8.3 of the Plan provides for the release of each Released Party by the Releasing Parties from any and all claims and Causes of Action, as further provided in the Plan (the "Releasing Party Release").   Courts in this jurisdiction routinely approve such release provisions when, as here, they are consensual.[54]

57.     In this case, all parties subject to the Releasing Party Release had ample opportunity to evaluate the Releasing Party Release.  In addition, Holders of Claims or Interests who either voted to reject, abstained from voting or were presumed to accept or deemed to reject the Plan granted the Releasing Party Release only if they affirmatively consented to provide it through their selections on the Opt-In Election.  Moreover, Holders of Claims who voted to accept the Plan were

---

[53]    *See Master Mortg. Inv. Fund, Inc*., 168 B.R. at 938 (stating that creditor approval of a release is "the single most important factor" to determine whether a release is appropriate); *see also In re Key3Media Grp., Inc.*, 336 B.R. 87, 97–98 (Bankr. D. Del. 2005) (granting a settlement of estate causes of action over creditor's objection because, among other things, a majority of creditors approved of the settlement), *aff'd*, 2006 WL 2842462 (D. Del. 2006).

[54]    *See, e.g.*, *Wash. Mut.*, 442 B.R. at 352 (holding that third-party releases must be based on consent of the releasing party by contract or the mechanism of voting in favor of the Plan).

still given the opportunity to affirmatively Opt-Out of granting the Releasing Party Release on the ballot.[55]   These parties were additionally provided (a) the Combined Hearing Notice that included the deadline to object to confirmation of the Plan, (b) instructions for accessing the Disclosure Statement, the Plan, and the Solicitation Procedures Order; (c) a prepaid, pre-addressed return envelope; and (d) an Opt-In Release Election Form.   Moreover, the Disclosure Statement, the Combined Hearing Notice, and the ballots provided recipients with timely, sufficient, appropriate, and adequate notice of the Releasing Party Release.[56]

58.     Because the Releasing Party Release is wholly consensual, the *Purdue* decision governing non-consensual third-party releases is inapplicable.[57]   Accordingly, the Releasing Party Release, which is consistent with established Third Circuit law, should be approved.

### iii.     The Exculpation Provision Is Appropriate

59.     Section 8.4 of the Plan provides for the exculpation of the Exculpated Parties (the "Exculpation Provision").[58]   The Exculpation Provision is fair and appropriate under both applicable law[59] and the facts and circumstances of these Chapter 11 Cases.   The Exculpation Provision is limited and does not exculpate acts or omissions that constitute fraud, willful misconduct, or gross negligence.[60]   The Debtors believe that the Exculpation Provision is

---

[55]   *See* Weber Decl. ¶ 12.c.v.

[56]   *See* Disclosure Statement § VIII.A.10.; Disclosure Statement Order, Exs. 1-2.

[57]   *Harrington v. Purdue Pharma, L.P.,* 603 U.S. 204, 144 S. Ct. 2071, 2082-88 (2024).

[58]   "Exculpated Party" or "Exculpated Parties" means, collectively, each of the following in their respective capacities as such: (a) the Debtors; (b) the Estates; (c) the Creditors' Committee and each of its current and former members (provided, for the avoidance of doubt, that former members of the Creditors' Committee shall not be exculpated for any act or omission occurring after their tenure on the Creditors' Committee); and (d) each of the preceding parties' respective Related Parties, in each case, who served as a fiduciary of the Estates or on behalf of holders of General Unsecured Claims at any time between the Petition Date and the Effective Date of this Plan.

[59]   *See Wash. Mut.*, 442 B.R. at 350-51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate).

[60]   *See* Plan, Art. VIII.

important because the Exculpated Parties have participated in these Chapter 11 Cases in good faith, and such provision is necessary to protect them from collateral attacks related to any good faith acts or omissions in connection with, or related to, among other things, these Chapter 11 Cases and the Plan.[61]  Accordingly, the Debtors believe that the Exculpation Provision is consistent with applicable law and should be approved.

#### iv.    The Injunction Provision Is Appropriate

60.    The injunction provision set forth in Section 8.5 of the Plan merely protects property distributed under the Plan and implements the Plan's release and exculpation provisions, in part, by permanently enjoining all entities from commencing or maintaining any action against the Debtors, the Exculpated Parties, or the Released Parties, other than the Retained Causes of Action, on account of or in connection with or with respect to any such claims or interests released or subject to exculpation (the "Injunction Provision").  Thus, the Injunction Provision is a key provision of the Plan because it enforces the release and exculpation provisions that are centrally important to the Plan.[62]  As such, to the extent the Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the Injunction Provision must also be appropriate.  Moreover, the Injunction Provision is narrowly tailored to achieve its purpose and has been modified to address informal comments from the U.S. Trustee.  No other party has objected or provided an informal comment with respect to the Injunction Provision.  Thus, the Injunction Provision should be approved.

---

[61]    *See* Weber Decl. ¶ 12.c.v.

[62]    *Id*. ¶ 12.c.vi.

### d.    The Retention of the Retained Causes of Action is Appropriate

61.    The Retained Causes of Action set forth in the Plan and Plan Supplement, which will vest in the Litigation Trust on the Effective Date, are essential to the Plan and appropriate under the facts and circumstances of these Chapter 11 Cases.  Accordingly, the retention of the Retained Causes of Action should be approved.

### e.    The Plan Complies with the Additional Provisions of Section 1123(b) of the Bankruptcy Code

62.    The Plan is consistent with section 1123(b)(5) of the Bankruptcy Code.[63]  Article III of the Plan modifies or leaves unaffected, as is applicable, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.[64]  Additionally, the other discretionary provisions in the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.[65]  Accordingly, the Plan satisfies the requirements of sections 1123(b)(5) and (b)(6) of the Bankruptcy Code, and no party has asserted otherwise.

## D.    The Plan Complies with Section 1123(d) of the Bankruptcy Code

63.    Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law."[66]

64.    The Plan complies with section 1123(d) of the Bankruptcy Code.  Article V of the Plan provides for the automatic rejection of the Debtors' Executory Contracts not previously

---

[63]   11 U.S.C. § 1123(b)(5).

[64]   *See* Weber Decl. ¶ 12.d.

[65]   *Id.* ¶ 12.e.

[66]   *See* 11 U.S.C. § 1123(d).

assumed, assumed and assigned, or rejected pursuant to an order of the Court, other than any Executory Contract that:  (a) is designated as a Transferred Contract under the Asset Purchase Agreement; (b) is designated as an Assumed Contract or Assumed and Assigned Contract on the Schedule of Assumed Executory Contracts or a Transferred Contract on a TSA Contract Notice or a Supplemental TSA Contract Notice (each as defined in the TSA Assumption Order); (c) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court, including the Bidding Procedures Order, Sale Order and TSA Assumption Order, or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (d) is the subject of a motion to assume pending as of the Effective Date; (e) is otherwise assumed pursuant to the terms of the Plan; (f) is an Insurance Policy; or (g) is subject to an executed agreement by and between the counterparty to such Executory Contract, the Debtors, and Do It Best.  Any Executory Contract Assumed pursuant to the Plan will be treated in accordance with section 1123(d) of the Bankruptcy Code.  Further, the Debtors' determination regarding the assumption and rejection of Executory Contracts are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims, and other parties in interest in these Chapter 11 Cases.[67]

## E.    The Plan Complies with Section 1129(a)(2) of the Bankruptcy Code

65.    The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires the plan proponent to comply with the applicable provisions of the Bankruptcy Code.[68] The legislative history to section 1129(a)(2) provides that section 1129(a)(2) is intended to

---

[67]    *See* Weber Decl. ¶ 13.b.

[68]    *See* 11 U.S.C. § 1129(a)(2).

encompass the disclosure and solicitation requirements set forth in section 1125 and the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.[69]  As set forth below, the Debtors have complied with these provisions, including sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, by distributing the Disclosure Statement and soliciting acceptances of the Plan through their Notice and Claims Agent in accordance with the Disclosure Statement Order.[70]

### 1.    The Debtors Complied with Section 1125 of the Bankruptcy Code

66.    Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[71] Section 1125 ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan.[72]

67.    As set forth above, section 1125 is satisfied here.  Before the Debtors solicited votes on the Plan, the Court approved the Disclosure Statement on an interim basis.[73]  The Court also approved the contents of the solicitation materials provided to Holders of Claims entitled to vote

---

[69]    *See In re Lapworth*, 1998 WL 767456, at *3 (DWS) (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2)."); *In re Aleris Int'l, Inc.*, 2010 WL 3492664, at *20 (Bankr. D. Del. May 13, 2010) ("[S]ection 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the solicitation and disclosure requirements under sections 1125 and 1126 of the Bankruptcy Code."); S. Rep. No. 989, 95th Cong., 2d Sess., at 126 (1978); H.R. Rep. No. 595, 95th Cong., 1st Sess., at 412 (1977).

[70]    *See* Weber Dec.  ¶ 13.

[71]    11 U.S.C. § 1125(b).

[72]    *See Momentum Mfg. Corp. v. Emp. Creditors Comm.* (*In re Momentum Mfg. Corp.*), 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

[73]    *See generally* Disclosure Statement Order.

on the Plan, the non-voting materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting on and objecting to the Plan.[74]  As stated in the Weber Declaration, the Debtors, through the Notice and Claims Agent, complied with the content and delivery requirements of the Disclosure Statement Order, thereby satisfying sections 1125(a) and (b) of the Bankruptcy Code.  The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class.  Here, the Debtors caused the Disclosure Statement to be transmitted to all parties entitled to vote on the Plan.

68.    Based on the foregoing, the Debtors submit that they have complied in all respects with the solicitation requirements of section 1125 of the Bankruptcy Code and the Disclosure Statement Order.

### 2.    The Debtors Complied with Section 1126 of the Bankruptcy Code

69.    Section 1126 of the Bankruptcy Code provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[75]  The Debtors did not solicit votes on the Plan from Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) as such Classes are Unimpaired under the Plan (the "Unimpaired Classes").[76]  Pursuant to section 1126(f) of the Bankruptcy Code, holders of Claims in the Unimpaired Classes are conclusively presumed to have accepted the Plan and, therefore, were not entitled to vote on the Plan.  The Debtors also did not solicit votes from Class 7 (Subordinated Claims) and Class 8 (Existing Interests) as such Classes are Impaired under the Plan and not expected to receive any recovery on account of their

---

[74]    *Id.*

[75]    *See* 11 U.S.C. § 1126.

[76]    *See* Plan, Art. III.A.

Claims or Interests (the "Deemed Rejecting Classes").[77]   Pursuant to section 1126(g) of the

Bankruptcy Code, holders of Claims and Interests in the Deemed Rejecting Classes are deemed to

have rejected the Plan and, therefore, were not entitled to vote on the Plan. Class 5 (Intercompany

Claims) and Class 6 (Intercompany Interests) are either Impaired and deemed to reject the Plan or

Unimpaired and presumed to accepted the Plan and, therefore, were not entitled to vote on the

Plan.

70.     Accordingly, the Debtors solicited votes only from the Voting Classes, which

consist of the Holders of Allowed Claims in Class 3 (Prepetition Lender Claims) and

Class 4 (General Unsecured Claims), because these Classes are Impaired and entitled to receive a

distribution under the Plan.[78]   With respect to the Voting Classes of Claims, section 1126(c) of the

Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted
> by creditors, other than any entity designated under subsection (e)
> of [section 1126], that hold at least two-thirds in amount and more
> than one-half in number of the allowed claims of such class held by
> creditors, other than any entity designated under subsection (e) of
> [section 1126], that have accepted or rejected such plan.[79]

71.     The Voting Report, summarized *supra*, reflects the results of the voting process in

accordance with section 1126 of the Bankruptcy Code.  Based on the foregoing, the Debtors submit

that they have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

**F.      The Plan Was Proposed in Good Faith and Therefore Complies with Section 1129(a)(3) of the Bankruptcy Code**

72.     Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be

"proposed in good faith and not by any means forbidden by law." Where a plan satisfies the

---

[77]   *Id.*

[78]   *See* Weber Decl. ¶ 21.

[79]   11 U.S.C. § 1126(c).

purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[80] To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[81]

73.     The record is clear that the Plan was developed and proposed with honesty, good intentions, and with the goal of maximizing stakeholder recoveries. Throughout these Chapter 11 Cases, the Debtors, their directors, and their management team have upheld their fiduciary duties to stakeholders and protected the interests of all constituents. To that end, the Debtors have completed a value maximizing going concern sale to Do it Best that has already generated substantial creditor recoveries. The terms of both the sale transaction and the Plan—which is designed to streamline further distributions and facilitate continued transition services and an orderly wind down of the estates for the benefit of all creditors—were negotiated among the Debtors' key stakeholders, including the Committee, the Prepetition Lenders and Do it Best. The Plan facilitates transactions that have and will continue to provide greater value to the Debtors' stakeholders compared to the alternative of a chapter 7 liquidation.[82] Importantly, the Plan is supported by both Voting Classes. Accordingly, the Plan and the Debtors' conduct satisfy section 1129(a)(3) of the Bankruptcy Code.

---

[80]   *E.g.*, *PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship* (*In re T-H New Orleans Ltd. P'ship*), 116 F.3d 790, 802 (5th Cir. 1997) (quoting *Brite v. Sun Country Dev., Inc.* (*In re Sun Country Dev., Inc.*), 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove, Inc.*, Civ. A. Nos. 90-400 and 90-401,1993 WL 239489, at *4 (D. Del. Feb. 10, 1993); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[81]   *E.g., T-H New Orleans*, 116 F.3d at 802 (quoting *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012); *Century Glove*, 1993 WL 239489, at *4.

[82]   *See* Weber Decl. ¶ 14.

**G.    The Plan Provides that the Payment of Debtors' Professional Fees and Expenses Are Subject to Court Order in Compliance with Section 1129(a)(4) of the Bankruptcy Code**

74.    Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable.  Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the Court as to their reasonableness.[83]

75.    The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.[84]  All payments made or to be made by the Debtors for services or for costs or expenses in connection with these Chapter 11 Cases prior to the Confirmation Date, including all Professional Claims, have been approved by, or are subject to approval of, the Court.[85]  Section 2.2 of the Plan provides that all final requests for payment of Professional Fee Claims shall be filed no later than forty-five (45) days after the Effective Date for determination by the Court, after notice and a hearing, in accordance with the procedures established by the Court except as such procedures have been otherwise modified by the Plan.[86]  Accordingly, the Plan fully complies with the requirements of section 1129(a)(4) of the Bankruptcy Code, and no party has asserted otherwise.

---

[83]    *Lisanti Foods*, 329 B.R. at 503 ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court"), *aff'd,* 241 F.  App'x 1 (3d Cir. 2007); *In re Future Energy Corp*., 83 B.R. 470, 488 (Bankr. S.D.  Ohio 1988*)*; *In re Chapel Gate Apartments, Ltd*., 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[84]    *See* Weber Decl. ¶ 16.

[85]    *See* Plan, Art. II.

[86]    *Id.*

**H.    The Plan Does Not Require Additional Disclosures Regarding Directors, Officers, or Insiders and Therefore Complies with Section 1129(a)(5) of the Bankruptcy Code**

76.    The Bankruptcy Code requires the plan proponent to disclose the affiliation of any individual proposed to serve as a director or officer of the debtor or a successor to the debtor under the plan.[87]  Section 1129(a)(5)(A)(ii) further requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[88]  In addition, section 1129(a)(5)(B) also requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the nature of any compensation for such insider.[89]

77.    Section 4.3 of the Plan provides for the resignation of the Debtors' directors and officers and the termination of the Debtors' remaining employees on the Effective Date.  From and after the Effective Date, the Plan Administrator will be authorized to act on behalf of the Estates.  The identities of the Plan Administrator and the Litigation Trustee, along with the nature of the compensation of the Plan Administrator and the Litigation Trustee, were disclosed in the Plan Supplement.  Accordingly, the requirements of section 1129(a)(5) of the Bankruptcy Code have been satisfied.

**I.    The Plan Does Not Require Governmental Regulatory Approval and Therefore Complies with Section 1129(a)(6) of the Bankruptcy Code**

78.    Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has approved any rate change provided for in the plan.  The Plan does not contain any rate changes

---

[87]    11 U.S.C. § 1129(a)(5)(A)(i).

[88]    *Id.* § 1129(a)(5)(A)(ii).

[89]    *Id.* § 1129(a)(5)(B).

subject to the jurisdiction of any governmental regulatory commission and section 1129(a)(6) of

the Bankruptcy Code is therefore inapplicable to the Plan.

**J.      The Plan is in the Best Interest of Creditors and Therefore Complies with Section 1129(a)(7) of the Bankruptcy Code**

79.      Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests

test," provides, in relevant part:

> With respect to each impaired class of claims or interests—
>
> (A)      each holder of a claim or interest of such class—
>           (i)      has accepted the plan; or
>           (ii)     will receive or retain under the plan on account of such claim or
>                    interest property of a value, as of the effective date of the plan, that
>                    is not less than the amount that such holder would so receive or
>                    retain if the debtor were liquidated under chapter 7 of [the
>                    Bankruptcy Code] on such date . . . .

80.      The best interests test applies to individual dissenting holders of impaired claims

and interests rather than classes, and is generally satisfied through a comparison of the estimated

recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate

against the estimated recoveries under that debtor's chapter 11 plan.[90]  As section 1129(a)(7) of

the Bankruptcy Code makes clear, the best interests test applies only to holders of non-accepting

impaired claims or interests, who must receive at least as much under a plan as they would receive

in a chapter 7 liquidation.[91]

---

[90]   *Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *Century Glove*, 1993 WL 239489, at *7; *Adelphia Commc'ns. Corp.*, 368 B.R. at 251 (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

[91]   *See In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'") (internal citations omitted).

81.     Here, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.  As set forth in the Weber Declaration,[92] the Debtors, with the assistance of their legal and financial advisors, including M3, prepared an unaudited liquidation analysis (the "Liquidation Analysis"), which is attached as Exhibit B to the Disclosure Statement.

82.     The Liquidation Analysis compares the projected range of recoveries that would result from the liquidation of the Debtors in a hypothetical case under chapter 7 of the Bankruptcy Code with the estimated distributions to holders of allowed Claims and Interests under the Plan.[93] As illustrated in the Liquidation Analysis, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code, because—due to higher anticipated costs to the estates in a hypothetical chapter 7 case as compared to under the Plan in these Chapter 11 Cases—all holders of impaired Claims and Interests will receive property with a value as of the Effective Date that is not less than the value such holders would receive in a liquidation under chapter 7.[94]  Moreover, it is notable that the Committee, who represents the interests of Holders of General Unsecured Claims, supports the Plan.[95]

83.     Accordingly, based on the Liquidation Analysis, the Plan satisfies the best interests test as required by the Bankruptcy Code.

**K.      The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code**

84.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  Holders of Claims and Interests in the Deemed Rejecting Classes are deemed to have rejected the Plan and, thus, were not entitled

---

[92]  *See generally* Weber Decl.

[93]  *See* Weber Decl. ¶ 20.

[94]  *See id.* and the Liquidation Analysis.

[95]  *See* Weber Decl. ¶ 20.

to vote.  Consequently, while the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejecting Classes, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below.[96]

**L.    The Plan Provides for Payment in Full of All Allowed Priority Claims in Compliance with Section 1129(a)(9) of the Bankruptcy Code**

85.    Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive deferred cash payments.  In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code— administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims.  Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).  Finally, section 1129(a)(9)(C) of the Bankruptcy Code provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.[97]

---

[96]    *See id.* ¶¶ 23, 24.

[97]    11 U.S.C. §§ 507(a)(1)–(7), 1129(a)(9).

86.     The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.[98] *First*, Article II of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim shall receive payment as follows: (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable; or (e) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

87.     *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no holders of the types of Claims specified by section 1129(a)(9)(B) are Impaired under the Plan and such Claims have been paid in the ordinary course.

88.     *Third*, Section 2.5 of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that Holders of Allowed Priority Tax Claims will be treated in accordance with the terms set forth in Section 1129(a)(9)(C), except to the extent a Holder of an Allowed Priority Tax Claim agrees to less favorable treatment.   The Plan thus satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

---

[98]    *See* Weber Decl. ¶ 22.

**M.      At Least One Class of Impaired, Non-Insider Claims Accepted the Plan in Compliance with Section 1129(a)(10) of the Bankruptcy Code**

89.      Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider," as an alternative to the requirement under section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept the plan or be unimpaired under the plan.    Class 3 (Prepetition Lender Claims) and Class 4 (General Unsecured Claims), which are Impaired, voted to accept the Plan independent of any insiders' votes.[99]    Thus, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.[100]

**N.      The Plan is Feasible in Compliance with Section 1129(a)(11) of the Bankruptcy Code**

90.      Section 1129(a)(11) of the Bankruptcy Code requires that the Court find that a plan is feasible as a condition precedent to confirmation.    Specifically, the Court must determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.[101]

91.      The feasibility test set forth in section 1129(a)(11) does not require the Debtors to "prove" that the Plan will succeed.    The Debtors need only demonstrate that the Plan has "a

---

[99]    *See* Weber Decl. ¶ 23.

[100]    *See id*.

[101]    11 U.S.C. § 1129(a)(11).

reasonable likelihood of success" or a "reasonable probability" that the provisions of the Plan may be performed.[102] This imposes a relatively low threshold of proof.[103]

92.    The purpose of the feasibility test under section 1129(a)(11) is to "prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."[104]  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds.[105]  In the context of liquidating plans, bankruptcy courts have found that feasibility is established where a debtor has "sufficient resources" to meet its obligations under the plan, including its "obligations to pay for the costs of administering and fully consummating the plan and closing the chapter 11 cases."[106] Other courts have said that, to demonstrate that a liquidating plan is feasible, a plan proponent need only show that "the successful performance of [the plan's] terms is not dependent or contingent upon any future, uncertain event."[107]

93.    The Plan is feasible.[108]  It satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code by providing for a clear path to emergence from these Chapter 11 Cases and the

---

[102]    *See Kane*, 843 F.2d at 649; *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) (noting that section 1129(a)(11) "does not require a plan's success to be guaranteed"); *In re Heritage Highgate, Inc.*, 679 F.3d 132, 142 (3d Cir. 2012) (quoting *In re TCI 2 Holdings, LLC*, 428 B.R. at 148).

[103]    *See, e.g., In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D. N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *overruled in part on other grounds*, 464 B.R. 208 (Bankr. D. Del. 2011).

[104]    *Pizza of Haw*, 761 F.2d at 1382; *In re Kreider*, No. 05-15018 (ELF), 2006 WL 3068834, at *5 (Bankr. E.D. Pa. Sept. 27, 2006).

[105]    *See U.S. Truck*, 47 B.R. at 944.

[106]    *In re Finlay Enters., Inc.*, No. 09-14873 JMP, 2010 WL 6580628, at *7 (Bankr. S.D.N.Y. June 29, 2010).

[107]    *In re Heritage Org., L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. Aug. 31, 2007) (holding that the creation of a creditor trust with res consisting of estate cash and the proceeds of any future successful litigation in addition to a fixed trust governance mechanism qualified as feasible).

[108]    *See* Weber Decl. ¶ 25.

ability of the Debtors to satisfy their obligations under the Plan. The Debtors project that the distributable value of the Estates will be sufficient to satisfy all Priority Tax and Other Priority Claims, Allowed Administrative Claims, Statutory Fees, and may provide further recoveries to the Allowed Claims in Class 3 (Prepetition Lender Claims) and potential recoveries to Class 4 (General Unsecured Claims) consistent with the Plan and the Confirmation Order. As explained in the Weber Declaration, the Plan provides sufficient funding for the Plan Administrator to implement the Plan, make distributions to creditors and wind down the Post Effective Date Debtors. In addition, the Plan sufficiently funds the Litigation Trust.[109] Moreover, payments under the Plan are not dependent or contingent upon any future or uncertain event. Accordingly, there is a reasonable assurance that the Plan is workable and has a reasonable likelihood of success, satisfying the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

**O.    All Statutory Fees Have or Will Be Paid in Compliance with Section 1129(a)(12) of the Bankruptcy Code**

94.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan." Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930 of] chapter 123 of title 28" are afforded priority as administrative expenses.

95.    The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article XI of the Plan provides that all fees due and payable pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on the Effective Date.[110] After the Effective Date, any and all Statutory Fees shall be paid to the U.S. Trustee when due and payable, and the Post-

---

[109]    *See id.*

[110]    *See* Weber Decl. ¶ 27; Plan Art. XI.

Effective Debtors and the Litigation Trustee shall remain obligated to pay the U.S. Trustee Statutory Fees until the earliest of each applicable Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code in accordance with the provisions of Section 11.2 of the Plan.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

**P.      The Debtors Have No Retiree Benefit Obligations (Section 1129(a)(13) of the Bankruptcy Code)**

96.      Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.

97.      As provided more fully in the Disclosure Statement, the Debtors believe that most of their retiree plans (the "Retiree Plans") are unvested and therefore unilaterally terminable in the Debtors' discretion after the Effective Date.  *See In re Visteon Corp.*, 612 F.3d 210, 236 (3d Cir. 2010).  Certain of the Retiree Plans, however, may be vested and, thus, will need to be administered through a process to modify such benefits pursuant to Section 1114(f) of the Bankruptcy Code or pursuant to applicable non-bankruptcy law following the Effective Date.

98.      To that end, on February 14, 2025, the Debtors filed the *Debtors' Motion for Entry of An Order (a) Appointing James P. Carroll as the Authorized Representative of Retirees or Their Beneficiaries Under 11 U.S.C. §§ 105(a) and 1114 and (b) Granting Related Relief* [Docket No. 921]*,* which was approved by the Court on February 26, 2025 [Docket No. 955] (the "Retiree Order"). Pursuant to the Retiree Order, the Court appointed James P. Carroll (the "Fiduciary") as the Debtors' third-party fiduciary pursuant to Section 1114 of the Bankruptcy Code to represent the interests of the beneficiaries under the Retiree Plans (the "Retiree Plans").

99.    Following his appointment, the Debtors and the Fiduciary negotiated a settlement (the "Retiree Settlement") in respect of the Retiree Plans for the benefit of the Debtors' retirees and their eligible beneficiaries (the "Retiree Parties"). The terms of the Retiree Settlement are more fully described in Section II.T *infra*, but the Retiree Settlement generally provides that (a) the Debtors will establish and fund a reserve, in trust, with approximately $743,000.00 (the "Settlement Amount"), which amount shall be distributed to eligible Retiree Parties in full satisfaction and settlement of all future benefit entitlements due to eligible Retiree Parties under the vested Retiree Plans (the "Ongoing Retiree Plans") and (b) provide for the termination of all other Retiree Plans following the Effective Date (the "Non-Ongoing Retiree Plans").

100.    The Retiree Settlement is incorporated in the Plan at Section 4.14 and attached to the Plan as Exhibit B, and the Debtors are seeking approval of the Retiree Settlement in connection with confirmation of the Plan. As the Retiree Settlement provides for the treatment and resolution of all of the Debtors' obligations under the Retiree Plans, the Plan therefore satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

## Q.    Sections 1129(a)(14), (a)(15) and (a)(16) of the Bankruptcy Code Do Not Apply to the Plan

101.    Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.  Since the Debtors are not subject to any domestic support obligations, the requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.[111]    Likewise, section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.  Because none of the Debtors are an "individual," the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.[112]    Finally, the

---

[111]    *See* Weber Decl. ¶ 27.

[112]    *See id.*

Debtors are moneyed, business, or commercial corporations and therefore section 1129(a)(16) of

the Bankruptcy Code, which provides that property transfers by a corporation or trust that is not a

moneyed, business, or commercial corporation or trust be made in accordance with any applicable

provisions of non-bankruptcy law, is not applicable to these Chapter 11 Cases.[113]

**R.      The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code**

102.    Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable

requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of

the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in

section 1129(b) of the Bankruptcy Code are satisfied.  To confirm a plan that has not been accepted

by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the

plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable"

with respect to the non-accepting impaired classes.[114]

**1.      The Plan is Fair and Equitable and Thus Satisfies Section 1129(b)(2)(B) of the Bankruptcy Code**

103.    A plan is "fair and equitable" with respect to an impaired class of claims or interests

that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule.[115]  This

requires that an impaired rejecting class of claims or interests either be paid in full or that a class

---

[113]   *See id.*

[114]   *John Hancock*, 987 F.2d at 157 n.5; *In re Ambanc La Mesa L.P.*, 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan.").

[115]   *Bank of Am.*, 526 U.S. at 441–42 ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii).  That latter condition is the core of what is known as the 'absolute priority rule.'").

junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.

104.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.[116] Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.

105.    *First*, all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met.

106.    *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. No Holder of any Claim or Interest that is junior to any Deemed Rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest, and no Holder of a Claim or Interest in a Class senior to such Classes is receiving more than payment in full on account of its Claim or Interest.

**2.      The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan in Accordance with Section 1129(b)(1) of the Bankruptcy Code**

107.    Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of a particular case to make the determination.[117]  In general, courts have held that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if it provides materially different

---

[116]   *See* Weber Decl. ¶¶ 28-32.

[117]   *In re 203 N. LaSalle St. Ltd. P'ship.*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, *Bank of Am.*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination."); *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances").

treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so.[118] A threshold inquiry to assessing whether a proposed chapter 11 plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.

108.     Here, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes because similarly situated Claim and Interest Holders will receive substantially similar treatment on account of their Claims or Interests, as applicable, in such class.[119]  The Deemed Rejecting Classes are classified separately because they are legally distinct from the other Classes. Accordingly, the Holders in these Classes are not similarly situated to any other Claims in other Classes.  Therefore, the Plan does not discriminate unfairly with respect to any Impaired Classes of Claims or Interests, and the Plan may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**S.     The Debtors Complied with Sections 1129(d) and (e) of the Bankruptcy Code**

109.     Section 1129(d) of the Bankruptcy Code provides that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[120]  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Moreover, no Governmental

---

[118]   *See Coram*, 315 B.R. at 349 (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination); *Ambanc La Mesa*, 115 F.3d at 656–57 (same); *Aztec Co.*, 107 B.R. at 589–91 (stating that plan which preserved assets for insiders at the expense of other creditors unfairly discriminated); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (stating that interests of objecting class were not similar or comparable to those of any other class and thus there was no unfair discrimination).

[119]   *See* Weber Decl. ¶ 35.

[120]   *See* 11 U.S.C. § 1129(d).

Unit or any other party has requested that the Court decline to confirm the Plan on such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.[121]

110.    Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because these Chapter 11 Cases are not "small business cases."[122]  Thus, the Plan satisfies the Bankruptcy Code's mandatory confirmation requirements, and no party has asserted otherwise.

**T.     The Retiree Settlement Should Be Approved.**

**1.      Overview of the Retiree Settlement**

111.    As noted above, the Debtors have reached the Retiree Settlement with the Fiduciary, and are seeking approval of the Retiree Settlement, as incorporated in the Plan, as part of Confirmation. The effect of the Retiree Settlement is the resolution of all of the Debtors' go-forward obligations under the Retiree Plans and a significant recovery to the Retiree Parties that are entitled to receive go-forward benefits. Moreover, the Retiree Settlement allows the Debtors to satisfy a key requirement for confirmation of their consensual Plan.

112.    The Global Settlement provides for, among other things, the following:[123]

(a)      The Debtors will fund a settlement trust, to be administered by the Fiduciary, for the benefit of the Retiree Parties with the Settlement Amount, which amount will be provided to the trust in full settlement and satisfaction of all future benefit entitlements due to the Retiree Parties under the Ongoing Retiree Plans (the "Ongoing Retiree Plan Payments"). Eligible Retiree Parties will share pro rata in the Settlement Amount based on the net present value of their individual Ongoing Retiree Plan Payments, less the fees and costs of administering the Trust. Eligible Retiree Parties will submit to a claims resolution procedure to be developed and administered by the Fiduciary to receive any distribution from the trust. Those procedures will be filed with the Court with notice to each Retiree Party, and provide

---

[121]    *See* Weber Decl. ¶ 37.

[122]    *See* 11 U.S.C. § 1129(e).

[123]    The summaries of the Retiree Settlement contained herein are qualified in all respects by reference to the Retiree Settlement Agreement attached to the Plan as Exhibit B. In the event of any conflict between these summaries and the Retiree Settlement Agreement, the terms of the Retiree Settlement Agreement shall control.

for a process for parties to accept or dispute their claim amounts determined by the Fiduciary.

(b)     The Non-Ongoing Retiree Plans will be terminated by the Debtors pursuant to applicable non-bankruptcy law following the Effective Date.

(c)     The Retiree Parties will release the Debtors, their successors, and other related parties from all claims that directly or indirectly arise out of or relate to the Retiree Benefits or the Chapter 11 Cases upon approval of the Retiree Settlement by the Court and payment of the Settlement Amount.

## 2.     The Retiree Settlement Satisfies the Requirements of Bankruptcy Code Section 1114 and Bankruptcy Rule 9019, Is Fair, Equitable, and in the Best Interests of The Estates and the Retiree Parties

113.     The Bankruptcy Code authorizes the Debtors to settle or adjust "any claim or interest belonging to the debtor or to the estate" pursuant to a plan. 11 U.S.C. § 1123(b)(3). Plan settlements implemented through Bankruptcy Code section 1123 are evaluated under Bankruptcy Rule 9019. *See*, *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 832 (Bankr. D. Del. 2008); *In re Coram Healthcare Corp.*, 315 B.R. 321, 329–30 (Bankr. D. Del. 2004) (evaluating plan settlement under Bankruptcy Rule 9019). "Compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). Additionally, the Third Circuit has recognized that "'(i)n administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.'" *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

114.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate," *In re Marvel Entm't*

*Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997)), and "whether the settlement falls below the lowest point in a range of reasonableness." *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008).

115.    The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393.

116.    Section 1114 of the Bankruptcy Code, like Bankruptcy Rule 9019, is designed to encourage settlements. In fact, the underlying rationale of the section is to foster negotiations and modifications of a debtor's retiree benefit obligations by agreement. *In re Tower Auto., Inc.*, 342 B.R. 158, 162 (Bankr. S.D.N.Y.), *aff'd sub nom. In re Tower Auto. Inc.*, 241 F.R.D. 162 (S.D.N.Y. 2006) ("The statute requires the parties to attempt to come to an agreement on terms."); *In re Murray Energy Holdings Co*., 615 B.R. 461, 470 (Bankr. S.D. Ohio 2020) (bankruptcy court reviews section 1114 settlements "under Bankruptcy Rule 9019").

117.    The Debtors respectfully submit that the Retiree Settlement satisfies the standards for approval pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 1114, and that the Court should therefore approve the Settlement as part of the Plan and the Confirmation Order. The Retiree Settlement resolves uncertain claims, as it provides for a process under which parties that the Debtors believe may be entitled to benefits under the Ongoing Retiree Benefits can be verified and submit to a claims resolution procedure to administer their claims in an efficient manner without the need for litigation to determine those claims.

118.    The Retiree Settlement further reflects the Debtors' and the Fiduciary's collective agreement that any Retiree Parties would face difficulty in collecting in full on the settled claims, given the need to litigate the amount of the entitlement, which would require sophisticated and detailed evaluation of the net present value determinations used to come up with the settlement claim amounts, as well as the estate's inability to satisfy such claims in full. To that end, such litigation would be complex, costly, and time-consuming for the aforementioned reasons.

119.    Finally, the Retiree Settlement serves the paramount interests of creditors, the estates, and all other interested parties. Here, the Debtors can establish at least two things clearly: (a) they reached a deal with the Fiduciary, as the authorized representative of the Retiree Parties, pursuant to Bankruptcy Code section 1114 after extensive, good faith negotiations concerning the Debtors' settlement proposal; and (b) that, absent an agreement, the Debtors are not able to satisfy go-forward retiree benefits. In that case, the Debtors would not be able to confirm a plan, requiring either termination of the Retiree Plans pursuant to section 1114(g) or risking administrative insolvency and conversion to chapter 7—a downside scenario that would result in protracted litigation and the possibility of no recovery at all for Retiree Parties (and potentially many more creditors). The Retiree Settlement is the best possible outcome for everyone: it provides for significant recoveries for the Retiree Parties entitled to ongoing benefits and finality for the Debtors, their estates, their creditors, and all other interested parties. Courts in this district have approved similar settlements as part of a chapter 11 plan. *In re Kaiser Aluminum Corp.*, No. 02-10429(JKF), 2006 WL 616243, at *12 (Bankr. D. Del. Feb. 6, 2006), *aff'd*, 343 B.R. 88 (D. Del. 2006) ("The Plan continues the implementation of certain settlement agreements, which, among other things, modified retiree benefits pursuant to section 1114 of the Bankruptcy Code."). Accordingly, the Court should approve the Retiree Settlement because the Debtors have

demonstrated it is in the best interest of the estates and well above the lowest point in the range of reasonableness.

## U.     Modifications to the Plan

120.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  Further, when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts consistently have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[124]

121.    Pursuant to section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in the Confirmation Order or in any version of the Plan filed prior to the entry of the Confirmation Order (collectively, the "Plan Modifications") constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy

---

[124] *See, e.g., In re Federal–Mogul Glob. Inc.*, 2007 Bankr. LEXIS 3940, *113 (Bankr. D. Del. 2007) (additional disclosure under section 1125 is not required where plan "modifications do not materially and adversely affect or change the treatment of any Claim against or Equity Interest in any Debtor"); *Beal Bank, S.S.B. v. Jack's Marine, Inc.*, (*In re Beal Bank, S.S.B.*), 201 B.R. 376, 380 n. 4 (E.D. Pa. 1996) (further disclosure and solicitation not required under section 1127(b) and (c) where modifications to the plan were immaterial); *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009) (finding that nonmaterial modifications to plan do not require additional disclosure or resolicitation); *In re Burns & Roe Enters., Inc.*, No. 08-4191 (GEB), 2009 WL 438694, at *23 (D. N.J. Feb. 23, 2009) (confirming plan as modified without additional solicitation or disclosure because modifications did "not adversely affect creditors").

Code or the re-solicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Accordingly, the Debtors submit that the Plan, as modified, is properly before the Court and all votes cast with respect to the Plan prior to such modification should be binding and apply with respect to the Plan.

## V.      Good Cause Exist to Waive the Stay of the Confirmation Order

122.     Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale or lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

123.     The Debtors submit that good cause exists for waiving and eliminating any stay of the Confirmation Order pursuant to Bankruptcy Rules 3020, 6004, and 6006 so that the Confirmation Order will be effective immediately upon its entry.[125]  As noted above, these Chapter 11 Cases and the related transactions have been negotiated and implemented in good faith and with a high degree of transparency and public dissemination of information.[126]  Additionally, each day the Debtors remain in chapter 11, they incur significant administrative and professional costs that directly reduce the amount of distributable value for creditors.[127]

---

[125]   *See, e.g.*, *In re Source Home Entm't, LLC*, No. 14-11553 (KG) (Bankr. D. Del, Feb. 20, 2015) (waiving stay of confirmation order and causing it to be effective and enforceable immediately upon its entry by the court); *In re GSE Envtl., Inc.*, No. 13-11126 (MFW) (Bankr. D. Del. July 25, 2014) (same); *In re Physiotherapy Holdings, Inc.*, No. 13¬12965 (KG) (Bankr. D. Del. Dec. 23, 2013) (same); *In re Gatehouse Media, Inc.*, No. 13-12503 (MFW) (Bankr. D. Del. Nov. 6, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Apr. 29, 2013) (same); *In re Geokinetics Inc.*, No. 13-10472 (KJC) (Bankr. D. Del. Apr. 25, 2013) (same).

[126]   *See* Weber Decl. ¶ 45.

[127]   *Id.*

124. Based on the foregoing, the Debtors request a waiver of any stay imposed by the Bankruptcy Rules so that the Confirmation Order may be effective immediately upon its entry.

**W.   The Limited Objections Should be Overruled**

125. Currently, there are four Limited Objections that the Debtors have not been able resolve. To the extent these Limited Objections remain pending as of the Combined Hearing, they should be overruled for the reasons discussed below.

**1.   HOT Limited Objection**

126. OXO International, Ltd., Helen of Troy L.P., and KAZ USA, Inc. (collectively, the "HOT Objectors") filed a limited objection to the Plan [D.I. 1008] (the "HOT Limited Objection"). As provided in the OXO Limited Objection, the OXO Objectors seek "to accomplish a limited but important purpose: to ensure that there is a clear and efficient process in place under the Plan and in the Chapter 11 Cases for timely filed administrative priority claims asserted pursuant to Section 503(b)(9) of the Bankruptcy Code ("503(b)(9) Claims")."

127. The Debtors disagree with HOT Objectors' contention that any revisions to the Plan are necessary to address the treatment of 503(b)(9) Claims. The Plan, in this regard, is not dissimilar from the many other chapter 11 plans that this Court has confirmed. However, to address the HOT Limited Objection, the Debtors are working with the HOT Objectors on a provision to be inserted in the Confirmation Order that provides: (i) the HOT Objectors' proofs of claim were timely filed and the HOT Objectors are not required to file anything further to obtain allowance of those claims; (ii) to the extent that Debtors have already paid any portions of the HOT Objectors' 503(b)(9) Claims, such paid portions of these claims are allowed and not subject to further objection nor shall any payments made in partial satisfaction of those claims be subject to avoidance; (iii) the Debtors shall have until April 30, 2025 to file objections to the unpaid

portions of the HOT Objectors' 503(b)(9) claims and to the extent such claims are not objected to by such date, such claims shall immediately be deemed allowed; and (iv) the Debtors (or whoever is charged with paying allowed administrative claims under the plan) shall pay all of the unpaid portions of the HOT Objectors' 503(b)(9) claims within ten (10) days of allowance.

### 2.    Chubb Limited Objection

128.    ACE American Insurance Company, ACE Fire Underwriters Insurance Company, Illinois Union Insurance Company, Westchester Fire Insurance Company, Indemnity Insurance Company of North America, Westchester Surplus Lines Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc. Chubb Custom Insurance Company, ESIS, Inc. and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") have objected [Docket No. 1019] to the Plan on four grounds (such objection, the "Chubb Objection"). The Debtors worked with the Chubb Companies to address each objection through the inclusion of paragraph 114 of the Confirmation Order, which governs the assumption or assumption and assignment of the Chubb Policies (collectively, the "Insurance Resolution Language").  Indeed, they believe that such language had been agreed before the filing of the Chubb Objection.  If the Chubb Companies continue to object to the Plan, their objections should be overruled because (i) they lack a legal basis and (ii) they were not raised in a timely manner in the Chubb Objection.

### a.    Post-Effective Date Liability

129.    The Chubb Objection argues that the Post-Effective Date Debtors cannot continue to benefit from the Insurance Program without remaining liable for their obligations thereunder. The Debtors agree, and the Insurance Resolution Language makes clear what the Bankruptcy Code already provides.  Specifically, paragraphs 114(a) and (c) of the Confirmation Order provide that if a Chubb Insurance Contract is assumed or assumed and assigned, the obligations and rights of the parties will remain intact. Additionally, any future request for coverage under the Chubb

Insurance Contracts will entitle the Chubb Companies to "payment or reimbursement in full from the applicable Debtor or Post-Effective Date Debtor" as required under the applicable policy. Further, as discussed below, this modification remains subject to the Purchaser's obligations under the Transition Services Agreement and Plan.

### b.   Consent to Assignment

130.   The Chubb Companies have also argued that the Debtors cannot transfer the Insurance Program under the Plan or otherwise without their consent. The Insurance Resolution Language addresses this issue. Specifically, paragraph 114(d) of the Confirmation Order states that, aside from the assumption or assumption and assignment (where applicable) of the Chubb Insurance Contracts under the Bankruptcy Code, no transfer of these contracts is permitted "without the prior express written consent" of the Chubb Companies.

### c.   Policies Unaltered

131.   In addition, the Chubb Objection argues that the terms of the Insurance Program cannot be altered through the Plan. Again, the Debtors agree to the limitations imposed by the Bankruptcy Code. Paragraph 114(a) of the Confirmation Order provides that if a Chubb Insurance Contract is assumed or assumed and assigned, the contract will "vest…unaltered in [its] entiret[y] (including… with respect to its terms and conditions, the coverage provided."

### d.   Continuation of Workers' Compensation Actions

132.   Finally, the Chubb Objection argues that the Plan must ensure that workers' compensation and direct action claims covered by the Insurance Program continue to be processed in the ordinary course, addressing any outstanding amounts that need to be cured, and that the Debtors must provide adequate assurance of future performance. Paragraph 114(e) of the Confirmation Order resolves this issue by lifting the automatic stay to allow workers' compensation claims to proceed in the ordinary course with respect to assumed and assumed and

assigned policies, which in each case remain subject to the Purchaser's obligations under the Transition Services Agreement and Plan.

133.    Despite the Debtors' efforts to reach a consensual resolution with the Chubb Companies, including granting multiple extensions to their objection deadline and negotiating the Insurance Resolution Language, which the Debtors believed, based on those negotiations, fully addressed the Chubb Objection, the Chubb Companies nonetheless filed the Chubb Objection and continued to seek to negotiate new issues.

134.    For example, the Chubb Companies have stated that they have certain, concerns about section 5.7(b) of the Plan that the Debtors to date have been unable to resolve. This section provides that "the Purchaser shall . . . be responsible for and pay any obligations related to or arising from the assumption, deemed assumption, or assumption and assignment of the Insurance Policies." The basis for the Chubb Companies' concern about this provision remains elusive. The provision is clearly intended to ensure that the estates can satisfy post-Effective Date obligations for the benefit of their Insurers, including the Chubb Companies, should the Debtors assume the Chubb Insurance Contracts. Indeed, this is the primary basis for the Debtors' showing of adequate assurance of future performance, which the Chubb Companies had sought.

135.    After their objection deadline, the Chubb Companies also requested language concerning their rights if the Debtors reject the Chubb Insurance Contracts. In response, the Debtors agreed to include language in paragraph 114(g) of the Confirmation Order regarding the Chubb Companies' rights with respect to their collateral and also clarified that "following [a] rejection, the Chubb Insurance Companies shall retain all rights under applicable law." The Chubb Companies have aired certain other concerns, however, that have seemed to suggest that these Insurers may want to expand their rights beyond what the Bankruptcy Code provides.

136.    In sum, the Debtors have made substantial good faith efforts to ensure that all Insurers, including the Chubb Companies (to the extent the Debtors assume the Chubb Insurance Contracts), are protected to the extent provided in the Bankruptcy Code post-Effective Date. They have tried to accommodate the Chubb Companies, yet with each concession, the Chubb Companies have demanded more. The Debtors believe that the Insurance Resolution Language fully addresses the Chubb Objection and any other arguments that might be made by the Chubb Companies that were not included therein. Therefore, the Chubb Objection should be overruled.

### 3.    Oracle Reservation of Rights

137.    Oracle America, Inc. ("Oracle") filed a reservation of rights regarding the Plan [Docket No. 1009] (the "Oracle RoR"); requesting that all outstanding amounts due and owing under the Oracle Agreements (as defined in the Oracle RoR)[128] be paid, that Oracle be provided with adequate assurance of future performance, and that the Purchaser sign an assignment.  Since the Oracle RoR was filed, the Debtors have provided adequate assurance information to Oracle. Moreover, the Debtors and the Purchaser agree that the Purchaser will cure the outstanding amounts due to Oracle.  With respect to the assignment agreement, the Debtors and the Purchaser are continuing to discuss such agreement with Oracle and are hopeful that a resolution can be reached in advance of the Combined Hearing.   However, since Oracle did not raise this requirement by the November 18, 2024 objection deadline set forth in the *Notice of Proposed Assumption And Assignment Of Certain Executory Contracts* [Docket No. 339], to the extent that the parties are unable to reach a consensus, the assumption and assignment of the Oracle

---

[128]   The Oracle Agreements include all agreements listed in the Oracle RoR with the exception of the "Oracle DB Software Support & Maintenance Renewal 2023" agreement which expired and has been replaced with the "Oracle Net Warehouse Database Support Subscription Renewal 2024."

Agreements should be authorized notwithstanding Oracle's untimely demand that Purchaser sign an assignment agreement.

### 4.    Fifth Third Limited Objection

138.    Fifth Third Bank, N.A. ("Fifth Third") and Bank of Montreal ("BMO") filed a limited objection to the Plan [Docket No. 1012] (the "Fifth Third/BMO Objection") "to the extent the Debtors attempt to distribute any Sale proceeds attributable to any Allegedly Transferred Equipment in a manner inconsistent with the Cash Collateral Order and Sale Order and in violation of the Objectors' interests therein." *See* Fifth Third/BMO Objection at 31.

139.    As set forth in greater detail in the *Administrative Agent's Reply to Limited Objection Filed by Fifth Third Bank, N.A. and Bank of Montreal to the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and its Debtor Affiliates* [Docket No. 1053] (the "Administrative Agent Reply"), the Debtors and the Prepetition Secured Parties (as defined in the Administrative Agent Reply) are in discussions with counsel for Fifth Third, BMO, and other similarly situated equipment lenders regarding the issues raised in Fifth Third/BMO Objection, and hope to resolve such issues in advance of the Combined Hearing. Moreover, the Debtors do not believe that the issues raised in Fifth Third/BMO Objection need to be addressed at the Combined Hearing, because, with respect to Fifth Third, BMO, and other similarly situated equipment lenders, the Plan does nothing to alter the relief previously approved by the Court in the Cash Collateral Order or the Sale Order, and simply preserves the status quo regarding the rights of those parties. However, to the extent that the Court feels the issues raised in the Fifth Third/BMO Objection must be addressed at the Combined Hearing, the Debtors adopt and incorporate by reference the arguments asserted in the Administrative Agent Reply; and submit that the objection should be overruled for the reasons set forth therein. In the event that Fifth

Third, BMO, and other similarly situated equipment lenders have Allowed Other Secured Claims, those claims will be paid out of the Plan Administration Reserve.

## **CONCLUSION**

140.    For all of the reasons set forth herein and in the Weber Declaration, and as will be further shown at the Combined Hearing, the Debtors respectfully request that the Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, overruling any remaining objections, and granting such other and further relief as is just and proper.

Dated: March 31, 2025
Wilmington, Delaware

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

*/s/ Carol E. Thompson*
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
Carol E. Thompson (Del. Bar No. 6936)
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:
emorton@ycst.com
kenos@ycst.com
kmcelroy@ycst.com
tpowell@ycst.com
cthompson@ycst.com

*Efficiency Counsel to the
Debtors and Debtors in Possession*

**GLENN AGRE BERGMAN &
FUENTES LLP**

Andrew K. Glenn (admitted pro hac vice)
Trevor J. Welch (admitted pro hac vice)
Malak S. Doss (admitted pro hac vice)
Michelle C. Perez (admitted pro hac vice)
Esther Hong (admitted pro hac vice)
1185 Avenue of the Americas
22nd Floor
New York, New York 10036
Telephone: (212) 970-1600
Email:
aglenn@glennagre.com
twelch@glennagre.com
mdoss@glennagre.com
mperez@glennagre.com
ehong@glennagre.com

*Conflicts Counsel to the
Debtors and Debtors in Possession*