## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **TRUE VALUE COMPANY, L.L.C.** *et al.*, | **Case No. 24-12337 (KBO)** |
| **Debtors.**[1] | **(Jointly Administered)** |
|  | Related Docket Nos. 906 & 1054 |

## DECLARATION OF NICK WEBER
## IN SUPPORT OF APPROVAL OF THE DISCLOSURE
## STATEMENT ON A FINAL BASIS AND CONFIRMATION
## OF THE THIRD AMENDED JOINT CHAPTER 11 PLAN OF
## TRUE VALUE COMPANY, L.L.C. AND ITS DEBTOR AFFILIATES

I, Nick Weber, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am a Managing Director of M3 Advisory Partners, LP ("M3"), restructuring advisor to True Value Company, L.L.C. and its affiliated debtors and debtors in possession (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company").  I have worked directly alongside Kunal Kamlani, the Debtors' Chief Transformation Officer, advising the Debtors since M3 was retained on July 29, 2024.  As a result of my position, I am familiar with the Debtors' day-to-day business operations and affairs, the Books and Records, and the Debtors' chapter 11 efforts.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106).  The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

2.      Beginning in July 2024, I and others from M3 have served as a restructuring advisor to the Debtors.  As a Managing Director at M3, I have overseen (and continue to oversee) the services provided by M3 in these chapter 11 cases (these "Chapter 11 Cases"), which include: designing and implementing a restructuring strategy designed to maximize the Company's enterprise value; negotiating the sale of all or substantially all of the Debtors' assets in collaboration with the Debtors and their other advisors and handling the transition to Do it Best Corp., pursuant to the Asset Purchase Agreement; evaluating the Debtors' cash flow projections and identifying liquidity-enhancing opportunities; contingency planning; developing various forecasts and financial analysis; coordinating and providing administrative support for the Debtors' bankruptcy proceedings and emergence from chapter 11; assisting with data collection; and assisting with vendor payments.

3.      I am over the age of 18 years and am authorized to submit this declaration (this "Declaration") on behalf of the Debtors.  If called to testify, I could and would testify competently to the facts set forth herein.

4.      I submit this Declaration in support of final approval of the *Disclosure Statement for the Second Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 906] (the "Disclosure Statement") and the request for entry of an order confirming the *Third Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 1054] (as modified, amended, or supplemented from time to time hereafter, the "Plan").[2]

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan or the *Debtors' Memorandum of Law in Support of Approval of the Disclosure Statement on a Final Basis and Confirmation of Third Amended Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates*, as applicable.

5.      Unless otherwise indicated, all facts set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' operations and finances based on information provided by the Debtors; (b) my review of relevant documents, including information provided by other parties; (c) information provided to me by, or discussions with, the managing members of the Company or their advisors; and/or (d) my opinion based upon my experience.

6.      I am generally familiar with the Plan, the Disclosure Statement, the Confirmation Order, the Debtors' memorandum of law in support of confirmation of the Plan, filed contemporaneously herewith, and the *Notice of Filing of Plan Supplement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 996] (as amended on March 31, 2025 [Docket No. 1056], the "Plan Supplement").  Based on my discussions with the Debtors' other advisors, I am also generally familiar with the requirements for final approval of the Disclosure Statement under section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and confirmation of the Plan under section 1129 of the Bankruptcy Code.

7.      In conferring with Debtors' legal counsel and based on my involvement with the Chapter 11 Cases, I believe that the Debtors proposed the Plan in good faith, and as detailed more fully below, the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.

**I.      The Disclosure Statement Should Be Approved on a Final Basis.**

8.      The Disclosure Statement provides Holders of Claims and Interests in the Chapter 11 Cases with information, including, among other things:  (a) the major events that occurred prior to, and during the course of, the Chapter 11 Cases; (b) a summary of the classification and treatment of all Classes of Claims and Interests under the Plan; (c) an estimate of distributions to Holders of Allowed Claims pursuant to the Plan; (d) the provisions governing distributions under

the Plan; (e) the means for implementation of the Plan; (f) an analysis as to the distributions

creditors would receive from the Estates in a chapter 7 liquidation; (g) information regarding the

Post-Effective Date Debtors, including a summary of the Debtors' assets that will be transferred

to the Post-Effective Date Debtors on the Effective Date; (h) information regarding the Litigation

Trust, including a summary of the Debtors' assets that will be transferred to the Litigation Trust

on the Effective Date; (i) information regarding the Plan Administrator, including the Plan

Administrator's rights, powers, duties, and nature of compensation; (j) information regarding

certain risk factors that could affect recoveries under the Plan or the implementation of the Plan;

(k) the right and ability of the Litigation Trustee to assert, compromise or dispose of the certain

causes of action; (l) the tax consequences of the Plan; (m) conspicuous language containing

releases of the Debtors, and third parties, exculpation and limitation of liabilities, and the

injunction to be entered by and in connection with the Plan; and (n) such other and further

information that informs Holders of Claims and Interests of their rights arising from and relating

to the Plan.

9.      Accordingly, I believe that the Disclosure Statement contains "adequate

information" as such term is used in the Bankruptcy Code based on my discussions with counsel,

satisfies section 1125 of the Bankruptcy Code, and should be approved on a final basis.

## II.      The Plan Satisfies the Bankruptcy Code's Requirements for Confirmation.

### A.      The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code.

#### 1.      The Plan's Classification of Claims and Interests Complies with Section 1122 of the Bankruptcy Code.

10.      Through discussions with the Debtors' advisors and my familiarity with the Plan, I

understand that the Plan designates Claims against and Interests in the Debtors into eight (8)

Classes, as set forth in Article III of the Plan, in addition to Administrative Claims, Professional

Claims, Priority Tax Claims, and Statutory Fees, which are unclassified. Through these discussions, I understand that the Claims or Interests assigned to each particular Class in the Plan are substantially similar to the other Claims or Interests in such Class. I further understand that the separate classification of Claims and Interests against the Debtors is based upon a number of factors, including whether a particular Class comprises Claims or Interests, whether the Claims in a Class are unsecured or secured and the legal or factual nature of those Claims and Interests. The classification scheme is rational, was not implemented for any improper purpose, does not unfairly discriminate between or among the Holders of Claims or Interests. Accordingly, based upon the foregoing, I believe that the Plan satisfies section 1122(a) of the Bankruptcy Code.

2. **The Plan Complies with the Requirements of Section 1123(a) of the Bankruptcy Code.**

11. I have been advised by the Debtors' professionals that the Plan complies with each of the seven requirements of section 1123(a) of the Bankruptcy Code.

a. Section 1123(a)(1) of the Bankruptcy Code. Based upon discussions with the Debtors' professionals and my familiarity with the Plan, I understand that the Plan designates Classes of Claims and Interests as required under section 1123(a)(1) of the Bankruptcy Code.

b. Sections 1123(a)(2)–(4) of the Bankruptcy Code. Based upon discussions with the Debtors' professionals and my familiarity with the Plan, I understand that Article III of the Plan (i) identifies each Class of Claims that is not Impaired under the Plan, and sets forth the treatment of Impaired Claims pursuant to sections 1123(a)(2) and (3) of the Bankruptcy Code, and (ii) provides for the same treatment of each Claim in each respective Class (unless otherwise agreed to by a Holder of a particular Claim or Interest) as required under section 1123(a)(4) of the Bankruptcy Code.

c. Section 1123(a)(5) of the Bankruptcy Code. Based upon discussions with the Debtors' professionals and my familiarity with the Plan, I believe that the Plan, including the documents contained in the Plan Supplement, provides adequate means for implementation, as required by section 1123(a)(5) of the Bankruptcy Code. Through these discussions, I also understand that the Plan provides for: (i) the wind-down and dissolution of the Debtors under the oversight of the Plan Administrator; (ii) the appointment of the Litigation Trustee, the

formation of the Litigation Trust, and the vesting of the Litigation Trust Assets therein; (iii) the sources of consideration for Plan distributions; (iv) the treatment of Executory Contracts; (v) the treatment of Claims and Interests; (vi) the preservation and vesting of Retained Causes of Action in the Litigation Trust; and (vii) the taking of all necessary and appropriate actions by the Debtors to effectuate the transactions under and in connection with the Plan.

d.    Section 1123(a)(6) of the Bankruptcy Code.    Based upon discussions with the Debtors' professionals and my familiarity with the Plan, it is my understanding that the Plan does not provide for the issuance of non-voting securities, and the Debtors are being dissolved on or after the Effective Date as provided for in the Plan.  In light of this, section 1123(a)(6) of the Bankruptcy Code is not applicable.

e.    Section 1123(a)(7) of the Bankruptcy Code.    Based upon discussions with the Debtors' professionals and my familiarity with the Plan and Plan Supplement, I understand that, as of the Effective Date, the existing board of directors shall be deemed to have resigned and the officers of the Debtors terminated without any further action required.  It is my understanding from these discussions that from and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Estates.  In accordance with the Plan, the Debtors have identified in the Plan Supplement the identity and nature of the compensation of the Plan Administrator.  Based upon discussions with the Debtors' professionals, I believe that any provisions of the Plan governing the manner of selection of any trustee or fiduciary under the Plan are consistent with the interests of creditors and equity security holders and with public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

**3.    The Plan Complies with Section 1123(b) of the Bankruptcy Code.**

12.    I have been advised by the Debtors' professionals that section 1123(b) of the

Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan,

and, as discussed in more detail below, I believe that the Plan is consistent with section 1123(b).

a.    Section 1123(b)(1) of the Bankruptcy Code.  It is my understanding, based on discussions with the Debtors' professionals and my familiarity with the Plan, that as permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan provides that (i) Classes 1 and 2 are Unimpaired, (ii) Classes 3, 4, 7 and 8 are Impaired, and (iii) Classes 5 and 6 are either Unimpaired or Impaired.

b.    Section 1123(b)(2) of the Bankruptcy Code.  Based on discussions with the Debtors' professionals and my familiarity with the Plan, I understand that Article V of the Plan provides that all Executory Contracts not previously assumed,

assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than any Executory Contract that: (a) is designated as a Transferred Contract under the Asset Purchase Agreement; (b) is designated as an Assumed Contract or Assumed and Assigned Contract on the Schedule of Assumed Executory Contracts or a Transferred Contract on a TSA Contract Notice or a Supplemental TSA Contract Notice (each as defined in the TSA Assumption Order); (c) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court, including the Bidding Procedures Order, Sale Order and TSA Assumption Order, or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (d) is the subject of a motion to assume pending as of the Effective Date; (e) is otherwise assumed pursuant to the terms of the Plan; (f) is an Insurance Policy; or (g) is subject to an executed agreement by and between the counterparty to such Executory Contract, the Debtors, and Do It Best. Through discussions with the Debtors' professionals, I also understand that the Debtors believe that rejecting Executory Contracts through the mechanism set forth in the Plan is in the best interests of their estates because the Plan provides that the Debtors' estates will be wound down after the Effective Date. Therefore, I believe the Debtors exercised sound business judgment in determining to reject the Executory Contracts under the Plan. Accordingly, I believe the Plan satisfies sections 1123(b)(2) and 365(a) of the Bankruptcy Code.

c.      Section 1123(b)(3) of the Bankruptcy Code. I understand that the Plan contains certain release, exculpation, and injunction provisions, which are supported by the Debtors.

i.      Debtor Releases. Section 8.2 of the Plan (the "Debtor Releases") provides for certain releases of Causes of Action held by the Debtors against the Released Parties. The Debtor Releases are limited and do not include any post-Effective Date obligation or liability of any Person or Entity under the Plan, the Asset Purchase Agreement, the Sale Order, the Cash Collateral Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

ii.      Many of the Released Parties, including the officers and directors of the Debtors, have served the Debtors during the Chapter 11 Cases, and I believe that they have worked tirelessly to, among other things, maximize value for the benefit of all stakeholders by: (a) assisting the Debtors' professionals in the preparation of sale materials pre- and post-petition; (b) responding to due diligence inquiries; (c) assisting in the implementation of a successful sale of the Debtors' assets, including through an abbreviated closing period that required workloads at hours outside of normal working hours; (d) assisting in the maximization of value in the sale through support in negotiations; (e) active participation in

negotiations with the Debtors' lenders and other creditors; (f) active engagement in numerous meetings, negotiations, and implementations in the Chapter 11 Cases that are outside of stated officer roles or duties in an effort to minimize professional cost and maximize value for the Estates; and (g) forbearance from new and additional professional and financial opportunities through the closing of the Sale.

iii.    Based on my participation in the Plan process, consideration of the information provided to me by the Debtors' legal and other advisors, and overall professional experience, I believe that the Debtor Releases are essential components of the Plan, constitute a sound exercise of the Debtors' business judgment, and are supported by fair, sufficient, and adequate consideration.  I believe the Debtor Releases are appropriate and necessary conditions to implementing the Plan and creating a Litigation Trust that can maximize the distributions contemplated under the Plan.

iv.    <u>Releases by Holders of Claims</u>.  Section 8.3 of the Plan provides for release of each Released Party from any and all Causes of Action, as further provided in the Plan (the "<u>Releasing Party Release</u>").  Each Holder of Claims entitled to vote on the Plan had an option to grant the Releasing Party Release through (a) in the case of Holders of Claims who voted to reject or abstained from voting on the Plan, by affirmatively selecting the "opt-in" feature on the ballot, or (b) in the case of Holders of Claims  who voted to accept the Plan, by not affirmatively selecting the "opt-out" feature on the ballot.  The Releasing Party Releases are limited and do not include (x) any post-Effective Date obligation or liability of any Entity under the Plan, the Asset Purchase Agreement, the Sale Order, the Cash Collateral Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (y) any asbestos claims or personal injury claims, in each case that have been or may be asserted against insurance or non-debtor third parties, unless such non-debtor third parties are Released Parties.  It is my understanding that the Releasing Party Release is wholly consensual and consistent with established Third Circuit law.

v.    <u>Exculpation</u>.    Section 8.4 of the Plan provides for exculpation of the Exculpated Parties, except in cases involving fraud, willful misconduct, or gross negligence by such parties (as determined by a Final Order from a Court of competent jurisdiction).  Based upon my (a) review of the Plan, (b) personal knowledge of the circumstances leading up to its development, (c) involvement in the Chapter 11 Cases, and (d) discussions with the Debtors' legal advisors, I believe that the exculpation provisions are proper and an integral part of the Plan.  The exculpation is also important in that it removes the threat of certain litigation against the Exculpated Parties, who have played critical roles in, and made contributions to the Chapter 11 Cases, and that such contributions represent

good and valuable consideration to the Debtors, their Estates, and their creditors.

      vi.    <u>Injunction</u>. Section 8.5 of the Plan implements an injunction to protect property distributed under the Plan and to preserve and enforce the Plan's release and exculpation provisions. As set forth more fully therein, it permanently enjoins entities from taking certain actions against the Debtors, the Post-Effective Date Debtors, the Litigation Trust, the Released Parties, or the Exculpated Parties with respect to matters that are released or exculpated under the Plan. It is my belief that the injunction is narrowly tailored and serves as a necessary and critical component of the Plan, as it protects property distributed under the Plan and ensures that the release and exculpation provisions contained in the Plan can be effectuated.

      d.    <u>Section 1123(b)(5) of the Bankruptcy Code</u>. It is my understanding, based on discussions with the Debtors' professionals and my familiarity with the Plan, that Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of certain Holders of Claims, as permitted by section 1123(b)(5) of the Bankruptcy Code.

      e.    <u>Section 1123(b)(6) of the Bankruptcy Code</u>. Based on discussions with the Debtors' professionals and my familiarity with the Plan, I understand that Section 8 of the Plan contains the release, exculpation, and injunctive provisions described above and that such provisions are not inconsistent with the applicable provisions of the Bankruptcy Code and are essential to an orderly liquidation.

**B.    The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code.**

13.    To the best of my knowledge and belief, based upon discussions with the Debtors' advisors, I believe that, as required by section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code, regarding disclosure and plan solicitation.

**C.    The Debtors Proposed the Plan in Good Faith in Compliance with Section 1129(a)(3) of the Bankruptcy Code.**

14.    Based on discussions with the Debtors' professionals and my involvement in the Chapter 11 Cases, I believe the Debtors proposed the Plan in good faith and not by any means forbidden by law, with the legitimate and honest purposes of maximizing the value of the Debtors' Estates, effectuating a comprehensive and feasible liquidation, and maximizing the recoveries of

all creditor constituencies.  It is my understanding that the Plan facilitates transactions that will

provide greater value to the Debtors' stakeholders compared to the alternative of a chapter 7

liquidation.  Furthermore, I understand that no party in interest has objected to the Plan on the

basis that it was proposed in bad faith.  Finally, based on my discussions with the Debtors'

professionals, it is my understanding that none of the transactions contemplated by the Plan are

forbidden by law.  Based upon the foregoing, I believe the Plan represents the best result the

Debtors could have achieved under the circumstances, with the best possible outcome for all

interested parties, and is consistent with the purposes of the Bankruptcy Code, and therefore, the

Plan has been proposed in good faith and satisfies section 1129(a)(3) of the Bankruptcy Code.

**D.     The Plan Complies with Section 1129(a)(4) of the Bankruptcy Code.**

15.     Based upon discussions with the Debtors' professionals and my familiarity with the

Plan, I understand that, under Section 2.2 of the Plan, all Professionals requesting compensation

pursuant to the Bankruptcy Code for services rendered or reimbursement of costs, expenses or

other charges incurred before the Confirmation Date must file a fee application for final allowance

of their Professional Claims no later than forty-five (45) days after the Effective Date.  Any

objections to any Professional Claim must be filed and served no later than twenty-one (21) days

after the Filing of the Professional Claim.  Any such objections that are not consensually resolved

may be set for hearing after notice.  Accordingly, I believe that the Plan satisfies section 1129(a)(4)

of the Bankruptcy Code.

**E.     The Debtors Have Complied with Section 1129(a)(5) of the Bankruptcy Code.**

16.     The Plan Supplement identified that Michael Goldberg would serve as the

Litigation Trustee and the Plan Administrator, commencing on the Effective Date.  Mr. Goldberg

33026162.2

was selected by the Debtors, following consultation with the Committee. I believe that Mr. Goldberg's restructuring experience will prove helpful in the disposition and distribution of the Litigation Trust Assets and the wind-down of the Debtors' Estates. I believe that the appointment of Mr. Goldberg is therefore in the best interests of creditors and consistent with public policy. In addition, the Plan provides that M3 will continue to reconcile, liquidate and pay Administrative Claims following the Effective Date. I believe that M3's deep institutional knowledge of the Debtors' operations from its work leading up to and during the Chapter 11 Cases, its familiarity with the Administrative Claims subject to reconciliation and its direct participation in negotiations with creditors will facilitate a value maximizing resolution of such claims and avoid the expenses and delays associated with transitioning the work to a different firm. Accordingly, I believe the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.    The Plan Does Not Contain Any Rate Changes Subject to Section 1129(a)(6) of the Bankruptcy Code.**

17.    The Plan does not provide for any rate changes by the Debtors. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

**G.    The Plan Is in the Best Interests of All Creditors and Equity Holders Under 1129(a)(7) of the Bankruptcy Code.**

18.    I have been advised by the Debtors' professionals that the Bankruptcy Code requires that, with respect to each Impaired Class of Claims and Interests, each Holder of such Claim or Interest must either (a) accept the Plan or (b) receive or retain property under the Plan of a value that is not less than the amount that such Holder would receive or retain in a chapter 7 liquidation. For the purposes of determining whether the Plan meets this requirement, the Debtors, with the assistance of their legal and financial advisors, including M3, prepared the liquidation

analysis attached to the Disclosure Statement as Exhibit B (the "<u>Liquidation Analysis</u>"), which I have reviewed and hereby incorporate by reference.

19.     The Liquidation Analysis compares the projected range of recoveries that would result from the liquidation of the Debtors in a hypothetical case under chapter 7 of the Bankruptcy Code with the estimated distributions to holders of allowed Claims and Interests under the Plan. As illustrated in the Liquidation Analysis, I believe that the Plan satisfies section 1129(a)(7) of the Bankruptcy Code, because—due to higher anticipated costs to the estates in a hypothetical chapter 7 case as compared to under the Plan in these Chapter 11 Cases—no holders of impaired Claims and Interests will receive under the Plan property with a value as of the Effective Date that is less than the value such holders would receive in a liquidation under chapter 7.  Moreover, I believe it is notable that the Committee, who represents the interests of Holders of General Unsecured Claims, supports the Plan and urged Holders of General Unsecured Claims to vote in favor of the Plan in recognition of its superior potential recovery to a chapter 7 liquidation.

20.     Through discussions with the Debtors' professionals, I believe that the assumptions, methodologies, and estimates in the Liquidation Analysis are reasonable and appropriate in the context of the Chapter 11 Cases.  In light of the foregoing, it is my belief that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

**H.     The Plan Has Been Accepted by Impaired Voting Classes and Complies with Section 1129(a)(8) of the Bankruptcy Code.**

21.     Based on my discussions with Debtors' legal advisors, I understand that Classes 1 and 2 are presumed to accept the Plan, and Classes 3 and 4 voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.  I understand that Classes 7 and 8 are Impaired, but are not entitled to vote on the Plan, and are deemed to reject the Plan.  I further understand that Classes 5 and 6 are either presumed to accept the Plan or deemed to reject the Plan.  With respect to such

Classes, the Debtors are seeking to confirm the Plan under section 1129(b) of the Bankruptcy Code, as set forth below.

    **I.**      **The Plan Provides for Payment in Full of All Allowed Priority Claims and Complies with Section 1129(a)(9) of the Bankruptcy Code.**

    22.    Based upon discussions with the Debtors' professionals and my familiarity with the Plan, I understand that, except to the extent that the holder of a particular Allowed Claim has agreed to a different treatment of such Claim, Article II of the Plan provides for the treatment required by section 1129(a)(9) of the Bankruptcy Code for each of the various claims specified in sections 507(a)(1)–(8) of the Bankruptcy Code.

    **J.**      **The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code.**

    23.    Based upon discussions with the Debtors' professionals, it is my understanding that the two Impaired Class—Class 3 (Prepetition Lender Claims) and Class 4 (General Unsecured Claims)—voted to accept the Plan in the requisite number and amount, without including any acceptance of the Plan by an insider. Accordingly, based upon the foregoing, it is my belief that the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

    **K.**      **The Plan Is Feasible and Satisfies Section 1129(a)(11) of the Bankruptcy Code.**

    24.    I am advised by the Debtors' professionals that section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan is feasible prior to confirmation, *i.e.*, it is not likely to be followed by liquidation or the need for further financial reorganization unless such liquidation or reorganization is proposed in the plan. I understand that, in the context of the Plan, which contemplates the wind down of the Post-Effective Date Debtors, the feasibility test requires that the Bankruptcy Court determine whether the Plan may be implemented and has a reasonable likelihood of success.

25.     It is my belief that the Plan is feasible in that, at a minimum, there are adequate means of implementation.  The Plan provides for reasonable procedures and funding, by which, the Debtors, the Litigation Trustee, and the Plan Administrator may make the necessary distributions under the Plan.  Therefore, I believe the Plan is feasible because it: (a) provides the financial wherewithal necessary to implement the Plan; and (b) offers reasonable assurance that the Plan is workable and has a reasonable likelihood of success.  In addition, I believe that the successful performance of the Plan's terms is not dependent or contingent upon any future, uncertain event.  Accordingly, based upon the foregoing, it is my belief that the Plan satisfies the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

**L.      Section 1129(a)(12) of the Bankruptcy Code Is Satisfied.**

26.     I understand that Section 11.2 of the Plan provides for the payment of fees under 28 U.S.C. § 1930, and that such fees due and owing to the U.S. Trustee shall be paid on the Effective Date.  After the Effective Date, such fees shall be paid when due and payable until each applicable Chapter 11 Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  Accordingly, I believe that the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

**M.      Section 1129(a)(13) of the Bankruptcy Code Is Satisfied.**

27.     I understand that section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.

28.     As provided more fully in the Disclosure Statement, the Debtors believe that most of their retiree plans (the "Retiree Plans") are unvested and therefore unilaterally terminable in the Debtors' discretion after the Effective Date.  Certain of the Retiree Plans, however, may be vested.

I understand that such plans will need to be administered through a process to modify such benefits pursuant to section 1114(f) of the Bankruptcy Code or pursuant to applicable non-bankruptcy law following the Effective Date.

29.    To that end, on February 14, 2025, the Debtors filed the *Debtors' Motion for Entry of An Order (a) Appointing James P. Carroll as the Authorized Representative of Retirees or Their Beneficiaries Under 11 U.S.C. §§ 105(a) and 1114 and (b) Granting Related Relief* [Docket No. 921], which was approved by the Court on February 26, 2025 [Docket No. 955] (the "Retiree Fiduciary Order").  Pursuant to the Retiree Fiduciary Order, the Court appointed James P. Carroll as the Debtors' third-party fiduciary pursuant to sections 105 and 1114 of the Bankruptcy Code (the "Fiduciary") to represent the interests of the beneficiaries under the Retiree Plans.

30.    Following his appointment, the Debtors and the Fiduciary negotiated a settlement (the "Retiree Settlement") in respect of the Retiree Plans for the benefit of the Debtors' retirees and their eligible beneficiaries (the "Retiree Parties").  The terms of the Retiree Settlement are more fully described in the Confirmation Brief, but the Retiree Settlement generally provides that (a) the Debtors will establish and fund a reserve, in trust, with approximately $743,000.00 (the "Settlement Amount"), which amount shall be distributed to eligible Retiree Parties in full satisfaction and settlement of all future benefit entitlements due to eligible Retiree Parties under the vested Retiree Plans (the "Ongoing Retiree Plans") and (b) provide for the termination of all other Retiree Plans following the Effective Date (the "Non-Ongoing Retiree Plans").

31.    The Retiree Settlement is incorporated in the Plan at Section 4.14 and attached to the Plan as Exhibit B, and the Debtors are seeking approval of the Retiree Settlement in connection with confirmation of the Plan.  As the Retiree Settlement provides for the treatment and resolution

of all of the Debtors' obligations under the Retiree Plans, accordingly, I believe that the Plan

complies with section 1129(a)(13) of the Bankruptcy Code.

**N.      Sections 1129(a)(14)–1129(a)(16) of the Bankruptcy Code Are Inapplicable.**

32.      Based upon discussions with the Debtors' professionals, it is my understanding that

sections 1129(a)(14)–1129(a)(16) are inapplicable to the Plan.

**O.      The Plan Satisfies the "Cramdown" Requirements for Non-Accepting Classes Under Section 1129(b) of the Bankruptcy Code.**

33.      Through discussions with the Debtors' advisors, I understand that, pursuant to

section 1129(b) of the Bankruptcy Code, a plan may be confirmed notwithstanding the rejection

by a class of claims or equity interests (*i.e.*, "crammed down") so long as the plan satisfies all the

requirements of section 1129(a) of the Bankruptcy Code and the plan does not discriminate

unfairly and is fair and equitable as to such non-accepting class or classes.  For the reasons

discussed below, I believe that the Plan may be confirmed as to Classes 5, 6, 7, and 8, which are

(a) deemed to reject the Plan, or (b) deemed to reject or presumed to accept the Plan

(each, a "Rejecting Class" and together, the "Rejecting Classes") pursuant to the "cramdown"

provisions of section 1129(b) of the Bankruptcy Code.

**1.      The Plan Does Not Discriminate Unfairly.**

34.      It is my belief, after consultation with the Debtors' professionals, that the Plan does

not discriminate unfairly against any Class of Claims or Interests.  As discussed above, each

Rejecting Class is classified separately because it is legally distinct from other Classes, and all

Claims of a similar legal nature are classified together and afforded the same treatment under the

Plan.  I understand the Subordinated Claims shall be cancelled, released, and extinguished whereby

Holders of Subordinated Claims shall not receive any distribution under the Plan on account of

such Claim.  Similarly, Holders of Interests in the Debtors shall not receive any distributions under the Plan on account of such Interest as the Interests will be cancelled, released, and extinguished on the Effective Date.  I further understand that the Intercompany Claims and Intercompany Interests shall either be reinstated or cancelled, released, and extinguished.  To the extent such Intercompany Claims and Intercompany Interests are cancelled, released, and extinguished, such Holders of Claims and Interests shall not receive any distribution under the Plan on account of such Claims and Interests.

35.     Given the distinctly different legal and economic character from the other Claims, it is my belief, after consultation with the Debtors' professionals, that the Subordinated Claims and Interests and the Intercompany Claims and Interests are not similarly situated to any other Claims, or to the extent that they are, the same treatment or different treatment that does not unfairly discriminate against any Impaired Classes of Claims or Interests is being provided.  I thus believe that the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code.

**2.     The Plan Is Fair and Equitable.**

36.     I have been advised that sections 1129(b)(2)(B) and 1129(b)(2)(C) of the Bankruptcy Code provide that a plan is fair and equitable with respect to a class of impaired dissenting unsecured claims or equity interests if it provides that any holder of a claim or equity interest in a class junior to such dissenting class of claims or equity interests will not receive or retain any property under the plan on account of such junior claim or equity interest.  It is my understanding, after consultation with the Debtors' professionals, that no Holder of a Claim or Interest in a Class junior to any of the Rejecting Classes will receive or retain any property under the Plan on account of such junior Claim or Interest.  It is my further understanding that no Holder

of a Claim or Interest in a Class senior to Holders in the Rejecting Classes will receive or retain any property under the Plan in an amount in excess of such Holder's Claims or Interests.  For these reasons, I believe the Plan is "fair and equitable" and, therefore, consistent with the requirements of section 1129(b) of the Bankruptcy Code.

**P.  The Debtors Complied with Section 1129(d) of the Bankruptcy Code.**

37.     Through discussions with the Debtors' professionals and my familiarity with the Plan, I understand that the purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, and no Governmental Unit or any other entity has objected to the Plan on these grounds.  Therefore, I believe the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**Q.  The Retiree Settlement Should Be Approved**

38.     I understand from my advisors that the Bankruptcy Code authorizes the Debtors to settle or adjust any claim or interest belonging to the debtor or to the estate pursuant to a plan, and that such plan settlements implemented through Bankruptcy Code section 1123 are evaluated under Bankruptcy Rule 9019, which provides for Court approval of compromises and settlements. I further understand that compromises are favored in bankruptcy, and will be approved if the compromise is fair, reasonable, and in the best interest of the estates.  I further understand that section 1114 of the Bankruptcy Code, like Bankruptcy Rule 9019, is designed to encourage settlements.

39.     I believe that the Retiree Settlement satisfies the standards for approval pursuant to Bankruptcy Rule 9019 and Bankruptcy Code section 1114, and that the Court should therefore approve the Settlement as part of the Plan and the Confirmation Order.  The Retiree Settlement resolves uncertain claims, as it provides for a process under which parties that the Debtors believe

may be entitled to benefits under the Ongoing Retiree Benefits can be verified and submit to a claims resolution procedure to administer their claims in an efficient manner without the need for litigation to determine those claims.

40.      The Retiree Settlement further reflects the Debtors' and the Fiduciary's collective agreement that any Retiree Parties would face difficulty in collecting in full on the settled claims, given the need to litigate the amount of the entitlement, which would require sophisticated and detailed evaluation of the net present value determinations used to come up with the settlement claim amounts, as well as the estate's inability to satisfy such claims in full.  To that end, such litigation would be complex, costly, and time-consuming for the aforementioned reasons.

41.      Finally, the Retiree Settlement serves the paramount interests of creditors, the estates, and all other interested parties.  Here, the Debtors reached a deal with the Fiduciary, as the authorized representative of the Retiree Parties, pursuant to Bankruptcy Code section 1114 after extensive, good faith negotiations concerning the Debtors' settlement proposal.  I believe that absent an agreement, the Debtors will not be able to satisfy go-forward retiree benefits.  In that case, the Debtors would not be able to confirm a plan, requiring either termination of the Retiree Plans pursuant to section 1114(g) or risking administrative insolvency and conversion to chapter 7—a downside scenario that would result in protracted litigation and the possibility of no recovery at all for Retiree Parties (and potentially many more creditors).  Accordingly, the Court should approve the Retiree Settlement because the Debtors have demonstrated it is in the best interest of the estates and well above the lowest point in the range of reasonableness.

**R.      Modifications to the Plan Should Be Permitted Without the Need for Further Solicitation of Votes on the Plan.**

42.      I have been advised that section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation so long as such modified plan

meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.  I have also been advised that Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who previously accepted the plan, if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor or interest of any equity security holder.

43.    Since the commencement of solicitation, the Debtors made minor revisions to the Plan in response to comments from the Office of the United States Trustee for the District of Delaware, the Prepetition Lenders, and counsel to certain Insurers.  None of the modifications adversely affect the treatment of any party-in-interest without their consent.  Accordingly, I believe no further solicitation is required.

## III.    The Exercise of the Debtors' Business Judgment in Formulating the Plan Is Appropriate.

44.    From the outset of the Chapter 11 Cases, the Debtors, in conjunction with their advisors, have engaged with interested parties to reach the best outcome for the Debtors' Estates and their creditor constituencies.  The Debtors and their advisors have worked diligently to maximize value for the Estates, including by (a) successfully consummating the Sale to Do it Best Corp., (b) proposing the Plan to distribute the remaining sale proceeds and liquidate the Debtors' remaining assets, including through the Litigation Trust for the benefit of the Debtors' creditors, (c) proposing the Plan to provide a mechanism to transition the business and wind-down the Debtors' affairs following the transition and the distribution of the Estate's remaining assets, and (d) obtaining the requisite support from creditors for the Plan to be confirmed.  These efforts have resulted in the Plan that provides for the efficient and prompt distribution of the Estates' assets to the Debtors' creditor constituencies.  The Plan is the product of diligence and negotiations and

provides an efficient mechanism to distribute the Debtors' assets to their creditors. I therefore believe that the Plan implements a value-maximizing liquidation that will inure to the benefit of the Debtors and all stakeholders.

**IV.      Cause Exists to Waive the Stay of the Confirmation Order.**

45.      I have been advised that Bankruptcy Rule 3020(e) generally provides a 14-day stay of the effectiveness of an order confirming a chapter 11 plan, unless the Bankruptcy Court orders otherwise. I understand a stay of such order will delay the Debtors' implementation of the Plan, extending the time that the Debtors must remain in chapter 11. I believe that extending the length of time that the Debtors remain in chapter 11 would only serve to increase the administrative and professional costs incurred by the Debtors' estates, a cost which the Debtors cannot bear. For all of these reasons, I believe the Bankruptcy Court should grant the Debtors' request to waive the stay imposed by the Bankruptcy Rules, so that the Bankruptcy Court's order confirming the Plan may be effective immediately upon its entry.

**V.      Conclusion.**

46.      In light of the foregoing, and based upon discussions with the Debtors' professionals and my familiarity with the Plan, I believe that: (a) the Disclosure Statement contains "adequate information," satisfies section 1125 of the Bankruptcy Code, and should be approved on a final basis; and (b) the Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and other applicable non-bankruptcy laws as they have been explained to me, and was proposed in good faith.

47.     I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request, as set forth above, that the Disclosure Statement should be approved on a final basis, the Plan should be confirmed and that all of the actions and transactions contemplated by the Plan should be approved.

Dated: March 31, 2025                     _/s/ Nick Weber_____
                                          Nick Weber
                                          M3 Advisory Partners, LP