**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Case No. 24-12337 (KBO) |
| | : | |
| TRUE VALUE COMPANY, L.L.C., et al., | : | Chapter 11 |
| | : | |
| | : | (Jointly Administered) |
| Debtors.[1] | : | |
| | : | Re: Docket No. 1194 |

**OBJECTION TO POST-EFFECTIVE DATE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING THE CLAIMS SUBMISSION DEADLINE FOR PRE-2025 HEALTH PLAN CLAIMS REIMBURSABLE UNDER THE TRUE VALUE COMPANY WELFARE BENEFITS PLAN, (II) AUTHORIZING THE PLAN ADMINISTRATOR TO TERMINATE THE TRUE VALUE COMPANY WELFARE BENEFITS PLAN, AND (III) GRANTING RELATED RELIEF**

United HealthCare Services, Inc. ("United") hereby submits this objection (the "Objection") to the *Post-Effective Date Debtors' Motion for Entry of an Order (I) Establishing the Claims Submission Deadline for Pre-2025 Health Plan Claims Reimbursable Under the True Value Company Welfare Benefits Plan, (II) Authorizing the Plan Administrator to Terminate the True Value Company Welfare Benefits Plan, and (III) Granting Related Relief* [Docket No. 1194] (the "Claims Submission Motion") filed by True Value Company, L.L.C. ("True Value" and together with its affiliated post-effective date co-debtors, the "Debtors").[2]

As more particularly set forth below, United administers the Debtors' self-funded Health Plan (defined below), pursuant to the terms of the parties' ASA (defined below). United objects to the Claims Submission Motion because the relief it seeks (i) violates the unambiguous terms of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their respective tax identification numbers, are as follows: True Value Company, L.L.C. (9896); TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106). The address of the Debtors' corporate headquarters is 8600 W. Bryn Mawr Ave. Chicago, IL 60631.

[2] The Debtors agreed to extend United's time to object to the Claims Submission Motion until May 27, 2025, at 12:00 pm ET.

SG-22038011.2
SG-22328496.5

the ASA, which the Debtors have assumed, (ii) violates the terms of the SPD (as defined herein) that describes the benefits available to the Debtors' employees and their eligible dependents under the Health Plan, (iii) violates federal regulations prohibiting rescissions for a group health plan and requiring that employee benefit plan establish and maintain reasonable procedures for administering claims, and (iv) is impossible for United to operationalize in its claims processing systems and would likely result in prejudice to Participants. To be clear, United does not object to the Debtors seeking to terminate the Health Plan, as long as such termination complies with the requirements for termination under the ASA.

The Claims Submission Motion seeks to set a deadline for the submission of claims under the Health Plan for services rendered prior to January 1, 2025, while claims for services rendered on or after January 1, 2025 through the termination of the Health Plan would not be subject to this deadline. Thus, the relief sought appears to require United to deny claims for services rendered before January 1, 2025 if received after the deadline, while continuing to process and pay allowed claims under the Health Plan for service dates on or after January 1, 2025, without regard to this deadline. This relief is contrary to the terms of the ASA and is an improper attempt to amend its terms by Court order. Moreover, the Debtors' proposed deadline violates the SPD and federal regulations governing employee benefit plans. Finally, the bifurcated claim process contemplated in the Claims Submission Motion will be impossible to implement within United's claims processing systems and likely result in significant prejudice to Participants by exposing them to the full costs incurred by medical providers that do not timely submit a claim to the Health Plan.

In support of this Objection, United states as follows:

I.  **BACKGROUND**

    A.  **The ASA and the SPD**

        i.  **The ASA and Its Terms**

1. United and True Value are parties to that certain Administrative Services Agreement with an effective date of January 1, 2013, bearing contract number 752192, as amended from time to time (the "ASA"), pursuant to which United acts as a third-party administering the self-insured health plan of True Value (the "Health Plan") for the benefit of each Participant.[3] A true and accurate copy of excerpts of the ASA are attached hereto as **Exhibit A**.[4]

2. The ASA defines a "Plan" as the "ERISA[5] plan to which this Agreement applies, but only with respect to those provisions of the plan relating to the Self-Funded[6] health benefits [United is] administering, as described in the Summary Plan Description." (ASA § 1.)

3. The ASA also defines the "Plan Administrator" as the "[c]urrent or succeeding person, committee, partnership, or other entity designated the Plan Administrator as defined by ERISA and who is generally responsible for the [Health] Plan's operation." (*Id.*)

4. In addition to administering claims under the Health Plan, the ASA also provides the Debtors with access to United's network of providers, which the ASA explains are the physicians, medical facilities, and medical professionals that have entered into contracts with

---

[3] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Claims Submission Motion.
[4] While the terms of the entire ASA are confidential and proprietary, certain, relevant non-confidential excerpts are provided herein. While the Debtors should have a copy of the entire ASA, a copy of the ASA can be provided to any party in interest upon entry into an appropriate protective order. United can provide a copy of the entire ASA to the Court for its in camera review.
[5] ERISA is a reference to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq*.
[6] Self-Funded is defined as follows: "True Value, on behalf of the [Health] Plan, have the sole responsibility to pay, and provide funds, to pay for all [Health] Plan benefits. [United] has no liability or responsibility to provide these funds. This is true even if [United or its affiliates] provide stop loss insurance to [True Value]." (ASA, Section 1).

3

Untied to provide services to members at negotiated fees for those services. (*See* ASA § 1 (definitions of "Network" and "Network Provider"); ASA § 4.2.) Although the time frame for submitting a claim is generally provided in the network provider's contract with United, network providers may have up to twelve months from the date of service to submit a claim.

5. The ASA also provides certain provisions relating to any changes that are to be made to the ASA, which provides as follows:

> [The Debtors] must provide [United] with notice of any changes to the [Health] Plan and/or Summary Plan Description within a reasonable period of time prior to the effective date of the change to allow [United] to determine if such change will alter the services [United] provide[s] under this Agreement. Any change in the services to be provided by [United] under this Agreement which would be caused by any aforementioned changes must be mutually agreed to in writing prior to implementation of such change. [United] will notify [the Debtors] if (i) the change increases [United's] cost of providing services under this Agreement or (ii) [United is] reasonably unable to implement or administer the change. If the parties cannot agree to a new fee within (30) thirty days of the notice of the new fee or if [United] notif[ies] [the Debtors] that [United is] unable to reasonably implement or administer the change. [United] shall have no obligation to implement or administer the change, and [the Debtors] may terminate this Agreement upon (60) sixty days written notice.

(ASA § 2.3.)

6. The ASA also provides for certain ERISA compliant claim procedures. Particularly, the ASA provides that United is a "named, ERISA fiduciary under the [Health] Plan with respect to . . . performing initial benefit determinations and [making] payment," and performing fair and impartial review of first and second level internal appeals. (ASA § 5.1.)

    **ii.**    **The SPD and Its Terms**

7. The Summary Plan Description with an effective date of January 1, 2024 (the "<u>SPD</u>") provides the eligibility details, covered services, excluded and limited services, payment of benefits, and a Participant's rights and responsibilities under the Health Plan. A true and

accurate copy of the SPD is attached hereto as **Exhibit B**.

8. Pursuant to the SPD, a Participant has twelve months after a date of service to submit a claim for an out-of-network claim. (SPD, § 9.)

9. Relatedly, the SPD provides the procedures for a Participant to submit a claim to United for processing if a provider does not file that claim. (*Id.*) The SPD also describes the claim denial and appeal process for a Participant and the related deadlines. (*Id.*)

10. The SPD also provides that if the "[Health] Plan is terminated, [Participants] will not have the right to any other Benefits from the [Health] Plan, other than for those claims incurred prior to the date of termination, or as otherwise provided under the [Health] Plan . . . [t]he amount and form of any final benefit you receive will depend on any [Health] Plan document or contract provisions affecting the Plan and Company decisions." (SPD, § 13.)

    **B.**    **The Debtors' Bankruptcy Case, The Employee Benefits Motion, the Plan, the Amended Plan Supplement, and the Claims Submission Motion**

11. On October 14, 2024 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 in this Court. The Debtors' cases are being jointly administered.

12. On the Petition Date, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Employee Obligations and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Employee Benefits Motion") (Docket No. 9) seeking authority to continue the Health Plan in the Debtors' ordinary course of business.

13. As described in the Employee Benefits Motion, the Participant or their authorized representative, which is often a health care provider, submits claims for payment to the applicable third party administrator, which will then process a claim and facilitate payment of an approved claim using the Debtors' funds. (Employee Benefits Motion at ¶¶ 58-61.) Pursuant to the ASA,

5

United serves as a third party administrator for the Debtors' Health Plan.

14. As part of the Employee Benefits Motion, the Debtors sought authority to establish a reserve to satisfy claims arising under the Welfare Benefits Plan, which was called the Self-Insured Reserve. (Employee Benefits Motion at ¶72.) However, the Prepetition Lenders agreed that such funds could be set aside under the Cash Collateral Order. (Claims Submission Motion at ¶8.) Relatedly, as part of the Plan Settlement (as defined in the Plan), the Debtors and the Prepetition Lenders agreed to particular deadlines pursuant to which the Debtors would complete the Post-Effective Date Claims Reconciliation Process (as defined in the Plan) at which point the Debtor would have to remit all funds remaining in the Self-Insured Reserve to the Prepetition Lenders. (*Id.* at ¶ 12; *see also* Plan § 4.13(b)(v).) Currently, this date is August 29, 2025. After this date, the Debtors explain that the funds will no longer be available to pay approved claims under the Health Plan that United is administering.[7] (*See generally* Claims Submission Motion.)

15. Under the Plan and the Plan Supplement (as defined in the Plan), the ASA was assumed by the Debtors and revested in the Post-Effective Date Debtors on the Plan's Effective Date, which was April 25, 2025. (Docket Nos. 1142, pp. 5, 12; 1149).

16. On May 15, 2025, without prior consultation with United, the Debtors filed the Claims Submission Motion, by which they seek to establish certain procedures (i) establishing a deadline of at least thirty days from the date of the court's order granting the Claims Submission Motion (unless the Health Plan provides for an earlier date), by which a Participant must file claims for services incurred under, *inter alia*, the Health Plan prior to January 1, 2025, and (ii) authorizing the Plan Administrator to terminate, *inter alia*, the Health Plan. (*See generally* Claims Submission Motion).

---

[7] Upon information and belief, Do It Best Corp. is funding the claims incurred on and after the closing of the asset sale.

## II. OBJECTION

17. United hereby objects to the Claims Submission Motion to the extent it seeks authority to set an early deadline for the submission of claims under the Health Plan for services incurred prior to January 1, 2025. United objects to this deadline for the following reasons: (i) it violates the ASA's terms (which the Debtors assumed on the Effective Date) and the SPD; (ii) it violates federal regulations prohibiting the rescission of a group health plan whereby the Debtors seek to retroactively and unilaterally change Participant benefits; and (iii) United's claim administration procedures do not allow it to deny claims based on a particular date of service while paying allowed claims with later dates of service.

### A. The Relief Sought in the Claims Submission Motion Violates the Terms of the ASA and the SPD.

18. Under the ASA, which the Debtors assumed with all of its benefits and burdens, United and True Value agreed that United would administer claims submitted in accordance with the terms of the Health Plan and the SPD. Under § 2.3 of the ASA, if the Debtors want to change the terms of the Health Plan or SPD, United must receive notice of such changes within a reasonable time period prior to the effective date of the change to allow United to determine if such change would alter the services provided under the ASA and if so, the change must be mutually agreed upon in writing. Here, other than filing the Claims Submission Motion, the Debtors have not advised United of any proposed change to the Health Plan. The change proposed in the Claims Submission Motion would alter the services provided under the ASA by changing how United is to adjudicate claims under the Health Plan based on the date of service. Upon reviewing the Claims Submission Motion, United has informed the Debtors that it cannot reasonably implement this change. Accordingly, United has no obligation under Section 2.3 of the ASA to implement this change.

19. In addition, this change would be contrary to the Debtor's agreement under the ASA to participate in United's network of providers. (*See* ASA § 4.2.) As noted above, by accessing United's network of providers, the Debtors' Health Plan can benefit from the negotiated rates set forth in United's contracts with network providers, but it also means honoring the time period for those network providers to submit claims to the Health Plan consistent with the terms of the network contracts. As noted above, the deadline to submit claims is set forth in the network contract, but may be as much as twelve months from a date of service. For network provides with the right to submit claims more than six months from the date of service, the Claims Submission Motion would alter unilaterally the time for a network provider to submit a claim to the Health Plan with no notice to such network provider. (*See* Claims Submission Motion ¶ 17 (stating that notice will be provided to Participants and those seeking notice in the bankruptcy case, but not necessarily to any provider that has rendered services to a Participant in 2024).)

20. In short, the Claims Submission Motion seeks to change unilaterally the terms of the ASA in direct violation of § 2.3 of the ASA. There is no basis for this Court to force a material amendment to an assumed executory contract post-confirmation; indeed, it is black letter law that "[i]f [the debtor] accepts the contract [the debtor] accepts it *cum onere.* If [the debtor] receives the benefits [the debtor] must adopt the burdens. [The Debtor] cannot accept one and reject the other. . . . The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement.'" *In re Fleming Companies, Inc.*, 499 F.3d 300, 308 (3d Cir. 2007) (internal citation omitted).

21. In addition to violating the ASA, the Claims Submission Motion also violates the terms of the SPD in two ways: it shortens the time for Participants to submit claims for services rendered by out-of-network providers; and it appears to short-circuit the SPD's appeal process.

22. Section 9 of the SPD provides that a Participant may submit a claim for services rendered by an out-of-network provider within twelve months of the date of service. (SPD, § 9.) Similar to in-network providers discussed above, the Claims Submission Motion essentially seeks to cut in half the period to submit claims for services rendered by a non-network provider under the Health Plan. That is, where a Participant would typically have twelve months to submit a claim, the Claims Submission Motions' proposed deadline would shorten this period down to as few as six months.

23. Section 9 of the SPD also sets forth the appeal process, which United administers under the ASA. (ASA, § 5.1; SPD, § 9.) An appeal can be filed within 180 days of the adverse benefit determination, and once initiated requires an evaluation of a denied claim on a first, and sometimes second level, which must be filed 60 days from receipt of the first appeal determination. (*See* SPD, § 9.) The appeal process is not linear nor does it occur on a definite timeline. Instead, an appeal could be straightforward with all requisite documentation provided for review and proceed in short order. Other times, a review could require additional requests for information to substantiate a claim that could be time consuming or even require resubmission of a claim. In sum, the time frame is variable for completing the appeal process.

24. Here, the Claims Submission Motion is silent as to its impact on the appeal process, but certainly could be construed as cutting it off prior to completion and thereby not allow a Participant to exhaust all appeal rights under the ASA.

    **B.**    **The Relief Sought in the Claims Submission Motion Violates Federal Regulations Governing Group Health Plans.**

25. The relief sought in the Claims Submission Motion also violates federal regulations prohibiting retroactive cancellation of benefits under a health plan and as well as ERISA's minimum requirements for procedures pertaining to benefit plan claims.

26. 45 C.F.R. § 147.128 provides the rules prohibiting rescissions for a self-funded plan sponsor for group or individual coverage, such as the Health Plan. Specifically, the rule provides, in relevant part, as follows:

> (1) A group health plan, or a health insurance issuer offering group or individual health insurance coverage, must not rescind coverage under the plan, or under the policy, certificate, or contract of insurance, with respect to an individual (including a group to which the individual belongs or family coverage in which the individual is included) once the individual is covered under the plan or coverage, unless the individual (or a person seeking coverage on behalf of the individual) performs an act, practice, or omission that constitutes fraud, or makes an intentional misrepresentation of material fact, as prohibited by the terms of the plan or coverage. A group health plan, or a health insurance issuer offering group or individual health insurance coverage, must provide at least 30 days advance written notice to each participant (in the individual market, primary subscriber) who would be affected before coverage may be rescinded under this paragraph (a)(1), regardless of, in the case of group coverage, whether the coverage is insured or self-insured, or whether the rescission applies to an entire group or only to an individual within the group. (The rules of this paragraph (a)(1) apply regardless of any contestability period that may otherwise apply.)
>
> (2) For purposes of this section, a rescission is a cancellation or discontinuance of coverage that has retroactive effect. For example, a cancellation that treats a policy as void from the time of the individual's or group's enrollment is a rescission. As another example, a cancellation that voids benefits paid up to a year before the cancellation is also a rescission for this purpose. A cancellation or discontinuance of coverage is not a rescission if —
>
> (i) The cancellation or discontinuance of coverage has only a prospective effect . . .

27. The Claims Submission Motion's relief violates the rule set forth in 45 C.F.R. § 147.128. Specifically, the Claims Submission Motion seeks to eliminate coverage for some Participants based purely upon the date of service (pre-January 1, 2025) and not on any facts for which a rescission or denial of coverage might be allowed by § 147.128, such as fraud or intentional misrepresentation of a material fact. Thus, the relief sought would violate the federal

regulatory regime intended to protect the Participants from having their entitlement to coverage rescinded.

28. Turning next to ERISA's regulations, 29 C.F.R. § 2560.503-1 provides certain minimum requirements for the procedures to determine benefits under an employee benefit plan. In particular, employee benefit plans must "establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations . . . ." 29 C.F.R. § 2560.503-1(b). Reasonable procedures must meet certain minimum requirements, including that they are not administered in a way "that unduly inhibits or hampers the initiation or process of claims for benefits" and that benefit determinations are made consistent with the governing plan documents and applied consistently with respect to similarly situated claimants. 29 C.F.R. § 2560.503-1(b)(3), (5).

29. Here, the Claims Submission Motion runs afoul of ERISA's reasonable procedures minimum standards because by shortening the period for Participants to submit certain claims under the Health Plan, these Participants are being unduly inhibited and hampered in submitting a claim for benefits. Moreover, the relief sought would require the treatment of certain claims contrary to the terms of the SPD (as described above) and in a manner that is inconsistent across similarly situated Participants (*i.e.*, a Participant with a claim for a date of service on December 31, 2024, and one with a claim for a date of service on January 1, 2025).

**C.    The Relief Sought in the Claims Submission Motion Would Be Impossible for United to Implement and Likely Result in Prejudice to Participants.**

30. Putting aside the fact that the Claims Submission Motion seeks to unilaterally amend the ASA and SPD, and violates federal regulations, it simply cannot be implemented. United's claims processing systems allow for the adjudication of claims until a health plan is terminated, and then claims with dates of service prior to the termination are still adjudicated until

the end of the run-out period. United's systems are not set up to deny some claims with a specific date of service while adjudicating and paying other claims with a later date of service. Indeed, such an aberrant claim administration process would be at odds with the terms of the Health Plan, including the SPD, as well as federal law.

31. Finally, the Claims Submission Motion will likely expose Participants to significant liability to the extent his or her providers do not timely submit claims by the established deadline. If this were to occur, United would deny the claim under the Health Plan, which would allow the network or non-network provider to bill the Participant directly at the full charges for the associated service, notwithstanding the fact that the Participant was covered by the Health Plan when the service was rendered and paid his or her share of the costs of the Health Plan through payroll withholding. (*See* Employee Benefits Motion ¶ 60 (discussing employee share of the costs of the Health Plan).) The only way to avoid this prejudice is not to set shortened deadlines for claims submission and for the Health Plan to be properly terminated with a run-out of claims completed in a manner consistent with the terms of the ASA.

### III. Conclusion

United respectfully requests that the Court enter an order (i) denying the Claims Submission Motion to the extent it seeks to set an earlier deadline for the submission of claims for particular dates of services, and (ii) granting such further relief as the Court deems appropriate.

May 27, 2025

By: /s/ Alessandra Glorioso
Alessandra Glorioso, Esq. (DE Bar No. 5757)
Eric Lopez Schnabel (DE Bar No. 3672)
Dorsey & Whitney (Delaware) LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Telephone: (302) 425-7166
Email: glorioso.alessandra@dorsey.com
schnabel.eric@dorsey.com

- and -

> Eric S. Goldstein, Esq.
> Anthony R. Scarcella, Esq.
> Shipman & Goodwin LLP
> One Constitution Plaza
> Hartford, CT 06103-1919
> Telephone: (860) 251-5000
> Facsimile:  (860) 251-5218
> egoldstein@goodwin.com
> ascarcella@goodwin.com
>
> Jessica M. Signor, Esq.
> 400 Atlantic Street, 4th Floor
> Stamford, CT 06901-3512
> Telephone: (203) 324-8138
> Facsimile: (203) 324-8199
> jsignor@goodwin.com
>
> *Counsel to United Healthcare Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, a copy of foregoing was filed electronically and a notice of this filing sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System. In addition, a copy of the foregoing was served on the parties listed below by the method indicated below.

| **VIA FIRST CLASS U.S. MAIL** | **VIA EMAIL** |
|---|---|
| True Value Company, L.L.C.<br>8600 West Bryn Mawr Ave.<br>Chicago, IL, 60631<br>Attn: Susan Radde, Esq.<br>(susan.radde@truevalue.com)<br>*The Debtor* | Skadden, Arps, Slate, Meagher & Flom LLP<br>320 S. Canal St.<br>Chicago, IL 60606<br>Attn: Ron Meisler, Esq.<br>(ron.meisler@skadden.com)<br>Jennifer Madden, Esq.<br>(jennifer.madden@skadden.com))<br><br>Skadden, Arps, Slate, Meagher & Flom LLP<br>One Manhattan West,<br>395 9th Ave.<br>New York, NY 10001<br>Attn: Evan Hill, Esq.<br>(evan.hill@skadden.com)<br>Moshe Jacob, Esq.<br>(moshe.jacob@skadden.com)<br><br>Skadden, Arps, Slate, Meagher & Flom LLP<br>920 North King Street<br>Wilmington, DE 19801<br>Attn: Joseph O. Larkin, Esq.<br>(joseph.larkin@skadden.com)<br><br>-and-<br><br>Glenn Agre Bergman & Fuentes LLP<br>1185 Avenue of the Americas, 22nd Floor,<br>New York, NY 10036<br>Attn: Andrew K. Glenn, Esq.<br>(aglenn@glennagre.com)<br>Malak S. Doss, Esq.<br>(mdoss@glennagre.com)<br><br>-and- |

|  | Young Conaway Stargatt & Taylor, LLP<br>1000 North King Street<br>Wilmington, DE 19801<br>Attn: Edmon L. Morton, Esq. (emorton@ycst.com)<br>Timothy R. Powell, Esq. (tpowell@ycst.com)<br><br>*Counsel to the Debtors* |
|---|---|
| **VIA EMAIL**<br>Otterbourg P.C.<br>230 Park Avenue<br>New York, NY 10169<br>Attn: Daniel Fiorillo, Esq. (dfiorillo@otterbourg.com)<br><br>*Counsel to the Prepetition Lenders* | **VIA EMAIL**<br>Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, DE 19899<br>Attn: Bradford J. Sandler (bsandler@pszjlaw.com)<br><br>*Counsel to the Creditors Committee* |
| **VIA EMAIL**<br>Taft Stettinius & Hollister LLP<br>425 Walnut Street, Suite 1800<br>Cincinnati, OH 45202<br>Attn: W. Timothy Miller, Esq. (miller@taftlaw.com)<br><br>*Counsel to the Purchaser* | **VIA EMAIL**<br>United States Trustee for the District of Delaware<br>844 King Street, Suite 2207<br>Wilmington, DE 19801<br>Attn: Benjaman A. Hackman, Esq. (benjamin.a.hackman@usdoj.gov) |

/s/ Alessandra Glorioso
Alessandra Glorioso (DE Bar No. 5757)