IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> **TRUE VALUE COMPANY, L.L.C.,** <br><br> Debtor.[1] | Chapter 11 <br><br> Case No. 24-12337 (KBO) <br><br> Ref. Docket Nos. 1237, 1239, 1348, 1349, 1388, 1390, 1463, 1464, 1467 & 1468 |

**PLAN ADMINISTRATOR'S OMNIBUS REPLY IN SUPPORT OF THE
PLAN ADMINISTRATOR'S OMNIBUS OBJECTIONS TO CLAIMS**

Michael I. Goldberg, in his sole capacity as the plan administrator (the "Plan Administrator") for the above-captioned post-effective date debtors (the "Debtors"), hereby files this omnibus reply (this "Omnibus Reply") (a) in support of the *Plan Administrator's Thirteenth Omnibus Objection to Claims (Non-Substantive)* [Docket No. 1388] (the "13th Omnibus Objection") and *Plan Administrator's Fourteenth Omnibus Objection to Claims (Substantive)* [Docket No. 1390] (the "14th Omnibus Objection," and together with the 13th Omnibus Objection, the "Objections"),[2] and (b) in reply to the formal responses [Docket Nos. 1463, 1464, 1467 & 1468] and informal responses (collectively, the "Responses") received, and/or filed, by or on behalf of the respondents (collectively, the "Respondents") to the Objections to various claims filed by the Respondents (collectively, the "Claims"). In support of this Omnibus Reply, the Plan Administrator (i) relies upon and incorporates by reference (1) the *Plan Administrator's Omnibus*

---

[1] The Debtor in this case, along with the last four digits of the debtor's federal tax identification number, is: True Value Company, L.L.C. (9896). The debtor's mailing address for purposes of this case is 8600 W. Bryn Mawr Ave. Chicago, IL 60631. The chapter 11 cases of the debtor's affiliates, TV Holdco II, L.L.C. (2272); TV TSLC, L.L.C. (7025); TV GPMC, L.L.C. (8136); True Value Retail, L.L.C. (7946); TrueValue.com Company, L.L.C. (6386); True Value Virginia, L.L.C. (9197); and Distributors Hardware, L.L.C. (8106), were closed as of May 28, 2025. All motions and contested matters that remained open as of the closing of such cases, or that are opened after the date thereof, are administered in the remaining chapter 11 case of True Value Company, L.L.C.

[2] Capitalized terms used herein shall have the meanings ascribed to them in the Objections.

33400543.2

*Reply in Support of the Debtors' Omnibus Objections to Claims* [Docket No. 1237] (as may be amended, modified, or supplemented, the "Original Reply"), (2) the *Declaration of Nick Weber in Support of Plan Administrator's Omnibus Reply in Support of the Debtors' Omnibus Objections to Claims* [Docket No. 1239] (as may be amended, modified, or supplemented, the "Original Declaration"), (3) the *Plan Administrator's Supplemental Omnibus Reply in Support of the Debtors' Omnibus Objections to Claims* [Docket No. 1348] (as may be amended, modified, or supplemented, the "Supplemental Reply"), (4) the *Supplemental Declaration of Nick Weber in Support of Plan Administrator's Supplemental Omnibus Reply in Support of the Debtors' Omnibus Objections to Claims* [Docket No. 1349] (as may be amended, modified, or supplemented, the "Supplemental Declaration"), (5) the *Declaration of Nick Weber in Support of Plan Administrator's Omnibus Reply in Support of the Plan Administrator's Omnibus Objections to Claims* (as may be amended, modified, or supplemented, the "13th and 14th Omnibus Declaration") filed contemporaneously herewith, and (6) the rulings made on the record at the hearing held on June 26, 2025, June 30, 2025, and July 10, 2025 (collectively, the "Hearing"); and (ii) respectfully further represents as follows:

## BACKGROUND

**A.    General Background**

1.    On October 14, 2024 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases (the "Chapter 11 Cases") are being jointly administered.

2.    On October 23, 2024, the Office of the United States Trustee for the District of Delaware appointed, pursuant to section 1102 of title 11 of the United States Code (the "Bankruptcy Code"), an official committee of unsecured creditors (the "Committee") [Docket No. 144]. No trustee or examiner has been appointed in the Chapter 11 Cases.

33400543.2

2

3. On November 1, 2024, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 262] setting (a) November 27, 2024, as the deadline to file requests for payment under section 503(b)(9) of the Bankruptcy Code (collectively, the "503(b)(9) Claims"), (b) December 5, 2024, as the deadline for all entities, other than governmental units, to file prepetition claims, and (c) April 14, 2025, as the deadline for governmental units to file prepetition claims. Additionally, on November 22, 2024, the Court entered an order [Docket No. 577] setting December 23, 2024, as the deadline to assert administrative expense claims (collectively, the "Administrative Claims"), other than 503(b)(9) Claims, where such Administrative Claims arose during the period from the Petition Date through and including November 22, 2024 (the "Administrative Claims Bar Date").

4. The Debtors sold substantially all of their assets (the "Sale") during the Chapter 11 Cases to Do it Best Corp. ("DIB"), pursuant to an order [Docket No. 411] (the "Bidding Procedures Order") dated November 13, 2024. Attached as Exhibit 1 to the Bidding Procedures Order was that certain *Amended and Restated Asset Purchase Agreement* (the "Asset Purchase Agreement"). The Sale closed on November 22, 2024.

5. On November 4, 2024, the Court entered an order [Docket No. 296] (the "Cash Collateral Final Order") approving the *Motion of Debtors for Entry of Interim and Final Orders (I)(A) Authorizing Debtors to Use Cash Collateral; (B) Granting Adequate Protection to Prepetition Lenders; (C) Modifying the Automatic Stay; and (D) Scheduling a Final Hearing and (II) Granting Related Relief* [Docket No. 19] on a final basis. As set forth in the term sheet, attached as Exhibit 1 to the Cash Collateral Final Order, the Debtors, the Committee, and the Prepetition Secured Parties (as defined in the Cash Collateral Final Order) agreed, among other things, that a certain portion of the Debtors' cash will be retained (the "Retained Funds") by the

33400543.2

3

Debtors' estates following the closing of the Sale in a segregated account for a period of 90 days, ending on February 20, 2025, during which time the Debtors would reconcile certain Administrative Claims (the "Reconciliation Period").  Upon the conclusion of the Reconciliation Period, Retained Funds that were not used, or forecasted to be used, by the Debtors' estates to pay certain Administrative Claims would be paid to the Prepetition Secured Parties.  Similarly, under the Asset Purchase Agreement with DIB, DIB agreed to assume certain Administrative Claims.

6. On January 21, 2025, the Debtors filed the *Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 796] (as may be amended or otherwise modified, the "Plan") and the accompanying disclosure statement [Docket No. 797] (as may be amended or otherwise modified, the "Disclosure Statement").  On April 17, 2025, the Court entered an order [Docket No. 1115] approving the Disclosure Statement on a final basis and confirming the Plan.  On April 25, 2025 (the "Effective Date"), the Plan went effective. *See* Docket No. 1149.

7. On the Effective Date, the Plan Administrator was appointed to act for the Debtors in the same capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan.  *See* Plan at Section 4.8; *see also Notice of Filing of Plan Supplement for the Joint Chapter 11 Plan of True Value Company, L.L.C. and Its Debtor Affiliates* [Docket No. 996, Ex. A] (as may be amended or otherwise modified, the "Plan Supplement").  The Plan Administrator's rights, powers, and duties include reconciling various claims.  *See* Plan at Section 4.8; *see also* Plan Supplement at Section 2(b).

8. At the Hearing, on July 10, 2025, the Court entered rulings from the bench regarding various issues between the Plan Administrator, the Debtors, and various claimants

33400543.2

4

subject to the first 12 omnibus claims objections filed by the Debtors or the Plan Administrator in the Chapter 11 Cases.

9. For the avoidance of doubt, the Plan Administrator adopts herein and incorporates by reference all additional facts and legal arguments set forth in the Objections, the Original Reply, the Original Declaration, the Supplemental Reply, the Supplemental Declaration, and the 13th and 14th Omnibus Declaration. These facts and legal arguments are relevant to the Ruling Claims of the Ruling Respondents (each as defined below), as applicable.

## REPLY TO FORMAL AND INFORMAL RESPONSES

**A.    The 14th Omnibus Objection to the Ruling Claims Should Be Sustained**

10. The Court entered rulings from the bench at the Hearing that apply to Claim No. C337-1014 filed by Car-Freshner Corporation, Claim No. C337-1646 filed by United States Stove Company, Claim No. C337-1849 filed by National Diversified Sales, Inc. ("NDS"), NORMA Group, and Claim No. C337-1376 filed by Klein Tools, Inc., each of which is included in the 14th Omnibus Objection and submitted informal responses thereto (these four Claims collectively, the "Ruling Claims," and these four Respondents collectively, the "Ruling Respondents"). Following the Hearing, the Plan Administrator re-reconciled the applicable Claims, sent an e-mail to each of the applicable Respondents, which included a copy of the Hearing transcript, and sought approval of the re-reconciled amounts and classifications associated with each applicable Claim. However, the Ruling Claims remain unresolved.

11. The Plan Administrator adopts herein and incorporates by reference all additional facts and legal arguments set forth in the Objections, the Original Reply, the Original Declaration, the Supplemental Reply, the Supplemental Declaration, and the 13th and 14th Omnibus Declaration, and submits that these facts and legal arguments are relevant to the Ruling Claims of the Ruling

33400543.2

5

Respondents, as applicable. Accordingly, the Plan Administrator respectfully requests that the Court enter an order sustaining the 14th Omnibus Objection as to the Ruling Claims.

**B.      The 13th Omnibus Objection to the Late Filed Claims Should Be Sustained**

12.     MVP Group International, Inc. ("MVP") filed Claim No. C337-100437 (the "MVP Claim") on May 28, 2025, seeking an administrative expense in the total amount of $9,380.18, and Midwest Fastener Corp. ("Midwest") filed Claim No. C337-100430 (the "Midwest Claim," and together with the MVP Claim, the "Late Filed Claims") on May 23, 2025, seeking an administrative expense in the total amount of $205,601.03. Even though MVP and Midwest received notice of the Administrative Claims Bar Date at the appropriate addresses, the Late Filed Claims were filed five or more months after the Administrative Claims Bar Date, and three or more months after the Debtors reserved funds to pay such Administrative Claims. Therefore, the Debtors did not reserve funds to pay the Late Filed Claims, and requiring the Debtors to pay the Late Filed Claims now would be substantially prejudicial. The Plan Administrator respectfully requests that the Court enter an order sustaining the 13th Omnibus Objection as to the Late Filed Claims.

13.     Rule 3003(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") sets out the requirements for filing proofs of claim. Bankruptcy Rule 9006(b)(1) empowers a bankruptcy court to permit a late filing if the movant's failure to comply with an earlier deadline "was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1).

14.     The United States Supreme Court enumerate four factors for evaluating when neglect is excusable: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *See*

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396 (1993) (citation omitted).

15. While all of the aforementioned factors must be considered and balanced, it is clear "courts place the greatest weight on whether any prejudice to the other parties[, including the Debtors,] will occur by allowing a late claim." *In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006) (citation omitted). "Relevant factors that may be considered when determining whether there is danger of prejudice to the debtors include: (1) whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated; (2) whether the payment of the claim would force the return of amounts already paid out under the confirmed Plan or affect the distribution to creditors; (3) whether payment of the claim would jeopardize the success of the debtor's reorganization; (4) whether allowance of the claim would adversely impact the debtor actually or legally; and (5) whether allowance of the claim would open the floodgates to other future claims." *Id.* (citations omitted).

16. The MVP Claim was filed on May 28, 2025. This is 156 days after the Administrative Claims Bar Date and 97 days after the conclusion of the Reconciliation Period. The Midwest Claim was filed on May 23, 2025. This is 151 days after the Administrative Claims Bar Date and 92 days after the conclusion of the Reconciliation Period.

17. Both MVP and Midwest received the *Notice of Deadline for Filing of Administrative Expense Claims* [Docket No. 585] at the appropriate addresses. *See Affidavit of Service* [Docket No. 667]. Additionally, all of the invoices underlying the Late Filed Claim are dated between the Petition Date and November 22, 2024. Therefore, they are subject to the Administrative Claims Bar Date.

18. As noted above, pursuant to the Cash Collateral Final Order, the Debtors had 90 days following the closing of the Sale to reconcile Administrative Claims incurred from the Petition Date through and including November 22, 2024. After the conclusion of the Reconciliation Period, which ran on February 20, 2025, the Retained Funds that were not used to pay the Administrative Claims, or reserved in anticipation of a dispute, were paid to the Prepetition Secured Parties (as defined in the Cash Collateral Final Order). Therefore, because the Late Filed Claims were not filed until late May 2025, the Debtors did not reserve amounts to pay the Late Filed Claims. Accordingly, requiring the Debtors to pay the Late Filed Claims would be substantially prejudicial; jeopardizing the success of the Chapter 11 Cases, which are nearing their conclusion.

19. Additionally, MVP and Midwest received proper notice of the Administrative Claim Bar Date, and therefore, the delay in filing the Late Filed Claims was entirely within their control, including the five or more months it ultimately took each of them to actually file the Late Filed Claims.

20. For all of these reasons, the facts and circumstances support a finding on each the first three *Pioneer* factors in favor of the Debtors. The Court should sustain the 13th Omnibus Objection as to the Late Filed Claims.

C.  **The 14th Omnibus Objection to the 462 Claim Should Be Sustained**

21. 462 Thomas Family Properties, L.P. ("462 Thomas") filed Claim No. C337-100427 (the "462 Claim") seeking an administrative expense in the total amount of $26,810.53 associated with the Debtors' rejection of a lease (the "Lease") between the Debtors and 462 Thomas. More specifically, 462 Thomas seeks an administrative expense related to (a) the costs associated with the removal of a fuel tank abandoned by the Debtors following the Debtors' rejection of the Lease, and (b) storm drainage maintenance costs related to the rejection of the Lease. However, the costs

33400543.2

8

associated with the removal of the fuel tank are entitled to nothing more than general unsecured claim treatment because (i) the Debtors were authorized to abandon personal property following the rejection of the Lease, and (ii) 462 Thomas has provided no evidence of such abandonment resulting in an imminent and identifiable harm to the public health or safety.  Additionally, the 462 Claim seeks an administrative expense related to storm drainage maintenance costs beyond the Effective Date (*i.e.*, the date the Lease was rejected), but provides no evidence or caselaw to support entitlement to an administrative expense in relation thereto.  The Plan Administrator respectfully requests that the Court enter an order sustaining the 14th Omnibus Objection as to the 462 Claim, whereby the Plan Administrator seeks to reduce and reclassify the 462 Claim in the amounts and classifications set forth on <u>Schedule 2</u> attached thereto.

22. The Debtors rejected the Lease effective as of the Effective Date.  *See* Plan, at Article V, Sections 5.1 & 5.2.  Pursuant to the Plan, the *Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 579], and applicable law, the Debtors were authorized, but not directed, to abandon personal property following the rejection of the Lease.  Additionally, where an unexpired lease has been rejected and personal property has been abandoned, a lessor is only entitled to an administrative expense related to the removal of the abandoned personal property if, among other things, the abandonment poses an imminent and identifiable harm to the public health or safety.  *See In re Unidigital, Inc.*, 262 B.R. 283, 287 (Bankr. D. Del. 2001).

23. 462 Thomas has provided no evidence that the Debtors' abandonment of the fuel tank following the rejection of the Lease poses in an imminent and identifiable harm to the public health or safety.  If there was an imminent and identifiable harm to the public health or safety, 462 Thomas would have already incurred costs to clean up such harms and remove the fuel tank.

33400543.2

9

There is no evidence that this has occurred, and the 462 Claim wasn't filed until May 23, 2025 (*i.e.*, almost one month after the Lease was rejected). *See id.* at 287 ("[T]he Debtors rejected the lease, effective January 31, 2001, and the chemicals have remained on site since then. If the danger were truly imminent, SNY would have protected its property by eliminating the danger.").

24. Second, the 462 Claim seeks an administrative expense related to storm drainage maintenance costs beyond the Effective Date (*i.e.*, the date the Lease was rejected). However, 462 Thomas provides no evidence or caselaw to support entitlement to an administrative expense in relation to any period beyond the Effective Date. The Plan Administrator respectfully requests that the Court enter an order sustaining the 14th Omnibus Objection as to the 462 Claim in the amounts and classifications set forth on Schedule 2 attached thereto.

## RESERVATION OF RIGHTS

25. The Plan Administrator expressly reserves the right to amend, modify, or supplement the Objections and this Omnibus Reply, to file additional objections to any other claims (filed or not) that may be asserted against the Debtors and their estates, and to file additional replies in support of any current or future objections or current or future formal or informal responses to any objections. Should one or more of the grounds of objection stated in the Objections be dismissed or overruled, the Plan Administrator reserves the right to object to each of the Claims, or any other claims, on any other grounds that the Plan Administrator discovers or elects to pursue.

26. Notwithstanding anything contained in the Objections, or the exhibits and schedules attached to the proposed orders attached to the Objections, nothing herein will be construed as a waiver of any rights that the Plan Administrator, the Debtors, or any successor to the Debtors, may have to enforce rights of setoff against the Respondents.

33400543.2

27. Nothing in this Omnibus Reply will be deemed or construed: (a) as an admission as to the validity of any claim or interest against the Debtors; (b) as a waiver of the Plan Administrator's rights to dispute or otherwise object to any claim or proof of interest on any grounds or basis; (c) to waive or release any right, claim, defense, or counterclaim of the Plan Administrator, or to estop the Plan Administrator from asserting any right, claim, defense, or counterclaim; (d) as an approval or assumption of any agreement, contract, or lease, pursuant to section 365 of the Bankruptcy Code; or (e) as an admission that any obligation is entitled to administrative expense priority or any such contract or agreement is executory or unexpired for purposes of section 365 of the Bankruptcy Code or otherwise.

## CONCLUSION

The Plan Administrator respectfully requests that the Court sustain the Objections and grant such other and further relief as may be just and proper.

Dated: July 28, 2025
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR LLP**

*/s/ Timothy R. Powell*
Edmon L. Morton (Del. Bar No. 3856)
Kenneth J. Enos (Del. Bar No. 4544)
Kristin L. McElroy (Del. Bar No. 6871)
Timothy R. Powell (Del. Bar No. 6894)
One Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email:  emorton@ycst.com
        kenos@ysct.com
        kmcelroy@ycst.com
        tpowell@ycst.com

*Counsel to the Post-Effective Date Debtors*